# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER BRENNEISE, ALLISON BRENNEISE, AND ROBERT BRENNEISE,<br><br>　　　Plaintiffs,<br>vs.<br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>　　　Defendant. | CASE NO. 08cv28 WQH (WMc);<br>　　　　　08cv39 WQH (WMc)<br><br>**ORDER** |

HAYES, Judge:

　　The matters before the Court are the (1) Motion for Certificate of Appealability (Doc. # 25) filed by San Diego Unified School District, and (2) Motion to Dismiss (Doc. # 36) filed by San Diego Unified School District.

## **Background**

　　This action arises under the Individuals with Disabilities Education Act ("IDEA"), 84 Stat. 175, as amended, 20 U.S.C. §§ 1400, *et seq*. (2000 ed. and Supp. IV), which "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig v. Doe,* 484 U.S. 305, 310 (1988).

A. <u>Factual Allegations</u>[1]

Tyler Brenneise is a teenage boy with autism and late diagnosed Phenylketonuria, a genetic metabolic disorder. Tyler ingests part of his diet through daily gastrostomy tube ("G-Tube") feedings. Tyler is eligible for special education and related services under the IDEA. Allison and Robert Brenneise are Tyler's parents.[2] San Diego Unified School District ("San Diego Unified") is a public school district organized and existing under the laws of the State of California, and is located within San Diego County.

In October 2003, Tyler's parents removed him from his school placement because they disagreed with the implementation of Tyler's Individualized Education Program ("IEP") by San Diego Unified. In July 2006, Tyler's parents provided conditional consent to an extended school year ("ESY") IEP, which called for Tyler to return to a school placement and attend Coronado Academy within the Coronado Unified School District. The ESY IEP required San Diego Unified to convene an IEP meeting by August 30, 2006 to develop an IEP for Tyler for the 2006-2007 school year.

On or about July 31, 2006, the Brenneises filed a request for a compliance complaint investigation ("CDE Compliance Complaint") with the California Department of Education ("CDE"). The CDE Compliance Complaint challenged San Diego Unified's implementation of the ESY IEP.

On August 30, 2006, as required by the ESY IEP, San Diego Unified convened a meeting to develop an IEP for Tyler for the 2006-2007 school year. The Brenneises did not provide consent to San Diego Unified's proposed August 30, 2006 IEP.

On November 27, 2007, the CDE issued a ruling with respect to the CDE Compliance Complaint. The CDE found San Diego Unified non-compliant with the IDEA for failing to implement Tyler's ESY IEP, and ordered San Diego Unified to provide Tyler with compensatory education.

---

[1] The factual allegations are taken from both the Brenneises' and San Diego Unified's Complaints.

[2] Tyler, Allison and Robert Brenneise will collectively be referred to as (the "Brenneises").

On or about November 29, 2006, after convening several more IEP meetings to develop an IEP for Tyler for the 2006-2007 school year and failing to obtain the Brenneises' consent to any of San Diego Unified's proposed IEP offers, San Diego Unified filed a request for a due process hearing with the Office of Administrative Hearings ("OAH"). San Diego Unified requested that the OAH establish that its assessment of Tyler was appropriate.

On December 4, 2006, San Diego Unified convened another meeting to develop an IEP for Tyler for the 2006-2007 school year. The Brenneises did not provide consent to San Diego Unified's proposed December 4, 2006 IEP. San Diego Unified amended its due process complaint with the OAH to request that the OAH establish that the December 4, 2006 IEP offer was compliant with the IDEA.

On or about January 29, 2007, the Brenneises cross-filed a request for a due process hearing with the OAH. The Brenneises alleged that San Diego Unified's August 30, 2006 and December 4, 2006 IEPs denied Tyler a free and appropriate public education ("FAPE") in violation of the IDEA. The Brenneises also moved to consolidate their due process filing with San Diego Unified's pending due process filing. The OAH granted the motion for consolidation.

B.   The OAH Decision

The OAH convened the consolidated due process hearing on May 14, 2007 - June 1, 2007, June 11, 2007 - June 13, 2007, June 19, 2007 - June 20, 2007, and July 11, 2007 - July 20, 2007. On or about October 3, 2007, the OAH issued a written decision ("the OAH Decision"), which identified 18 separate issues, and concluded: "The Student prevailed on issues 10, 14 and 15. The District prevailed on the remaining issues." *OAH Decision,* p. 75.

With respect to issue 10, the OAH Decision concluded that the December 4, 2006 IEP "failed to provide for specialized physical health care services Student would need to access his education and failed to provide an appropriate plan to transition Student from his home placement to a school placement." *OAH Decision,* p. 66. With respect to issue 14, the OAH Decision concluded that the Brenneises met their burden of proving that Tyler's "one-to-one behavioral aide was not the appropriate person to assist [Tyler] with his G-Tube feeding." *Id.*

at 69. The OAH Decision modified the December 4, 2006 IEP to require Tyler's G-Tube feedings to occur daily in the nurse's office where a "school nurse will be present and will personally assist the student with the student's G-Tube feeding." *Id.* at 74. With respect to issue 15, the OAH Decision concluded that the Brenneises met their burden of proving that the "August 30 and December 4 IEPS denied [Tyler] a FAPE because they failed to include appropriate transition plans which identified the services to be performed during the operation of the plan and failed to permit Student's parents to be part of the decision making process on the educational placement of the child." *Id.* at 71.

### C. The Brenneises' Complaint

On January 4, 2008, the Brenneises filed a Complaint against San Diego Unified (08cv28, Doc. # 1). The first claim for relief alleges that the Brenneises are a "party aggrieved" by the OAH Decision in that the "OAH decision erred in holding in favor of San Diego Unified with respect to issues 1-5 (Issues Related to Assessments); issues 6-9 (Issues Related to the August 30, 2006 Proposed IEP); issues 11-13 (Issues Related to the December 4, 2006 Proposed IEP); and issues 16-18 (Issues Related to both IEPs)." *Complaint,* ¶ 21. The second claim for relief alleges that the Brenneises are a prevailing party with respect to the due process proceedings and are therefore entitled to reimbursement of reasonable attorneys' fees incurred during the course of the due process proceedings. The third claim for relief alleges that Tyler has been denied a FAPE in violation of the IDEA on grounds that San Diego Unified has "failed and refused to comply with the OAH Decision" with respect to the transition plan and with respect to Tyler's G-Tube feedings. *Brenneises' Complaint,* ¶¶ 30-31. The fourth claim for relief alleges that the Brenneises are entitled to reimbursement of reasonable attorneys' fees incurred in connection with their successful CDE Compliance Complaint.

### D. San Diego Unified's Complaint

On January 4, 2008, San Diego Unified filed a Complaint against the Brenneises, their attorney Steven Wyner and the law firm of Wyner & Tiffany (08cv39, Doc. # 1). The first cause of action alleges that the OAH Decision "wrongfully ordered [San Diego Unified] to modify the IEP to require a school nurse to be present to personally assist [Tyler] with his g-

tube feedings and wrongfully concluded that [Tyler] would not have been safe at school under the December 4, 2006 IEP." *San Diego Unified Complaint,* ¶ 20. The first cause of action further alleges that the "OAH erroneously concluded that the [transition] plan denied [Tyler] a FAPE." *Id.,* ¶¶ 23, 24. The second cause of action requests attorneys' fees on grounds that the Brenneises, Steven Wyner and the law firm of Wyner & Tiffany acted in bad faith and for an improper purpose with respect to the due process proceedings and subsequent litigation. The third cause of action requests a declaration that the "IDEA's fees shifting provisions do not entitle a parent to reimbursement for fees and costs incurred in filing a compliance complaint" with the CDE, and that "the IDEA provides [San Diego Unified] with the discretion to substitute one qualified provider for another in compliance with [Tyler's] IEP and that [San Diego Unified] cannot be compelled to contract with non-certified NPAs in violation of State law." *Id.,* ¶¶ 33, 35.

E.  The Motions to Dismiss

On March 12, 2008, the Brenneises filed a "Motion to Dismiss Second Cause of Action against All Parties with Prejudice; to Dismiss Third Cause of Action against Steven Wyner and Wyner and Tiffany with Prejudice" ("Brenneises' Motion to Dismiss") (08cv39, Doc. # 19). The Brenneises moved to dismiss San Diego Unified's second cause of action for attorneys' fees against all parties on grounds that their Complaint was neither meritless nor frivolous. The Brenneises also moved to dismiss San Diego Unified's third cause of action for attorneys' fees with respect to Steven Wyner and the Law Firm of Wyner & Tiffany.

On April 3, 2008, San Diego Unified filed an "Amended Motion to Dismiss Third and Fourth Claims for Relief" ("San Diego Unified's Motion to Dismiss") (08cv28, Doc. # 15). San Diego Unified moved to dismiss the Brenneises' third claim for denial of FAPE for failure to implement the OAH Decision. San Diego Unified asserted that the Brenneises failed to exhaust their administrative remedies with respect to this claim because the Brenneises sought to challenge the "very same aspects of the [OAH Decision] that they [sought] to enforce," and "[t]heir simultaneous request in the [Amended Complaint] to challenge the decision and to enforce it is fundamentally incongruous." *Mot. to Dismiss,* p. 5-6, 8. San Diego Unified also

moved to dismiss the Brenneises' fourth claim for reimbursement of attorneys' and fees and costs incurred in pursuing the CDE Compliance Complaint on grounds that "attorneys fees and costs incurred related to compliance complaints [are not] reimbursable under Section 1415 of the IDEA" because a compliance complaint does not constitute a "proceeding" within the meaning of section 1415. *Id.* at 10.

On April 10, 2008, San Diego Unified filed a Response in Opposition to the Brenneises' Motion to Dismiss (08cv39, Doc. # 21). On April 17, 2008, the Brenneises filed a Reply (08cv39, Doc. # 22). On April 28, 2008, the Brenneises filed a Response in Opposition to San Diego Unified's Motion to Dismiss (08cv28, Doc. # 17). On May 5, 2008, San Diego Unified filed a Reply (08cv28, Doc. # 20).

    F.    <u>The Court's June 24, 2008 Order</u>

On June 24, 2008, the Court issued an Order consolidating the Brenneises' action (08cv28) with San Diego Unified's action (08cv39); and denying the Brenneises' Motion to Dismiss San Diego Unified's second and third causes of action, granting San Diego Unified's Amended Motion to Dismiss the Brenneises' third claim for relief, and denying San Diego Unified's Amended Motion to Dismiss the Brenneises' fourth claim for relief (Doc. # 22).

The Court denied the Brenneises' Motion to Dismiss San Diego Unified's second cause of action for attorneys' fees on grounds that dismissal of the second cause of action would be "improper at this early stage of the proceedings, and in light of the fact intensive nature of the inquiry into whether the Brenneises' action as frivolous, unreasonable or without foundation, or for an improper purpose." *June 24 Order,* p. 11. The Court denied the Brenneises' Motion to Dismiss San Diego Unified's third cause of action for attorneys' fees with respect to Steven Wyner and the law firm of Wyner & Tiffany incurred in filing the CDE Compliance Complaint. The Court held that dismissal was improper on grounds that Steven Wyner and the law firm of Wyner & Tiffany have an interest in the Court's resolution of the third cause of action and are therefore proper parties.

///

///

The Court granted San Diego Unified's Motion to Dismiss the Brenneises' third claim to enforce the implementation of the December 4 IEP as premature "because the Brenneises seek to enforce 'what, at this point, is only an anticipatorily adverse ruling by this Court." *June 24 Order,* p. 15. The Court stated:

> The IDEA grants the Court jurisdiction to consider a challenge to an adverse decision rendered pursuant to an IDEA due process hearing. The Court can also consider a request to enforce an unappealed decision rendered pursuant to an IDEA due process hearing. However, the Brenneises' third claim does not fit within either of these categories. Instead, the Brenneises have appealed some aspects of the OAH Decision and request that the Court enforce the implementation of other portions of the same administrative order.

*Id.* at 14-15. The Court denied San Diego Unified's Motion to Dismiss the Brenneises' fourth claim for reimbursement of attorneys' fees and costs incurred in pursuing the CDE Compliance Complaint. The Court stated:

> The Court concludes that the Brenneises have stated a claim for attorneys' fees related to their CDE Compliance Complaint because it was filed pursuant to California's CRP and constitutes a proceeding within the meaning of section 1415. The Court concludes that the CDE Compliance Complaint has the necessary judicial imprimatur required for the Brenneises to achieve prevailing party status under the IDEA because the Brenneises "may exercise the right to bring a civil action in a district court" with respect to proceedings pursuant to California's CRP.

*Id.* at 17.

G.    Motion for Certificate of Appealability

On July 11, 2008, San Diego Unified filed the Motion for Certificate of Appealability. San Diego Unified "requests that this Court certify to the Ninth Circuit the issue of whether or not attorney's fees and costs are available under 20 U.S.C. section 1415(i)(3) to a prevailing party following a compliance complaint to a state educational agency under 24 C.F.R. sections 300.660-662." *Mot. for Certificate of Appealability,* p. 9. On August 4, 2008, the Brenneises filed a Response in Opposition to the Motion for Certificate of Appealability (Doc. # 35). On August 11, 2008, San Diego Unified filed a Reply (Doc. # 41).[3]

---

[3] San Diego Unified also contends that it is entitled to interlocutory review of the Court's denial of its Eleventh Amendment immunity claim. However, San Diego Unified did not assert that it was entitled to Eleventh Amendment immunity until its Reply to the Amended Motion to Dismiss.

### H.     The Brenneises' Answer and Counterclaim

On July 14, 2008, the Brenneises filed an Answer and Counterclaim to San Diego Unified's Complaint ("Counterclaim") (08cv39, Doc. # 24).  The Brenneises allege three Counterclaims against San Diego Unified.  The first Counterclaim alleges that San Diego Unified "failed and refused to accommodate [Tyler's] disability by providing for the G-Tube feedings in his IEPs for the 2006-2007 and 2007-2008 school years," which "resulted in his being excluded from school and being denied a FAPE solely on account of his disability." *Counterclaim,* ¶¶ 15-16.  The second Counterclaim alleges that San Diego Unified failed to comply with the OAH Decision by failing and refusing to provide Tyler with OT services and to ensure the presence of a school nurse to assist Tyler with his G-Tube feedings.  The second Counterclaim alleges that "[a]s a result of [San Diego Unified's] failure and refusal to comply with the OAH Decision, [Tyler] was denied the receipt of OT services and excluded from attending public school . . . solely on the basis of his disability."  *Id.,* ¶¶ 26-29.  The third Counterclaim alleges that Tyler "was required to remain at home because [San Diego Unified] failed and refused to accommodate his need for G-Tube feeding, during which time [San Diego Unified] failed and refused to provide [Tyler] with a qualified teacher to provide him with academic instruction at home."  *Id.,* ¶ 34.  The third counterclaim alleges that as a result of this conduct, San Diego Unified discriminated against Tyler solely on account of his disability. All three Counterclaims allege violations of section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131.  The Brenneises allege that, as a result of all three Counterclaims, Tyler suffered injury including educational injury, hedonic injury and emotional distress, and Tyler's parents suffered financial and other damages including lost wages and emotional distress.

---

*See Reply to Mot. for Certificate of Appealability,* p. 6 ("it was stated in [San Diego Unified's] Reply to the opposition to the Amended Motion to Dismiss").  Furthermore, "the IDEA contains an express abrogation of sovereign immunity as to suits brought pursuant to it."  *Board of Education at Pawling Central School Dist. b. Schutz,* 137 F. Supp. 2d 83, 87 (N.D.N.Y. 2001); *J.R. v. Sylvan School Dist.,* 2008 U.S. Dist. LEXIS 18168 * 79 (E.D. Cal. 2008).  The Court declines to certify an Eleventh Amendment immunity issue to the Ninth Circuit.

I.  San Diego Unified's Motion to Dismiss and/or Strike Counterclaims

On August 4, 2008, San Diego Unified filed the Motion to Dismiss and/or Strike Counterclaims and for Sanctions. San Diego Unified moves to dismiss the Brenneises' first and second Counterclaims on grounds that the Brenneises have failed to exhaust their administrative remedies. San Diego Unified further contends that all three Counterclaims must be dismissed for failure to state a claim under Section 504 or the ADA. San Diego Unified requests that "[i]n the alterantive, this Court should strike the Counterclaims." *Mot. to Dismiss,* p. 16. San Diego Unified also requests sanctions. On August 25, 2008, the Brenneises filed a Response in Opposition to the Motion to Dismiss (Doc. # 44). On August 29, 2008, San Diego Unified filed a Reply to the Response to the Motion to Dismiss (Doc. # 45).

## **Analysis**

## **I.  San Diego Unified's Motion for Certificate of Appealability**

San Diego Unified contends that the question of the availability of attorneys' fees for filing the CDE Compliance Complaint is unclear because there have been substantial changes in the law since the Ninth Circuit's holding in *Lucht v. Molalla River School District,* 225 F.3d 1023 (9th Cir. 2000), that attorneys' fees were available for work done in filing a successful compliance complaint with an administrative agency. San Diego Unified contends that subsequent cases have precluded "eligibility for fees awards arising from changes in conduct brought through alternative mechanisms, such as the CRP process, not bearing any judicial imprimatur," and that new Department of Education regulations, implemented in August 2006, "confirm that it did not intend to create an entitlement to attorneys' fees for compliance complaints filed pursuant to the regulatory process it created." *Mot. to Dismiss,* p. 2-3. San Diego Unified contends that the issue of whether attorney's fees are available under the IDEA for a compliance complaint is a "controlling issue of law on which there is a substantial difference of opinion." *Id.* at 4-5. San Diego Unified contends that resolution of the issue will materially speed up the litigation because

> should the Ninth Circuit reverse this Court's order on the substantial grounds listed above, this Court would never have to engage in the detailed factual inquiry required to determine the degree of the Brenneises' success on the Compliance Complaint and the reasonableness of the amount of fees sought in order to determine what, if any, are their recoverable attorneys' fees. If, on the other hand, the Ninth Circuit affirms, it is likely that the parties would settle the compliance fees causes of action.

*Id.* at 7. San Diego Unified requests that the Court "certify to the Ninth Circuit the issue of whether or not attorneys' fees and costs are available under 20 U.S.C. section 1415(i)(3) to a prevailing party following a compliance complaint to a state educational agency." *Id.* at 9. San Diego Unified contends that the request should be granted on grounds that "it involves a controlling, abstract question of law that will dispose of a cause of action . . . and would have a significant impact advancing the termination of the litigation." *Id.*

The Brenneises contend that "the claim for reasonable attorneys' fees in connection with the CDE Compliance Complaint is a very minor side issue in the overall context of this litigation." *Opposition,* p. 1. The Brenneises contend that "[i]f the Ninth Circuit were to reverse the court's order, it would do nothing to promote the conclusion of the litigation as a whole. However, if the Ninth Circuit were to affirm . . . , the interlocutory appeal would have delayed the ultimate termination of this case rather than advanced it." *Id.* at 3-4 (internal quotations omitted). The Brenneises contend that there is "no substantial difference of opinion on whether a prevailing party in a CDE compliance proceeding is entitled to attorney's fees" because "the question as to whether a CDE compliance proceeding is an action or proceeding under section 1415 was squarely answered in the affirmative by the Ninth Circuit in *Lucht,*" a holding that was approved in *P.N. v. Seattle Sch. Dist. No. 1,* 474 F.3d 1165 (9th Cir. 2007). The Brenneises contend that although the Ninth Circuit has not squarely decided whether a CDE compliance order has sufficient judicial imprimatur, "[t]his court properly concluded that it does, and [San Diego Unified] has not cited a single case that has held to the contrary on the judicial imprimatur issue. Thus, while [San Diego Unified] may strongly disagree with the court's conclusion, it has failed to cite a single conflict with another court's decision on this issue." *Id.* at 5.

> Pursuant to 28 U.S.C. section 1292(b),
>
> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). In granting a certificate of appealability pursuant to section 1292(b), a district judge must find that the following three certification requirements have been met: "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1026 (9th Cir. 1982). The requirement that there be a controlling question of law is satisfied if "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Id.* However, the issue cannot be "collateral to the basic issues of [the] case." *United States v. Woodbury,* 263 F.2d 784, 787-88 (9th Cir. 1959). A party's strong disagreement with the court's ruling is not sufficient to satisfy the requirement that there be substantial grounds for difference of opinion. *Kern-Tulare Water Dist. v. Bakersfield,* 634 F. Supp. 656, 667 (E.D. Cal. 1986). A "substantial ground for dispute . . . exists where a court's challenged decision conflicts with decisions of several other courts." *APCC Services, Inc. v. AT&T Corp.,* 297 F. Supp. 2d 101, 107 (D.D.C. 2003). Congress intended that section 1292(b) be used to permit interlocutory appeal "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litigation,* 673 F.2d at 1026.

This central issues in this lawsuit involve whether the IEPs developed during August and December 2006 provided Tyler with a FAPE. The Brenneises' claim for attorneys' fees in connection with the CDE Compliance Complaint is a collateral issue, resolution of which will not "materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litigation,* 673 F.2d at 1026. The Court concludes that the issue of whether attorneys' fees are available for the filing of the CDE Compliance Complaint is not a

controlling question of law. The Court further concludes that substantial grounds for difference of opinion do not exist. As discussed in the Court's June 24 Order, *Lucht* held that "to the extent that a CRP complaint addresses a dispute that is subject to resolution in a § 1415 due process hearing, the CRP is a proceeding 'brought under' § 1415" and a court may award reasonable attorneys' fees incurred with respect to the CRP complaint. *Lucht,* 225 F.3d 1023. Subsequent cases have not disturbed *Lucht's* holding that a CRP is a proceeding within the meaning of section 1415, which was approved by the Ninth Circuit in *P.N.,* 474 F.3d at 1169. In *P.N.,* the Ninth Circuit held that "the IDEA authorizes an action solely to recover attorneys' fees and costs, even if there has been no administrative or judicial proceeding to enforce a student's rights under the IDEA." *Id.* Although San Diego Unified may disagree with the Court's ruling that the Brenneises have stated a claim for attorneys' fees incurred in filing the CDE Compliance Complaint, San Diego Unified has failed to show that there are substantial grounds for difference of opinion. Finally, the Court concludes that interlocutory appeal will not "materially advance the ultimate termination of the litigation," *In re Cement Antitrust Litigation,* 673 F.2d at 1026, because an immediate determination of whether the Brenneises are entitled for attorneys' fees related to the CDE Compliance Complaint will not speed up the adjudication of whether Tyler was denied a FAPE, the central issue in this litigation. The Court concludes that this is not an "exceptional situation[] in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litigation,* 673 F.2d at 1026. The Court denies the Motion for Certificate of Appealability.

**II.     San Diego Unified's Motion to Dismiss Counterclaims**

    A.     <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978); *see* FED R. CIV. P. 12(b)(6). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the "right of relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly

show "that the pleader is entitled to relief." *See id.* (citing FED R. CIV. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Robertson v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1981). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001).

### B. Failure to Exhaust Administrative Remedies

San Diego Unified contends that the allegations in the Brenneises' first Counterclaim - that San Diego Unified failed to provide for G-Tube feedings in Tyler's IEP for the 2006-2007 and the 2007-2008 school years - demonstrate the failure to exhaust administrative remedies on their face because "they allege denials of FAPE *after* the administrative hearing took place and *after* the annual IEP at issue in that hearing expired by its own terms on December 3, 2007." *Mot. to Dismiss,* p. 5. With respect to the second Counterclaim, San Diego Unified contends that "[n]o administrative body has found, or even been asked to find, that [San Diego Unified] failed to implement any portion of the [OAH Decision], much less the specific portions of the [OAH Decision] of which the Brenneises now complain." *Mot. to Dismiss,* p. 6. San Diego Unified contends that the first and second Counterclaims seek relief for educational injuries that could be redressed by IDEA's administrative procedures. San Diego Unified therefore contends that the first and second Counterclaims are subject to the exhaustion requirement and must be dismissed for failure to exhaust administrative remedies.

The Brenneises contend that they exhausted their administrative remedies with respect to the first Counterclaim for failure to provide for G-Tube feedings in Tyler's IEPs for the 2006-2007 and 2007-2008 school years because they "alleged these violations in the administrative proceeding and received all of the educational remedies available to [Tyler] under the IDEA for these violations." *Opposition,* p. 2. The Brenneises contend that the

"Second Counterclaim is premised on [San Diego Unified's] failure to comply with the [OAH Decision]" modifying December 4, 2006 IEP to include the necessary G-Tube feeding services. *Id.* at 3. The Brenneises contend that "there is no exhaustion requirement for a civil rights claim premised on failure to implement a hearing office decision" because an administrative hearing office does not have jurisdiction to enforce its own orders. *Id.* at 4. The Brenneises further contend that the exhaustion requirement does not apply to the first and second Counterclaims because the Counterclaims seek "additional remedies beyond those obtained in the administrative proceeding" in the form of damages for Tyler injuries including educational injury, hedonic injury and emotional distress, and for Tyler's parents' injuries including lost wages and emotional distress. *Id.*

A party who "seek[s] relief for injuries that could be redressed to any degree by the IDEA's administrative procedures" is required to exhaust administrative remedies prior to filing suit in federal court. *Kutasi v. Las Virgenes Unified Sch. Dist.,* 494 F.3d 1162, 1163 (9th Cir. 2007). The exhaustion requirement "is not . . . a rigid one. . . . Courts universally recognize that parents need not exhaust the procedures set forth in [IDEA] when resort to the administrative process would be either futile or inadequate." *Porter v. Bd. of Trustees of Manhattan Beach Unif. School Dist.,* 307 F.3d 1064, 1069 (9th Cir. 2002).

The IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies under the Constitution, the Americans With Disabilities Act of 1990 . . . title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

A party cannot avoid the IDEA's exhaustion requirement "simply by limiting a prayer for relief to money or services that are not provided under the IDEA." *Blanchard v. Morton School Dist.,* 420 F.3d 918, 921 (9th Cir. 2005); *see also Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 29 (1st Cir. 2006) ("We hold that where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983 - or any other federal statute for that matter - in an

1  attempt to evade the limited remedial structure of the IDEA."). "The dispositive question
2  therefore is whether [the plaintiff] is seeking remedy for injuries that could be redressed to any
3  degree by the IDEA's administrative procedures." *Blanchard,* 420 F.3d at 921; *see also Robb*
4  *v. Bethel School Dist.,* 308 F.3d 1047, 1052 (9th Cir. 2002) ("where . . . a plaintiff has alleged
5  injuries that could be redressed to some degree by the IDEA's administrative procedures and
6  remedies, then the courts should require exhaustion of administrative remedies").

7        A party is not required to exhaust his or her administrative remedies if he or she is
8  seeking to enforce the implementation of a hearing office decision, such as the OAH Decision,
9  because the hearing office does not have jurisdiction to enforce its own orders. *Porter,* 307
10 F.3d at 1070. Exhaustion under such circumstances "would be futile or inadequate." *Id.*

11       The parties do not dispute that the first Counterclaim involves the August 30, 2006 IEP
12 and the December 4, 2006 IEP. Neither party asserts that there was an agreed-upon IEP for
13 the 2006-2007 or 2007-2008 school year that failed to provide for Tyler's G-Tube feedings
14 other than the August 30 IEP and the December 4 IEP. The issue of whether the August 30
15 IEP and December 4 IEP violated the IDEA by failing to require Tyler's G-Tube feedings to
16 be performed by a registered nurse was raised at the due process hearing and addressed in the
17 OAH Decision. The Court therefore concludes that dismissal of the first Counterclaim on
18 grounds that the Brenneises have failed to exhaust their administrative remedies is not proper.

19       At issue in the second Counterclaim is San Diego Unified's alleged failure to enforce
20 the implementation of the OAH Decision. The Brenneises were not required to exhaust their
21 administrative remedies with respect to the enforcement of the OAH Decision. San Diego
22 Unified asserts that the Brenneises have failed to exhaust their administrative remedies because
23 the Brenneises seek to challenge some aspects of the OAH Decision and enforce other aspects.
24 However, this objection goes to whether the second Counterclaim states a claim, not whether
25 the Brenneises' were required to exhaust their administrative remedies with respect to the
26 second Counterclaim. The Court concludes that dismissal of the second Counterclaim, which
27 alleges violations of Section 504 and the ADA based on San Diego Unified's failure to
28 implement the OAH Decision, on grounds that the Brenneises failed to exhaust their

1  administrative remedies is not proper.

2    C.  Failure to State a Claim

San Diego Unified contends that the Counterclaims fail to state a claim under Section 504 or the ADA. San Diego Unified contends that a party seeking damages under section 504 and the ADA in the education context must show "something more" than a mere denial of a FAPE under the IDEA. *Mot. to Dismiss,* p. 8. San Diego Unified contends that with respect to all three Counterclaims, there are no specific allegations of intentional discrimination or deliberate indifference, which are an essential element of a damages claim under Section 504 and the ADA. San Diego Unified contends that the Counterclaims also fail to allege that Tyler was treated differently than general education students. San Diego Unified also contends that the Brenneises fail to state with any specificity which Section 504 regulations are relied upon and how they were violated. San Diego Unified contends that "the Brenneises fail to state a claim under Section 504, the ADA, or either statute's implementing regulations. Thus, the First, Second, and Third Counterclaims must be dismissed for failure to state a claim upon which relief can be granted." *Mot. to Dismiss,* p. 7.

The Brenneises contend that the Counterclaims allege more than a mere violation of the IDEA. The Brenneises contend that the Counterclaims allege more than a disagreement over an education approach, incorrect evaluation, or the needs of a handicapped child. The Brenneises state: "The section 504 and ADA claims allege something more: that by virtue of the failure to properly provide for the G-Tube feedings, [Tyler] was not merely denied educational benefit in violation of the IDEA, but he was completely excluded from being able to attend a public school facility to obtain his education." *Opposition,* p. 6. The Brenneises contend that they did not rely on a Section 504 regulation to support their Counterclaims because the conduct alleged violates express provisions in Section 504. The Brenneises further contend that the conduct alleged violates 34 C.F.R. § 104.33(a) and (b).

To establish a violation of Title II of the ADA, a plaintiff must show: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated

against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles County Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997) (internal quotations omitted). To establish a violation of Section 504, a plaintiff must show: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.* (internal quotations omitted). "[A] public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H.,* 513 F.3d 922, 935 (9th Cir. 2008); *see also Duvall v. County of Kitsap,* 260 F.3d 1124, 1135-36 (9th Cir. 2001) (holding that allegations of intentional discrimination or deliberate indifference are required to state a claim for damages under Section 504 or the ADA). A party seeking to recover damages under Section 504 or the ADA must show "something more" than a denial of FAPE under the IDEA. *Sellers by Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 529 (9th Cir. 1998).

      The Counterclaims allege that San Diego Unified's failure to comply with the requirement that G-Tube feedings be included in Tyler's IEP, failure to enforce the OAH Decision, and failure to provide Tyler with a qualified teacher to provide him with academic instruction at home was "knowing and intentional." *Counterclaim,* ¶¶ 18, 30, 36. However, the Counterclaims do not allege that these failures were done with intent to discriminate or with deliberate indifference. There are no facts alleged that San Diego Unified acted with an intent to discriminate against Tyler on the basis of his disability. The Counterclaims also do not allege how Tyler was treated differently than general education students as a result of these failures. The Court concludes that the Counterclaims fail to state a claim under Section 504 or the ADA because the Counterclaims do not allege something more than a denial of FAPE under the IDEA. The Court grants the Motion to Dismiss the Counterclaims.

///

///

///

### D. Request for Sanctions

San Diego Unified requests that the Court "sanction the Brenneises' attorneys for their frivolous conduct in filing their second counterclaim." *Mot. to Dismiss,* p. 14. San Diego Unified contends that the second Counterclaim is the same as the claim already dismissed in the Court's June 24 Order. The Brenneises contend that as a result of "refiling the exact claim that has already been dismissed . . . the Brenneises and their attorneys have forced [San Diego Unified] to incur additional attorneys' fees to respond to the filing, and have also further unnecessarily delayed resolution of this matter." *Id.* San Diego Unified further contends that "the Brenneises' attorneys have acted in willful disregard of this Court's Order dismissing their failure to implement claim without leave to amend, by refiling the exact claim again." *Id.*

The Brenneises respond that "filing the civil rights claims as counterclaims was not only legally permissible, it was the most prudent course of action." *Opposition,* p. 8. The Brenneises also contend that it is San Diego Unified which should be sanctioned for unduly multiplying proceedings, "first by asserting a claim for attorneys' fees that its counsel knows is frivolous, and most recently by filing a notice of appeal to the Ninth Circuit of this court's decision not to dismiss the Brenneises' claim for attorneys' fees in connection with the CDE compliance proceedings." *Id.* at 9.

28 U.S.C. section 1927 states:

> Any attorney or other person admitted to conduct cases in a court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The imposition of fees and costs under section 1927 may be made on a finding that the attorney acted recklessly or in bad faith, following a notice and an opportunity to be heard. *United States v. Associated Convalescent Enterprises, Inc.,* 766 F.2d 1342, 1346 (9th Cir. 1985). A district court also has the inherent power to impose sanctions on counsel who "willfully abuse judicial processes." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762 (1980).

The Court finds that the Brenneises' attorneys did not act recklessly or in bad faith in filing the second Counterclaim. The Court declines to exercise its discretion to sanction the Brenneises for filing the second Counterclaim. San Diego Unified's request for sanctions is denied.

### Conclusion

IT IS HEREBY ORDERED that the (1) Motion for Certificate of Appealability (Doc. # 25) filed by San Diego Unified School District is **DENIED**, and (2) Motion to Dismiss and/or Strike Counterclaims and for Sanctions (Doc. # 36) filed by San Diego Unified School District is **GRANTED in part.** The Brenneises' first, second and third Counterclaims (08cv39, Doc. # 24) are **DISMISSED.** San Diego Unified' request for sanctions is **DENIED.**

DATED: November 7, 2008

*/s/ William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge