**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRENNEISE, et al,<br><br>                              Plaintiff,<br><br>vs.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>                              Defendant. | CASE NO. 08cv28-MMA(WMc)<br><br>[Consolidated Action]<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 55] |
| SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>                              Plaintiff,<br><br>vs.<br><br>BRENNEISE, et al,<br><br>                              Defendant. | |

The above-captioned action arises under the Individuals with Disabilities Education Act ("IDEA"), 84 Stat. 175, as amended, 20 U.S.C. §§ 1400, *et seq.* (2000 ed. and Supp. IV), which "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig v. Doe*, 484 U.S. 305, 310 (1988). Currently pending before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint [Doc. No. 55].

Plaintiffs seek to amend their complaint to include additional causes of action, brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans With Disabilities Act of 1990, 42 U.S.C. § 12131. Defendant San Diego Unified School District opposes the motion [Doc. No. 58], and Plaintiffs filed a reply [Doc. No. 59]. For the following reasons, the Court **GRANTS** Plaintiffs' motion.

## **PROCEDURAL BACKGROUND**[1]

On January 4, 2008, Plaintiffs ("the Brenneises" – mother, father, and minor child) filed this lawsuit against the San Diego Unified School District ("the School District"). The Brenneises invoked this Court's jurisdiction pursuant to the Individuals with Disabilities Education Act ("IDEA"), 84 Stat. 175, as amended, 20 U.S.C. §§ 1400, *et seq.* (2000 ed. and Supp. IV), in order to appeal the October 3, 2007 decision of the California Office of Administrative Hearings ("OAH") regarding T.B.'s access to a "free and appropriate public education" ("FAPE"). On March 12, 2008, the Brenneises filed a First Amended Complaint ("FAC"). The Brenneises alleged in claim one that the "OAH decision erred in holding in favor of San Diego Unified with respect to issues 1-5 (Issues Related to Assessments); issues 6-9 (Issues Related to the August 30, 2006 Proposed IEP); issues 11-13 (Issues Related to the December 4, 2006 Proposed IEP); and issues 16-18 (Issues Related to both IEPs)." The second claim for relief alleged that the Brenneises qualify as a prevailing party with respect to the due process proceedings before the OAH, and are therefore entitled to reimbursement of reasonable attorneys' fees incurred during the course of the due process proceedings. The third claim alleged that T.B. has been denied a FAPE in violation of the IDEA on grounds that the School District has "failed and refused to comply with the OAH Decision" with respect to the transition plan and with respect to T.B.'s G-Tube feedings. The fourth and final claim for relief in the FAC alleged that the Brenneises are entitled to reimbursement of reasonable attorneys' fees incurred in connection with their successful CDE Compliance Complaint.

On January 4, 2008, the School District filed a Complaint against the Brenneises, their attorney Steven Wyner, and the law firm of Wyner & Tiffany. The first cause of action in the

---

[1] The facts of this case have been recounted in detail in previous orders of the Court and shall not be repeated here. (*See June 24, 2008 and November 7, 2008 Orders*, Doc. Nos. 22 & 48.)

School District's complaint alleges that the OAH Decision "wrongfully ordered [The School District] to modify the IEP to require a school nurse to be present to personally assist [T.B.] with his g-tube feedings and wrongfully concluded that [T.B.] would not have been safe at school under the December 4, 2006 IEP." The first cause of action further alleges that the "OAH erroneously concluded that the [transition] plan denied [T.B.] a FAPE." The second cause of action requests attorneys' fees on grounds that the Brenneises, Steven Wyner and the law firm of Wyner & Tiffany acted in bad faith and for an improper purpose with respect to the due process proceedings and subsequent litigation. The third cause of action requests a declaration that the "IDEA's fees shifting provisions do not entitle a parent to reimbursement for fees and costs incurred in filing a compliance complaint" with the CDE, and that "the IDEA provides [The School District] with the discretion to substitute one qualified provider for another in compliance with [T.B.'s] IEP and that [The School District] cannot be compelled to contract with non-certified NPAs in violation of State law."

The parties filed a first round of motions to dismiss. On June 24, 2008, former presiding District Judge William Q. Hayes issued an order consolidating the Brenneises' action with the School District's action; denying the Brenneises' Motion to Dismiss the School District's second and third causes of action; granting the School District's Amended Motion to Dismiss the Brenneises' third claim for relief; and denying the School District's Amended Motion to Dismiss the Brenneises' fourth claim for relief. The Court denied the Brenneises' Motion to Dismiss the School District's second cause of action for attorneys' fees and denied the Brenneises' Motion to Dismiss the School District's third cause of action for attorneys' fees with respect to Steven Wyner and the law firm of Wyner & Tiffany incurred in filing the CDE Compliance Complaint. The Court granted the School District's Motion to Dismiss the Brenneises' third claim to enforce the implementation of the December 4 IEP as premature and denied the School District's Motion to Dismiss the Brenneises' fourth claim for reimbursement of attorneys' fees and costs incurred in pursuing the CDE Compliance Complaint.

On July 14, 2008, the Brenneises filed an Answer and Counterclaims to the School District's complaint, alleging three counterclaims against the School District. The first counterclaim alleged

that the School District "failed and refused to accommodate [T.B.'s] disability by providing for the G-Tube feedings in his IEPs for the 2006-2007 and 2007-2008 school years," which "resulted in his being excluded from school and being denied a FAPE solely on account of his disability." The second counterclaim alleged that the School District failed to comply with the OAH Decision by failing and refusing to provide T.B. with occupational therapy ("OT") services and to ensure the presence of a school nurse to assist T.B. with his G-Tube feedings. The second counterclaim further alleged that "[a]s a result of [The School District's] failure and refusal to comply with the OAH Decision, [T.B.] was denied the receipt of OT services and excluded from attending public school . . . solely on the basis of his disability." The third counterclaim alleged that T.B. "was required to remain at home because [The School District] failed and refused to accommodate his need for G-Tube feeding, during which time [The School District] failed and refused to provide [T.B.] with a qualified teacher to provide him with academic instruction at home." The third counterclaim further alleged that as a result of this conduct, the School District discriminated against T.B. solely on account of his disability. All three counterclaims alleged violations of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131. The Brenneises requested damages arising out of T.B.'s suffering, including educational injury, hedonic injury, and emotional distress, and T.B.'s parents suffering of financial and other damages including lost wages and emotional distress.

On August 4, 2008, the School District filed a Motion to Dismiss and/or Strike Counterclaims and for Sanctions. The School District argued that all three counterclaims were subject to dismissal for failure to state a claim under Section 504 or the ADA. In an order issued November 7, 2008, Judge Hayes found that the counterclaims did not allege intent to discriminate or deliberate indifference on the part of the School District, nor how T.B. was treated differently than general education students as a result of the School District's alleged failures, essential elements to the purported causes of action. As such, the Court concluded that the counterclaims failed to state a claim under Section 504 or the ADA because the counterclaims did not allege "something more" than a denial of FAPE under the IDEA. The Court granted the School District's motion and dismissed the Counterclaims without prejudice.

This lengthy procedural history culminates in the motion currently before the Court. By way of filing a second amended complaint ("SAC"), the Brenneises seek to re-allege their former counterclaims as additional causes of action in their complaint, as well as to add retaliation claims against the School District and its Director of Special Education, Marysue Glynn, during the period in question. Specifically, the Brenneises propose amending their FAC to include the following additional claims: (1) T.B. has been denied a FAPE under Section 504, as interpreted by 34 C.F.R. § 104.33(a) & (b); (2) T.B. was intentionally and wrongfully excluded from the benefits of a free appropriate public education solely on the basis of his disability in violation of Section 504, as interpreted by 34 C.F.R. § 104.4, § 104.33 and § 104.34; (3) T.B. was forced to remain at home due to the School District's failure to provide for his G-Tube feedings by qualified personnel, or to provide a qualified teacher to instruct him in violation of Section 504 and the ADA; (4) the School District retaliated against T.B. and his mother by failing and refusing to provide qualified personnel to provide T.B.'s G-Tube feedings, failing and refusing to implement the OAH Decision, and failing and refusing to provide T.B. with a qualified teacher for his home instruction, in violation of Section 504, 34 C.F.R. § 100.7, and the ADA; and (5) the Direct of Special Education, Marysue Glynn, retaliated against T.B. and his mother in violation of Section 504 and the ADA.

**DISCUSSION**

**1.    Legal Standard**

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007).

**2.    Arguments**

The Brenneises argue that their proposed SAC addresses the grounds on which the Court relied for dismissing the counterclaims in its November 7, 2008 order. The Brenneises state that the five proposed additional claims adequately allege facts to show that the School District, acting with deliberate indifference, failed to comply with the requirement that G-Tube feedings be included in

1  T.B.'s IEP, failed to enforce the OAH Decision, and failed to provide T.B. with a qualified teacher
2  to provide him with academic instruction.  The Brenneises also state that they have alleged
3  additional facts to show that T.B. was treated differently than general education students as a result
4  of the School District's failures, and he and his mother were retaliated against by the School District
5  and Marysue Glynn.
6        The School District argues that the Brenneises fail to establish that "justice so requires" leave
7  to amend their complaint.  The School District contends that the majority of the additional claims in
8  the proposed SAC have been dismissed twice by this Court, and not a single factual allegation is
9  new.  The School District argues undue delay, claiming the Brenneises had over fourteen months to
10 file appropriate pleadings, as well as ample opportunity to ask the Court for leave to amend in
11 response to the School District's earlier two motions to dismiss.  The School District asserts that
12 resolution of this case by settlement has been delayed because of the Brenneises' dilatory tactics,
13 and if the Court allows the proposed claims to proceed, the scope of the lawsuit will be greatly
14 expanded, causing prejudice to the School District and further delaying any sort of resolution or
15 disposition of the case on its merits.
16       The School District first argues undue delay, pointing out that this motion to amend came
17 fourteen months after the initiation of this litigation, nearly twelve months after the FAC was filed,
18 and three months after the Brenneises' counsel advised the School District that their motion for
19 leave to amend would be forthcoming (during a telephonic meet and confer in mid-December).  The
20 School District also argues prejudice, claiming that the School District will be forced to expend
21 time, energy, and costs to prepare a third motion to dismiss, further increasing costly litigation,
22 further delaying resolution of this matter, in order to dispose of claims which the Brenneises have
23 attempted unsuccessfully to plead based upon facts known to the Brenneises at the time of their
24 original Complaint.  As a further argument of prejudice, the School District asserts that if the
25 Brenneises are allowed to add their proposed claims, the litigation will not be limited to a review of
26 the administrative record, but will instead expand "drastically" to include discovery and the right to
27 a jury trial as to the new causes of action, whereas previously, the matter was limited to an
28 administrative appeal and subject to disposition by motion and/or hearing before the Court.

The School District further argues that amendment would be futile, asserting that the only additions contained in the SAC are conclusory allegations, with no factual support, that the acts constitute intentional discrimination on the part of the School District. The School District argues that the Brenneises still fail to plead "something more" than a disagreement over the content of T.B.'s IEPs and assessments, and instead offer a proposed SAC that pleads only "a garden variety" IDEA denial of a FAPE claim. Finally, the School District contends that because Ms. Glynn, the Director of Special Education for the School District during the period of time relevant to this case, is neither a recipient of Federal financial assistance, nor a public entity, the Brenneises have not and cannot allege a retaliation claim against her in her individual capacity under either Section 504 or the ADA.

**3.    Discussion**

*i)    Undue Delay*

While delay alone is insufficient to deny amendment, *undue* delay is a factor to be considered. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming district court's denial of motion for leave to amend to add new claims made two years into litigation). Pertinent to consideration of this factor is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading. *See Jackson*, 902 F.2d at 1388 (citing *E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1222 (9th Cir.)).

The School District's undue delay argument falls short. This case has been active for a little over a year, and has not managed to move past the parties' attacks on the pleadings. The motions to dismiss have been litigated diligently and have played the primary role in "delaying" this litigation, together with the transfer of this case to the undersigned. Even if the Court found delay on the Brenneises' part, this would not be a sufficient basis for denying their motion, as all parties and the Court share the responsibility for the current procedural posture of the case. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend.")  As such, the School District must demonstrate adequately prejudice or futility of the

proposed amendments.[2]

### ii) Prejudice

Prejudice to the opposing party is the most important factor to consider when a party seeks leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam); *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330-31 (1971)). The Brenneises seek to transform this litigation in a significant way by alleging jurisdiction pursuant to two additional federal statutes, adding five causes of action, adding a second, individual defendant, and demanding a jury trial for the majority of their claims. If the FAC is amended, the School District consequently will incur the costs of defending against a more complicated suit, including the cost of discovery, additional dispositive motions, and potential preparation for a jury trial.

Defending a lawsuit, however, necessarily involves significant costs. These costs are not themselves prejudicial. Instead, cases finding that an amendment would prejudice a party have held that allowing the proposed amendments would impose "additional litigation costs that could have easily been avoided" had the proposed amendments been included in the original pleading. *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 953 (9th Cir. 2006). In this case, the proposed amendments, if granted, will expand the scope of litigation. This expansion will increase the costs ultimately borne by the School District. The School District has not argued, however, that adding these allegations at this point will result in *greater* costs than the School District would have suffered had these allegations appeared in the Brenneises' original complaint. This case is not yet past the pleading stage. The parties have not made any appearances or engaged in any settlement negotiations. There is no scheduling order in this case at this time. Raising these claims at this point does not otherwise impede the School District's ability to defend against them. *Morongo Band of Mission Indians,* 893 F.2d at 1079; *Ferguson*, 11 F.3d at 707. Accordingly, granting leave to file the proposed amendments would not significantly prejudice the School District.

---

[2] The Court presumes bad faith is not at issue here as the School District does not argue its application to this matter in the opposition to the Brenneises' motion.

### *iii)* *Futility*

As noted above, amendment may also be denied when it is futile. The test for futility "is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Baker v. Pacific Far East Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978)).

The School District argues that the Brenneises' proposed amendments are futile because the causes of action are based on the same facts underlying their IDEA claims and are insufficient to state cognizable claims under Section 504 or the ADA. However, the School District finds support for this supposition in cases outside this circuit, none of the cited cases are directly on point, and the accompanying analysis in the School District's memorandum gives the issue short shrift. As such, the Court itself shall undertake the task of analyzing whether the Brenneises' proposed amendments are futile.

A brief review of the two statutory provisions at issue with respect to the Brenneises' proposed additional claims is instructive, as Congress enacted both statutes with the intent to provide broad protection for the rights of disabled individuals. Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." In Title II, "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids or services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). To prove a discrimination claim under § 12132, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Title II of the ADA expressly provides that the remedies, procedures, and rights set

forth in 29 U.S.C. § 794(a) shall be the remedies, procedures, and rights Title II provides to any person alleging discrimination on the basis of disability in violation of 42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act provides in part: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States postal service. 29 U.S.C. § 794(a). For purposes of this section, the term "program or activity" means all the operations of a local educational agency." 29 U.S.C. § 794(b)(2)(B).

United States Department of Education regulations interpreting Section 504 require recipients of federal funds to "provide a free appropriate public education to each qualified handicapped person" and define "provision of an appropriate education" as: "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(a), (b)(1).  A recipient of federal funds must "place a handicapped person in the regular educational environment [] unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily." 34 C.F.R. § 104.34(a).  Further, a recipient must ensure that handicapped persons participate with non-handicapped persons in non-academic and extracurricular services and activities, including meals, recess periods, physical recreational athletics, and others, "to the maximum extent appropriate to the needs of the handicapped person in question." 34 C.F.R. § 104.34(b).

To prove a discrimination claim under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an "individual with a disability;" (2) he is "otherwise qualified" to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Weinreich*, 114 F.3d at 978 (footnote omitted).

There is no significant difference in the analysis of rights and obligations created by the ADA and Section 504 of the Rehabilitation Act. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002); *accord McGary v. City of Portland*, 386 F.3d 1259, 1269 n.7 (9th Cir. 2004). However, the IDEA and Section 504 create distinct cause of actions, and the availability of relief under the former does not limit the availability of a damages remedy under the latter. *See Mark H. v. Lemahieu*, 513 F.3d 922, 928–35 (9th Cir. 2008). The School District argues that the Brenneises have levied only one allegation with a basis in fact – the denial of a FAPE "consistent with current requirements of IDEA." The Court disagrees. The Brenneises proposed additional causes of action against the School District adequately allege the elements required for such claims under Section 504 and the ADA, including the *mens rea* element, laying out a factual basis for the allegations that the School District was deliberately indifferent to T.B.'s needs.

For example, the proposed Fourth Claim for Relief adequately alleges a violation of the ADA, claiming that (1) T.B. is a qualified individual with a disability; (2) excluded from participation in public schooling based on the School District's failure to provide a qualified person to administer T.B.'s gastrointestinal feedings; (3) because he is disabled, resulting in T.B. not having access to the same educational opportunities as non-handicapped students. The Fourth Claim for Relief also states a valid claim pursuant to Section 504, alleging that: (1) T.B. is an individual with a disability; (2) qualified to receive a FAPE; (3) denied the benefit of a FAPE based solely on his disability; (4) by the San Diego Unified School District which receives federal financial assistance. With respect to intent, the Fourth Claim for Relief alleges the School District acted with deliberate indifference to T.B.'s needs by failing to comply with the requirements of California state law, of which the School District was aware, that school districts must provide specialized health care to students in need, including G-tube feedings. The Brenneises' allegations, viewed in the light most favorable to the Brenneises, support the claim that the School District "failed to educate [T.B.] with non-disabled students to the maximum extent appropriate" and "failed to educate [T.B.] in the regular educational environment." 34 C.F.R. §104.34; *see Proposed SAC*, ¶¶ 34-42.

The Court notes that the federal rules require only notice pleading, that is, a defendant needs

1  to be able to identify the claims against him and the bases thereof.  *See* Fed. R. Civ. P. 8; *Conley v.*
2  *Gibson*, 355 U.S. 41, 47 (1957); *Sagana v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004); *Fontana v.*
3  *Haskin*, 262 F.3d 871, 877 (9th Cir. 2001).  The Court finds that the Brenneises have met this
4  standard and alleged cognizable claims for relief under Section 504 and the ADA in proposed causes
5  of action 4, 5, 6, and 7.  As such, allowing the Brenneises to file their SAC with respect to these
6  claims is not an exercise in futility.

7  However, the Court finds that there is no individual liability for damages under Title II of the
8  ADA or Section 504 of the Rehabilitation Act.  *See, e.g., Parenteau v. Prescott Unified Sch. Dist.*,
9  2009 U.S. Dist. LEXIS 19605 (D. Ariz. Mar. 3, 2009).  The School District contends that
10 individuals are not proper defendants for retaliation claims brought under the ADA or Section 504.
11 The Brenneises contend that liability extends to any "person."  While the Ninth Circuit has not
12 addressed this issue, other circuit courts as well as several district courts within the Ninth Circuit
13 have dealt with analogous cases.  *See e.g., Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999); *Hiler v.*
14 *Brown*, 177 F.3d 542 (6th Cir. 1999); *Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642 (N.D.
15 Cal. 2000); *Stern v. Cal. State Archives*, 982 F. Supp. 690 (E.D. Cal. 1997); *Ostrach v. Regents of*
16 *the Univ. of Cal.*, 957 F. Supp. 196 (E.D. Cal. 1997).  Almost all of these courts have found that
17 individuals are not liable under the retaliation provisions of the ADA or Section 504.  *See Baird*, 192
18 F.3d 462; *Hiler* 177 F.3d 542; *Van Hulle*, 124 F. Supp. 2d 642; *Stern*, 982 F. Supp. 690.  This Court
19 agrees.   For this reason, the Brenneises shall not be allowed to file a second amended complaint
20 containing the proposed Eighth Claim for Relief against the Director of Special Education in her
21 individual capacity.
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28

## CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the Brenneises' motion for leave to file a second amended complaint including proposed additional claims 4, 5, 6, and 7 against the School District. However, any amendment adding claim 8 against the Director in her individual capacity under Title II of the ADA or Section 504 of the Rehabilitation Act would be futile, as there is no individual liability for damages under these two statutes. The Brenneises may file a second amended complaint in compliance with this ruling on or before *May 15, 2009*.

**IT IS SO ORDERED**.

DATED: May 8, 2009

Hon. Michael M. Anello
United States District Judge