*Wyner & Tiffany*
Attorneys at Law
Steven Wyner (SBN 77295)
swyner@specialedlaw.org
Marcy J.K. Tiffany (SBN 78421)
mtiffany@specialedlaw.org
Dana H. Wilkins (SBN 245596)
dwilkins@specialedlaw.org
970 W. 190th Street, Suite 302
Torrance, California 90502
Phone: (310) 225-2880
Fax: (310) 225-2881
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER BRENNEISE, *et al.*,<br><br>               Plaintiffs,<br>vs.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>               Defendant.<br>_____<br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>               Plaintiff,<br>vs.<br><br>TYLER BRENNEISE, *et al.*,<br><br>               Defendants. | Case No.: 08cv28 MMA (WMc), (consolidated)<br><br>SECOND AMENDED COMPLAINT<br>  (1) Appealing Portions of a Decision of California Office of Administrative Hearings;<br>  (2) For Attorneys Fees as Prevailing Party Under 20 U.S.C. § 1415(i)(3);<br>  (3) For Violation of the IDEA;<br>  (4) For Attorneys' Fees as Prevailing Party in Compliance Complaint; and<br>  (5) For Violations of Section 504 and the Americans with Disabilities Act of 1990; and, Request for Jury Trial<br><br>HON. MICHAEL M. ANELLO |

## PRELIMINARY STATEMENT

1. This action is brought pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §1400 *et seq.*; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 ("ADA"); and the Unruh Civil Rights Act, California Civil Code § 51 through 51.5.

## JURISDICTION, VENUE AND EXHAUSTION

2. This is a civil action over which this court has original jurisdiction under 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331, 1343(a)(3) and 1343(a)(4). This court has jurisdiction to hear pendent state claims under the doctrine of supplemental jurisdiction set forth at 28 U.S.C. § 1367.

3. Venue in this court is proper under 20 U.S.C. § 1391(b) because the defendant are located within San Diego County, which is within the jurisdiction of this district and all of the events that are the subject of this complaint took place within the jurisdiction of the district.

4. The original complaint was timely under Cal. Educ. Code § 56505(k).

5. Plaintiffs have exhausted all remedies available to them under the IDEA as required by 20 U.S.C. § 1415(i)(2) and, in any case, should be excused from further exhaustion on the grounds that further exhaustion would be futile.

## PARTIES

6. TYLER BRENNEISE ("Student") is a citizen of the United States, who at the time of the violations alleged herein, resided with his parents in San Diego, California, which is located within San Diego County and the boundaries of the San Diego Unified School District. At all times relevant herein, Student was, and continues to be, a minor, having been born on January 25, 1994. Student is a qualified handicapped person under section 504 and Title II of the ADA. Student has a "medical condition" and a "disability," as those terms are defined in the Unruh Act.

7. ALLISON BRENNEISE and ROBERT BRENNEISE are Student's mother and father, (collectively, "Parents") and are citizens of the United States, who, at the time of the violations alleged herein, resided within San Diego, California, which is within San Diego County and the boundaries of the District.

8. SAN DIEGO UNIFIED SCHOOL DISTRICT ("SDUSD" or "District") is a public school district organized and existing under the laws of the State of California and is located within San Diego County. At all times relevant herein, SDUSD was the local education agency responsible for providing Student with full and equal access to the public education programs and activities it offers in compliance with the requirements of state and federal law, and for providing Student, who is eligible for special education, with a "free appropriate public education" ("FAPE") under the IDEA, the California Education Code, and Section 504, for which SDUSD receives federal financial assistance. SDUSD is a "business establishment" with the meaning of the Unruh Act.

## PROCEDURAL HISTORY

9. On or about November 29, 2006, on behalf of SDUSD, Elizabeth Estes, Esq. and Sarah Sutherland, Esq. of Miller Brown & Dannis, filed a request for due process hearing ("Due Process Hearing") with the California Office of Administrative Hearings ("Hearing Office").

10. On or about December 6, 2006, the Hearing Office issued a Notice of Due Process Hearing and Mediation in the matter of *San Diego Unified School District v. Tyler Brenneise*, OAH Case No. N2006120002, setting the hearing for December 29, 2006.

11. On or about December 15, 2006, SDUSD filed a Motion to Amend and Amended Due Process Request. The Hearing Office granted the motion on or about January 9, 2007.

12. On or about January 29, 2007, Student and Parents cross-filed a request for due process hearing with the Hearing Office. On that day, Student and Parents filed a motion to consolidate the newly-filed request for due process with the pending due

process case and a motion to vacate the due process hearing date and request a trial setting conference.

13. On or about January 30, 2007, the Hearing Office issued a Notice of Due Process Hearing and Mediation in the matter of *Tyler Brenneise v. San Diego Unified School District*, OAH Case No. N2007010848.

14. On or about February 2, 2007, the Hearing Office issued an Order granting Student and Parents' Motion for Consolidation.

15. On or about February 16, 2007, the Hearing Office issued an Order setting the Due Process Hearing in the consolidated cases for May 14-18, May 21-25 and May 29-June 1, 2007, and the telephonic Prehearing Conference for April 26, 2007

16. The Due Process Hearing in the consolidated cases (OAH Case Nos. N2006120002/N2007010848) was held in San Diego, California before Administrative Law Judge ("ALJ") Susan Ruff on May 14-June 1, June 11-13, June 19-20, and July 11-20, 2007.

17. On or about October 3, 2007, the Hearing Office issued its Decision ("OAH Decision"), which was served via US Mail on October 5, 2007, and received by the Parties on October 8, 2007.

18. The OAH Decision identifies a total of 18 separate issues falling into four broad categories: Issues Related to Assessments; Issues Related to the August 30, 2006 Proposed IEP; Issues Related to the December 4, 2006 Proposed IEP; and Issues Related to Both IEPs.

19. The OAH Decision held that the Student prevailed with respect to issue 10 (Related to the December 4, 2006 Proposed IEP) and issues 14 and 15 (Related to Both IEPs). Specifically, the OAH Decision held that neither the August 30, 2006 Proposed IEP nor the December 4, 2006 Proposed IEP offered Student a FAPE designed to meet his unique needs because: (a) the District failed to offer to provide: (i) daily gastrostomy tube ("G-Tube") feedings, which are specialized physical health care services prescribed by a physician and required to be included in Student's IEP; and, (ii) staff qualified to

administer Student's G-Tube feedings, which are necessary for Student to safely attend school and access his education; and, (b) the District failed to develop and implement an appropriate transition plan to transition Student from a home school program to a school based program, and thereby denied Parents the right to participate meaningfully in the IEP process.  The District prevailed as to the remaining issues.

## FACTUAL BACKGROUND

20.  Student suffers from late diagnosed Phenylketonuria ("PKU"), a genetic disorder.  As a result of his PKU, Student requires strict monitoring of his intake of phenylalanine ("PHE"), and daily G-Tube feedings, without which he is at risk of suffering severe bodily and neurological insults.

21.  On or about March 28, 2008, Student and his mother, along with his older brother, relocated to Minnetonka, Minnesota, where Student was enrolled in public school.  Subsequently, in early Fall 2008, Student's father joined the family in Minnetonka.

22.  On or about April 10, 2008, Student began attending Minnetonka Middle School West, a public school located in Minnetonka, Minnesota.  As a result of the implementation of a Health Care Plan developed by that public school, which provides for the administration of two G-Tube feedings per day administered to Student by a school nurse, Student has been able to attend public school safely in a general education classroom.

## FIRST CLAIM FOR RELIEF
## (APPEAL OF CERTAIN FINDINGS OF FACT
## AND CONCLUSIONS OF LAW SET FORTH IN THE DECISION)

23.  Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1-23, inclusive, of this complaint.

24.  Plaintiffs are a "party aggrieved" by the OAH Decision, as that term is used in 20 U.S.C. § 1415(i)(2)(A) and Cal. Educ. Code § 56505(k) in that the OAH Decision erred in holding in favor of the District with respect to issues 1-5 (Issues Related to

Assessments); issues 6-9 (Issues Related to the August 30, 2006 Proposed IEP); issues 11-13 (Issues Related to the December 4, 2006 Proposed IEP) ; and issues 16-18 (Issues Related to Both IEPs).

## SECOND CLAIM FOR RELIEF
## (AGAINST SDUSD FOR RECOVERY OF REASONABLE ATTORNEYS' FEES UNDER 20 U.S.C. § 1415(i)(3)(B))

25.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1 - 25, inclusive of this complaint.

26.     As prevailing party in the proceeding before the Hearing Office, Plaintiffs are entitled to reimbursement of the reasonable attorneys' fees incurred during the course of those proceedings under 20 U.S.C. § 1415(i)(3)(B), as well as reasonable attorneys' fees incurred in seeking those fees as part of this complaint.

## THIRD CLAIM FOR RELIEF
## (AGAINST SDUSD FOR RECOVERY OF REASONABLE ATTORNEYS' FEES IN CONNECTION WITH A CDE COMPLIANCE COMPLAINT)

27.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-27, inclusive of this complaint.

28.     Student and Parents filed a request for a Compliance Complaint Investigation with the California Department of Education ("CDE") on or about July 31, 2006, alleging that Defendant had failed to implement Student's July 17, 2006 IEP related to the 2006 extended school year ("ESY IEP").

29.     Following a statutorily mandated investigation, the CDE issued a Compliance Report in case No. S-0082-06/07, on November 1, 2006, detailing the results of its investigation.  Subsequently, the CDE later issued two additional amended reports on November 3 and November 7, 2006.

30.     The CDE's November 7, 2006 Second Amended Compliance Complaint Report found the District out of compliance with federal and state special education laws because the District had failed to implement Student's ESY IEP, and ordered the District to provide Student with compensatory education in the form of 24 hours of English Language Arts instruction and 80 minutes of Adapted Physical Education instruction.

31.     On October 26, 2007, Plaintiffs' counsel sent a formal request to the District's counsel seeking payment of the attorney's fees associated with Plaintiffs' successful Compliance Complaint, pursuant to the Ninth Circuit's holding in *Lucht v. Molalla River Sch. Dist.,* 225 F. 3d 1023 (9th Cir. 2000), *aff'd P.N. v. Seattle Sch. Dist.,* 474 F. 3d 1165, 1169 (9th Cir. 2006).  Defendants have refused to pay such fees.

32.     Because Student was the prevailing party with respect to the Compliance Complaint, his Parents are entitled to be reimbursed for reasonable attorneys' fees incurred in connection with their Compliance Complaint.

## FOURTH CLAIM FOR RELIEF
## (AGAINST SDUSD FOR VIOLATION OF SECTION 504 AND THE ADA)

33.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-33, inclusive of this complaint.

34.     Student is entitled to receive the benefit of a free appropriate public education under Section 504 and 34 C.F.R. § 104.4 and § 104.33(a)(b) in the least restrictive environment.

35.     The District was aware that because of his disability, Student required G-Tube feedings in order to be properly nourished while attending school and without such feedings he could not attend school without putting his health at serious risk.  California law and regulations are clear and unequivocal in requiring that school districts must provide "specialized physical health care services," which include G-Tube feedings, to students who require such services.

36. California law and regulations are also clear and unequivocal in requiring that if a student requires specialized physical health care services during the regular school day, such services must be provided by: either (1) qualified persons who possess an appropriate credential, or (2) qualified designated school personnel trained in the administration of specialized physical health care if they perform those services under the supervision of a credentialed school nurse, public health nurse, or licensed physician and surgeon.

37. The District failed and refused to offer to provide either a qualified person or qualified designated trained school personnel to provide Student's G-Tube feedings. As a result of this failure and refusal, Student was not able to attend public school, in the same manner as students who are not handicapped, without putting his health and safety at risk, and Student was also not able to be educated with persons who are not handicapped to the maximum extent appropriate to meet his needs. The District thus failed to provide Student with an appropriate education that was designed to meet his individual needs as adequately as the needs of nonhandicapped persons are met, in violation of Section 504; 34 C.F.R. §104.4, § 104.33(b)(1), and § 104.34(a); and the ADA.

38. By failing to comply with the clear and unequivocal requirements of state law governing the provision of G-Tube feedings to handicapped students, the District knew that it was substantially likely that Student would be harmed with respect to his federally protected right to a free appropriate public education, including the right to be educated to the maximum extent possible with persons who are not handicapped, but failed to act on that likelihood, and thus the District acted with deliberate indifference, thereby intentionally discriminating against Student in violation of Section 504.

39. As a result of the District's deliberate indifference and intentional discrimination, Student and his mother were forced to relocate to Minnetonka, Minnesota, to allow Student to obtain an appropriate educational program that includes the necessary G-Tube feedings administered by qualified personnel so that he could be

1  educated safely in the least restrictive environment (i.e., a general education classroom in
2  a public school) in the same manner as nonhandicapped children.
3      40.    As a result of the District's violation of Student's rights under Section 504
4  and the ADA, Student suffered injury including, but not limited to, educational injury,
5  hedonic injury in that Student was deprived of the opportunity to engage in school
6  activities and the opportunity to enjoy the society of other children of his age, and
7  emotional distress.
8      41.    As a result of the District's violation of Student's rights under Section 504
9  and the ADA, Parents suffered financial and other damages, including, but not limited to,
10 costs that Parents were forced to incur to educate Student in his home, lost wages for the
11 time spent educating Student in his home rather than pursuing gainful employment, lost
12 educational opportunities for Student's mother and consequent diminution in her earning
13 capacity, lost wages and costs incurred in connection with relocating Student and his
14 family to Minnetonka, Minnesota, and emotional distress.
15
16                                  **FIFTH CLAIM FOR RELIEF**
17       **(AGAINST SDUSD FOR VIOLATION OF SECTION 504 AND THE ADA)**
18     42.    Plaintiff realleges and incorporates by reference as though fully set forth
19 herein, paragraphs 1-42, inclusive of this complaint.
20     43.    The OAH Decision determined that Student's December 4, 2006 IEP, as
21 modified by the Orders set forth in the OAH Decision, should be implemented.
22     44.    The OAH Decision modified Student's December 4, 2006 IEP to include
23 the specialized physical healthcare services Student requires for his G-Tube feedings.  In
24 pertinent part, the OAH Decision required that Student's IEP include the following
25 language under the heading of health nursing services at page 2 of that IEP:  "G-Tube
26 feeding will be scheduled to occur daily in the nurse's office.  A school nurse will be
27 present and will personally assist the student with the student's G-Tube feeding.  The G-
28

1  Tube feeding will occur at the time(s) and in the manner designated in a doctor's order
2  form from Student's current physician."
3      45.    The OAH Decision further modified Student's IEP transition plan in the
4  December 4, 2006 IEP to provide that: (1) "Student's mother [be included] as a
5  participant in each of the collaboration meetings described in the transition plan . . .;" and
6  (2) "until Student reaches phase four of the transition plan, Student's District-funded DIS
7  services will continue with his current NPA providers and at his current levels of service,
8  except for the services of ACES."
9      46.    On November 7, 2007, over a month after the OAH Decision was issued on
10 October 3, 2007, the District filed a Motion for Clarification of the OAH Decision with
11 OAH asserting that the OAH Decision was unclear with respect to the District's
12 obligation to provide Student with Occupational Therapy ("OT") services from his then
13 current OT provider.
14     47.    On November 21, 2007, OAH denied the District's Motion for
15 Clarification, asserting that the District's contention that the OAH Decision was unclear
16 was not well taken and reiterating the Order that the District provide Student with OT
17 services from his then current OT provider.
18     48.    Even after OAH's Order Denying Motion for Clarification, the District
19 failed and refused to comply with the OAH Decision, by, *inter alia*,: (1) with respect to
20 the transition plan: (a) failing and refusing to continue to provide Student with OT
21 services from his then current OT provider; and, (b) failing and refusing to provide
22 Student with his then-current DIS services at his then-current levels of service; and, (2)
23 with respect to Student's G-Tube feedings, failing and refusing to ensure the presence of
24 a school nurse to personally assist with Student's G-Tube feedings.  As a result, Student
25 was unable to obtain the same educational benefit as nonhandicapped students, was
26 unable to attend public school without placing his health and safety as serious risk, unlike
27 nonhandicapped persons who are able to attend public school without putting their health
28 and safety at similar risk, and was unable to attend public school safely and be educated

in the least restrictive environment (i.e. a general education classroom in a public school) in the same manner as nonhandicapped children.  The District thus failed to provide Student with a free appropriate public education that was designed to meet his individual needs as adequately as the needs of nonhandicapped persons are met, in violation of Section 504, 34 C.F.R. § 104.4, § 104.33(b)(1), and § 104.34(a); and, the ADA.

49. The District's obligation to comply with a Hearing Office Decision is clear and unequivocal, and by failing to do so, the District knew that it was substantially likely that Student would not able to safely attend public school or be able to obtain educational benefit from his educational program.  Nonetheless, the District failed to act on that likelihood.  Thus, the District acted with deliberate indifference, thereby intentionally discriminating against Student.

50. As a result of the District's failure and refusal to comply with the OAH Decision, Student was denied the receipt of OT services and excluded from attending public school due to the District's failure to ensure that Student's physical healthcare needs were met, causing Student to suffer injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age, and emotional distress.

51. As a result of the District's violation of Student's rights under Section 504 and the ADA, Parents suffered financial and other damages, including, but not limited to, costs that Parents were forced to incur to educate Student in his home, lost wages for the time spent educating Student in his home rather than pursuing gainful employment, lost educational opportunities for Student's mother and consequent diminution in her earning capacity, lost wages and costs incurred in connection with relocating Student and his family to Minnetonka, Minnesota, and emotional distress.

**SIXTH CLAIM FOR RELIEF**

**(AGAINST SDUSD FOR VIOLATION OF SECTION 504 AND THE ADA)**

52. Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-52 inclusive of this complaint.

53. California law provides that all special education students are entitled to be instructed by qualified teachers, even if they are required to stay at home for reasons of health.

54. Student was required to remain at home because the District failed and refused to accommodate his need to have qualified personnel administer his G-Tube feedings at school. During the period of time that Student was forced to remain at home, the District failed and refused to provide Student with a qualified teacher to provide him with academic instruction at home. As a result, Student's mother was forced to provide Student with academic instruction and Student did not receive instruction by a qualified teacher, unlike nonhandicapped persons who are able to attend public school and receive instruction by qualified teachers. The District thus failed to provide Student with an appropriate education that was designed to meet his individual needs as adequately as the needs of nonhandicapped persons are met, in violation of Section 504; 34 C.F.R. § 104.4 and § 104.33(b)(1); and the ADA.

55. The District's obligation to provide home instruction by a qualified teacher is clear and unequivocal, and thus the failure to do so is knowing and intentional, and the District knew that it was substantially likely that Student would be harmed with respect to his federally protected right to an appropriate education as a result of the District's failure to provide home instruction by a qualified teacher. Nonetheless, the District failed to act on that likelihood, and thus the District acted with deliberate indifference, thereby intentionally discriminating against Student in violation of Section 504 and the ADA.

56. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school

activities and the opportunity to enjoy the society of other children of his age, and emotional distress.

57. As a result of the District's violation of Student's rights under Section 504 and the ADA, Parents suffered financial and other damages, including, but not limited to, costs that Parents were forced to incur to educate Student in his home, lost wages for the time spent educating Student in his home rather than pursuing gainful employment, lost educational opportunities for Student's mother and consequent diminution in her earning capacity, lost wages and costs incurred in connection with relocating Student and his family to Minnetonka, Minnesota, and emotional distress.

**SEVENTH CLAIM FOR RELIEF**
**(AGAINST SDUSD FOR VIOLATION OF SECTION 504 and ADA)**

58. Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-58 inclusive of this complaint.

59. Student and Student's mother aggressively advocated on behalf of Student's rights at IEP meetings and in the administrative hearing in this matter.

60. The District retaliated against this advocacy on the part of Student and his mother by failing and refusing to provide qualified personnel to provide Student's G-Tube feedings, failing and refusing to implement the OAH Decision, and failing and refusing to provide Student with a qualified teacher for his home instruction, in violation of Section 504, 34 C.F.R. § 100.7, and the ADA.

61. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age, and emotional distress.

62. As a result of the District's violation of Student's rights under Section 504 and the ADA, Parents suffered financial and other damages, including, but not limited to,

costs that Parents were forced to incur to educate Student in his home, lost wages for the time spent educating Student in his home rather than pursuing gainful employment, lost educational opportunities for Student's mother and consequent diminution in her earning capacity, lost wages and costs incurred in connection with relocating Student and his family to Minnetonka, Minnesota, and emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff requests judgment as follows:**

    **On Plaintiffs' First Claim for Relief:**

1. Declare that in addition to being named the "prevailing party" as to issues 10, 14 and 15, Student and Parents are the "prevailing party" with respect to the issues 1-9, 11-13, and 16-18.
2. Award compensatory education to Student.
3. Order the District to reimburse Parents in the amount of Ten Thousand Three Hundred dollars ($10,300) for costs incurred in connection with various Independent Educational Evaluations obtained by Parents.

    **On Plaintiffs' Second Claim for Relief:**

4. Award reimbursement for reasonable attorneys' fees and costs incurred by Parents in connection with the proceedings before the Hearing Office in an amount as determined in the discretion of this court as authorized by 20 U.S.C. § 1415(i)(3)(B).

    **On Plaintiffs' Third Claim for Relief:**

5. Award reimbursement for reasonable attorneys' fees and costs incurred by Parents in connection with the CDE Compliance Complaint.

    **On Plaintiff's Fourth, Fifth and Sixth Claims for Relief:**

6. Award compensatory education to Student and money damages to Student and Parents.

    **On Plaintiff's Seventh Claims for Relief:**

7. Award money damages to Student and Parents.

**On All Claims for Relief:**

8. Award reasonable attorneys' fees and costs incurred by Parents in connection with the current proceeding.

9. For such additional relief as the court determines is appropriate.

### REQUEST FOR JURY TRIAL

10. Plaintiffs' request a jury trial with respect to their Fourth, Fifth, Sixth, and Seventh Claims for Relief.

Dated: May 8, 2009                                   Respectfully submitted,

*Wyner & Tiffany*
ATTORNEYS AT LAW


/S/ Marcy J. K. Tiffany
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of 18. On May 8, 2009, I served this SECOND AMENDED COMPLAINT on the San Diego Unified School District by serving their counsel of record electronically, having verified on the court's CM/ECF website that such counsel is currently on the list to receive emails for this case, and that there are no attorneys on the manual notice list.

Dated: May 8, 2009                                              /S/ Marcy J.K. Tiffany