*Wyner & Tiffany*
Attorneys at Law
Steven Wyner (SBN 77295)
swyner@specialedlaw.org
Marcy J.K. Tiffany (SBN 78421)
mtiffany@specialedlaw.org
970 W. 190th Street, Suite 302
Torrance, California  90502
Phone: (310) 225-2880
Fax: (310) 225-2881
Attorneys for Counterdefendants
T.B., a minor, Allison Brenneise & Robert Brenneise

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.B., by and through his Guardian ad Litem, Allison Brenneise, and Robert Brenneise <br><br> Plaintiffs, <br><br> vs. <br><br> SAN DIEGO UNIFIED SCHOOL DISTRICT <br> Defendant. <br> ——————————————— <br> SAN DIEGO UNIFIED SCHOOL DISTRICT <br> Plaintiff, <br><br><br> vs. <br><br> T.B., a minor, Allison Brenneise & Robert Brenneise, *et al.*, <br> Defendants. | Case No.:  08cv28 MMA (WMc), <br> (consolidated) <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BRENNEISES' MOTION FOR AN AWARD OF COMPENSATORY EDUCATION, AND ENTRY OF PARTIAL FINAL JUDGMENT <br><br> Date:   December 6, 2010 <br> Time:   2:30 p.m. <br> Dept.:   Courtroom 5 <br><br> HON. MICHAEL M. ANELLO |

TABLE OF CONTENTS

**I.** PRELIMINARY STATEMENT ................................................................. 1

**II.** BRIEF STATEMENT OF RELEVANT FACTS ................................. 2

**III.** LEGAL STANDARD ........................................................................ 4

**IV.** THE HEARING OFFICER SHOULD HAVE AWARDED COMPENSATORY EDUCATION BECAUSE T.B. DID NOT RECEIVE ANY ACADEMIC INSTRUCTION FROM AN APPROPRIATELY CREDENTIALED TEACHER DURING THE 2006-2007 SCHOOL YEAR ................................................................................................. 5

    **A.** Under State and Federal Law T.B. Was Legally Entitled to Receive Academic Instruction from an Appropriately Credentialed Teacher While He Was in His In-Home Stay Put Placement ......................................................................................... 5

    **B.** Compensatory Education Was Necessary to Put Student in the Same Position He Would Have Been Had He Been Offered a FAPE ........................................ 7

    **C.** Just Because T.B. Was in A Stay Put Placement Does Not Mean He Received A FAPE And/Or Is Not Entitled to Compensatory Education ........................... 11

    **D.** The ALJ Erred in Equating T.B.'s Inability to Attend School Due to Health & Safety Concerns With a Decision by T.B.'s Parents to "Home School" Him ............................... 14

    **E.** This Court Should Award Compensatory Education ........................... 14

**V.** THERE IS NO JUST REASON TO DELAY ENTRY OF FINAL JUDGMENT ............................. 15

**VI.** CONCLUSION ................................................................................. 16

TABLE OF AUTHORITIES

Cases

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006) ............ 15

*Ashland School Dist. v. Parents of Student E.H.* 587 F.3d 1175 (9th Cir. 2009) ........... 5, 6

*Burr v. Ambach*, 863 F.2d 1071 (2d Cir.1988): ....................................................... 7

*Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307(9th Cir.), *aff'd sub. nom. Sch. Comm. v. Dept. of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). ..................... 5

*Jonathan L. v. Superior Court*, 165 Cal. App. 4th 1074 (2008). .............................. 14

i

*Maine School Administrative Dist. No. 35 v. Mr. R.,* 321 F.3d 9 (1st Cir. 2003) ............12

*Miener v. Missouri*, 800 F.2d 749 (8th Cir.1986).........................................................7, 10

*Parents of Student W. v. Puyallup School Dist., No. 3,* 31 F.3d 1489 (9th Cir. 1994)........7

*Payne v. Peninsula School Dist.* 598 F.3d 1123 (9th Cir. 2010)....................................14

*R.B. v. Napa Valley Unified Sch. Dist.,* 496 F.3d 932 (9th Cir. 2007). ............................5

*S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072 (9th Cir. 2010)....................15

*Weissburg v. Lancaster School Dist.,* 591 F.3d 1255 (9th Cir. 2010)......................5, 6, 10

Statutes

20 U.S.C. § 1401(10)(B) ...............................................................................................5

20 U.S.C. § 1401(26)(A) .............................................................................................13

20 U.S.C. § 1401(29) ...................................................................................................13

20 U.S.C. § 1415(i)(2)(B) ..............................................................................................5

Calif. Educ. Code § 48206.3(c) .....................................................................................7

Calif. Educ. Code § 56031(a) ......................................................................................11

Calif. Educ. Code § 56031(a); .....................................................................................13

Calif. Educ. Code § 56174.5 ........................................................................................14

Rules

Fed. R. Civ. P. 54(b) ...................................................................................................15

Regulations

5 C.C.R. § 3051.4(e) ......................................................................................................8

5 C.C.R. § 3053(c) .........................................................................................................5

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

On January 4, 2008, San Diego Unified School District ("School District") filed a Complaint for Relief and Attorneys' Fees under the Individuals with Disabilities Education Act and for Declaratory Relief.  In its First Claim for Relief, the School District appealed a decision of the Office of Administrative Hearings, issued on October 3, 2007 ("OAH Decision") alleging that the issues decided in favor of the Brenneises should be reversed.

On June 1, 2010, this Court issued its order denying the School District's Motion for Partial Summary Judgment on its First Claim for Relief under the Individuals with Disabilities Education Act, or in the alternative, Motion for a Ruling on its Appeal under the IDEA ("MSJ" Order).  In the MSJ Order, this Court held the OAH Administrative Law Judge ("ALJ") properly found that T.B. was denied a "free appropriate public education" ("FAPE") under the IDEA, for the 2006-2007 school year.

Specific ally, this Court upheld the ALJ's finding that the School District failed to provide T.B. with "specialized physical health care services" to administer T.B.'s daily gastronomy tube feedings at school in the August 2006 and December 2006 IEPs.  As a result, it was unsafe for T.B. to attend school safely during the 2006-2007 school year.  This Court also upheld the ALJ's finding that T.B.'s parents were denied the right to participate meaningfully in the development of T.B.'s  individualized education program ("IEP"), because the School District excluded them from participating in decisions related to T.B.'s transition back to a school environment.

Having found that T.B. was denied a FAPE under the IDEA, T.B. and his parents now request that this Court:

- Award T.B. compensatory education for the School District's denial of FAPE (which the ALJ declined to do LC ¶ 60), and

- Enter final judgment pursuant to Federal Rules of Civil Procedure Rule 54 in favor of T.B. and his parents and against the School District with respect to its First Cause of Action under the IDEA.

1

## II. BRIEF STATEMENT OF RELEVANT FACTS

Because T.B. is at risk of regressing if he experiences too long a gap in his educational program, his IEPs provide that he is entitled to receive academic instruction and services during the summer, which is referred to as the extended school year ("ESY").  Pursuant to an IEP dated July 17, 2006 ("ESY IEP"), T.B. was to receive his ESY academic instruction and services at Coronado Academy, a certified nonpublic school.  Because the ESY IEP was late in being developed, it only provided for eleven days of schooling (from July 12 to August 3, 2006), rather than the usual 20 days.

The ESY IEP provided for academic instruction in a special day class at Coronado Academy for 20 hours per week.  The ESY IEP also provided for "designated instruction and services" ("DIS services") consisting of occupational therapy, speech therapy, assistive technology services, and adaptive physical education.  In order to address T.B.'s behaviors, the IEP provided for a full-time 1:1 behavioral aide to be supplied and supervised by ACES, a certified nonpublic agency, plus an additional 10 hours per week of 1:1 behavioral aide services to be provided by ACES in T.B.'s home after school.  AR03387-03391.

T.B.'s parents consented to the ESY IEP, and T.B. began attending Coronado Academy on July 12, 2006.  As of that time, the School District had not yet developed T.B.'s IEP for the 2006-2007 school year.  Pursuant to 14 U.S.C. § 1415(j), if a dispute arose over the 2006-2007 IEP, T.B.'s "stay put" placement would be at Coronado Academy.  However, the School District was aware that the placement at Coronado Academy might not be successful, and thus decided to specify what T.B.'s stay put placement would be in that event.  The ESY IEP provides that, for purposes of stay put, if T.B. were to remain at Coronado Academy, or "if another school placement is agreed upon," then the services in the ESY IEP would continue in that placement.  AR03391.

However, if T.B. were unable to remain at Coronado Academy, and there was no agreement on another school placement by the time the 2006-2007 school year commenced, then T.B. would be provided with a "Home Program," described as "41.5 hours per week of ACES-ABA services, along with the other elements in the ESY IEP except for those marked with an asterisk, until such time as an agreement could be reached.  *Id.*  One of the items marked with an asterisk was 20 hours per week of

2

classroom instruction in a special day class.  Thus, in the event that there was no agreement on a school placement, T.B.'s in-home stay put placement would consist of 41.5 hours per week of behavioral services provided by ACES (i.e. the "Home Program") plus occupational therapy, speech and language, and assistive technology services from certified nonpublic agencies.  The School District did not offer any academic instruction as part of the in-home stay put placement.

The "Home Program" to be provided by ACES consisted of two components: a "school-day program" and an "afterschool" program.  Nicole Luke, Director of ACES, subsequently described the "school-day" program as consisting of behavioral support and a "tutor."  However, Ms. Luke made it clear that ACES did not have any responsibility for "curriculum or lesson plans."  Because there was no credentialed teacher to provide the curriculum and lesson plans, the ACES tutor was "directed by Mrs. Brenneise" who "designed" the school-day program.  AR05338.

Unfortunately, the placement at Coronado Academy was not successful, and T.B. was asked to leave after only 5 days, as a result of which his placement reverted to the stay put placement in his home.  FF 104.  The School District subsequently developed the August 30, 2006 IEP which provided for:

- 30 hours of classroom instruction in a special day class in a certified nonpublic school (AR03927);
- Full time, in-class support by an ACES behavioral aide (AR03929);
- 26 annual goals, including: 4 reading goals; 3 writing goals; and, 2 math goals (AR03941-AR03966); and,
- Various DIS services (AR03929).

T.B.'s parents did not consent to the August 2006 IEP.  Instead of making a request for a due process hearing for permission to implement the IEP without parental consent, as it was required to do under California Education Code section 56346(f), the School District took no action for three months.  Finally, on December 4, 2006, the School District convened an IEP meeting and developed a new IEP, which was substantially similar to the August 2006 IEP, except that it offered T.B. placement in public school, rather than in a nonpublic school.  T.B.'s parents did not consent to the December 2006 IEP and

both the School District and T.B. filed for due process.  T.B. remained in his in-home stay put placement pending the outcome of this dispute.

On October 3, 2007, the ALJ issued the OAH Decision holding that the School District denied T.B. a FAPE in both the August 2006 IEP and the December 2006 IEP by failing to offer the "specialized physical health care services" that were necessary for T.B. to attend school safely.  During all this time, T.B. remained in his in-home stay put placement without any academic instruction by a credentialed teacher.  In the absence of a teacher, his mother made her best efforts to provide him with academic instruction.  As a remedy for the denial of FAPE that was found, the Brenneises sought compensation from the School District for the time his mother spent providing him with academic instruction as well as compensatory education for T.B..

The ALJ rejected the claim to compensate T.B.'s mother, noting that it was "unclear" how much time she actually spent providing T.B. with academic instruction, in part, because she was too busy driving him to various locations where he was to receive his DIS services. FF 247; LC 65.  The ALJ also noted that his mother "chose" to "home school" T.B. "by insisting on Student's home placement as stay put." LC 65.  The ALJ went on to note that "many parents choose to home school their children" and "no matter how excellent their instruction may be, they are not entitled to payment of a teacher's salary at public expense or reimbursement for their purchases." *Id.*

At the same time, the ALJ declined to award compensatory education on the ground that there was "no evidence that Student lost educational benefit as a result of his 'stay put' placement."  The ALJ pointed out that T.B. received "a panoply of DIS services and one-to-one behavioral assistance/instruction" and that, in any case, it was T.B.'s parents who "insisted that his home program remain his 'stay put' placement when [they] signed the July 2006 IEP."  As discussed below, the ALJ's decision not to order compensatory education is neither legally nor factually supportable.

### III. LEGAL STANDARD

The IDEA provides that, on appeal, the court, (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.  20

U.S.C. § 1415(i)(2)(B).  Having found a denial of FAPE under the IDEA, this Court has "broad discretion" to "craft appropriate relief."  *Ashland School Dist. v. Parents of Student E.H.*  587 F.3d 1175, 1183 (9th Cir. 2009)

In the course of exercising that discretion, the court is "free to accept or reject the findings [of the ALJ] in part or in whole."  *Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307, 1311 (9th Cir.), *aff'd sub. nom. Sch. Comm. v. Dept. of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).  Nevertheless, courts give "particular deference" to "thorough and careful" findings.  *R.B. v. Napa Valley Unified Sch. Dist.,* 496 F.3d 932, 942 (9th Cir. 2007).  As discussed below, the ALJ's decision to deny compensatory education was not premised on thorough and careful findings, and, accordingly, those findings are not entitled to any deference.

With respect to the motion for entry of partial final judgment, Federal Rules of Civil Procedure Rule 54(b) provides that, "[w]hen an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as  to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

## IV. THE HEARING OFFICER SHOULD HAVE AWARDED COMPENSATORY EDUCATION BECAUSE T.B. DID NOT RECEIVE ANY ACADEMIC INSTRUCTION FROM AN APPROPRIATELY CREDENTIALED TEACHER DURING THE 2006-2007 SCHOOL YEAR

### A.   Under State and Federal Law T.B. Was Legally Entitled to Receive Academic Instruction from an Appropriately Credentialed Teacher While He Was in His In-Home Stay Put Placement

Both state and federal law provide that special education classes must be taught by teachers who hold an appropriate special education credential.  5 C.C.R. § 3053(c); 20 U.S.C. § 1401(10)(B).  California law further provides that "special education teachers must possess credentials specific to a child's primary disability."  5 C.C.R. § 80046.5; *Weissburg v. Lancaster School Dist.,* 591 F.3d 1255, 1259 (9th Cir. 2010).  As both the August 2006 and December 2006 IEPs reflect, the nature and extent of T.B.'s disability required that he be educated in a special day class by a special education teacher with credentials specific to autism, which was identified as T.B.'s primary disability.

5

The Office of Civil Rights ("OCR") has ordered compensatory education where a school district failed to provide properly credentialed teachers to special education students.  For example, in *Finer-Olivet (CA) Union School District,* (OCR, 2/11/2009), 109 LRP 27321, OCR ordered compensatory education for students who had received instruction from a general education teacher when their IEPs called for instruction from a credentialed resource specialist.  *Cf. Weissburg v. Lancaster School Dist.,* 591 F.3d 1255 (9th Cir. 2010) (holding that a parent is a prevailing party where the ALJ ordered a change in primary eligibility, which thereby gave student a legal right to a teacher with specialized credentials).

Similarly, the California Department of Education ("CDE") has ordered compensatory education as an appropriate remedy where a student was placed in a special education class without a properly credentialed teacher.  Indeed, in this very case, T.B. filed a complaint with the CDE that his teachers at Coronado Academy were not properly credentialed and that after his placement at Coronado Academy was prematurely terminated, he returned to his in-home stay put placement for the rest of ESY 2006, where he received no academic instruction at all.  The CDE found the School District to be out of compliance due to the failure to provide T.B. with a properly credentialed teacher during ESY 2006, and ordered the School District to provide him with 24 hours of missed English language arts instruction as compensatory education.  AR04815-16; AR04819.[1]

California law also provides that if a student has health related issues that make it necessary for a school district to provide education in a home or hospital, the student is still entitled to receive academic instruction by a credentialed teacher.  5 CCR § 3051.4(e).  The teacher providing instruction in the home or hospital is required to contact the school to determine the course work to be covered, the books and materials to be used, and grading policies.  *Id.*  Special education students in a home or hospital

---

[1] The full text of the CDE Compliance Report can be found at AR04799-04819.  T.B. attempted to introduce the CDE Compliance Report into evidence but the ALJ sustained the School District's objection on the grounds of relevance ( TR5676-5681, 7/18/07), which T.B. believes was erroneous, as its relevance is clearly reflected in the text of this pleading.  T.B. requests this Court to overrule the objection and admit the report into evidence or, in the alternative, T.B. requests this Court to take judicial notice of the report under F.R.E. 201.

placement are generally provided with at least one hour of individualized teaching time, five days per week, which California law equates with "one day of attendance." Calif. Educ. Code § 48206.3(c).

Had T.B. been able to attend school, he would have received all of the same DIS services plus academic instruction from an appropriately credentialed teacher. For medical reasons, T.B. could not attend school safely and, in the absence of an agreed-upon school placement, the ESY IEP provided that he would receive services in his home as his stay put placement. As noted, California law provides that a student who is required to receive services in his home or a hospital is entitled to at least one hour per day of instruction by an appropriately credentialed teacher. Accordingly, just as the CDE awarded T.B. compensatory education because he did not receive academic instruction from an appropriately credentialed teacher during ESY 2006 (including during the time he was at home pursuant to his in-home stay put placement), so should the ALJ have awarded him compensatory education from the beginning of the 2006-2007 school year through the date of the OAH Decision on October 3, 2007 (including ESY 2007) during which he also remained at home pursuant to his in-home stay put placement.

**B.** **Compensatory Education Was Necessary to Put Student in the Same Position He Would Have Been Had He Been Offered a FAPE**

As the court observed in *Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir.1988): "We do not believe that Congress intended to create a right without a remedy. . . . [The student] cannot go back to his previous birthdays to recover and obtain the free education to which he was entitled when he was younger." The Ninth Circuit has recognized that the award of compensatory education is an appropriate remedy for a denial of FAPE. *Parents of Student W. v. Puyallup School Dist., No. 3,* 31 F.3d 1489, 1496 (9th Cir. 1994). The purpose of compensatory education is to put the student in the same position he would have been had he received the appropriate education that the school district was obligated to provide him. *Miener v. Missouri*, 800 F.2d 749, 753 (8th Cir.1986).

Because T.B. was forced to remain at home under the stay put IEP, which did not provide for any academic instruction by a credentialed teacher, it was left to T.B.'s mother to provide him whatever academic instruction she could. Although she did her best, his mother does not have a teaching

credential, much less a special education teaching credential with emphasis on teaching students with autism.  Moreover, in an apparent effort to forestall a subsequent claim by T.B.'s mother to be paid for the time she spent teaching T.B., the School District refused to provide her with any curriculum, textbooks or other teaching materials, nor did she have access to grading policies.[2]  FF 246.  Indeed, she obviously did not have the authority to provide him with grades or unit credit for class completion.  Under the law, T.B. was entitled to all of these benefits, even though he was receiving instruction in his home.  5 C.C.R. § 3051.4(e).

The lack of an appropriately credentialed teacher for T.B.'s in-home stay put placement is underscored by the difficulty the School District encountered when it tried to provide the 24 hours of compensatory academic instruction that had been ordered by the CDE for T.B.'s failed placement at Coronado Academy.  The CDE's Compliance Order was issued on November 7, 2006.  AR04797.  On December 19, 2006, Sheila Doctors, T.B.'s Case Manager, sent an email to Nicole Luke, Director of ACES, requesting that ACES provide the 24 hours of English language arts instruction ordered by the CDE.  Ms. Luke responded that "English language arts instruction would need to be provided by a certified person with expertise in that area.  We do not have a California state-certified English teacher available to provide instruction to [T.B.]."  AR05392.

Obviously, the School District could not look to Mrs. Brenneise to provide the compensatory education because, of course, she was not a "state-certificated English teacher" and therefore was not qualified to provide him with such instruction.  Ultimately, the School District contracted with Dr. Thrope to provide the compensatory academic instruction ordered by the CDE.  Yet, the ALJ nevertheless concluded that the intermittent efforts of T.B's mother to instruct him – while not sufficient to justify her being paid or to provide him with the 24 hours of academic instruction ordered by the CDE – provided sufficient educational benefit so as to preclude an award of compensatory education.

---

[2] In its Closing Brief following the due process hearing, the School District explained that it refused to provide such materials so as to avoid the "harm" of "defending against a salary claim, without ever agreeing [T.B.] should be placed in the home or taught by his mother."  Closing Brief at 45,  AR07397.

8

In support of his mother's request for compensation for the time she spent instructing him, T.B. did contend that he obtained some educational benefit from his mother's efforts to provide him with academic instruction.  However, the School District "disput[ed] Student's contention that Student's mother was providing him with academic instruction."  FF 247.  The ALJ found:

> [t]he evidence is unclear as to how much actual instruction Student's mother provided to Student.  It appears that much of her time with Student during the week was spent driving Student to his various NPA providers.  She also frequently took him to 'Starbucks' coffee shop.  Student's mother testified that she was able to instruct Student even while driving or visiting Starbucks.

The ALJ went on to note that"[a]lthough Student's mother sincerely believes that she was able to instruct Student during the time he was at Starbucks and while she was driving in the car, it is doubtful that much education occurred there, particularly in light of the testimony by Student's own experts about how easily Student is distracted by his surroundings."  LC 65.

The ALJ nevertheless concluded that T.B. somehow obtained sufficient educational benefit while in the stay put placement so as to preclude an award of compensatory education.  LC 60.  The ALJ does not cite any evidence – such as a demonstrated improvement in T.B.'s reading, writing or mathematics skills during the 2006-2007 school year – to support this finding.  Rather, the ALJ simply states that T.B. "contends that [he] made significant educational progress in his home program," and then, despite the School District's position that T.B.'s mother did not provide him with any academic instruction, enigmatically asserts that "the District does not dispute that contention."  There is no discussion as to how the School District could possibly concede that T.B. received educational benefit from his mother's efforts while at the same time disputing that she provided him with any academic instruction.

There was some evidence introduced at hearing as to the educational progress T.B. made under his mother's tutelage in a prior home program where he was from 2003 through the end of the 2005-2006 school year.  However, T.B.'s claims for any denial of FAPE that may have occurred during that time period were not at issue in this case because they had been resolved in a prior settlement agreement FF 10.  In any case, the evidence supports the obvious conclusion that whatever progress T.B. made as a

9

result of his mother's efforts, he would have been expected to make substantially more progress had he received instruction from an appropriately credentialed teacher.

Lynne Thrope, Ph.D., who is a reading specialist and trained teacher and who tested T.B. in March 2005 (AR02386-02399) and then again in February 2006 (AR02666-2677), testified that between the two assessments, T.B. made progress in some areas, but regressed in others.  TR 5480.  For example, she found that in listening comprehension, "there was a dramatic decline from fourth grade down to first grade."  TR 5480:10-12.  During cross-examination, the School District's attorney noted that in her 2006 report Dr. Thrope had stated, "given that success has been achieved primarily under the tutelage of Ms. Brenneise, imagine what heights [T.B.] could achieve given the opportunity to consistently develop his literacy with a trained professional in dyslexia and dysgraphia."  The attorney then asked, "would you agree that you would expect [T.B.] to make even more progress if he were working with a trained professional?" to which Dr. Thrope responded "I do."  TR 5563:15-25.

The ALJ found that T.B., who was in seventh grade at the time of the hearing, "reads independently at a third grade level, is at approximately a third grade level in math calculations, and has extremely poor writing skills."  FF 34.  T.B. thus had significant academic delays and his mother's efforts at academic instruction clearly fell far short of bringing him up to grade level.

Even if T.B. did receive some educational benefit from his mother's efforts while in his in-home stay put placement, this should not preclude him from an award of compensatory education.  As noted above, a claim for compensatory education can arise even where a student has received instruction – and presumably some educational benefit – from a teacher who holds a teaching credential but lacks the specific certification required in light of the student's disability.  First, as a matter of law, the failure to provide academic instruction by an appropriately credentialed teacher is, in and of itself, a denial of FAPE, consistent with the Ninth Circuit's holding in *Weissburg v. Lancaster School Dist.*  In any case, the issue for granting compensatory education is not whether the student received some educational benefit, despite the denial of FAPE.  Rather the issue is how much educational benefit did the student lose as a result of the denial of FAPE, and what would it take to fully make it up to him.  *Miener*, 800 F.2d at 753-54. Applying this standard, it is difficult to understand how the ALJ could have concluded

10

that T.B. was not entitled to compensatory education to make up for the fact that the School District provided him with no academic instruction whatsoever for more than an entire school year.

Moreover, it is the responsibility of the School District – not T.B.'s mother – to provide T.B. with a FAPE.  Indeed, the definition of "special education" is "specially designed instruction, **at no cost to the parent,** to meet the unique needs of individuals with exceptional needs, **including instruction conducted in the classroom, in the home, in hospitals and institutions, and other settings** . . . ." Calif. Educ. Code § 56031(a) (emphasis added).  Having the parent provide academic instruction does not even satisfy the definition of special education, must less rise to the level of FAPE.  Nor should parents be required to allow their child to languish in ignorance, without making any effort to educate the child themselves, as a condition for obtaining compensatory education.  That is particularly true where, as here, the School District failed and refused to provide T.B. with academic instruction for over a year.  Denying compensatory education to a student who receives academic instruction from his parent when the school district refuses to provide it, is bad policy as well as bad law.

### C. Just Because T.B. Was in A Stay Put Placement Does Not Mean He Received A FAPE And/Or Is Not Entitled to Compensatory Education

The ALJ indicated that one factor that influenced the decision to deny compensatory education was that T.B. "insisted that his home program remain his 'stay put' placement when he signed the July 2006 IEP."  However, the School District is responsible for developing T.B.'s entire IEP, including the offer of what would constitute stay put.  There is no evidence that the School District offered T.B. an appropriately credentialed teacher as part of his in-home stay put placement, or that any such offer was rejected by T.B.'s parents.  On the contrary, the School District presented T.B.'s parents with the Hobson's choice of sending him to school, where he could receive academic instruction from a credentialed teacher but face serious risks to his physical health, or keeping him at home, where he could be physically safe but lack instruction by a credentialed teacher.  T.B.'s mother consented to the IEP, including the stay put placement specified therein, because her first and foremost concern was to assure T.B.'s physical health, safety and well-being.

11

There is nothing in either state or federal law to the effect that a student somehow waives the right to a FAPE by virtue of a parent's consent to an IEP that does not provide a FAPE.  Rather, a parent may consent to an inappropriate IEP because obtaining some services – even if they are inadequate to provide a complete FAPE – is preferable to receiving no services at all.  Obviously, it would place a parent in an untenable position if they were forced to choose between consenting to some services, even if they are inadequate, and disputing whether the school district has offered FAPE.

In any case, invoking stay put does not preclude a claim for compensatory education.  This precise issue was addressed by the First Circuit in *Maine School Administrative Dist. No. 35 v. Mr. R.*, 321 F.3d 9 (1st Cir. 2003).  In that case, the school district argued that because it was "forced" by the parents to maintain the student's stay put placement, it should not be ordered to provide compensatory education during the period when the stay put was invoked.  The First Circuit squarely rejected that argument on the grounds that the parents "never sought a stay-put placement as relief on the merits," and that "the stay put placement was merely the lesser of two evils."

The situation here is precisely the same as in *Maine School Administrative Dist. No. 35 v. Mr. R.*  Indeed, not only did T.B. not seek the stay put placement as a remedy, he argued that the in-home stay put could not be properly implemented because of the School District's failure to provide curriculum, books, and academic instruction by an appropriately credentialed teacher.  The ALJ rejected this argument on the ground that the stay put IEP, as written, did not specify that academic instruction was to be provided by a credentialed teacher, and thus a credentialed teacher was not technically required for it to be implemented.  FF 245.  Even if one accepts this questionable holding,[3] it does not follow that the

_____

[3] The Brenneises have appealed this holding, which is based on an apparent misunderstanding of the nature of the claim.  At issue was not whether the ESY IEP expressly provided for the services of a credentialed teacher as part of the in-home stay put placement; it is self-evident that it did not.  The issue, as discussed in the Student's Closing Brief, was that the stay put placement, which included academic goals, could not be implemented in the absence of curriculum materials, books, educational materials, and the services of a credentialed teacher to provide academic instruction.   Closing Brief at 45-47; AR01489-92.

12

1    School District should be excused from its obligation to provide academic instruction as compensatory

2    education for its denial of FAPE during the 2006-2007 school year.

3            T.B.'s parents were actively seeking an IEP that would allow him to return to public school

4    where he could receive academic instruction from an appropriately credentialed teacher.  While T.B's

5    parents did disagree with the appropriateness of some of the goals and objectives that were included in

6    the August 2006 and December 2006 IEPs, had the School District offered T.B. the necessary

7    specialized physical health care services, his parents would, at least, have been able to send him to

8    school where he would have received academic instruction from an appropriately credential special

9    education teacher.  Unfortunately, because the IEPs did not provide for the necessary specialized

10   physical health care services, his parents were forced to keep him in the in-home stay put placement in

11   order to preserve his physical health and safety, even at the cost of forgoing instruction by a credentialed

12   teacher.  Keeping T.B. at home was not merely the lesser of two evils, it was the only real option his

13   parents had.

14           As the First Circuit noted, "[c]onferring blanket immunity from compensatory education claims

15   during the course of a stay-put placement would reward school districts for misfeasance or nonfeasance

16   in providing appropriate educational services."  321 F.3d at 19.  Accordingly, the court held that:

17           claiming to be caught between a rock and a hard place is no excuse for dereliction of
         duty.  The IDEA charges school districts with making reasonable efforts both to work
18       with parents and to satisfy the needs of special education students.  That entails the
         responsibility to find a path that runs between the rock and the hard place.  Knee-jerk
19       compliance with a stay-put provision does not negate that responsibility.  321 F.3d 19-20.

20           Finally, the ALJ cited the fact that T.B. received substantial DIS services under the stay put IEP

21   as a reason for denying compensatory education.  However, it does not follow that just because T.B.

22   received speech therapy, occupational therapy and behavioral services, he is not entitled to

23   compensatory education for the lack of academic instruction.  If that were the case, school districts

24   could refuse to offer special education students classroom instruction so long as they are provided with

25   DIS services such as speech and occupational therapy.  This is obviously not the law.  Indeed, as noted

26   above, special education is defined as "specially designed instruction."  Calif. Educ. Code § 56031(a);

27   20 U.S.C. § 1401(29).  Services such as speech and occupational therapy are considered "related

28

                                                         13

services" that are required only insofar as they are necessary for the student to benefit from "special education." 20 U.S.C. § 1401(26)(A).   Related DIS services can never be a substitute for academic instruction.

### D.   The ALJ Erred in Equating T.B.'s Inability to Attend School Due to Health & Safety Concerns With a Decision by T.B.'s Parents to "Home School" Him

By misguided analogy to parents who "home school" their children, the ALJ equated the in-home stay put placement as a purposeful decision by T.B.'s mother to "home school" T.B.  This was clear error.  In fact, in California, there is no legal provision for "home schooling."  Rather, parents who purport to home school their children are just exploiting the extremely lax rules in California governing the establishment of a "private school."  *Jonathan L. v. Superior Court*, 165 Cal. App. 4th 1074 (2008).  Thus, parents who "home school" their children are, technically, establishing "private schools" in their homes in which they enroll their children after withdrawing them from public school.  Once disenrolled from public school, school districts have very limited obligations with respect to the provision of special education services to eligible students.  Calif. Educ. Code § 56174.5.

In this case, T.B.'s parents never purported to "home school" him.  T.B. was, at all times, enrolled in the School District which was responsible for providing his special education program, including his academic instruction.  T.B.'s mother did not choose to teach T.B. herself; rather, she was left with no other alternative because the School District failed to provide him with academic instruction as part of his in-home stay put placement.  To deny T.B. compensatory education on the ground that his mother chose to "home school" him, was both factually and legally erroneous.

### E.   This Court Should Award Compensatory Education

As the Ninth Circuit recently noted, the fact that T.B. no longer resides in the School District does not preclude an award of compensatory education.  *Payne v. Peninsula School Dist.*  598 F.3d 1123 (9th Cir. 2010).  As noted above, the CDE awarded T.B. 24 hours of compensatory academic instruction for the loss of 11 days of education during ESY 2006, or approximately 2 hours per day

14

missed.  Under California law, when a student receives in-home academic instruction from a school district, the state counts one hour of 1:1 instruction as equivalent to a school day for purposes of calculating attendance.  Accordingly, these would appear to mark the upper and lower ranges for calculating the compensatory education to which T.B. is entitled with respect to his academic instruction.

There are 180 days of instruction in the regular school year, 20 school days in ESY, and another 20 or so school days expired during the 2007-2008 school year before the OAH Decision was issued on October 3, 2007.  Accordingly, Student was denied a FAPE for approximately 220 days.  This suggests an award of between 220 and 440 hours of compensatory academic instruction.  Given the serious educational deficits from which T.B. suffers, an award at the upper end of 440 hours is appropriate, as well as a period of at least two years in which to utilize the compensatory education, which comes to approximately one hour of supplemental academic instruction, five days per week.

T.B. now resides in Minnesota, making it impossible for the School District to provide him with the services of a properly credentialed School District employee.  Accordingly, T.B. requests this Court to either direct the School District to directly employ a qualified individual (which might include a credentialed teacher or an educational therapist), residing near T.B. in Minnesota, to provide him the compensatory education, or to make a fund of money available to pay for the costs of such services to the extent that they are arranged by T.B.'s parents.

**V. THERE IS NO JUST REASON TO DELAY ENTRY OF FINAL JUDGMENT**

Rule 54(b) permits a district court to enter judgment on "fewer than all" claims where there is "no just reason for delay."  Fed. R. Civ. P. 54(b); *S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072 (9th Cir. 2010).  In deciding whether to enter partial final judgment, a district court should consider "such factors as the interrelationship of the claims so as to prevent piecemeal appeals," as well as the equities involved.  *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 954-55 (9th Cir. 2006).

Turning first to the equities, during the 2006-2007 school year, when T.B. was denied a FAPE, he was in seventh grade.  It is now four years later, and the School District has lost for a second time in

15

its attempt to justify its noncompliance with clear and unambiguous statutes and regulations.  T.B. has

started eleventh grade, and has not received any remedy for the School District's failure and refusal to

provide him with any academic instruction for over a year.  As reflected in the academic assessments

conducted by the School District in 2006, T.B. has serious academic deficits in the areas of reading,

written language, and mathematics.  FF 34.  T.B. needs to receive the compensatory education to which

he is entitled while he is still in school and struggling to overcome his academic deficits.  Further delay

in T.B.'s receipt of the academic remediation requested as compensatory education in this case could

well result in the loss of any meaningful benefit from that remediation and cause him irreparable injury.

Given the extraordinary delay in obtaining a remedy, Petitioners respectfully request this Court, in its

discretion to award the maximum compensatory education possible.

Nor will entry of final judgment with respect to this issue result in any duplicate effort by the

court with respect to the remaining issues related to the appeal of the OAH Decision.  On the contrary,

counsel anticipates that a favorable ruling on this motion will result in the voluntary dismissal of T.B.'s

remaining issues on appeal as effectively moot, as any additional remedies available with respect to

those issues would be de minimus in light of an award of compensatory education as requested.[4]  While

the Brenneises' civil rights  claims would still remain, it is consistent with principles of judicial

economy and the doctrine of exhaustion for this Court to resolve the IDEA claims first, and award the

remedy to which T.B. is entitled under the IDEA, before proceeding to a jury trial to resolve those

remaining issues related solely to the civil rights claims, including any additional money damages to

which T.B. might be entitled.

## VI. CONCLUSION

T.B. did not receive any academic instruction from a credentialed teacher during the 2006-2007

school year because the School District refused to provide him with the specialized physical health care

---

[4] If the ruling is not favorable, it is possible that the T.B. may wish to pursue his appeal of two of the other issues raised in his appeal, the remaining issues being of relatively little consequence in the context of the entire case.

16

services necessary to allow him to attend school safely, and did not offer to provide him any academic instruction as part of his in-home stay put placement.  Although his mother did her best to fill the gap in his educational program by providing him such instruction to the extent she was capable, she is not a certificated special education teacher.  Moreover, in an apparent effort to forestall a claim that she be compensated for her time, the School District refused to even provide her with any teaching materials.  *See* fn. 1, *supra*.

The ALJ ruled against T.B.'s mother's claim for compensation for her efforts, noting that it was unclear how much instruction actually took place.  However, even if the ALJ had compensated T.B.'s mother, he would still be entitled to compensatory education as it is beyond cavil that whatever instruction she was able to provide – while better than nothing – was not at the level to which he was entitled under the law, thus resulting in a loss of educational benefit.  Under these circumstances, this Court should award the requested compensatory education, and enter final judgment on the School District's appeal of the OAH Decision.

Dated: October 22, 2010                                        Respectfully submitted,

*Wyner & Tiffany*
ATTORNEYS AT LAW


/S/ Marcy J.K. Tiffany
Attorneys for Counterdefendants
T.B., a minor, Allison Brenneise
& Robert Brenneise

17

1
2
3
4
5

CERTIFICATE OF SERVICE

6      I, the undersigned, declare under penalty of perjury, that I am over the age of 18 and that I am

7  not a party to this action.  On October 22, 2010, I served this OPPOSITION TO SAN DIEGO UNIFIED

8  SCHOOL DISTRICT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR RULING ON ITS

9  IDEA APPEAL on the San Diego Unified School District by serving their counsel of record

10  electronically, having verified on the court's CM/ECF website that such counsel is currently on the list

11  to receive emails for this case, and that there are no attorneys on the manual notice list.

12
13  Dated: October 22, 2010                                    /S/ Marcy J.K. Tiffany
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28