Wyner Law Group, PC
Steven Wyner (SBN 77295)
swyner@specialedlaw.org
20655 Western Ave., Ste 105
Torrance, CA 90501
Phone: (310) 961-2877
Fax: (310) 533-8099

Tiffany Law Group, P.C.
Marcy Tiffany (SBN 78421)
mtiffany@tiffanylawgroup.com
23670 Hawthorne Blvd., Suite 204
Torrance, California  90505
Phone: (424) 247-8250 x304
Fax: (424) 2247-8257

Attorneys for Plaintiffs & Counterdefendants
T.B., a minor, Allison Brenneise & Robert Brenneise

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.B., by and through his Guardian ad Litem, Allison Brenneise, and Robert Brenneise <br><br> Plaintiffs, <br><br> vs. <br><br> SAN DIEGO UNIFIED SCHOOL DISTRICT <br> Defendant. | Case No.:  08cv28 MMA (WMc), (consolidated) <br><br> PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES <br><br> Date: September 12, 2011 <br> Time: 2:30 p.m. <br> Dept.: Courtroom 4 <br><br> Judge. Michael M. Anello |

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     **THE BRENNEISES ARE THE "PREVAILING PARTIES" WITH RESPECT TO THE ADMINISTRATIVE PROCEEDING AND THE DISTRICT'S APPEAL THEREOF, AS WELL AS WITH RESPECT TO THEIR CLAIM FOR ATTORNEYS' FEES FOR PREVAILING ON THEIR COMPLIANCE COMPLAINT**

A prevailing party is entitled to recover reasonable attorneys' fees under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B).  A party who succeeds "on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit" is considered the "prevailing party" for purposes of an attorneys' fees award.  *Texas Teachers Assn. v. Garland School Distr.*, 489 U.S. 782, 791-92 (1989).

In the present case, the administrative law judge("ALJ") issued a decision ("OAH Decision") in which she held that San Diego Unified School District ("District") denied Student a free appropriate public education ("FAPE") for the entire 2006-2007 school year by failing to provide him with the health care services he required in order to attend school safely in either his August 2006 or December 2006 IEPs, and by denying Student's parents the right to meaningfully participate in the development of Student's educational program by excluding them from decisions concerning Student's transition from his home program to a school based program.  As discussed below, by prevailing on these issues the Brenneises obtained the primary benefit that they sought in this proceeding – an award of services that would allow Student to return to and safely attend school – making them the prevailing party in the administrative proceeding.  The District appealed their loss in the administrative proceeding to this Court and, again, the Brenneises prevailed.

Finally, the Brenneises have accepted the District's offer of judgment with respect to their claim for fees related to the compliance complaint they filed with the California

Department of Education ("CDE").  Thus, they are the prevailing party with respect to the fees for the compliance complaint and the related appeal in this Court.

## II.  THE BRENNEISES SHOULD BE AWARDED THE FULL AMOUNT OF THEIR ATTORNEYS' FEES FOR PREVAILING IN THE ADMINSTRATIVE PROCEEDING ON THE ISSUE AS TO THE DENIAL OF FAPE FOR THE 2006-2007 SCHOOL YEAR

### A.  Both the Supreme Court and the Ninth Circuit Have Made Clear That a Fee Award Should Not Be Based on the Percentage of Issues on Which the Plaintiff Prevailed But Rather on the Degree of Success Achieved

The administrative proceeding in this case was initiated by the District on November 29, 2006 when it filed a due process hearing request against Student claiming that the assessments it had conducted of Student were appropriate, and disputing any obligation to fund independent educational evaluations ("IEEs") requested by Student. OAH Decision at 2.  On January 9, 2007, SDUSD amended its request to include a claim that the December 2006 IEP offered Student a FAPE.

On January 29, 2007, Student filed his own request for due process hearing, seeking reimbursement for the IEEs and disputing that the December 2006 IEP offered Student a FAPE, which was the mirror image of the District's filing.  In addition, Student included a claim that the August 2006 IEP also failed to provide Student with a FAPE. Because the two complaints were substantially related to each other in that they involved the same year and substantially the same issues, OAH consolidated the two due process cases into a single proceeding.

Typically, even when a school district files for due process claiming that its assessment was appropriate or that an IEP offers the student FAPE, as was the case here, OAH puts the onus on the student to articulate the reasons why the student disagrees.  Of course, when the student files for due process, the student is also required to articulate the specific reasons why the proposed IEP does not provide a FAPE or risk having the due process request dismissed for failing to adequately inform the district of the nature of the problem.

In this case, Student articulated various reasons as to why the District's assessments were not appropriate.  Student also articulated a number of reasons as to why the August 2006 and December 2006 IEPs did not provide Student with a FAPE.  Some of those reasons were fairly minor and procedural in nature, such as the failure to have an IEP in place before the commencement of the new school year.

In the OAH Decision, the ALJ characterized each reason as a separate "issue," which she grouped into four categories: Issues Related to Assessments (1-5); Issues Related to the August 30, 2006 Proposed IEP (6-9); Issues Related to the December 4, 2006 Proposed IEP (10-13); and Issues Related to both IEPs (14-18).

As noted in the OAH Decision, the District raised Issue 1, which was that its Multidisciplinary Assessment dated July 14, 2006 was appropriate.  A review of issues 2-5 reflect that these are really just reasons why Student disagreed with the District's position on Issue 1, which is presumably why the ALJ grouped them altogether under the heading "Issues Related to Assessments."

Similarly, the District's Issue 10 was that the December 4, 2006 IEP "offered Student a FAPE designed to meet his unique needs and allow him to benefit from his education," while Issues 11-18 were the reasons why Student disagreed.  As can readily be seen, not all of these reasons were of equal import.  Similarly, Student's issues related to the August 30, 2006 IEP (Issues 6-9 and 11-18) were all reasons why Student disagreed with the District as to the appropriateness of that IEP.  However, because the District did not expressly raise the appropriateness of the August 2006 IEP in its own request for due process, this grouping did not contain an "issue" that was attributable to the District.  Nevertheless, the District did take the position that its August 2006 IEP did, in fact, provide the Student with FAPE, and the OAH Decision held that Student was denied a FAPE with respect to the August 2006 IEP for the reasons stated above.

Obviously, Student did not prevail on every "issue" as they were enumerated by the ALJ in the OAH Decision.  However, as the Supreme Court noted in *Hensley v. Eckerhart*  461 U.S. 424 at 435, n. 11 (1983), determining the level of attorneys' fees

based on a ratio of the total number of issues in the case compared with the number of issues on which the plaintiff prevailed, is not appropriate because "such a ratio provides little aid in determining what is a reasonable fee in light of the all the relevant factors."

In *Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, (9th Cir. 2006), the Ninth Circuit considered a case where the parent had prevailed on only 4 of 24 "claims" that her son had been denied a FAPE. These claims included such diverse assertions as that the school district "failed to prepare daily reports on Carlos's work and behavior, did not provide him with a one-on-one aide, and failed to provide him with occupational therapy." *Id* at 1116. The hearing office ruled that the school district failed to provide the student a FAPE only "insofar as it failed to conduct a timely assessment for assistive technology and failed to provide the technology." *Id.* The Ninth Circuit remanded the decision awarding the plaintiff 50% of her requested fees because the district court had failed to apply the "degree of success" test in *Hensley.*

In his concurrence, Judge Pregerson provided the district court with additional guidance on how to apply the *Hensley* "degree of success" test. He noted that "the district court is not required to calculate a fee award by looking solely to the number of successful claims. . . . . This is true because some claims may seek dramatic or more substantial relief, while others seek minor relief." *Id.* at 1122. Moreover, "[i]n comparing these claims with her twenty-three unsuccessful claims, the district court could reasonably find that all twenty-seven claims are sufficiently related because they all alleged that the school district failed to provide her son with the necessary components of a free and appropriate public education over the course of a two-year period." *Id.* at 1123.

In the present case, all of the claims related to a single year and a single issue – whether Student was denied a FAPE during the 2006-2007 school year. Even more specifically, whether the August 2006 and the December 2006 IEPs failed to provide Student with a FAPE. Although the ALJ did not agree with all of the reasons that Student presented as to why he had been denied a FAPE, e.g. inappropriate goals, lack of

clarity in the IEP document, and a failure to timely develop the August 2006 IEP, the ALJ did agree with Student's primary reason, *i.e.*, the failure of both IEPs to include the necessary health care services that he required to attend school safely, and the failure to include Student's parents in the decision making process concerning Student's transition back to school.

The next issue that *Hensley* requires the court to consider the degree of success obtained in determining the amount of attorneys' fees to award.  As the Supreme Court noted, "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." 461 U.S. at 435.   "Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested."  *Id.* at 435, n. 11.

As discussed below, although the Brenneises did not obtain all of the relief they were seeking, they did achieve an excellent result because they obtained the primary remedy they were seeking – the necessary health care services to allow Student to return and attend school without putting his health and safety at risk.

**B.     The Brenneises Obtained the Most Significant Remedy
They Were Seeking – An Order That Would Allow T.B. to Resume
Attending School**

As Mrs. Brenneise states in her declaration filed in support of this motion, the primary goal of this litigation was to obtain the level of health services necessary to allow Student to return to public school.  Student's mother had been educating him in her garage since 2003, and she was anxious to be relieved of that responsibility. Being able to send Student. back to school would be an enormous relief to all of the family members. With Student being educated in the home, at least one parent had to be home all day. Usually that fell to Mrs. Brenneise.  Moreover, Mrs. Brenneise was responsible for developing the curriculum for her son's education, which she did with no assistance from the District.

Mrs. Brenneise worked hard to try to educate him, and this Court has found that she was successful in these efforts.  But this required enormous investments of her time

1  and energy.  In 2000, the United States Navy determined that Mr. Brenneise was 100%

2  disabled as a result of on-the-job injuries he suffered in 1999.  As a result of that

3  determination, the federal government made Chapter 35 Veterans Administration

4  benefits, specifically benefits from the Veterans Administration Survivors' and

5  Dependents' Educational Assistance Program ("DEA"), which provides education and

6  training opportunities to spouses of a veteran who is permanently and totally disabled as a

7  result of a service-connected disability arising during active service in the United States

8  Armed Forces, available to Mrs. Brenneise.  As a result of having to be home to care for

9  T.B.'s health needs, Mrs. Brenneise was unable to take advantage of her DEA benefits,

10  which expired in February 2011, while she resided in San Diego.

11       Student was also unhappy at having to remain in the "garage school."  He longed

12  to socialize with other students and have a more normal life.   Had the issues been limited

13  to the appropriateness of his goals, Mrs. Brenneise would gladly have sent him to school.

14  But she could not send him at all if it meant putting his health and safety at risk.

15       If Student was able to return safely to school, it would certainly be important that

16  his goals and objectives be appropriate.  However, it would do him little good to have

17  appropriate goals and objectives in his IEPs if he could not attend school where the goals

18  and objectives could be implemented.  Accordingly these other concerns, while not

19  without significance, were of far less import to the family.  The primary goal was to

20  obtain an order for the health care services that would allow Student to get back into

21  school, which was the remedy they achieved.  Had the District complied with the OAH

22  Decision, Student would have been able to safely attend school, and the nightmare years

23  of the garage-school would have been over.  Regrettably, the District refused to comply.

24       Getting Student. back into public school was not only significant from the

25  Brenneises' subjective perspective.  Rather, enabling students with disabilities to attend

26  public school with their peers is one of the fundamental goals of the IDEA.  As the statute

27  itself explains, before the enactment of the Education for All Handicapped Children Act

28  of 1975, one principal reason that the educational needs of millions of children with

disabilities were not being fully met was because "the children were excluded entirely from the public school system and from being educated with their peers." 20 U.S.C. § 1400(c)(2). *Cf., Honig v. Doe*, 484 U.S. 305, 324, 108 S.Ct. 592, 604 (1988) (When it enacted the "stay put" provision in the IDEA, "Congress very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . ." Emphasis original)

Prevailing on that claim also established the threshold requirements for Student's subsequent civil rights damages claim, which are premised on the fact that the District's denial of FAPE resulted in Student's complete exclusion from school, giving rise to damages under section 504. Among other remedies, Student is seeking damages for the costs and burdens imposed on his parents to provide him an education during the period that he could not safely attend school due to the District's denial of FAPE during the 2006-2007 school year, as well as during the subsequent year when the District refused to implement the remedy that had been ordered.

Prevailing on the adequacy of the goals and objectives or, indeed, any of the other reasons Student had for claiming that the August 2006 and December 2006 IEPs did not provide him with a FAPE, would not give rise to a potential civil rights claim under section 504.[1] Clearly, prevailing on an issue that involves not merely a denial of FAPE but also a denial of his related civil rights under section 504, is a significant accomplishment in this litigation.

### C. The Assessment Issue, on Which Student Did Not Prevail, Was Relatively Minor Both in Terms of the Overall Hearing and in Terms of the Remedy the Brenneises Were Seeking

Student recognizes that the entire hearing was not devoted to the issue of whether he was denied a FAPE during the 2006-2007 school year. The issue relating to the

---

[1] Student's subsequent move to Minnesota rendered the other issues effectively moot in any case, as reflected in Student's decision not to further pursue them on appeal.

1   adequacy of the District's June 2006 assessments was somewhat different in focus,

2   although, even then, there clearly was a good deal of overlap in witnesses and documents

3   due to the fact that the assessments formed the basis for developing the goals and

4   objectives in the disputed IEPs.

5       The remedy the Brenneises were seeking in this regard was reimbursement for the

6   cost of these private assessments, which was a relatively small amount.  While recovering

7   for some out of pocket expenses would have been desirable, it pales in significance to

8   getting Student back into school.[2]

9       Taking into consideration the relative importance of the issue on which Student

10  prevailed, the limited scope of the assessment issue, and the relative significance of the

11  remedy he did obtain, Student believes that the fees related to the administrative

12  proceeding should be reduced by no more than 10% in consideration of the fact that he

13  did not prevail on the assessment issue.

14  **III. THE BRENNEISES ARE ENTITLED TO ALL OF THEIR FEES IN**
15  **CONNECTION WITH THE DISTRICT'S APPEAL OF THE OAH DECISION**

16      Having prevailed completely in opposing the District's Motion for Partial

17  Summary Judgment, which resulted in this Court's affirming that portion of the OAH

18  Decision that ruled in favor of the Brenneises, the Brenneises are entitled to all of their

19  fees and costs incurred in connection with the District's appeal of that issue.  This

20  includes not just the fees and costs incurred with respect to the motion itself, but also the

21  fees and costs related to such issues as answering the District's complaint, preparing and

22  filing the administrative record, and such other activities as were necessary in the context

23  of the overall litigation.

24

25

26
    _____

27  [2] Again, Student chose not to further pursue his appeal of the reimbursement issue in light of his having
    prevailed on the bigger issue raised in the District's appeal.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV. THE BRENNEISES ARE ENTITLED TO THE FULL AMOUNT OF FEES INCURRED WITH RESPECT TO THE COMPLIANCE COMPLAINT, INCLUDING ALL OF THE FEES INCURRED IN THIS COURT AND THE NINTH CIRCUIT WITH RESPECT TO THAT ISSUE

As noted above, Exhibit 12 is a schedule of attorneys' fees incurred in connection with the Brenneises' achieving a successful outcome with respect to the compliance complaint they filed with the CDE in July 2006.  On November 8, 2006, the CDE issued a report finding that the District was out of compliance with state law, and ordering compensatory education for Student.  In October 2007, the Brenneises sent the District a demand for $7,113.50 for attorneys' fees and costs incurred in filing that compliance complaint.  Despite the fact that in *Lucht v. Molalla River School Dist.,* 225 F.2d 1023 (9th Cir. 2000), the Ninth Circuit squarely held that a party who prevails with respect to a CDE compliance complaint is entitled to attorneys' fees as prevailing party under the IDEA, the District refused to pay the fees.

In January 2008, both parties appealed the OAH Decision.  The District's third "cause of action" in its complaint was a claim for Declaratory Relief, asserting that the District "has and will continue to experience actual hardship in the form of demands for attorneys' fees and costs incurred by the parents in filing compliance complaints with CDE."   This pleading makes it clear that the Brenneises would have to file a federal court complaint in order to recover the attorney fees related to the compliance complaint.

Having just filed a complaint in federal court, it was more cost effective to amend the complaint to add such a claim rather than file a new complaint and move for consolidation.  However, because a complaint would have to be filed in either case, the Brenneises should recover their fees in connection with the mechanics of filing and serving their original complaint, as well as fees incurred amending the complaint to state a claim for reimbursement of the attorneys' fees incurred in connection with the compliance complaint.

1   The Brenneises added two claims in their first amended complaint.  Their third
2   claim was to enforce the implementation of the OAH Decision in their favor, and the
3   fourth claim requested reimbursement for the attorneys' fees incurred in connection with
4   the compliance complaint.  It is, of course, very difficult to parse out the time spend on
5   adding one claim versus another, but counsel has attempted to do so as best as can be
6   done.

7   The District filed a motion to dismiss both of these additional claims which the
8   Brenneises opposed.  The Court dismissed the third claim of the Brenneises' first
9   amended complaint, but allowed the fourth claim – the compliance complaint attorneys'
10  fees, to stand.[1]

11  The District then filed a motion for certification of an interlocutory appeal of the
12  denial of the motion to dismiss the claim for compliance complaint fees with the Ninth
13  Circuit and simultaneously filed an appeal in the Ninth Circuit.  The Brenneises opposed
14  both motions and ultimately prevailed on both.

15  The District recently sent the Brenneises an offer of judgment, which the
16  Brenneises accepted.  That offer of judgment included "reasonable attorney's fees and
17  costs incurred by plaintiffs on the Third Claim for Relief (and prior versions thereof in
18  earlier pleading in this case) prior to the date of this offer in an amount to be set by the
19  Court."  Accordingly, the Brenneises are entitled to an award of all of the fees incurred in
20  connection with the resolution of this claim in their favor.

21
22
23
24
25
26  _____
    [1] The Brenneise's complaint was subsequently amended again, so that the fourth claim for relief stated
27  in the first amended complaint is now the third claim for relief in the operative second amended
    complaint.
28

**V. THE HOURLY RATES CLAIMED ARE REASONABLE**

### A.   The Billing Rate Requested for Steven Wyner and Marcy J.K. Tiffany Reflects the Prevailing Rate in the Local Community

The IDEA provides that "the amount of fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).

Mr. Wyner's and Ms. Tiffany's background and experience are detailed in their declarations.  Both Mr. Wyner and Ms. Tiffany are 1977 graduates from national law schools; both were awarded Order of the Coif; both served as editors of their respective law reviews; both clerked for federal judges, both have litigated extensively in federal court at both the trial and appellate levels.  In 2006 Mr. Wyner and Ms. Tiffany were awarded the Clay Award in the area of civil rights and both have been acknowledged by their peers as Southern California Super Lawyers.  Their background and legal experience are comparable to each other and to other accomplished civil rights litigators who practice in federal court.

Mr. Wyner and Ms. Tiffany are seeking a rate of $560 per hour for all the work performed in this case, including the administrative proceeding.  In support of this rate they have submitted the declarations of Maureen Graves, Barry Litt, Carol Sobel, Janeen Steel, and George Crook.

These declarations attest to the professional standing of Mr. Wyner and Ms. Tiffany in the legal community, the fact that the rate of $560 that they are requesting is low for the Los Angeles market, and the scarcity of attorneys available even in Los Angeles, much less the San Diego community, who are willing to take on cases with so much risk and so little potential return.

Moreover, these declarations support the conclusion that the $560 rate is not only low for the Los Angeles market, it is also low for the San Diego market.  This is consistent with the recent decision in *Hartless v. Clorox Company*, 273 F.R.D. 630 (So. Dist. Cal. 2011), where the court found an hourly rate of $675 for an experienced

partner's time to be reasonable "based on the Court's familiarity with the rates charged by other firms in the San Diego area."

As noted in the declaration of Marcy Tiffany, one of the reasons that her billing rate is relatively low, even as compared to other civil rights litigators, is that their clients are parents of students with disabilities who are already saddled with expenses that usually far exceed those of parents with typically developing children.  In addition, the defendants in their cases are school districts, which also have limited funds.  The rates are set at a level intended to balance these consideration against their efforts to maintain quality representation.

Perhaps even more than other civil rights cases, the statutory scheme and needs of disabled students who are eligible for services under the IDEA are complex.  *Taylor v. Honig*, 910 F.2d 627, 628 (9th Cir. 1980).  Yet, in most civil rights cases, the attorney who represents a prevailing party is entitled to a bonus or multiplier for obtaining outstanding results and to compensate for taking the risk of not being compensated at all if their client is not found to be the prevailing party.  The purpose for the multiplier is to encourage attorneys to take these cases, despite the risk of nonpayment that they present. *See, Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).  However, even though all of these same considerations apply to cases under the IDEA, that statute does not permit a multiplier to be used.  It is thus even more important that attorneys who are willing to take special education cases, despite the risk of non-payment and no greater upside than receiving payment for their documented hours, at least receive a fee that is calculated at a hourly rate that is comparable to the rate received by other civil rights attorneys of similar background and experience.

**B.    The Hourly Rates Charged for Paralegal Services is Also Reasonable**

As the declarations submitted in support of this fee application also reflect, the rates requested for Dana Wilkins, who was an associate attorney for Wyner & Tiffany during much of the litigation, and Dona Wright, an experienced paralegal, are also

1   reasonable.  See Steven Wyner's Declaration for a discussion of Ms. Wilkins' and Ms.

2   Wright's professional qualifications.

## VI. ATTORNEYS' FEES SHOULD BE ADJUSTED TO COMPENSATE FOR DELAY IN PAYMENT

As the Supreme Court observed in *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283 (1989), "clearly, compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."  Thus, the Supreme Court held that it is appropriate for a district court to consider delay in payment as appropriate basis for increasing the amount to be awarded as reasonable attorneys' fees.

As the Ninth Circuit observed in *Gates v. Deukmejian*, 987 F.2d 1392, 1407 (9th Cir. 1992), "[t]he Jenkins Court, however, made clear that the district court has the discretion to choose the method by which it will adjust the fee to compensate for delay in payment and that it may do so 'by adjusting the fee based on historical rates to reflect its present value,' or 'otherwise."  Similarly, in *Romberg v. Nichols*, 953 F.2d 1152 (9th Cir. 1992) the circuit court remanded with the directive that "the district court should account for the propriety of an interest adjustment to compensate for the delay in recovery on remand."  *Id.* at 1164.

This case began five years ago, in 2006, when the District filed for due process against the Brenneises.  Obviously, school districts have public funds available to contemporaneously finance ongoing litigation, while parents have far more limited financial resources and their attorneys must incur years of delay before receiving payment.  It is particularly burdensome for a small firm like Wyner & Tiffany to be engaged in a case as extended as this one, which requires the attorneys to devote a substantial portion of their billable time for years on end.

Moreover, unlike actions under other civil rights statutes, the IDEA does not provide for a multiplier for attorneys who represent parents.  Thus, the special education

attorney only gets paid for the actual time spent on the case – and then only to the extent that their clients prevail, and only after several years' delay.  Under these circumstances, it is particularly appropriate to compensate the attorneys for the delay in payment.

## VII. THE TIME INCURRED IS JUSTIFIED

### A.    Counsel's Time Has Been Contemporaneously Recorded and Documented

A party seeking an award of attorneys' fees must submit evidence supporting the hours claimed by listing the hours spent and identifying the general subject matter of the time expended.  See *Fischer v. SJB-P.D., Inc.,* 214 F.32d 1115, 1121 (9th Cir. 2000).  As stated by Mr. Wyner and Ms. Tiffany in their declarations, the Brenneises' legal fees and related costs are fully documented and based on contemporaneous time records.   Each month throughout the course of the litigation, counsel generated a monthly billing statement, which was reviewed for accuracy by each timekeeper billing time that month, and then sent to the client.

As detailed below, counsel also made an effort to separate the billing entries into separate categories at the various stages of the litigation.  For example, counsel attempted to distinguish billing entries related to the District's appeal of the OAH Decision from those related to Student's appeal.  This, of course, involves somewhat arbitrary distinctions, as some billing entries, for example those related to the preparation and filing of the administrative record, are fairly applicable to "the litigation as a whole."  *Hensley,* 461 U.S. at 435.

Counsel then ran history bills that reflect the total hours billable to each category, which counsel has carefully reviewed, eliminating any billing entries that do not relate to matters on which Student prevailed, and, in some instances, indicating billing items that should be re-categorized as either related to the District's unsuccessful appeal or the compliance complaint.  In order to facilitate the Court's review of the billings, counsel has also prepared various summaries.

This evidence is entitled to considerable weight.  As the court in *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) observed, "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case."  To deny compensation for the time expended, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances."  *Id.* (emphasis added).

**B.    The History Bills and Summaries Explained**

### 1.   The Administrative Proceeding

Exhibit 1 is the comprehensive billing statement, or history bill, for work done by Wyner & Tiffany in connection with the consolidated due process hearings, reflecting attorneys' fees in the amount of $748,175.00, and detailing costs incurred in the amount of $47,428.17.

Exhibit 2 sorts the foregoing costs by category.

Exhibit 3 is a schedule of the foregoing fees at historical hourly rates, sorted by timekeeper.

Exhibit 4 shows the attorneys' fees adjusted to the rates at which the respective timekeepers billed their time in this federal court litigation ("Market Rate"), and totaling $864,154.00, representing an increase in fees of $115,979.00.

### 2.   The District's Federal Court Action

Exhibit 5 is the Wyner & Tiffany history bill with entries related to the District's appeal of the OAH Decision.  As can be seen, a number of the billing entries have been excised because they do not relate directly to the appeal of the OAH Decision, but rather to other claims in the District's complaint such as the District's own claim for attorneys' fees.

Exhibit 6 is a schedule reflecting only those time billing entries not excised from the history bill (Exhibit 5).  These billing entries are summarized by timekeeper, and total $350,775.80.

1    Exhibit 7 is a history bill with entries related to the complaint filed in this court by
2  Student.  Some of the billing entries included in this history bill could just as easily have
3  been allocated to Exhibit 5, as they are common to the litigation as a whole, and thus the
4  Brenneises are entitled to be compensated for these activities in connection with their
5  success on the District's appeal of the OAH Decision.  These billing entries are indicated
6  with a double check mark on Exhibit 7.

7    This history bill also includes a number of entries indicated by a single check
8  mark.  These are entries that relate to the Brenneise's efforts to recover attorneys' fees
9  related to the compliance complaint and are separated out in Exhibit 12, discussed below
10  under that heading.

11    Exhibit 8 is a schedule listing the double-checked items from Exhibit 7, reflecting
12  fees totaling $1,652.00.

13    Exhibit 9 is a history bill for Wyner Law Group, PC ("WLG"), showing billing
14  entries related to the District's appeal of the federal court action incurred after the
15  dissolution of Wyner & Tiffany.  These billing entries related primarily to the recent
16  efforts at settlement, and shows $15,878.00 in fees and $87.25 in costs.

17    Exhibit 10 is the same as Exhibit 9, except it reflects the billings for Tiffany Law
18  Group, P.C. ("TLG"), incurred after the dissolution of Wyner & Tiffany, and shows
19  $2,520.00 in fees and no costs incurred.

20    Exhibit 11 is a summary of all of the attorneys' fees in the amount of $370,825.80,
21  which reflects the billing entries from Exhibits 6, 8, 9 and 10, as well as the costs in the
22  amount of $4,301.98 reflected on Exhibit 5, and in the amount of $87.25 reflected on
23  Exhibit 9, resulting in a grand total of $375,215.03 in attorneys' fees and costs.

### 1.   The Compliance Complaint and Related Litigation

25    Exhibit 12 reflects fees incurred in connection with the preparation and filing of
26  the Brenneise's initial complaint. This complaint did not include a claim for the
27  compliance complaint attorneys fees, and accordingly all of the billing entries relating to
28  the substance of the complaint have been excluded; only billing entries related to the

1  mechanics of formatting and filing of the complaint are included.  The Brenneises are

2  entitled to these fees because this is the complaint that was subsequently amended to

3  include the claim for the compliance complaint fees, which could not be done if there had

4  been no complaint to begin with.

5      Exhibit 12 also includes fees related to the potential conflict that arose when the

6  District included claims against Mr. Wyner, individually, as well as Wyner & Tiffany, for

7  attorneys' fees, claiming that the due process case and appeal had been frivolous (for

8  which attorneys' fees could be obtained against the attorneys') and for an improper

9  purpose (for which attorneys' fees could be obtained against both the attorneys and the

10  Brenneises).  Counsel for the Brenneises were concerned that being named as co-

11  defendants with their clients with respect to these claims could possibly put them in

12  potential conflict position which, at the least, would require a waiver from their clients in

13  order to continue the representation.  Again, this situation was independent of what

14  specific claims the Brenneises raised in their complaint and thus applied to the

15  proceedings as a whole.  Accordingly, they are recoverable in connection with the

16  Brenneises having prevailed.[2]

17      Exhibit 13 is a history bill showing fees and costs incurred in connection with the

18  District's unsuccessful efforts to pursue the interlocutory appeal before the Ninth Circuit

19  Court of Appeal.

20      Exhibit 14 is a schedule of the billing entries from Exhibit 13 sorted by timekeeper.

21      Exhibit 15 is a history bill for WLG, reflecting fees incurred in connection with the

22  District's offer of judgment on the Brenneises' Third Claim for Relief.

---

[2] Indeed, these issues would have arisen even if the Brenneises had not filed their own complaint and Wyner & Tiffany had only represented them with respect to the District's appeal of the OAH Decision. Thus, these fees could also properly be considered as part of the fees incurred in defending against the District's appeal of the OAH Decision.

Exhibit 16, similarly, is a history bill for TLG, reflecting fees incurred in connection with the District's offer of judgment on the Brenneises' Third Claim for Relief.

Exhibit 17 is a summary of all of the billing entries related to the compliance complaint matter, which reflects the billing entries from Exhibits 12, 14, 15 and 16, as well as the costs reflected on Exhibit 13, reflecting total fees of $48,074.50, and costs of $98.50, for a grand total of $48,173.00.

Exhibit 18 is a history bill for WLG, with respect to attorneys' fees and costs incurred in connection with the preparation of this fee application, reflecting fees in the amount of $36,176.00.

Exhibit 19 is a history bill for TLG, with respect to attorneys' fees and costs incurred in connection with the preparation of this fee application, reflecting fees in the amount of $26,902.50.

Exhibit 20 is a summary of the grand total fees and costs requested in the amount of $1,398,048.70, as follows:

- With respect to the Consolidated Due Process Hearing, a total of $911,582.17.

- With respect to the District's Appeal of the Due Process Decision, at total of
- $375,215.03, of which $15,965.25 is allocable to WLG for its fees and costs (Exh. 9), and $2,520.00 is allocable to TLG for its fees (Exh. 10).

- With respect to the Brenneises' Third Claim for Relief regarding the CDE Compliance Complaint, a total of $48,173.00, of which $280.00 is allocable to WLG for its fees (Exh. 15), and $712.50 is allocable to TLG for its fees (Exh. 16).

- With respect to the attorneys fees and costs incurred in connection with this fee application, a total of $63,078.50, of which $36,176.00 is allocable to WLG (Exh. 18), and $26,902.50 is allocable to TLG (Exh. 19.)

## VIII.  THE BRENNEISES ARE ALSO ENTITLED TO RECOVER FEES AND COSTS INCURRED IN CONNECTION WITH THIS REQUEST FOR ATTORNEYS FEES

It is well established that attorneys are entitled to be compensated for the time spent preparing fee applications under federal fee-shifting statutes.  As the Ninth Circuit noted in *Anderson v. Director, Office of Workers Compensation Programs*, 91 F.3d 1322 (9th Cir. 1996), "[s]uch compensation must be included in calculating a reasonable fee because uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee eventually received."  91 F.3d at 1325.

Exhibits 18 and 19 are the history bills for WLG and TLG, respectively, related to the preparation of this fee application.

Exhibit 20 is a summary of fees and costs reflected on Exhibits 18 and 19.

The Brenneise reserve the right to submit a supplemental billing statement that includes the additional time incurred in defending this fee application at the conclusion of this case.

Dated: July 23, 2011                                        Respectfully submitted,

                                                                      Attorneys for the Brenneises


         Tiffany Law Group, P.C.                           Wyner Law Group, PC


By:  /S/_____        By:  /S/_____
          Marcy Tiffany                                           Steven Wyner

1

2                               CERTIFICATE OF SERVICE

3          I, the undersigned, declare under penalty of perjury, that I am over the age of 18

4   and that I am not a party to this action.  On July 25, 2011, I served PLAINTIFF'S

5   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

6   ATTORNEYS' FEES, EXHIBITS 1-20, AND DECLARATIONS OF MARCY

7   TIFFANY, STEVEN WYNER, BARRETT S. LITT, JANEEN STEEL, KATHLEEN M.

8   LOYER, GEORGE CROOK, CAROL A. SOBEL AND MAUREEN GRAVES, IN

9   SUPORT THEROF on the San Diego Unified School District by serving their counsel of

10  record electronically, having verified on the court's CM/ECF website that such counsel is

11  currently on the list to receive emails for this case, and that there are no attorneys on the

12  manual notice list.

13

14  Dated: July 25, 2011                                        /S/ Marcy J.K. Tiffany

15

16

17

18

19

20

21

22

23

24

25

26

27

28