AMY R. LEVINE, State Bar No. 160743
alevine@dwkesq.com
SARAH L. W. SUTHERLAND, State Bar No. 239889
ssutherland@dwkesq.com
WILLIAM B. TUNICK, State Bar No. 245481
wtunick@dwkesq.com
Dannis Woliver Kelley
71 Stevenson Street, 19th Floor
San Francisco, CA 94105
Telephone: (415) 543-4111
Facsimile: (415) 543-4384

Attorneys for Defendant / Plaintiff
SAN DIEGO UNIFIED SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.B., Allison Brenneise and Robert Brenneise,<br><br>Plaintiffs,<br><br>v.<br><br>San Diego Unified School District,<br><br>Defendant.<br><hr>San Diego Unified School District,<br><br>Plaintiff,<br><br>v.<br><br>T.B., a minor, Allison Brenneise and Robert Brenneise, his parents, Steven Wyner, and Wyner and Tiffany,<br><br>Defendants. | Case No.  08-CV-0028 MMA (WMc)<br>(consolidated)<br><br>**APPENDIX OF FOREIGN AUTHORITIES IN SUPPORT OF SAN DIEGO UNIFIED SCHOOL DISTRICT'S DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES**<br><br>Date:       October 3, 2011<br>Time:      2:30 p.m.<br>Dept:      Courtroom 5<br>Judge:     Honorable Michael M. Anello<br><br>Trial:  February 28, 2012<br><br>Complaint Filed:       January 4, 2008 |

DANNIS WOLIVER KELLEY
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    Defendant SAN DIEGO UNIFIED SCHOOL DISTRICT hereby submits this Appendix

2   of Foreign Authorities In Support Its Memorandum of Points and Authorities In Opposition to

3   Motion For Attorneys' Fees.  Attached are copies of the following authorities:

4    A)  *A.V. v. Burlington Township Bd. of Educ.*, 2008 WL 4126254 (D.N.J. 2008)
     B)  *Black v. City, Cty. of Honolulu*, 2010 WL 653026 (D. Haw. 2010)
5    C)  *Crawford v. San Dieguito High Sch. Dist.*, 2004 WL 5562035 (S.D.Cal. 2004)
     D)  *Deal v. Hamilton Cty. Dept. of Educ.*, 2006 WL 2854463 (E.D. Tenn. 2006)
6    E)  *Gallo v. Masco Corp.*, 2011 WL 1627942 (S.D.Cal. 2011)
     F)  *Gold v. NCO Fin. Sys., Inc.*, 2010 WL 3339498 (S.D. Cal. 2010)
7    G)  *Hawkins v. Berkeley Unif. Sch. Dist.*, 51 IDELR 185, 108 LRP 67509 (N.D. Cal.
8        2008)
     H)  *Houston Indep. Sch. Dist. v. V.P.*, 2007 WL 4570179 (S.D. Tex. 2007)
9    I)  *Hunter v. Oasis Fin. Solutions*, LLC, 2011 WL 1559256 (S.D. Cal. 2011)
     J)  *J.A.A.H. v. Modesto City Sch.*, 2009 WL 55951 (E.D.Cal. 2009)
10   K)  *J.C. v. Vacaville Unif. Sch. Dist.*, 2006 WL 2644897 (E.D.Cal. 2006)
11   L)  *J.M. v. Capistrano Unif. Sch. Dist.*, 2011 WL 1326905 (C.D.Cal. 2011)
     M)  *J.T. v. Medford Bd. of Educ.*, 2004 WL 2931045 (3rd Cir. 2004)
12   N)  *K.F. v. New York City Dept. of Educ.*,  2011 WL 3586142 (S.D.N.Y. 2011)
     O)  *Laura P. v. Haverford Sch. Dist.*, 2009 WL 1651286 (E.D. Penn. 2009)
13   P)  *Nash v. Life Ins. Co. of N. Am.*, 2011 WL 2493738 (S.D.Cal. 2011)
     Q)  *Rapu v. D.C. Pub. Sch.*, 2011 WL 2531059 (D.D.C. 2011)
14   R)  *S.A. v. Tulare Cty. Off. of Educ.*, 2009 WL 4048656 (E.D.Cal. 2009)
     S)  *Termine v. William S. Hart Union High Sch. Dist.*, Case No. CV 02-1114 SVW
15       (MANx) (C.D. Cal.)
     T)  *Torrance Unif. Sch. Dist. v. Wardour*, Case No. CV 07-07183 MMM (RCx) (C.D.
16       Cal.)
     U)  *Vega v. Tradesmen Int'l, Inc.*, 2011 WL 1157683 (S.D.Cal. 2011)
17

18

19   DATED: September 12, 2011              DANNIS WOLIVER KELLEY

20
                                           By:  /s/ Amy R. Levine
21                                             AMY R. LEVINE
                                               SARAH L. W. SUTHERLAND
22                                             WILLIAM TUNICK
                                               Attorneys for Defendant / Plaintiff
23                                             SAN DIEGO UNIFIED SCHOOL
                                               DISTRICT
24

25

26

27

28

DANNIS WOLIVER KELLEY
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

**EXHIBIT "A"**

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
A.V. and M.V. o/b/o B.V., Plaintiffs,
v.
BURLINGTON TOWNSHIP BOARD OF
EDUCATION, Defendant.

Civil No. 06-1534 (JBS).
Sept. 3, 2008.

John B. Comegno, II, Esq., Comegno Law Group, P.C., Moorestown, NJ, for Plaintiffs A.V. and M.V. on behalf of B.V.

James Schwerin, Esq., Parker McCay, P.A., Lawrenceville, NJ, for Defendant Burlington Township Board of Education.

***OPINION***
SIMANDLE, District Judge.

*\*1* Plaintiffs A.V. and M.V. originally filed this action on behalf of their minor child, B.V., against Defendant, the Burlington Township Board of Education (the "Board"), pursuant to the Individuals with Disabilities Educational Improvement Act ("IDEIA"), 20 U.S.C. § 1440 et seq., as an appeal of the final administrative decision of January 6, 2006 by the Honorable Jeff S. Masin, New Jersey Administrative Law Judge ("ALJ"). After the parties filed cross-motions for summary judgment, this Court issued an Opinion and Order [Docket Items 18 and 19] in which it, *inter alia,* (1) granted Plaintiffs' motion for attorneys' fees for the administrative phase of the case, but reduced the requested fees to correspond with Plaintiffs' limited success at the administrative level; (2) denied Plaintiffs' motion for summary judgment as to the issue of whether the ALJ erred in denying Plaintiffs' request to place B.V. out-of-district; and (3) found that the Board had failed to comply with the ALJ's decision and ordered the Board's immediate compliance. The parties subsequently reached a private settlement regarding the Board's obligations to B.V.

Presently before the Court is Plaintiffs' motion for attorneys' fees stemming from their post-administrative

efforts in this case [Docket Item 36]. For the reasons explained below, the Court will grant Plaintiffs' motion for attorneys' fees, but will reduce the award of fees as set forth herein on account of the limited nature of Plaintiffs' success in litigating this matter before this Court.

**I. BACKGROUND**

**A. Facts**

The facts surrounding B.V.'s disabilities and history of educational placements were reviewed in detail in the Court's June 27, 2007 Opinion and Order and are summarized here only insofar as they are relevant to the issues raised by the motion presently under consideration. B.V. was born in 1997 as one of three triplets, and experienced developmental problems starting at an early age. In April 2004, B.V. was diagnosed with attention deficit disorder, and over the next seven months, he was evaluated by numerous specialists who all found that B.V. experienced serious difficulty with math and reading.

During B.V.'s second-grade year, in December 2004, a disagreement arose between B.V.'s parents and his Child Study Team over B.V.'s Individualized Education Plan ("IEP"). While B.V.'s parents felt that he required three hours of individualized reading instruction each day, the Child Study Team ultimately approved only one hour per day of such individualized instruction. At the end of B.V.'s second-grade year, his achievement levels in math and reading reflected his continuing difficulties, and when his parents were presented with an IEP for the 2005-2006 school year, they rejected the IEP and requested that B.V. be placed out-of-district at the Newgrange School in Princeton, New Jersey.

**B. Procedural History**

On September 19, 2005, Plaintiffs filed a due process petition with the New Jersey Department of Education, Office of Special Education Programs. In their petition, Plaintiffs sought out-of-district placement of B.V. at the Newgrange School, as well as compensatory education. The ALJ did not grant Plaintiffs' request for out-of-district placement, but with respect to the 2005-2006 school year, the ALJ held that "the IEP prepared in April 2005[was] not reasonably calculated to provide [B.V.] with a meaningful educational benefit" under the IDEA. *M.V. and*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

*A.V. o/b/o B.V. v. Burlington Twp. Bd. of Educ.,* OAL Dkt. No. EDW 08276-05s and AGENCY Dkt. No.2006 10539 at 23. As this Court summarized in its June 27, 2007 Opinion (*"A.V.I"*):

> **\*2** Noting that the Board eliminated the forty minute per day of reading with B.V., the ALJ concluded that he saw no significant suggestion of such dynamic improvement occurring so as to support the abandonment of a course of instruction that seems to have been helping B.V. The ALJ stated that the Board must revise the IEP and provide B.V. with a meaningful educational benefit meaning that the Board must revise the IEP and provide for B.V. to have daily session with a certified reading specialist for at least forty minutes a day. In addition, the Board must assure that B.V. receives a multi-sensory oriented program throughout his curriculum. Finally, the ALJ ordered that if the district is unable to provide this support in-district, it must determine where such support may be provided.

> *A.V. v. Burlington Tp. Bd. of Educ.,* No. 06-1534, 2007 WL 1892469, at *5 (D.N.J. June 27, 2007) (internal quotations and citations omitted).

Plaintiffs appealed the ALJ's decision to this Court on March 31, 2006. In their four-count Complaint, Plaintiffs sought (1) attorneys fees and costs as the prevailing party at the administrative level; (2) a ruling that the ALJ erred in failing to place B.V. out-of-district; (3) a ruling that the ALJ erred in failing to place B.V. in the Newgrange School since the nature and severity of B.V.'s disabilities required an out-of-district placement; and (4) an order stating B.V. should be placed at Newgrange School immediately at the Board's expense because the Board failed to comply with the ALJ's Order. *Id.* at *1.

The parties filed cross-motions for summary judgment, and on June 27, 2007, the Court issued an Opinion and Order granting in part and denying in part the parties' motions. Specifically, the Court granted Plaintiffs' motion for attorneys' fees, but reduced the award of fees based on the limited success achieved at the administrative level, and denied Plaintiffs' motion with respect to the question of out-of-district placement at the Newgrange School. Additionally, based on Plaintiff's demonstration of the Board's "manifest" noncompliance with aspects of the ALJ's order, the Court ordered the Board to bring itself into compliance with the ALJ's order, and scheduled a compliance hearing "to assure that the Board has satisfied this mandate." *Id.* at *16.

Following the entry of the June 27, 2007 Opinion and Order, and prior to the scheduled compliance hearing, the parties reached a private settlement as to the educational support and compensatory education that the Board would provide B.V. (Docket Item 31.) The motion for attorneys' fees presently under consideration followed shortly thereafter.

## II. DISCUSSION

In their motion for attorneys fees, Plaintiffs argue that they were the prevailing parties in this action, and that they accordingly are entitled to an award of reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(i)(I). [FN1] In the Affidavit of Services submitted by Plaintiffs' counsel, John Comegno, II, Esq., Mr. Comegno attests that "[i]n order to reasonably handle this matter, at the Federal level, the total amount of fees and costs expended are $45,565.40." (Comegno Aff. ¶ 14.) In conjunction with their motion, Plaintiffs have submitted a series of invoices documenting the fees and costs they have incurred over the course of litigating this action. (Comegno Aff. Ex. 1.) Without contesting Plaintiffs' prevailing party status, Defendant argues that the quantity of fees and costs claimed by Plaintiffs is "grossly excessive." (Def.'s Opp'n Br. at 7.)

> FN1. See Note 7, *infra.*

**\*3** The Court's analysis as to whether Plaintiffs are entitled to attorneys' fees is twofold. First, the Court must address whether Plaintiffs prevailed in the proceedings before this Court. [FN2] *See P.G. v. Brick Tp. Bd. of Educ.,* 124 F.Supp.2d 251, 259 (D .N.J.2000). If the Court finds that Plaintiffs were the prevailing parties in this action, then the Court must assess the reasonable fees and costs that they are owed. *Id.* As the Court explains below, it finds that Plaintiffs did "succeed on [a] ... significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *John T. ex rel. Paul T. v. Delaware County Intermediate Unit,* 318 F.3d 545, 555 (3d Cir.2003). However, Plaintiffs' success in this action was limited, and the award of fees will be reduced accordingly.

> FN2. As the Court noted, *supra,* Plaintiffs were adjudged to be the prevailing parties at the administrative level in the Court's June 27, 2007 Opinion and Order, and fees and costs for Plaintiffs' efforts in those proceedings have already been awarded. *See A.V.,* 2007 WL 1892469, at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

*7. The present motion does not pertain to Plaintiff's fees at the administrative level.

**A. Prevailing Party Status**

While "[u]nder the 'American Rule,' parties are typically responsible for their own attorneys' fees," *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir.2006) (citation omitted), Congress has, in certain statutes, authorized an award of fees to a "prevailing party." *See, e.g.,* 20 U.S.C. § 1415(i)(3)(B); 42 U.S.C. § 1988. As the Court of Appeals explained in *John T.,*

> [t]he Supreme Court has held that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. Accordingly, the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

> *John T.,* 318 F.3d at 555 (internal quotations and citations omitted).

Moreover, as the Supreme Court held in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* a litigant cannot be a prevailing party for attorneys' fees purposes unless it has received court-ordered relief. 532 U.S. 598, 603-04 (2001) ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."). Hence, a plaintiff who benefits from a settlement agreement with a defendant will not be considered a prevailing party unless "the change in the legal relationship of the parties was in some way judicially sanctioned." [FN3] *P.N.* 442 F.3d at 853 (internal quotations and citations omitted). Additionally, "a claimant is not a prevailing party merely by virtue of having acquired a judicial pronouncement unaccompanied by judicial relief." *Select Milk Producers, Inc. v. Johanns,* 400 F.3d 939, 947 (D.C.Cir.2005) (cited approvingly in *People Against Police Violence v. City of Pittsburgh,* 520 F.3d 226, 234 (3d Cir.2008)).

> FN3. Such a judicial sanction would attach, the Court of Appeals has recognized, in the case of a stipulated settlement that "1) contains mandatory language; 2) is entitled 'Order,' 3) bears the signature of the District Court judge, not the parties' counsel; and 4) provides for judicial enforce-

ment." *P.N.* 442 F.3d at 853 (citation omitted).

Applying this standard to the facts of this case, the Court finds that, although Plaintiffs did not prevail on each and every claim raised in their Complaint, they were awarded sufficient judicial relief in *A.V. I* to be considered prevailing parties in this action. [FN4] Of the three substantive claims raised in Plaintiffs' Complaint, [FN5] Plaintiffs prevailed, in part, on one: the Court found, as Plaintiffs alleged in Count IV of the Complaint, that the Board had failed to comply in full with the ALJ's order, and ordered that the Board bring itself into compliance *"forthwith." A.V.,* 2007 WL 1892469, at *16 (emphasis in original). Specifically, the Court ordered the Board to

> FN4. That Plaintiffs' overall success in litigating this action was limited does not mean that Plaintiffs were not prevailing parties, so long as they "succeed[ed] on *any significant issue* in litigation which achieve [d] some of the benefit the parties sought in bringing suit." *John T.,* 318 F.3d at 555 (emphasis added). The limited nature of their success is accounted for in the Court's assessment of the reasonable fee award, *infra. See J.O. ex rel. C .O. v. Orange Tp. Bd. of Educ.,* 287 F.3d 267, 271 (3d Cir.2002) ("A party need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award."); *P.N.* 442 F.3d 848 at 856.

> FN5. Count I of the Complaint asserted that Plaintiffs were entitled to attorneys' fees for having prevailed before the ALJ.

*4 immediately comply with the ALJ's order to (1) determine whether the district is able to provide the ordered support and, if not, identify the out-of-district program where such support will be provided, and (2) assure that B.V. receives a multi-sensory oriented program. Further, the Board shall indicate (3) precisely how it intends to compensate for the total of the 2006 deficit of 76 hours and 40 minutes of one-to-one sessions with a certified reading specialist, integrated into B.V.'s curriculum, using the research-based, multi-sensory approach. The Board shall file an affidavit with the Court within twenty (20) days of the entry of the accompanying Judgment stating that they have complied with the ALJ's order and specifically indicating the Board's efforts going forward to satisfy each of these requirements.
*Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

In the Order accompanying the Opinion, the Court "granted in part" Plaintiffs' motion for summary judgment, stated that "IT IS ADJUDGED and DECREED that the Board has failed to comply with the final, lawful Administrative Order of January 5, 2006," and ordered that the relief set forth in the quoted language in the preceding paragraph be provided. (Docket Item 19 at 2.)

The Court finds that, in granting this part of Plaintiffs' motion for summary judgment and ordering the Board's compliance with the ALJ's order, the June 27, 2007 Opinion and Order impacted the legal relationship between the parties in a manner that was "judicially sanctioned." _P.N., 442 F.3d at 853_ (internal quotations and citations omitted). The Court's Order, which "carrie[d] all of the 'judicial imprimatur' necessary to satisfy _Buckhannon," People Against Police Violence,_ 520 F.3d at 233 (citation omitted), was neither a mere "judicial pronouncement unaccompanied by judicial relief," _Select Milk Producers,_ 400 F.3d at 947, nor an award of interim relief that was "ultimately 'reversed, dissolved, or otherwise undone by the final decision in the same case.' " _People Against Police Violence,_ 520 F.3d at 232 (quoting _Sole v. Wyner,_ --- U.S. ----, 127 S.Ct. 2188, 2195 (2007)). Rather, the Order provided "concrete and irreversible redress," _Select Milk Producers,_ 400 F.3d at 942, of the sort Plaintiffs sought in bringing this action-namely, a court order requiring the Board to cease its "manifest" noncompliance with, and "indifference to," the ALJ's order.[FN6] _A.V.,_ 2007 WL 1892469, at *15-16.

FN6. As the Court of Appeals has explained, "[t]he relief need not be the exact relief requested as long as it goes toward achieving the same goal." _J.O.,_ 287 F.3d at 271.

Because Plaintiffs succeeded in securing judicial relief that altered the legal relationship between the parties, namely, an order compelling the Board to provide compensatory education services with a certified reading specialist using a multi-sensory approach, the Court finds that Plaintiffs were "prevailing parties," and are entitled to an award of reasonable attorneys' fees.[FN7]

FN7. The Court recognizes that in compelling the Board's compliance with the ALJ's order, the Court exercised its authority pursuant to 42 U.S.C. § 1983, not the IDEA. See _A.V.,_ 2007 WL 1892469, at *16 (noting that in _Jeremy H. by Hunter v. Mount Lebanon School Dist.,_ 95 F.3d

272, 278 (3d Cir.1996), the Court of Appeals found that "whether or not an IDEA decision of a state hearing officer or appellate body is enforceable under IDEA directly, such a decision would seem to be enforceable under section 1983"). This comports with well-established law that an action under Section 1983 is used to redress violations of federal rights by persons acting under color of state law. The IDEA secured federal rights to Plaintiffs, and Defendant's violation thereof was redressable under Section 1983. Accordingly, the Court's award of attorneys' fees for Plaintiffs' success in securing an enforcement Order from this Court is made pursuant to 42 U.S.C. § 1988. See _Watkins v. Vance,_ 328 F.Supp.2d 27, 33 (D.D.C.2004) (finding that in an action to enforce rights under the IDEA, an award of attorneys' fees can be made under section 1988). The standard for assessing whether a litigant is a "prevailing party," and whether an award of fees is reasonable, is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " _John T.,_ 318 F.3d at 555 n. 4 (quoting _Hensley v. Eckerhart,_ 461 U.S. 424, 433 n. 7 (1983)).

**B. Reasonableness of Attorneys' Fees**

Having determined that Plaintiffs are entitled to an award of attorneys' fees, the Court must next determine the quantum of fees that would constitute a reasonable award. The Court's approach in assessing the reasonableness of a claim for attorneys' fees is governed by the "'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." _Maldonado v. Houstoun,_ 256 F.3d 181, 184 (3d Cir.2001) (citing _Hensley,_ 461 U.S. at 424). The Court addresses the reasonableness of Plaintiffs' attorneys' hourly rate and the number of hours spent litigating this case in turn below.

_1. Hourly Rate_

**\*5** As the Court recognized in _A.V. I,_ the reasonable hourly rate is determined by reference to the marketplace, _Missouri v. Jenkins,_ 491 U.S. 274, 285 (1989), and an attorney's customary billing rate is the proper starting point for calculating fees. _Cunningham v. City of McKeesport,_ 753 F.2d 262, 268 (3d Cir.1985). In the Affidavit of Services submitted in connection with the motion for attorneys' fees, Plaintiffs' counsel, John Comegno, II, Esq., states that at the time he worked on this case, his

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

hourly rate was $250 per hour,[FN8] that his associates bill between $150 and $175 per hour, and that his paralegals' rate is $75 per hour. (Comegno Aff. ¶ 6.) Mr. Comegno's Affidavit further states that such rates are consistent with the accepted hourly rate of qualified attorneys in his area of practice. (*Id.*) While the Board vigorously disputes the reasonableness of the time Plaintiffs spent litigating this case, it does not object to the reasonableness of these hourly rates themselves.

FN8. Mr. Comegno's current hourly rate is $300 per hour, but during the period when he worked on this case, his rate was $250 per hour. (Comegno Aff. ¶ 6.)

The Court reiterates its finding regarding the reasonableness of Plaintiffs' counsel's hourly rates that it announced in *A.V. I:*

This Court finds that $250 is a generous hourly fee for such litigation in this area, but it is justified if the attorney shows the efficiency normally associated with fifteen years of specialized practice in the field. The Court will apply the $250 hourly fee (or $175 and $150 per hour for associates, where applicable) for this case, while insisting upon the high degree of efficiency and effectiveness that an attorney rating such a fee should demonstrate.

*A.V.,* 2007 WL 1892469, at *9.

2. *Reasonableness of Fees*
Plaintiffs assert that "[i]n order to reasonably handle this matter, at the Federal level, the total amount of fees and costs expended [were] $45,565.40," (Comegno Aff. ¶ 14), and in their motion for attorneys' fees, they claim that these expenses were "necessary in order to adequately and appropriately handle this matter." (Pl.'s Br. at 12.)

Defendant argues that the hours spent litigating this matter do not justify the award of such a substantial fee in light of the limited nature of the relief Plaintiffs secured in this action. Additionally, since Plaintiffs' attorneys' work in this case after the Court issued its June 27, 2007 Opinion and Order resulted in a private settlement rather than additional Court-sanctioned relief, Defendant argues that Plaintiffs are not entitled to additional fees for such work. *See Buckhannon,* 532 U.S. at 603-04. Defendant further argues, with regard to Plaintiffs' work following the issuance of the June 27, 2007 Opinion and Order, that Plaintiffs' counsel overstaffed its work in preparing for an un-

complicated compliance hearing, and that Plaintiffs' fee award should be reduced accordingly.

The Court agrees with Defendant that Plaintiffs' award of attorneys' fees must be reduced to reflect their limited degree of success in this action in accordance with the principles articulated in *Hensley v. Eckerhart,* 461 U.S. at 424. In *Field v. Haddonfield Board of Education,* the court summarized those principles as follows:

**\*6** Where a plaintiff presents different claims for relief that are based on unrelated facts and legal theories, courts should exclude fees for time expended in unsuccessful claims. However, where much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where, as here, the plaintiff has achieved only partial success, a lodestar calculation of attorneys fees may result in an excessive amount. Again, the most critical factor is the degree of success obtained. In exercising its discretion in fixing the award, the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.

*Field v. Haddonfield Bd. of Educ.,* 769 F.Supp. 1313, 1322 (D.N.J.1991) (internal citations, quotations, and footnotes omitted); *see also Holmes v. Millcreek Tp. School Dist.,* 205 F.3d 583, 595-96 (3d Cir.2000) (awarding one-fourth of fees where plaintiff prevailed on some but not all claims); *A.V.,* 2007 WL 1892469, at *9 ("When a Court is unable to differentiate services for claims that were successful from services for claims that were unsuccessful ... the district court may consider a reduction based on the percentage of success achieved.").

Initially, the Court finds that the base quantum of expenditures submitted by Plaintiffs-$45,565.40-must be adjusted to reflect two considerations. First, the invoices submitted by Plaintiffs include a limited number of fees and expenses for services rendered on or before January 19, 2006. (Comegno Aff. Ex. 2.) These fees and expenses were already accounted for in *A.V. I,* which addressed "the fees and costs incurred by Plaintiffs from September 30, 2004 ... through January 19, 2006," *A.V.,* 2007 WL 1892469, at *6, and will be excluded from the award of fees for post-January 19, 2006 services.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT A**
**Page 5 of 7**

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

Next, the Plaintiffs' lodestar figure appears to account for $4,880.35 in fees and expenses rendered after the Court issued its June 27, 2007 Opinion. (Comengo Aff. Ex. 2.) These fees and expenses bear no relation to the achievement of the redress that the Court identified as the sole issue as to which Plaintiffs actually prevailed in this action in Subsection II.A, *supra*-namely, the Court's Order directing Defendant to comply with the ALJ's order. Just as "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," *Hensley,* 461 U.S. at 435 (internal quotations and citations omitted), work expended after the sole source of success was achieved likewise cannot be thought of as having contributed to that success.[FN9] The Court will accordingly exclude those fees invoiced for services rendered between June 2007 and September 2007 from its determination of reasonable attorneys' fees.

FN9. Moreover, because the private settlement between Plaintiffs and Defendant "lacks the necessary judicial *imprimatur*" to serve as the basis for an award of attorneys' fees, Plaintiffs' coun-

sel's efforts relating to such a settlement do not enter into the Court's "reasonable fees" calculus. *Buckhannon,* 532 U.S. at 603-04.

**\*7** With these adjustments taken into account, Plaintiffs' lodestar figure is properly derived from the fees and costs expended between January 20, 2006 and December 18, 2006.[FN10] (Comengo Aff. Ex. 2.) As the figures set forth in the margin indicate, this amounts to $37,990.05.[FN11] (*Id.*) That is, if Plaintiffs had "obtained excellent results" and prevailed on all or nearly all of their claims, then $37,990.05 would likely constitute a reasonable fee award in this case. *Hensley,* 461 U.S. at 435.

FN10. Plaintiffs' counsel did not render any services related to this case between December 18, 2006 and June 29, 2007. (Comengo Aff. Ex. 2.)

FN11. The monthly fees and costs expended by Plaintiffs between January 20, 2006 and December 18, 2006 are as follows:

| | |
|---|---|
| January 2006: | $665.00 |
| February 2006: | $0 |
| March 2006: | $15,545.00 |
| April 2006: | $0 |
| May 2006: | $0 |
| June 2006: | $3,284.38 |
| July 2006: | $599.75 |
| August 2006: | $292.50 |
| September 2006: | $1,657.44 |
| October 2006: | $9,950.69 |
| November 2006: | $5,190.48 |
| December 2006: | $804.81 |
| Total: | $37,990.05 |

(Comengo Aff. Ex. 2.)

As the Court has indicated, however, while Plaintiffs were successful enough to carry themselves "across the statutory threshold" as prevailing parties, *id.* at 433, they did not obtain excellent results. In *A.V. I,* the Court denied the primary relief Plaintiffs sought in bringing this action when it denied their motion for summary judgment as to the issue of whether the ALJ erred in denying Plaintiffs' request to place B.V. out-of-district. *A.V.,* 2007 WL 1892469, at *14. Additionally, while the Court agreed

with Plaintiff that the Board had flouted its obligation to comply with the ALJ's order, "the Court [did] not deem it appropriate to order Plaintiffs' primary requested relief-placement at Newgrange School-despite the fact that the Board [did] not appear to be complying with the ALJ's order." *Id* . at *15. The dominant thrust of Plaintiffs' Complaint, by far, was their claim that the Board should have placed B.V. into an out-of-district program, and that the ALJ erred in failing to compel the Board to place B.V. into the Newgrange School, none of which Plaintiffs achieved in this case.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)
**(Cite as: 2008 WL 4126254 (D.N.J.))**

Plaintiffs' success in this action was limited to having obtained, first, an Order from this Court compelling the Board to comply with the ALJ's order, and, second, an award of attorneys' fees for having prevailed, in part, in the proceedings before the ALJ.[FN12] Bearing in mind that "the most critical factor [in the assessment of the reasonableness of an attorney fee award] is the degree of success obtained," *Field,* 769 F.Supp. at 1322, the award in this case must reflect both the Plaintiffs' success on these matters and their lack of success on the remaining claims in this case. As was the case in *A.V. I,* however, "the Court here cannot achieve an accurate picture of which services [rendered by Plaintiffs' counsel] pertain to which type of relief sought by Plaintiffs by performing a line-by-line analysis of Plaintiffs' counsels' billing records," because the information reflected in those records is insufficiently specific for the Court to

> FN12. The Court of Appeals has recognized that "the fee reduction rationale of *Hensley* applies by force of the Court's reasoning to fees generated in the litigation of a fee petition ..." *Maldonado,* 256 F.3d at 188 (citation omitted).

identify [a particular entry] as pertaining to a certain issue or type of relief sought.... This being the case, the Court will employ a percentage of reduction based on the significance of the overall relief obtained by the Plaintiffs in relation to the hours reasonably expended on the litigation.
*A.V.,* 2007 WL 1892469, at *10; *see also Field,* 769 F.Supp. at 1322; *Hensley,* 461 U.S. at 435.

**\*8** The Court will accordingly reduce Plaintiffs' lodestar figure of $37,990.05 as follows. Of the four counts alleged in the Complaint, Plaintiffs prevailed, in part, on two. The two counts on which they prevailed, moreover, were undoubtedly the least complicated issues in this case-a relatively straightforward claim for attorneys' fees for having prevailed before the ALJ (Count I), and a motion to compel the Board to comply with the ALJ's order to provide B.V. with the services of a reading specialist and with a research-based, multi-sensory educational program (Count IV). An inspection of the Complaint and the parties' motion practice reveals that Plaintiffs' counsel devoted the bulk of their efforts to pursuing their unsuccessful claims seeking an out-of-district placement for B.V. While certain efforts by counsel, such as drafting the facts sections in the Complaint and the briefs, could be thought of as having contributed both to the successful and unsuccessful claims, an examination of the submis-

sions again reveals that the majority of these efforts were directed toward attempting to prove B.V.'s need for out-of-district placement. Considering that Plaintiffs partially prevailed on the two least complicated claims in this case, and devoted the majority of their efforts to litigating their unsuccessful claims, the Court concludes that one-fourth of Plaintiffs' $37,990.05 lodestar figure represents a reasonable fee award. Consequently, the Court will award Plaintiffs attorneys' fees of $9,497.51.[FN13]

> FN13. Plaintiffs note in their submissions that Defendant has, to date, failed to pay the $14,926.97 fee award that the Court entered in *A.V. I.* Lest there be any confusion, the $9,497.51 in fees awarded herein represents the reasonable fee award for Plaintiffs' efforts between January 20, 2006 and December 18, 2006, and is entered in addition to, not in lieu of, the $14,926.97 Judgment entered on June 27, 2007.

**III. CONCLUSION**
For the reasons discussed above, the Court will grant Plaintiffs' motion for attorneys' fees, but in light of the moderate success achieved in this action, will reduce Plaintiffs' requested fees from $45,565.40 to $9,497.51. The accompanying Order will be entered.

D.N.J.,2008.
A.V. v. Burlington Tp. Bd. of Educ.
Not Reported in F.Supp.2d, 2008 WL 4126254 (D.N.J.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT "B"**

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

▷
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, D. Hawai'i.
Sharon BLACK,, Plaintiff(s),
v.
CITY and COUNTY OF HONOLULU, Defendant(s).

Civil No. 07–00299 DAE–LEK.
Feb. 22, 2010.

<u>Mark S. Beatty</u>, Tax Business and Da Kine, Kaneohe, HI, for Plaintiff(s).

<u>John P. Moran</u>, Rebecca Estrada Quinn, Office of Corporation Counsel, Honolulu, HI, for Defendant(s).

***ORDER ADOPTING MAGISTRATE'S REPORT OF SPECIAL MASTER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND DEFENDANT'S OBJECTIONS TO PLAINTIFF'S MOTION FOR COSTS***

<u>DAVID ALAN EZRA</u>, District Judge.

**\*1** A Report of Special Master having been filed and served on all parties on January 29, 2010 and no objections having been filed by any party,

IT IS HEREBY ORDERED AND ADJUDGED that pursuant to <u>Title 28, United States Code, Section 636(b)(2)</u> and Local Rule 53.1, the Report of Special Master is adopted as the opinion and order of this court.

IT IS SO ORDERED.

***REPORT OF SPECIAL MASTER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND DEFENDANT'S OBJECTIONS TO PLAINTIFF'S MOTION FOR COSTS***

<u>LESLIE E. KOBAYASHI</u>, United States Magistrate Judge.

Before the Court, pursuant to a designation by United States District Judge David Alan Ezra, are Plaintiff Sharon Black's ("Plaintiff") Motion for Attorney Fees

("Motion"), filed on October 30, 2009, as amended by Plaintiff's supplement ("Supplement") filed on November 23, 2009, and Defendant City and County of Honolulu's ("the City") Objections and Memorandum in Opposition to Plaintiff's Motion for Costs ("Objections"), filed December 22, 2009. Plaintiff filed her Motion for Costs on December 15, 2009. This Court construes Plaintiff's Motion for Costs as her Bill of Costs. Plaintiff requests an award of $312,630.00 in attorneys' fees, $14,731.13 in general excise tax, and $8,395.00 in non-taxable costs.<u>FN1</u> In the Bill of Costs, Plaintiff requests $13,342.10 in taxable costs. The City filed its memorandum in opposition to the Motion on December 4, 2009, and Plaintiff filed her reply on December 19, 2009. The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai'I ("Local Rules") After reviewing the parties' submissions and the relevant case law, the Court FINDS AND RECOMMENDS that Plaintiff's Motion be GRANTED IN PART AND DENIED IN PART, and that the City's Objections to Plaintiff's Bill of Costs be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the district judge GRANT Plaintiff $92,827.71 in attorneys' fees and DENY Plaintiff's request for non-taxable costs. The Court also RECOMMENDS that the district judge tax $7,159.32 in costs against the City and in favor of the City and DENY the remainder of Plaintiff's requested costs WITHOUT PREJUDICE.

<u>FN1.</u> The Supplement amends the Motion's original request of $319,883.00 in attorneys' fees and $23,492.00 in non-taxable costs.

***BACKGROUND***

On June 1, 2007, Plaintiff filed her Complaint against Defendants Boisse Correa, City and County of Honolulu–Honolulu Police Department ("HPD"), Glen Kajiyama, Stephen Watarai, Kevin Lima, Carlton Nishimura, Owen Harada, William Axt, City and County of Honolulu–Medical Examiners Office ("MEO"), Kanthi De Alwis, William W. Goodhue, Gayle Suzuki, Alicia Kamahele, City and County of Honolulu–Human Resources Department ("HRD"), Denise Tsukayama, Institute for Human Services ("IHS"), Lynn Maunakea, City and County of Honolulu–Prosecuting Attorney Department ("PAD"), Chris Van Marter, Hawaii Government Employees Asso-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

ciation ("HGEA"), Lee Matsui, and Mufi Hannemann, Mayor of the City and County of Honolulu.

*2 Plaintiff was hired by HPD in 1992 as a project coordinator. Her duties included researching mental health issues. Plaintiff is a member of HGEA. Plaintiff filed a sexual harassment lawsuit in August 1997. Defendant Correa, the HPD Chief of Police, was one of the defendants in the sexual harassment action. The action was settled in November 2001. The settlement agreement provided for a $612,500.00 cash payment to Plaintiff. The agreement included various obligations which expired in November 2004 and various other continuing obligations. In the instant action, Plaintiff alleges that HPD began a "program of harassment" against her in October 2004 in retaliation for filing the sexual harassment action.

On or about May 2005, Defendant Harada gave Plaintiff an assignment to investigate the wait time for HPD officers at Queens Hospital. During this assignment, Plaintiff became concerned about the number of suicidal people who, after being escorted to Queens Hospital by HPD officers, committed suicide shortly after being released from Queens Hospital. Plaintiff, who had previously conducted authorized research at the MEO, called and asked for permission to conduct research about the suicides. Defendants De Alwis and Kamahele asked Plaintiff to put her request in an e-mail. Defendant De Alwis wrote back to Plaintiff, giving her permission to conduct research and providing her with extensive confidential information about the suicides. The e-mail was sent to both Plaintiff's work and home e-mail. Plaintiff conducted research at MEO from June 2005 through August 2005, with the assistance, and in full view of, various MEO staff. Plaintiff alleged that none of the MEO staff informed her of any security procedures.

On August 4, 2005, Defendant Kamahele accused Plaintiff of unauthorized printing. Plaintiff returned the printed documents the next day. Defendant De Alwis subsequently made an oral complaint to Defendant Kajiyama about Plaintiff's printing of documents. The complaint led to an administrative investigation and criminal charges of unauthorized computer access and theft in the fourth degree for unauthorized copying. Plaintiff was tried and acquitted of both charges. Plaintiff alleged that the charges were based on fraudulent statements by HPD and MEO personnel and were caused by negligent supervision within HPD and the negligent information security policies of MEO.

The Complaint alleged the following claims: negligence against the MEO and MEO agents regarding the maintenance of confidential information ("Count 1"); negligent supervision against the HPD and HPD agents ("Count 2"); negligent hiring, training, and supervision against HPD, HPD agents, and Mayor Hannemann ("Count 3"); negligent hiring, training, and supervision against MEO and MEO agents ("Count 4"); breach of contract against HGEA and Defendant Matsui for failure to investigate and represent Plaintiff in the incidents at issue in this case ("Count 5"); negligent infliction of emotional distress ("NIED") against HPD, MEO, HGEA, Mayor Hannemann, and their agents ("Count 6"); defamation against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter ("Count 7"); conspiracy against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Van Marter, HRD, and Tsukayama ("Count 8"); interference with business relationship against Defendants IHS, Maunakea, HPD, and HPD agents ("Count 9"); [FN2] retaliatory breach of employment contract against HPD and HPD agents ("Count 10"); retaliatory breach of the 2001 settlement agreement against Defendants HPD, Correa, Kajiyama; Watarai; Lima; Nishimura, Harada, Axt, HRD, and Tsukayama ("Count 11"); [FN3] sexual harassment against HPD and agents of HPD ("Count 12"); retaliation against Defendants HPD, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt ("Count 13"); a 42 U.S.C. § 1983 claim for violation of her First Amendment right to petition the government against HRD and Tsukayama ("Count 14"); a § 1983 claim for violation of her First Amendment and Fourteenth Amendment right to file a lawsuit against Defendants HPD, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt ("Count 15"); a § 1983 claim for violation of her First Amendment right to association against Defendants MEO, De Alwis, Goodhue, Suzuki, and Kamahele ("Count 16"); § 1983 claims for violations of her Fourth Amendment right to be free from arrest and from prosecution without probable cause, and violations of her equal protection rights against Defendants HPD, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter ("Count 17", "Count 18", and "Count 19"); intentional infliction of emotional distress ("IIED") against all defendants ("Count 20"); a claim for punitive damages against all defendants ("Count 21"); and a claim for injunctive relief against Defendants Hannemann, HPD, MEO, and PAD ("Count 22"). Plaintiff sought: back wages and benefits; reinstatement, "instatement", promotion, or front pay in lieu of job changes; general damages; compensatory dam-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT B**
**Page 2 of 21**

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
(Cite as: 2010 WL 653026 (D.Hawai'i))

ages; exemplary/punitive damages; attorney's fees and costs; injunctive relief; declarative relief; and any other appropriate relief.

> FN2. Plaintiff alleged that HPD and its agents knew that she was involved with feeding the homeless on her personal time and that HPD agents reported derogatory information about her to IHS. IHS, through Defendant Maunakea, the director of IHS, revoked her authorization to use the IHS cooking facilities. Plaintiff alleged that Defendant Maunakea knew or should have known the accusations HPD informed her of were false, pretextual, and retaliatory. Plaintiff also alleged that Defendant Maunakea treated her more harshly than other persons who used the IHS cooking facilities.

> FN3. Plaintiff alleged that the 2001 settlement agreement required HPD to correct and prevent harassment. Defendant Tsukayama, as the representative of HRD, was responsible for investigating any breaches of these duties.

*3 Defendants HPD, MEO, HRD, Tsukayama, PAD, and Mayor Hannemann ("City Defendants") filed a motion to dismiss on July 11, 2007, and Defendants De Alwis, Goodhue, Suzuki, and Kamahele ("Joinder Parties") filed a substantive joinder thereto on July 18, 2007. Defendants HGEA and Matsui ("HGEA Defendants") filed a motion to dismiss on July 23, 2007, and Defendants Correa, Kajiyama, and Nishimura ("Correa Defendants") filed a motion to dismiss on July 25, 2007. On September 20, 2007, the district judge issued an order granting the HGEA Defendants' motion and granting in part and denying in part the City Defendants' motion and the Correa Defendants' motion.[FN4] Thus, the HGEA Defendants and Mayor Hannemann were dismissed from the action;[FN5] Counts 6, 8, 9, 10, 12, 14, 17, 18, and a portion of 13 were dismissed, and Counts 11, 14, 15, 19, and 21 were stricken as redundant.

> FN4. The district judge issued an amended order on October 30, 2007.

> FN5. The parties also stipulated to dismiss all claims against the HGEA Defendants with prejudice on October 31, 2007.

On October 31, 2007, the parties stipulated to dismiss all claims against Defendants IHS and Maunakea with prejudice.

On November 9, 2007, pursuant to stipulation, Plaintiff filed her First Amended Complaint.[FN6] The First Amended Complaint replaced HPD, MEO, HRD, and PAD with the City, and added Defendant Wayne Hashiro, in his official capacity, for purposes of injunctive relief. The First Amended Complaint alleged the following claims: negligence against Defendants the City, De Alwis, Goodhue, Suzuki, and Kamahele for MEO's information security policy ("Count 1"); negligent acts during supervision against Defendants the City, Lima, Nishimura, Harada, and Axt ("Count 2"); negligent hiring, training, and supervision against Defendants the City and Hashiro ("Count 3"); NIED against Defendants Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, and Kamahele ("Count 4"); defamation against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter ("Count 5"); conspiracy against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Van Marter, and Tsukayama ("Count 6"); retaliation in violation of various laws, including Hawai'I Revised Statutes § 378–62 and Title VII, against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt ("Count 7"); a § 1983 claim for violation of her First Amendment right to association against Defendants MEO, De Alwis, Goodhue, Suzuki, and Kamahele ("Count 8"); a § 1983 claim/malicious prosecution claim for violation of her right to be free from prosecution without probable cause ("Count 9"); IIED against all defendants ("Count 10"); a request for injunctive relief ("Count 11").

> FN6. On November 10, 2007, Plaintiff filed an Errata to the First Amended Complaint to correct or clarify various matters.

On November 19, 2007, Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Tsukayama, Van Marter, and Hashiro filed a Motion to Dismiss Pursuant to Rule 12(b)(6); or Alternatively, Motion for More Definite Statement Pursuant to Rule 12(e); or, Alternatively, Motion to Strike Pleadings Pursuant to Rule 12(f). On January 22, 2008, the district judge issued an order granting the motion in part and denying it in part. The district judge dismissed the portions of Count 7 alleging violations of 42 U.S.C. §§ 1981, 1985, and 1986; and the portion of Count 8 alleging a claim against the City. The district judge also noted that Plaintiff agreed to delete Count

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
(Cite as: 2010 WL 653026 (D.Hawai'i))

11.

**\*4** On August 18, 2008, the district judge issued his Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("Summary Judgment Order"). The district judge granted summary judgment in favor of all defendants as to Counts 4, 6, and 8. The district judge granted summary judgment in favor of Defendants Axt and Suzuki as to all claims against them because Plaintiff conceded that she did not have any evidence against them. The district judge also granted summary judgment in favor of: Defendant Van Marter as to all claims against him; Defendants Lima, Watarai, Nishimura, and Harada as to Plaintiff's § 378–62 claim; and Defendants De Alwis, Goodhue, Kamahele, Tsukayama, Hashiro, Harada, the MEO, and Lima as to Plaintiff's IIED claim.

On October 31, 2008, Defendants filed a Motion to Dismiss for Lack of Jurisdiction. On February 2, 2009, the district judge issued and order granting the motion in part and denying it in part without prejudice. The district judge dismissed Plaintiff's negligence based claims (Counts 1, 2, and 3), the portion of Count 7 alleging § 1983 constitutional claims, and Count 10, Plaintiff's IIED claim. The motion was denied without prejudice as to Count 5—Plaintiff's defamation claim, Count 9—Plaintiff's malicious prosecution claim, and the portions of Count 7 alleging retaliation in violation of § 378–62 and Title VII.

Defendants filed another motion for summary judgment on April 3, 2009. On June 22, 2009, the district judge issued an order granting the motion in part and denying it in part. The district judge granted summary judgment in favor of Defendants as to Count 5 and the portion of Count 7 alleging retaliation in violation of § 378–62. The district judge also granted summary judgment in favor of Defendants Kamahele, Goodhue, De Alwis, Watarai, Lima, Nishimura, and Harada as to Count 9. The district judge denied summary judgment as to Count 9 against Defendants Correa and Kajiyama and as to the portion of Count 7 alleging retaliation in violation of Title VII against the City.

A jury trial began on October 6, 2009. On October 9, 2009, the district judge granted the defense's oral motions to dismiss Defendants Correa and Kajiyama and denied the City's motion to dismiss the Title VII claim. Thus, only Plaintiff's Title VII claim was submitted to the jury. On October 16, 2009, the jury returned a verdict in favor

of Plaintiff and awarded Plaintiff $150,000.00 in emotional damages. Final judgment was entered on October 27, 2009 in favor of Plaintiff and against the City with respect to her Title VII retaliation claim and in favor of Defendants as to all other counts.

On October 26, 2009, the City filed a Renewed Rule 50(b) Motion for Judgment as a Matter of Law and/or in the Alternative Rule 59 Motion for New Trial ("Rule 59 Motion"). The district judge denied the motion in a November 25, 2009 order.

In the instant Motion, Plaintiff argues that she is the prevailing party pursuant to 42 U.S.C. § 2000e–5(k) and seeks $319,883.00 in attorney's fees and $23,493.00 in non-taxable costs. The requested fees represent 1,163.21 hours at $275 per hour. Plaintiff contends that the requested hourly rate and the number of hours expended are reasonable because the action was difficult to litigate due to the lack of direct evidence, the prominent positions some of the defendants have in the community, and the communication difficulties between Plaintiff and her counsel, Mark Beatty, Esq. Further, although Mr. Beatty has only been practicing law since 2004, he has significant other experiences that contributed to the case. Plaintiff argues that her jury verdict on the Title VII claim against the City essentially proved the claims of defamation, conspiracy, and retaliation which she alleged against the other defendants. Plaintiff also argues that a higher award of attorney's fees is warranted because her action achieved a meaningful public benefit. As to the request for non-taxable costs, Plaintiff argues that Mr. Beatty is entitled to $8,395.00 that he incurred to attend two conferences during which he consulted with experienced attorneys about Plaintiff's case. He also requests $15,098.00 in general excise taxes on his attorney's fees as a non-taxable expenses.

**\*5** In her Supplement, Plaintiff clarifies that Mr. Beatty received his law degree in June 2004,[FN7] he worked as an intern at the River of Life legal clinic from August 2001 to June 2003 and he filed a federal action as a pro se litigant in May 2001. The case was decided on summary judgment and appealed to the Ninth Circuit. Plaintiff asks the Court to consider Mr. Beatty's legal experience before he was admitted to the Hawai'I bar. Plaintiff argues that $175 per hour is a reasonable hourly rate for Mr. Beatty, and there are other reasons which warrant increasing the rate further. Plaintiff points to the two conferences which Mr. Beatty attended and states that experienced experts helped him come up with a trial strategy

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT B**
**Page 4 of 21**

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

during the conference sessions. This was the trial strategy Mr. Beatty used at trial. Plaintiff also argues that Mr. Beatty is entitled to a higher rate because he took the case on a contingency basis, which has inherent risks.

> FN7. The Supplement states June 2006, but this is apparently a typographical error because the Hawaii State Bar Association website states that Mr. Beatty was admitted to the bar in June 2004.

| | |
|---|---|
| Attorney Fees for Mark Beatty | $309,897.50 [8] |
| GE taxes for Mark Beatty | $ 14,602.37 |
| Attorney Fees for Bruce Sherman | $ 2,732.50 |
| GE taxes for Bruce Sherman | $ 128.76 |
| Non taxable Expenses for Mark Beatty | $ 8,395.00 |
| Total | $335,756.13 |

> FN8. The Court notes that there was a mathematical error in Mr. Beatty's calculation of his total hours. The Court has corrected the error and adjusted Plaintiff's request accordingly.

[Supplement at 10; Exh. 10 to Decl. of Mark Beatty ("Beatty Suppl. Decl.").]

In its memorandum in opposition to the Motion, the City argues that the Court should consider awarding no attorney's fees to Plaintiff because her fee request is "grossly inflated and filed in bad faith." [Mem. in Opp. at 2.] The City argues that the claim which Plaintiff prevailed on was only a small portion of her case. The original Complaint named twenty-two defendants, alleged twenty counts, and was ninety-one pages long. Further, her claims against the HGEA Defendants and IHS and Maunakea ("IHS Defendants") were wholly distinct from her claims against the other defendants. Plaintiff agreed to dismiss the claims against the HGEA Defendants and the IHS Defendants with prejudice. Plaintiff's First Amended Complaint, as amended by her errata, alleged ten claims. Only two claims went to trial, the Title VII retaliation claim against the City, and the malicious prosecution claim against Defendants Correa and Kajiyama. Plaintiff only prevailed on her claim against the City. The City argues that Plaintiff inflated the fees incurred in this case by overly complicating the claims alleged.

The City also contends that Mr. Beatty unnecessarily prolonged the case with unrealistic settlement demands.

Plaintiff also supplements the attorney's fee request in the Motion to include work done by Bruce Sherman, Esq. Plaintiff also amends her request to seek a total of 1,124.71 hours for Mr. Beatty. Mr. Beatty deducted various hours for work done on the claims against the HGEA Defendants and for hours which he could not provide supporting information. Mr. Beatty also added time spent on post-trial motions. Thus, Plaintiff's amended request is as follows:

He repeatedly alleged that the case was worth millions. At trial, he requested general damages between $200,000.00 and $300,000.00. The jury only awarded $150,000.00. Further, the City argues that the significant problems between Plaintiff and Mr. Beatty unnecessarily increased the fees in this case.

*6 The City argues that the following specific time entries should be excluded in their entirety: 98.0 hours attending seminars; 31.5 hours attributable to the conflict between Plaintiff and Mr. Beatty; 15.0 hours trying to obtain a restraining order to stop Plaintiff's criminal trial; 42.0 hours spent attending her criminal trial; 34.5 hours representing Plaintiff before the HPD Administrative Review Board; 17.0 hours on an unsuccessful motion for reconsideration; and 7.5 hours or more spent waiting for the jury to return the verdict. The City further argues that the time for the following tasks is excessive and should be reduced: 7.2 hours writing the attorney-client agreement; 136.5 hours drafting the Complaint and First Amended Complaint; 27.0 hours preparing a settlement brochure; 35.0 hours relating to the opposition to the motion to dismiss filed January 4, 2008; 103.0 hours relating to the opposition to the motion for summary judgment filed July 24, 2008; 9.0 hours relating to a status conference on default judgment; 12.0 hours preparing settlement conference statements; 103.0 hours preparing and taking ten depositions; 8.0 hours preparing Plaintiff's pretrial statement; 16.0 hours compiling trial exhibits; 3.0 hours writing subpoenas for trial witnesses; 19.0 hours billed per trial day; and 61.5 hours relating to the instant Motion.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
(Cite as: 2010 WL 653026 (D.Hawai'i))

The City argues that the Court should also reduce Mr. Beatty's time because he did not provide adequate documentation and because he had to perform all of the tasks that a secretary or paralegal would normally perform because he does not have an office staff. The City also argues that the Court must reduce Mr. Beatty's time for work done on unrelated, unsuccessful claims. Further, the City asserts that the requested hourly rate is unreasonable. Plaintiff provides no support for Mr. Beatty's rate, and he advertises that his hourly rate for litigation representing plaintiffs in similar cases is $100 per hour. Plaintiff has not submitted any evidence of the prevailing market rate for comparable attorneys. The attorneys Plaintiff refers to have more skill and experience than Mr. Beatty has. The City also notes that, although Mr. Beatty was admitted to the bar in June 2004, according to his resume, he apparently did not begin practicing law until 2006. Thus, when he took Plaintiff's case, he had no real legal experience.

If the Court is inclined to find that attorney's fees are warranted, the City argues that Plaintiff is entitled to no more than 400 hours at $100 per hour, for a total of $40,000.00. [Mem. in Opp. at 2.] Plaintiff is not entitled to any upward adjustment because the case should have been a simple Title VII retaliation case, there was no public benefit, the quality of Mr. Beatty's work was not exceptional, and the case did not preclude Mr. Beatty from doing other work. Finally, the City argues that Plaintiff is not entitled to recover the costs of Mr. Beatty's general education at seminars.

*7 In her reply, Plaintiff states that Mr. Beatty excluded time spent on the claims against the HGEA Defendants, the IHS Defendants, and Mayor Hannemann. She reiterates that all other claims were subsumed in the Title VII claim, which she obtained significant relief on. Thus, Mr. Beatty's fees should not be reduced for limited success. Plaintiff also argues that the City has unclean hands because it never made a good faith settlement offer. Plaintiff contends that the disputes she had with Mr. Beatty were prompted by the emotional distress which the City caused and that conflicts with clients under emotional distress are part of their representation. Plaintiff argues that all of the specific entries challenged by the City are compensable and that Mr. Beatty's documentation is adequate. Finally, Plaintiff concedes that Mr. Beatty advertises a $100 per hour rate, but this is only an entry-level rate for new customers and it is inapplicable in this case.[FN9]

FN9. Plaintiff's reply requests the same award

sought in the Motion, not the adjusted award sought in the Supplement. This Court, however, will hold Plaintiff to the concessions she made in the Supplement.

**Bill of Costs**

In her Bill of Costs, Plaintiff seeks $13,342.10 in taxable costs and states that her request was timely filed within thirty days of the district judge's order on the Rule 59 Motion, as required by Local Rule 54.2. Plaintiff argues that all of the ten witnesses who she deposed played some part in the trial and Defendants listed all ten as potential trial witnesses, which Plaintiff argues is an admission that they had relevant information. As for her copying costs, Plaintiff states that counsel made three copies of motion documents, two courtesy copies for the court and one copy for himself. For the Complaint, Plaintiff included three filed copies and the copies used to serve Defendants.

In its Objections, the City argues that Plaintiff waived the taxation of costs because her Bill of Costs was untimely. The district judge denied the Rule 59 Motion on November 25, 2009. According to the current Local Rules, which took effect on December 1, 2009 and apply to all actions pending on that date, a party has fourteen days from an order denying a Rule 59 motion to serve a bill of costs. Plaintiff's Bill of Costs was therefore due on December 9, 2009, but she did not file it until December 15, 2009. The City, however, acknowledges that the district court may apply the previous version of the Local Rules when justice requires.

The City also objects because the Bill of Costs does not contain a verification that the costs were necessarily incurred in this case. As to Plaintiff's specific requests, the City objects to the request for videotaped depositions because there was no indication that any of the witnesses would be unavailable for trial. According to the City, Mr. Beatty informed defense counsel that the reason for the videotaped depositions was so that Plaintiff, who chose not to attend the depositions, could watch them. The City argues that the costs of videotaping depositions for a client's convenience is not taxable. The City also argues that the costs of Goodhue's, Tsukayama's, and Axt's depositions should be disallowed in their entirety because they did not testify at trial and the Bill of Costs does not establish that those deposition transcripts are taxable. The City states that the only reason it included those witnesses on its witness list was because Plaintiff included them in his pretrial statement. The City contends that the inclusion

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

was not an admission that those witnesses had relevant information for trial. The City also objects to the additional cost of condensed and electronic deposition transcripts.

*\*8* The City argues that the $150 cost for autopsy reports and the costs to serve the Complaint on all of the individual defendants were not necessarily incurred. Finally, the City contends that Plaintiff's copying costs were not necessarily incurred because documents were longer than they needed to be. For example, Plaintiff had 1,337 pages of trial exhibits, but only admitted 70 pages at trial.

## DISCUSSION
### I. *Entitlement to Attorneys' Fees*

The jury found in favor of Plaintiff on her Title VII retaliation claim against the City and awarded her $150,000.00 in damages. Title VII provides that, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs [.]" 42 U.S.C. § 2000e–5(k). Plaintiff is clearly the prevailing party as to her Title VII claim because the judgment based on the jury verdict constitutes a "judicially sanctioned change in the legal relationship of the parties." See *Buckhannon Bd. & Care Home, Inc. v. W. Vir. Dep't of Health & Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Plaintiff is therefore eligible for an award of attorneys' fees pursuant to § 2000e– 5(k).

The City argues that Plaintiff should not receive any award because her request is grossly inflated, indicating bad faith. Attorneys' fee awards are not mandatory in Title VII cases. See § 2000e–5(k) (stating that the court "*may* allow the prevailing party ... a reasonable attorney's fee" (emphasis added)). This Court agrees with the City that Mr. Beatty's requested hourly rate and number of hours expended are not reasonable. See Section II.A. and B. *infra.* The Court, however, does not find the requested award to be so grossly exaggerated as to indicate bad faith. The Court therefore FINDS that Plaintiff is entitled to an award of attorneys' fees pursuant to § 2000e5(k).

The Court, however, notes that Plaintiff is not the prevailing party as to any of the defendants besides the City, nor is she the prevailing party as to any of the other claims against the City. Plaintiff did not achieve a judicially sanctioned change in any other legal relationship. Final Judgment was entered in Defendants' favor as to all claims except the Title VII claim against the City. See

Local Rule LR54.2(a) ("The party entitled to costs shall be the prevailing party in whose favor judgment is entered[.]"). The Court will address whether Plaintiff's requested award must be reduced to account for her limited success *infra* Section II.C.

## II. *Calculation of Attorneys' Fees*

Courts calculate attorneys' fee awards in Title VII cases based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). See, e.g., *Bjornson v. Dave Smith Motors/Frontier Leasing & Sales,* 578 F.Supp.2d 1269, 1285 (D.Idaho 2008). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley,* 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), which have not been subsumed in the lodestar calculation. See *Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000) (citation omitted).

*\*9* The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70. Factors one through five have been subsumed in the lodestar calculation. See *Morales v. City of San Rafael,* 96 F.3d 359, 364 n. 9 (9th Cir.1996). Further, the Ninth Circuit, extending *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation. See *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993). Once calculated, the "lodestar" is presumptively reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

*Clean Air,* 483 U.S. 711, 728, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *see also Fischer,* 214 F.3d at 1119 n. 4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following lodestar amount for work counsel performed on this case:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Mark Beatty | 1126.9 | $275 | $309,897.50 |
| Bruce Sherman | 21.7 | $100 | $ 2,170.00 |
| Bruce Sherman | 4.5 | $125 [10] | $ 562.50 |
| | | Subtotal | $312,630.00 |
| | | State Excise Tax of 4.712% | $ 14,731.13 |
| | | TOTAL REQUESTED LODESTAR | $327,361.13 |

FN10. Plaintiff states that the work agreement between Mr. Beatty and Mr. Sherman provided that Mr. Sherman's $125 hourly rate for this case would be reduced to $100 when there was more than ten hours of work on a particular subject. [Supplement at 3.]

[Supplement at 10, Exhs. 8–10 to Beatty Suppl. Decl.] Mr. Beatty was admitted to the Hawai'I bar in 2004. Mr. Sherman was admitted to the Hawai'I bar in 1993, the California bar in 1990, and the Alaska bar in 1980. [Exh. 7 to Beatty Suppl. Decl. (Bruce Sherman resume).]

**A. Reasonable Hourly Rate**
In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada County,* 285 F.3d 829, 840 & n. 6 (9th Cir.2002). The reasonable hourly rate should reflect the prevailing market rates in the community. *See id.; see also Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992), *as amended on denial of reh'g,* (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable. *See Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987). Plaintiff submitted a 2006 list published by the Pacific Business News of twenty-five Hawai'I law firms, most of which provided the range of hourly rates charged by their partners and associates. [Motion, Exh. 2 to Decl. of Mark Beatty ("Beatty Motion Decl.").] Plaintiff also submitted a declaration from Venetia Carpenter-Asui, Esq., with her reply. The Court, how-

ever, notes that Plaintiff could have, and should have, submitted Ms. Carpenter–Asui's declaration with the Motion. This Court generally will not consider new evidence raised in a reply. Even if the Court considered Ms. Carpenter–Asui's declaration, it would not alter this Court's finding regarding Mr. Beatty's reasonable hourly rate.

**\*10** This Court is familiar with the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and reputation. The Court is also familiar with the rates awarded to attorneys in other cases. Mr. Beatty was admitted to the Hawai'I bar in 2004. This Court finds that Mr. Beatty's experiences in the legal field prior to his admission to the bar and his other professional experience, such as his military or linguistics background, are not relevant to the reasonable hourly rate for his legal services in this case. Mr. Beatty admits that he had been licensed to practice law for less than three years when he took the instant case. This Court has awarded other attorneys with approximately the same number of years in practice $130 to $150 per hour. *See, e.g., Sakaria v. FMS Inv. Corp.,* CV 08–00330 SOM–LEK, Report of Special Master on Plaintiff's Motion for Attorney's Fees and Costs, filed 5/12/09 (dkt. no. 22) at 6–7 (reasonable rate for attorney admitted in 2004 was $150, although attorney requested $175); [FN11] *Horizon Lines, LLC. v. Kamuela Dairy Inc., et al.,* CV NO 08–00039 JMS–LEK, Amendment to Findings and Recommendations for Entry of Default Judgment, Filed June 16, 2008, filed 9/3/08 (dkt. no. 21) (attorney admitted in 2006 requested $160 per hour and was awarded $140 per hour, and attorney admitted in 2007 requested $145 and $150 per hour and was awarded $130 per hour); [FN12] *Won, et al. v. England, et al.,* CV 07–00606 JMS–LEK, Report of Special Master On Defendant's Motion for Attorney's Fees and Costs, filed 7/15/08 (dkt. no. 84), at 7–8 (attor-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT B**
**Page 8 of 21**

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

ney admitted in 2006 requested $155 per hour and was awarded $130 per hour).[FN13]

> FN11. A stipulation to dismiss the case was filed on May 13, 2009. Thus, the district judge did not issue a ruling on this Court's Report of Special Master in *Sakaria*.

> FN12. The district judge adopted this Court's Amended Findings and Recommendation in *Horizon Lines* on September 29, 2008.

> FN13. The district judge adopted this Court's Report of Special Master in *Won* on August 18, 2008.

Based on this Court's knowledge of the prevailing market rates in the community for similar work by attorneys of comparable skill, experience, and reputation, and based on this Court's rulings in prior cases, this Court finds that Mr. Beatty's requested hourly rate of $275 is unreasonable. This Court FINDS that a reasonable hourly rate for Mr. Beatty's work in this case is $140. The Court finds that the requested hourly rates of $100 and $125 for Mr. Sherman are manifestly reasonable.

**B. *Hours Reasonably Expended***

Beyond establishing a reasonable hourly rate, a party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. *See Tirona v. State Farm Mut. Auto. Ins. Co.,* 821 F.Supp. 632, 636 (D.Haw.1993) (citations omitted). A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. *See id.* at 637 (citing *INVST Fin. Group v. Chem–Nuclear Sys.,* 815 F.2d 391, 404 (6th Cir.1987)). A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.,* 801 F.Supp. 1056, 1060 (S.D.N.Y.1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates,* 987 F.2d at 1399 (quoting *Hensley,* 461 U.S. at 433–34).

**1. *Case Development***

**a. *Work Prior to Filing of Complaint***

**\*11** First, this Court notes that Mr. Beatty requests attorneys' fees for work beginning January 28, 2006. The Complaint in this case was not filed until June 1, 2007. Mr. Beatty spent a total of 98.7 hours on case development and background investigation before the filing of the Complaint. This included sitting in on Plaintiff's criminal trial all day for six days. While some time for case development and investigation is necessary before filing a complaint, 98.7 hours is excessive, and some of Mr. Beatty's entries would not be compensable even if his time was not excessive. Specifically, Mr. Beatty's representation of Plaintiff in connection with the administrative complaint against her was not necessary to the prosecution of the instant case. While the administrative action was relevant to the instant case and some review of the administrative case would be reasonable, Mr. Beatty could have successfully represented Plaintiff in the instant case without representing Plaintiff in the administrative proceedings. Mr. Beatty's work on his Client Agreement with Plaintiff also is not compensable. While it was certainly necessary to Mr. Beatty's and Plaintiff's professional relationship, it did not contribute the litigation of Plaintiff's claims. For purposes of a judicial award of attorney's fees, work on a client agreement should be subsumed in the attorney's overhead.

Further, the descriptions of Mr. Beatty's communications with Plaintiff are insufficient. *See* Local Rule LR54.3(d)(2) ("time entries for telephone conferences must include an identification of all participants and the reason for the call"). For example, several entries state only "consultation and email with SB". [Exh. 10 to Beatty Suppl. Decl. at 1.] Those entries are excluded because there is insufficient information for this Court to determine whether the amount of time spent was reasonable.[FN14]

> FN14. In most cases, this Court will allow the moving party to submit supplemental documentation in support of inadequately described items. The Court will not grant Plaintiff leave to submit supplemental documentation in support of Mr. Beatty's inadequately described time entries because this Court finds that his requested time is excessive, even without the inadequately described entries.

In light of the foregoing, this Court finds that 20.0 hours is a reasonable amount of time for case development and background investigation prior to the filing of the Complaint. This Court will therefore deduct 78.7

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
(Cite as: 2010 WL 653026 (D.Hawai'i))

hours from Mr. Beatty's time.

**b. *Work During Litigation***

Mr. Beatty also spent 164.7 hours on case development and investigation after filing the Complaint. This includes 98.0 hours preparing for and attending two litigation seminars. Even though Mr. Beatty may have had the opportunity to discuss Plaintiff's case with other participants at these seminars, the seminars are essentially professional development or general education for Mr. Beatty and are not compensable in this case. *See, e.g., United States ex rel. Averback v. Pastor Med. Assocs., P.C.*, 224 F.Supp.2d 342, 353 (D.Mass.2002); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1322 (E.D.N.Y.1985), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 226 (2d Cir.1987). This Court will therefore deduct 98.0 hours from Mr. Beatty's time.

Mr. Beatty claims 10.0 hours associated with Plaintiff's appearance before the Administrative Review Board ("ARB"). For the reasons stated *supra* Section II.B.1.a., only some review of the ARB proceedings was necessary for the instant case. This Court will therefore deduct 7.0 hours from Mr. Beatty's time.

**\*12** Mr. Beatty claims 11.0 hours relating to the complaint that Plaintiff filed against him with the Office of Disciplinary Counsel and preparing a restraining order. These matters are attributable to the problems between Plaintiff and Mr. Beatty. They are not related to the litigation of Plaintiff's claims and are therefore not compensable. This Court will deduct the 11.0 hours from Mr. Beatty's time.

The Court will also deduct 7.7 from Mr. Beatty's time for inadequately described communications with Plaintiff and opposing counsel.

These deductions to Mr. Beatty's case development and investigation after the filing of the Complaint total 123.7 hours, leaving 41.0 hours. This Court has reviewed all of the remaining time entries and finds that 41.0 hours is excessive. This Court will therefore deduct an additional 10.0 hours from Mr. Beatty's time.

**2. *Pleadings***

Mr. Beatty spent 134.5 hours on pleadings, almost exclusively on the original Complaint. First, the Court notes that clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate. *See, e.g., Sheffer v. Experian Info. Solutions, Inc.*,

290 F.Supp.2d 538, 549 (E.D.Pa.2003). Mr. Beatty billed time for printing the Complaint, driving to the courthouse to check for form, turning the Complaint in at a copying center, and filing the Complaint. These tasks are clerical or ministerial and are not compensable. This Court will therefore deduct 4.0 hours from Mr. Beatty's time.

Further, even though the Complaint was lengthy and involved a large number of defendants and claims, the time Mr. Beatty spent on the Complaint was excessive. This Court finds that 50.0 hours is a reasonable amount of time for the Complaint and First Amended Complaint. The Court will therefore deduct an additional 80.5 hours from Mr. Beatty's time.

**3. *Discovery***

Mr. Beatty claims 29.2 hours for written discovery. Of that time, 10.7 hours should have been attributable to case development and investigation instead of discovery. This Court has already determined Mr. Beatty's case development and investigation time to be unreasonable. The Court therefore finds that the 10.7 hours which counsel mis-categorized as discovery work is not compensable, and this Court will deduct those hours from Mr. Beatty's time. The Court finds that the remaining 18.5 hours spent on written discovery was reasonable.

Mr. Beatty claims 114.8 hours for depositions and a discovery dispute. First, the Court will deduct 0.6 hours from Mr. Beatty's time for the filing of notices of depositions. Filing is a non-compensable clerical task. The Court will also deduct 1.0 hour for the entry stating "discuss Nishimura depo". [Exh. 10 to Beatty Suppl. Decl. at 4.] This entry is insufficient because it does not state who Mr. Beatty discussed the deposition with.

The City submitted a chart comparing the length of each deposition that Mr. Beatty took with the amount of time he spent attending and preparing for them. [Mem. in Opp., Exh. A to Decl. of Counsel.] Mr. Beatty billed 103.0 hours for the ten depositions he took, but these depositions only lasted a total of 23.5 hours. Thus, 79.5 hours is attributable to preparation. The Court finds this to be excessive and will therefore deduct 39.5 hours from Mr. Beatty's time.

**4. *Motions Practice***

**\*13** Mr. Beatty spent 226.5 hours on motions practice.[FN13] First, Mr. Beatty claims 15.5 hours for work done prior to the filing of the Complaint, which should have been categorized as case development and investigation.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

Most of this time was spent working a motion to obtain a restraining order to stop Plaintiff's criminal trial. For the reasons stated, *supra* Section II.B.1.a., work on the Client Agreement is not compensable and Mr. Beatty's representation of Plaintiff in proceedings other than the instant case was not necessary to the litigation of her claims. While some review of the motion for a restraining order may have been relevant to the instant case, this Court has already found that Mr. Beatty's time for case development and investigation was excessive. Thus, even if counsel had properly characterized this time as case development, the Court would still find that the 15.5 hours is not compensable. This Court will therefore deduct the 15.5 hours from Mr. Beatty's time.

> FN15. The Court notes that the actual total was higher, but Mr. Beatty deducted 63.0 hours for work attributable to claims against the HGEA Defendants.

The Court will also deduct the 2.0 hours Mr. Beatty spent printing and collating the "MSJ and CSF answer" and the 6.0 hours Mr. Beatty spent sending the motions in limine to Mr. Sherman because these are clerical tasks.

Mr. Beatty spent 9.5 hours on work relating to his motion to withdraw as Plaintiff's counsel. This arose from the problems between Plaintiff and Mr. Beatty and was not necessary to the litigation of Plaintiff's claims. The Court will therefore deduct the 9.5 hours from Mr. Beatty's time.

Mr. Beatty also has two entries for "email to BS, SB" and another entry for "write and call Sherman". These entries are insufficient because Mr. Beatty did not state the subject of these communications. This Court will therefore deduct 2.0 hours from Mr. Beatty's time.

After these specific deductions, there are 191.5 hours remaining. Although there was extensive motions practice in this case, the Court finds that this is an excessive amount of time. This Court will therefore deduct an additional 50.0 hours from Mr. Beatty's time.

**5. Court Proceedings**
    Mr. Beatty claims 24.5 hours for the preparation for and participation in two settlement conferences, the preparation of Plaintiff's Pretrial Statement, and his attendance at the October 7, 2008 pretrial conference. The Court notes that the pretrial conference was scheduled for 9:00 a.m., started at 9:07 a.m., and took five minutes. Mr.

Beatty, however, claimed 1.5 hours for the conference. If he included his travel time to and from the courthouse, such time is not compensable. This Court will therefore deduct 1.0 hour for the pretrial conference. The Court finds that the remainder of Mr. Beatty's time is reasonable.

**6. Trial**
    Mr. Beatty claims 258.5 hours for trial preparation. First, this Court notes that Mr. Beatty billed 7.5 hours on October 16, 2009, and a portion of his 13.0 hours on October 15, 2009, waiting for the jury to return its verdict. Mr. Beatty argues that this time is compensable because the district judge required him to be within fifteen minutes from the courthouse. This prevented him from returning to his office to do other work. This is unreasonable. Mr. Beatty could have made other arrangements, such as bringing other work from his office with him or going to the district court or Hawai'I Supreme Court law library, on those days. This Court will therefore deduct 4.0 hours for October 15 and the 7.5 hours on October 16 from Mr. Beatty's time.

**\*14** This leaves 247.0 attributable to trial preparation and the trial itself. While this Court acknowledges the tremendous amount of work involved in a trial, 247.0 hours is excessive. This Court will therefore deduct 47.0 hours from Mr. Beatty's time.

**7. Post–Trial Motions**
    Mr. Beatty claims a total of 75.5 hours for post-trial motions. This includes 52.0 hours for documents relating to the instant Motion. The Court finds the 52.0 hours to be excessive and will reduce Mr. Beatty's time by 20.0 hours. The remaining time, which Mr. Beatty spent on the City's Rule 59 Motion and Plaintiff's Bill of Costs is reasonable.

**8. Summary of Mr. Beatty's Hours**
    The Court FINDS that 513.2 hours of Mr. Beatty's time is not compensable, but the remainder of Mr. Beatty's time, 613.7 hours, was reasonable for this case.

**9. Bruce Sherman's Time**
    Mr. Sherman spent 21.7 hours doing various tasks to assist Mr. Beatty with motions practice during July 2008, and 4.5 hours on motions in limine on October 31 and November 3, 2008. The Court FINDS that Mr. Sherman's time is manifestly reasonable.

This, however, is not the end of the Court's inquiry. The Court must also determine whether a reduction to the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

lodestar amount is appropriate in light of Plaintiff's limited success in the action.

**C. Reduction for Limited Success**

Where a plaintiff achieves only partial or limited success, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Based on *Hensley,* the Ninth Circuit has adopted a two-part analysis to address attorneys' fees in cases where the plaintiff prevails on some claims but not others.

First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 901–02 (9th Cir.1995) (quoting *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir.1986) (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940)); *see also McCown v. City of Fontana,* 565 F.3d 1097, 1103–05 (9th Cir.2009). Courts apply this analysis in Title VII cases. *See, e.g., Odima v. Westin Tucson Hotel,* 53 F.3d 1484, 1499 (9th Cir.1995).

**1. Related Claims**

**\*15** Unrelated claims are "distinctly different claims for relief that are based on different facts and legal theories", whereas related claims "involve a common core of facts or [are] based on related legal theories." *Hensley,* 461 U.S. at 434–35. In the instant case, the majority of Plaintiff's claims arise from her employment with HPD and the retaliation she suffered because of her sexual har-

assment action. Only Plaintiff's claims against the HGEA Defendants and the IHS Defendants were wholly distinct. Mr. Beatty has already deducted his time which is attributable to the claims against the HGEA Defendants, and it does not appear that he billed any work specifically attributable to the claims against the IHS Defendants. This Court therefore finds that the claims at issue in the instant Motion are related.

**2. Significance of Overall Relief**

The jury found in Plaintiff's favor on her Title VII claim against the City and awarded her $150,000.00 in damages. This is certainly a significant victory, but when compared to the number of claims Plaintiff originally alleged and the value of those claims that her counsel asserted on her behalf during settlement negotiations, her success must be deemed partial at best. Where a plaintiff achieves only partial success "full compensation *may* be excessive." *Schwarz,* 73 F.3d at 902 (emphasis added) (citation omitted). This Court has already applied substantial reductions to Mr. Beatty's requested hourly rate and his hours. This Court therefore finds, in the exercise of its sound discretion, that a further reduction for partial success is not necessary.

**D. Block Billing**

The Court notes that Mr. Beatty's daily time entries are block billed. "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond,* 160 F.3d 1275, 1284 n. 9 (10th Cir.1998) (citations and quotation marks omitted). The Court cautions Mr. Beatty that, if he submits requests for attorneys' fees in other cases, he should not submit time records employing block billing. If he does, this Court may impose a percentage reduction of all entries to account for the fact that block billing prevents the Court from reviewing the reasonableness of the amount of time spent on each task.

**E. Total Lodestar Award**

Based on the foregoing, this Court FINDS that Plaintiff has established the appropriateness of an award of attorney's fees as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Mark Beatty | 613.7 | $140 | $85,918.00 |
| Bruce Sherman | 21.7 | $100 | $ 2,170.00 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

| Bruce Sherman | 4.5 | $125 | | $ 562.50 |
|---|---|---|---|---|
| | | | Subtotal | $88,650.50 |
| | | State Excise Tax of 4.712% | | $ 4,177.21 |
| | | **TOTAL LODESTAR** | | **$92,827.71** |

The Court declines to adjust the award based on the remaining *Kerr* factors. For all the voluminous pleadings and numerous parties, the instant case was essentially a retaliation case, which could have been far less complicated than it was. Further, while the case was time consuming, it did not preclude counsel from handling other cases. Finally, while the ruling was certainly important to Plaintiff, and the general issue of discrimination in the workplace is of public importance, the instant case did not result in any public change. This Court therefore finds that no adjustment to the lodestar amount is warranted.

**III. *Entitlement to Non-taxable Costs***
*\*16* As the prevailing party, Plaintiff is entitled to her reasonable expenses pursuant to 42 U.S.C. § 2000e–5(k). The only expenses that Plaintiff seeks are Mr. Beatty's expenses for the two litigation seminars he attended. For the reasons stated *supra* in Section II.B.l.b., the expenses for those seminars are not compensable in this case. This Court therefore RECOMMENDS that the district judge DENY Plaintiff's Motion with respect to her request for non-taxable costs.

**IV. *Taxable Costs***
Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). A district court may exercise discretion in allowing or disallowing reimbursement of the costs of litigation, but it may not tax costs beyond those enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), *superseded on other*

*grounds,* 42 U.S.C. § 1988(c).

"Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920." *Frederick v. City of Portland,* 162 F.R.D. 139, 142 (D.Or.1995) (citing *Alflex Corp. v. Underwriters Lab., Inc.,* 914 F.2d 175, 177 (9th Cir.1990) (per curiam)). Section 1920 enumerates the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Plaintiff's Bill of Costs seeks $13,342.10 in taxable costs consisting of the following:

| | |
|---|---|
| Fees for service of summonses and subpoenas | $ 1,316.05 |
| Fees of the court reporter | $10,155.30 |
| Fees for exemplification and copies | $ 1,490.25 |
| Fees of the Clerk | $ 380.50 |
| **TOTAL** | **$13,342.10**[16] |

FN16. There were some errors in the calculation of Plaintiff's service costs. This Court has adjusted Plaintiff's request accordingly.

[Mem. in Supp. of Bill of Costs at 2–5.]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

### A. Timeliness of Bill of Costs

The City's first objection is that Plaintiff waived any right to taxable costs because she did not file her Bill of Costs within fourteen days of the district judge's denial of the City's Rule 59 Motion, as required by the current version of Local Rule 54.2(b). The district judge filed the order denying the City's Rule 59 Motion on November 25, 2009. Plaintiff filed her Bill of Costs on December 15, 2009. She asserts that she timely filed it within "the 30 day time limit of LR 54.2(b)". [Bill of Costs at 1.]

The current version of Local Rule 54.2(b), which took effect on December 1, 2009, states, in pertinent part:

*17 Unless otherwise ordered by the court, a Bill of Costs shall be filed and served within fourteen (14) days of the entry of judgment, the entry of an order denying a motion filed under Fed.R.Civ.P. 50(b), 52(b), or 59.... Non-compliance with this time limit shall be deemed a waiver of costs.

The version of Local Rule 54.2(b) effective until November 30, 2009 contained a thirty-day filing period. Local Rule 1.2 states that the current version of the rules "govern all actions and proceedings pending on or commenced after December 1, 2009. When justice requires, a judge may order that an action or proceeding pending before the court prior to that date be governed by the prior practice of the court."

Pursuant to Local Rule 1.2, the current version of Local Rule 54.2(b) applies in this case. Plaintiff should have filed her Bill of Costs within fourteen days after the district judge denied the City's Rule 59 Motion. It is not clear whether Plaintiff was aware of the amendment to Local Rule 54.2(b) because she did not address it in her Bill of Costs. Although ignorance of the law is not a defense, this Court notes that a reasonable argument can be made for the application of the prior version of Local Rule 54.2(b). The district judge denied the City's Rule 59 Motion on November 25, 2009, when the prior version of Local Rule 54.2(b) was in effect, and that order arguably triggered the thirty-day filing period. Further, the City has not alleged that it was prejudiced by Plaintiff's failure to file the Bill of Costs within the fourteen-day period. This Court therefore FINDS that justice requires the application of the thirty-day filing period in the version of Local Rule 54.2 effective until November 30, 2009. The Court RECOMMENDS that the district judge DENY the City's Objections as to the timeliness of the Bill of Costs.

### B. Verification

A bill of costs "must be supported by a memorandum setting forth the grounds and authorities supporting the request and an affidavit that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law." Local Rule LR54.2(c). The City objects to Plaintiff's Bill of Costs on the grounds that Plaintiff's counsel did not include proper verification that the requested costs were necessarily incurred.

Mr. Beatty states that he attempted to exclude Plaintiff's "costs related to defendants unrelated to the final trial." [Mem. in Supp. of Bill of Costs, Decl. of Mark Beatty ("Beatty BOC Decl.") at ¶ 3.] Thus, he asserts that the claimed costs were related to the trial. As to his service and subpoena costs, Mr. Beatty acknowledges that most of the individual defendants, in their individual capacities, were dismissed before trial. Mr. Beatty, however, asserts that each of these defendants, in their official capacities, "was useful in securing the final judgment." [*Id.* at ¶ 5.] As to the costs associated with the ten depositions that Plaintiff took and the City's deposition of Plaintiff, Mr. Beatty states that many of the deponents were called as Plaintiff's witnesses at trial and the other deponents were listed as potential defense witnesses. He asserts that the depositions of potential defense witnesses were necessary to prepare for possible cross-examination. [*Id.* at ¶ 6.] As to Plaintiff's copying costs, Mr. Beatty states that the copies were for the two required courtesy copies for the court and one copy for his use. [*Id.* at ¶ 7.] Finally, Mr. Beatty asserts that filing the Complaint and obtaining the jury cards "were needed as essential elements of the litigation process." [*Id.* at ¶ 8.]

*18 Although at times inartfully stated, Mr. Beatty's declaration provided the required verification that the costs requested in the Bill of Costs were necessarily incurred in the case. This Court therefore RECOMMENDS that the district judge DENY the City's Objections as to the lack of verification.

### C. Partial Success

As stated *supra* in Section I., Plaintiff is the prevailing party as to her Title VII claim against the City, but she is not the prevailing party as to any of the defendants besides the City, nor is she the prevailing party as to any of the other claims against the City besides the Title VII claim. The Court, however, finds that it is not necessary to apportion Plaintiff's request for taxable costs among these claims because there is no rule requiring courts to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

apportion taxable costs based on the relative success of the parties. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.,* 464 F.3d 1339, 1348 (Fed.Cir.2006). "In fact, apportioning costs according to the relative success of parties is appropriate only under limited circumstances, such as when the costs incurred are greatly disproportionate to the relief obtained." *Id.* (citing 10 James Wm. Moore et al., Moore's Federal Practice § 54.101[1][b] (3d ed.2006)). Further, Mr. Beatty attempted to exclude costs associated with defendants and claims which were unrelated to the claims which went to trial. Where possible this Court will exclude requested costs that are attributable to claims that Plaintiff did not prevail on.

**D. Fees for Service of Summonses and Subpoenas**

"Fees for the service of process and service of subpoenas by someone other than the marshal are allowable, to the extent they are reasonably required and actually incurred." Local Rule LR54.2(f)(1); *see also* § 1920(1). Plaintiff seeks a total of $1,316.05 in fees for the service of the Complaint and summonses and the service of subpoenas. Plaintiff's request consists of the following:

| | |
|---|---:|
| Service of subpoenas on Alicia Kamahele, William Goodhue, Chris Van Marter, Kanthi De Alwis, Glen Kajiyama (plus $6.05 mileage charge), Carlton Nishimura, Kevin Lima, Owen Harada, Boisse Correa, and Paul Putzulu [17] | $ 256.05 |
| Subpoenas to Nishimura, Correa, Lima, Kajiyama, Kamahele, De Alwis, Goodhue, Harada, Van Marter and Paul Putzulu ($50.00 each) | $ 500.00 |
| Service of Complaint and Summons and filing of the return of service for Kajiyama, Nishimura, and Correa [18] | $ 90.00 |
| Service of Complaint and Summons and filing of the return of service for Van Marter (includes mileage for three attempts) | $ 45.00 |
| Service of Complaint and Summons and filing of the return of service for Harada (includes mileage for two attempts) | $ 40.00 |
| Service of Complaint and Summons and filing of the return of service for Watarai and Axt (includes mileage for two attempts on Watarai, a trace to obtain Watarai's address, and mileage for three attempts on Axt) | $ 130.00 |
| Service of Complaint and Summons and filing of the return of service for Lima (includes mileage) | $ 35.00 |
| Service of Complaint and Summons and filing of the return of service for HRD, MEO, and PAD (includes mileage) | $ 95.00 |
| Service of Complaint and Summons and filing of the return of service for De Alwis, Kamahele Goodhue, and Suzuki (includes mileage) [19] | $ 125.00 |
| **TOTAL** | **$1,316.05** |

FN17. The fee for the service of each subpoena was $25.00. [Exh. 13 to Beatty BOC Decl.] Based upon the dates given in the invoice, these appear to be for trial.

FN18. The service fee was $25.00 each and the fee for filing the return of service was $5.00 each. The invoice includes service on Maunakea and IHS, but Plaintiff does not seek taxation of those costs. [Exh. 14 to Beatty BOC Decl.; Mem. in Supp. of Bill of Costs at 2.] The Bill of Costs states that Plaintiff seeks $115.00 for the service to Kajiyama, Correa, and Nishimura, but the invoice indicates that only $90.00 is attributable to those people.

FN19. The invoice also includes service on HGEA and Matsui, but Plaintiff has excluded

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

these amounts from her request. [Exh. 20 to Beatty BOC Decl.; Mem. in Supp. of Bill of Costs at 2.]

*19 [Mem. in Supp. of Bill of Costs at 2; Exhs. 13–20 to Beatty BOC Decl.]

The City objects to Plaintiff's costs for the service of the Complaint and Summons on the individual defendants because all were eventually dismissed, and the City objects to the costs for service on the various City departments because all actions against City departments are actions against the City. This Court agrees.

The cost of serving all of the individual defendants with the Complaint and Summons is attributable to Plaintiff's claims against those defendants; it cannot be attributed to Plaintiff's Title VII claim against the City. Plaintiff was not the prevailing party as to the individual defendants. This Court therefore finds that Plaintiff is not entitled to the taxation of the cost to serve the individual defendants with the Complaint and Summons. As to the costs to serve the City, Plaintiff should have named the City at the outset instead of naming individual City departments. This Court therefore finds that Plaintiff is only entitled to the taxation of the cost to serve one of the City departments, i.e. $25.00 for service, $5.00 for the filing of the return of service, and the $5.00 mileage fee. Plaintiff would have incurred those costs if she had named the City as the defendant instead of individual City departments.

| | |
|---|---|
| Service of subpoenas on Alicia Kamahele, William Goodhue, Chris Van Marter, Kanthi De Alwis, Glen Kajiyama (plus $6.05 mileage charge), Carlton Nishimura, Kevin Lima, Owen Harada, | $256.05 |
| Service of Complaint and Summons and filing of the return of service for one City department (including mileage) | $ 35.00 |
| **TOTAL** | **$291.05** |

*20 This Court therefore RECOMMENDS that the City's Objections be GRANTED IN PART AND DENIED IN PART as to Plaintiff's service costs.

**E. Deposition Costs**

*Court reporter fees*

| | |
|---|---|
| Depositions of Kevin Lima, Alicia Kamahele, Christopher Van Marter, Kanthi De Alwis, and William Goodhue [20] | $ 3,052.72 |
| Depositions of Carlton Nishimura, Boisse Correa, and | $ 1,327.54 |

As to the service of subpoenas, Plaintiff served Kamahele, Goodhue, Van Marter, De Alwis, Kajiyama, Nishimura, Lima, Harada, Correa, and Putzulu to appear at trial. Each of these persons either testified at trial or was a potential witness. Plaintiff submitted an invoice establishing that it cost $256.05 to serve these subpoenas. [Exh. 13 to Beatty BOC Decl.] This Court finds that the $256.05 was reasonably incurred in this case. Plaintiff, however, also seeks $50.00 for a subpoena to each of the same ten people. Plaintiff provides no supporting documentation for that expense except to cite a check number for each. Plaintiff did even not include copies of the checks with her Bill of Costs. This Court therefore finds that the $50.00 subpoena charge for each of the ten witnesses is not taxable.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address these costs. After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report. If Plaintiff fails to timely submit supporting documentation, this Court will issue an amendment to the instant Report recommending that the subpoena costs be denied with prejudice.

This Court therefore FINDS that Plaintiff is entitled to the taxation of the following service costs:

"The cost of a stenographic and/or video original and one copy of any deposition transcript necessarily obtained for use in the case is allowable." Local Rule LR54.2(f)(2); *see also* § 1920(2). Plaintiff seeks $10,155.30 in deposition costs consisting of the following:

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
(Cite as: 2010 WL 653026 (D.Hawai'i))

William Axt [21]

| | |
|---|---|
| Depositions of Owen Harada, Denise Tsukayama [22] | $ 1,068.58 |
| One copy of Plaintiff's deposition transcript | $ 350.63 |
| **Subtotal** | **$ 5,799.47** |

*Video services for depositions*

| | |
|---|---|
| Harada deposition | $ 560.21 |
| Tsukayama deposition | $ 319.37 |
| Nishimura deposition | $ 429.32 |
| Correa deposition | $ 376.96 |
| Axt deposition | $ 319.37 |
| Lima, Kamahele, Van Marter, De Alwis, and Goodhue depositions | $ 2,350.60 |
| **Subtotal** | **$ 4,355.83** |
| **TOTAL** | **$10,155.30** |

FN20. The cost of each of these depositions includes the court reporter's appearance fee, the cost of the original and one copy of the transcript, an exhibits fee where applicable, and a $40.00 fee for the "Condensed Transcript/ASCII". [Exh. 3 to Beatty BOC Decl.]

FN21. The cost of each of these depositions includes the court reporter's appearance fee, the cost of the original and one copy of the transcript, an exhibits fee where applicable, and a $25.00 fee for "E-Tran". [Exh. 4 to Beatty BOC Decl.]

FN22. The cost of each of these depositions includes the court reporter's appearance fee, the cost of the original and one copy of the transcript, an exhibits fee where applicable, and a $25.00 fee for "E-Tran". [Exh. 5 to Beatty BOC Decl.]

[Mem. in Supp. of Bill of Costs at 3–4; Exhs. 3–12 to Beatty BOC Decl.] Plaintiff provided invoices for each item, establishing that the costs were actually incurred.

## 1. *Video Recording of Depositions*

The City first objects to the taxation of all costs associated with the video recording of the depositions because, at the time of the depositions, all of the deponents were residents of Honolulu who were employed by the City, and there was no indication of a risk that any of them would be unavailable to testify at trial. Thus, the City argues that there was no need to preserve the deposition testimony on video. According to defense counsel, Mr. Beatty said that the reason for videotaping the deposition was to allow Plaintiff, who chose not to attend the depositions, to watch them. [Objections at 5–6; Decl. of Stephanie L. Marn at ¶ 5.]

The cost of both the transcript and a video original of a deposition are allowable if they were both "necessarily obtained for use in the case[.]." *See* Local Rule LR54.2(f)(2). Plaintiff's Bill of Costs states only that all ten persons she deposed "played some part in the trial" and were listed as potential defense witnesses. [Mem. in Supp. of Bill of Costs at 3.] Mr. Beatty's declaration adds that many of the deponents were called as Plaintiff's witnesses at trial, and the other depositions were necessary to prepare for cross-examination if the deponents testified as defense witnesses. [Beatty BOC Decl. at ¶ 6.] Plaintiff did not produce any evidence that the video recordings of the depositions were necessarily obtained for use in this case. This Court therefore RECOMMENDS that the City's Objections be GRANTED as to the video recording of depositions.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address these costs. After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report. If Plaintiff fails to timely submit supporting documentation, this Court will issue an amendment to the instant Report

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

recommending that the video recording costs be denied with prejudice.

### 2. *Deposition Transcripts for Non-trial Witnesses*

**\*21** The City also objects to the taxation of costs for depositions that were not used at trial. The City argues that Plaintiff is not entitled to the cost of the deposition transcripts for Goodhue, Tsukayama, and Axt because they did not testify at trial and because the Bill of Costs does not establish that these costs are taxable. "A deposition need not be introduced in evidence or used at trial, so long as, at the time it was taken, it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery." Local Rule LR54.2(f)(2). Based on the representations in Plaintiff's Bill of Costs and this Court's knowledge of the facts of this case, this Court finds that, at the time they were taken, it could reasonably be expected that all eleven depositions referenced in the Bill of Costs would be used for trial preparation, rather than mere discovery. This Court therefore RECOMMENDS that the City's Objections be DENIED as to the taxation of depositions of witnesses who did not testify at trial.

### 3. *Condensed and Electronic Transcripts*

The City also objects to the taxation of the costs of "Condensed Transcript/ASCII" and "E–Tran" because these costs are beyond the cost of the original and one copy of deposition transcripts allowed under Local Rule 54.2(f)(2). Depositions are commonly printed in condensed format to conserve paper and space. A condensed transcript is the presentation form of the original and one copy of the deposition transcript; it does not constitute a second original or second copy. This Court therefore finds that the cost to condense a deposition transcript is taxable as part of the court reporter's fees.

The cost for the "E–Tran", which this Court assumes denotes an electronic version, of the deposition transcripts for Nishimura, Correa, Axt, Harada, and Tsukayama does appear to be another version of the transcripts, in addition to the original and one copy of the transcript hard copies. Thus, the E–Tran version exceeds the original and one copy allowed under Local Rule 54.2(f)(2). This Court therefore finds that the E–Tran fees are not taxable and RECOMMENDS that the district judge GRANT the City's Objections as to the E–Tran versions of deposition transcripts. This Court will deduct the $25.00 E–Tran fee from the invoices for Nishimura's, Correa's, Axt's, Harada's and Tsukayama's depositions.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address the E–Tran costs. After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report. If Plaintiff fails to timely submit supporting documentation, this Court will issue an amendment to the instant Report recommending that the request costs be denied with prejudice.

### 4. *Summary of Taxable Deposition Costs*

This Court FINDS that Plaintiff has established that the following deposition costs are taxable as fees of the court reporter:

| | |
|---|---:|
| Depositions of Kevin Lima, Alicia Kamahele, Christopher Van Marter, Kanthi De Alwis, and William Goodhue | $3,052.72 |
| Depositions of Carlton Nishimura, Boisse Correa, and William Axt | $1,252.54 |
| Depositions of Owen Harada, Denise Tsukayama | $1,018.58 |
| One copy of Plaintiff's deposition transcript | $ 350.63 |
| **TOTAL** | **$5,674.47** |

**\*22** This Court RECOMMENDS that the district judge tax $5,674.47 in court reporter fees against the City and in favor of Plaintiff. At this time, the Court RECOMMENDS that the district judge DENY the remaining portion of Plaintiff's request for court reporter fees.

### F. *Copying Costs*

"The cost of copies necessarily obtained for use in the case is taxable provided the party seeking recovery submits an affidavit describing the documents copied, the number of pages copied, the cost per page, and the use of or intended purpose for the items copied." Local Rule LR54.2(f)(4); *see also* § 1920(4). Plaintiff seeks a total of $1,490.25 for in-house and outside copying costs.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

**1. *In-house Copying***
Plaintiff seeks the taxation of $1,340.25 for in-house copying costs consisting of the following:

| Document | Pages | Copies | Total | Cost |
|---|---|---|---|---|
| Complaint | 101 | 15 | 1515 | $ 227.30 |
| Amended Complaint | 72 | 3 | 216 | $ 32.40 |
| Trial Exhibits | 1337 | 3 | 4011 | $ 601.70 |
| Opposition to MSJ | 265 | 3 | 795 | $ 119.30 |
| Motion to Dismiss | 38 | 3 | 114 | $ 17.10 |
| Opp. Motion to Dismiss | 20 | 3 | 60 | $ 9.00 |
| Judgment as a Matter of Law (Opp.) | 98 | 3 | 294 | $ 44.10 |
| Motion for Recon. | 138 | 3 | 414 | $ 62.10 |
| Motion to Dismiss | 165 | 3 | 495 | $ 74.25 |
| Opp. to MSJ | 340 | 3 | 1020 | $ 153.00 |
| | | | **TOTAL** | **$1,340.25** |

[Mem. in Supp. of Bill of Costs at 4.] Based on the numbers that Plaintiff presented, the per page cost for each documents vary, but all are approximately $0.15. Mr. Beatty states that two of the copies of the motions and trial exhibits were for the required court courtesy copies and one was for his use. [Beatty BOC Decl. at ¶ 7.] For the Complaint and Amended Complaint, Plaintiff seeks the costs of three filed copies, and, for the Complaint, she also seeks twelve copies which she served on Defendants. [Mem. in Supp. of Bill of Costs at 4.] The City objects to Plaintiff's copying costs because the documents were longer than they should have been and because, of the 1,337 pages of trial exhibits that Plaintiff copied in three sets, Plaintiff only admitted 70 pages into evidence.

First, the Court notes that Local Rule 54.2(f)(4) requires that the party seeking costs provide the required information in an affidavit. Some of the required information appears only in the memorandum in support of the Bill of Costs, not in Mr. Beatty's supporting declaration. The Court cautions Mr. Beatty that, if he submits a bill of costs in future cases, he must pay closer attention to the requirements of Local Rule 54.2. The Court, however, will consider the information in the memorandum in support of the Bill of Costs because there does not appear to be any dispute about the accuracy of the information. The Court finds that all of the documents referenced in the Bill of Costs were necessarily obtained for use in this case.

As to the City's claim that this Court should review the length of Plaintiff's documents, this Court is not in a position to determine how long each document should have been. The Court therefore RECOMMENDS that the City's Objections be DENIED as to the length of documents in Plaintiff's request for copying costs.

**\*23** This Court, however, notes that "[t]he cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not taxable." Local Rule LR54.2(f)(4). Thus, the copy of Plaintiff's motion papers and trial exhibits that Mr. Beatty retained for his use is not taxable. The cost of the two required courtesy copies are taxable. As to the complaints, the Clerk's Office requires plaintiffs to file the original and two copies of a complaint. This Court therefore finds that the cost of three copies each of the Complaint and Amended Complaint are taxable. The Court will also allow the cost of one copy of the Complaint for service on one of the City departments. *See supra* Section IV.D. The Court will not allow the cost of the other eleven copies which Plaintiff served on other defendants whom Plaintiff did not prevail against.

Finally, the Court notes that Plaintiff is entitled to no more than $0.15 per page for in-house copying. *See* Local Rule LR54.2(f)(4) ("As of the effective date of these rules, the practice of this court is to allow taxation of copies at $.15 per page or the actual cost charged by com-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

mercial copiers, provided such charges are reasonable.").

This Court therefore FINDS that Plaintiff is entitled to the taxation of the following copying costs:

| Document | Pages | Copies | Total | Cost |
|---|---|---|---|---|
| Complaint | 101 | 4 | 404 | $ 60.60 |
| Amended Complaint | 72 | 3 | 216 | $ 32.40 |
| Trial Exhibits | 1337 | 2 | 2674 | $401.10 |
| Opposition to MSJ | 265 | 2 | 530 | $ 79.50 |
| Motion to Dismiss | 38 | 2 | 76 | $ 11.40 |
| Opp. Motion to Dismiss | 20 | 2 | 40 | $ 6.00 |
| Judgment as a Matter of Law (Opp.) | 98 | 2 | 196 | $ 29.40 |
| Motion for Recon. | 138 | 2 | 276 | $ 41.40 |
| Motion to Dismiss | 165 | 2 | 330 | $ 49.50 |
| Opp. to MSJ | 340 | 2 | 680 | $102.00 |
| **TOTAL** | | | | **$813.30** |

### 2. Outside Copying Costs

Plaintiff's counsel also seeks $150.00 to obtain copies of thirty autopsy reports from the MEO. [Exh. 21 to Beatty BOC Decl.] The City objects to this cost because Plaintiff did not utilize the reports in the litigation, and the City argues that they are not relevant to Plaintiff's claims. Neither the memorandum in support of Bill of Costs nor Mr. Beatty's declaration in support of the Bill of Costs address the autopsy reports. Plaintiff has failed to establish that the autopsy reports were necessarily obtained for use in this case. The Court therefore RECOMMENDS that the district judge GRANT the City's Objections as to the cost of the copies of the autopsy reports.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address the copies of the autopsy reports. After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report. If Plaintiff fails to timely submit supporting documentation, this Court will issue an amendment to the instant Report recommending that costs of the autopsy reports be denied with prejudice.

### G. Fees of the Clerk

**\*24** The fees of the Clerk of Court are taxable pursuant to § 1920(1). Plaintiff seeks the taxation of $380.50 in fees to the Clerk, consisting of the $350.00 filing fee for the Complaint, and $30.50 to obtain copies of the jury cards. [Exhs. 1–2 to Beatty BOC Decl. (receipts); Mem. in Supp. of Bill of Costs at 5.] The City did not object to these costs, and the Court FINDS that they are manifestly reasonable and allowable under § 1920(1). The Court therefore RECOMMENDS that the district judge tax $380.50 in fees of the Clerk in favor of Plaintiff and against the City.

### H. Summary of Taxable Costs

The Court FINDS that the following costs are taxable in this case and RECOMMENDS that the district judge tax these costs in favor of Plaintiff and against the City:

| | |
|---|---|
| Fees for service of summons and subpoena | $ 291.05 |
| Fees of the court reporter | $5,674.47 |
| Fees for exemplification and copies | $ 813.30 |
| Fees of the Clerk | $ 380.50 |
| **TOTAL** | **$7,159.32** |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)
**(Cite as: 2010 WL 653026 (D.Hawai'i))**

### *CONCLUSION*

In accordance with the foregoing, this Court, acting as Special Master, FINDS AND RECOMMENDS that Plaintiff's Motion for Attorney Fees, filed on October 30, 2009, be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the district judge GRANT Plaintiff $92,827.71 in attorney's fees, and DENY Plaintiff's request for non-taxable costs.

In addition, this Court, acting as Special Master, FINDS AND RECOMMENDS that the City's Objections to Plaintiff's Bill of Costs, filed on December 22, 2009, be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the district judge TAX $7,159.32 in costs against the City and in favor of Plaintiff. The Court further recommends that the remainder of Plaintiff's requests in the Bill of Costs be DENIED WITHOUT PREJUDICE.

This Court GRANTS Plaintiff leave to file a supplemental declaration and supporting documentation to address the cost requests identified in this Report. Plaintiff shall file the supplemental documents by no later than **February 19, 2010,** and the City may file a response by no later than **February 26, 2010.** This Court will issue an amendment to the instant Report thereafter. The Court cautions Plaintiff that, if she fails to submit the supporting documentation by the deadline or if the supporting documentation does not establish that the specified costs are taxable, this Court will issue an amendment to the instant Report recommending that the requests be denied with prejudice.

IT IS SO FOUND AND RECOMMENDED.

D.Hawai'i,2010.
Black v. City, County of Honolulu
Not Reported in F.Supp.2d, 2010 WL 653026 (D.Hawai'i)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT "C"**

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Michael CRAWFORD, Jeff Crawford and Farzaneh
Crawford, Plaintiffs,
v.
SAN DIEGUITO UNION HIGH SCHOOL
DISTRICT, Defendant.

Civil No. 03cv0353 JAH(JMA).
June 7, 2004.

Eric B. Freedus, Law Offices of Eric B. Freedus, Oceanside, CA, for Plaintiffs.

Jack B. Clarke, Jr., Best Best and Krieger, Riverside, CA, and Daniel R. Shinoff, Stutz Artiano Shinoff and Holtz, San Diego, CA, for Defendant.

**ORDER GRANTING PLAINTIFFS' MOTION
FOR ATTORNEYS' FEES [DOC. # 15]**
JOHN A. HOUSTON, District Judge.
*INTRODUCTION*
*1 Plaintiffs have filed a motion for attorneys' fees in this matter, seeking attorneys' fees of $40,596.75 (including $224.25 for paralegal services), costs and expenses of $452.34,[FN1] and expert witness fees of $5,087.50. Defendant filed an opposition, along with objections to evidence submitted by plaintiffs in their motion. Plaintiffs filed a reply brief. In addition, the administrative record [FN2] has been lodged with the Court for its review. After a thorough review of the pleadings, relevant exhibits and the administrative record submitted by the parties, and for the reasons set forth below, this Court GRANTS plaintiffs' motion for attorneys' fees.

> FN1. This Court notes that plaintiffs' pleadings make no mention of the total amount of fees sought. These figures were taken from the invoice of attorney Eric Freedus attached as an exhibit to plaintiffs' moving papers. *See* Pltffs' Pts. & Auth. in Supp., Exhs. B.

> FN2. The administrative record is referenced

herein as "AR."

*BACKGROUND*[FN3]

> FN3. These background facts are taken primarily from the parties' pleadings and the hearing officer's decision rendered after the administrative hearing held in late 2002. *See* AR. at 0957–0975.

**1. Factual Background**
During the 2001–2002 school year, plaintiffs Jeff and Farzaneh Crawford's ("the parents") son, Michael Crawford ("the student") was found eligible for special education services. In January 2002, the parents removed the student from Carmel Valley Middle School and placed him at a nonpublic school based on the advise of the student's psychologist. The parents initially filed for an administrative "due process" hearing at that time, seeking a determination as to whether the student had been denied a "free appropriate public education" ("TAPE"). The matter settled prior to hearing, culminating in a requirement that the school district hold an "independent education plan" ("IEP") meeting in the summer of 2002 and make an offer to the parents regarding the student's placement for the 2002–2003 school year.

An IEP meeting was held in July 2002, at which the school district formulated an IEP, offering the student placement at Torrey Pines High School with support from a learning center. In October 2002, the school district filed for an administrative hearing to determine whether the IEP offered the student for the 2002–2003 school year was appropriate. The student cross-filed for reimbursement of tuition and fees expended at the nonpublic school during the 2001–2002 school year and for placement at that school for the remainder of the 2002–2003 school year. The consolidated cases were heard before a hearing officer on November 19, 20, and 21, and December 3, 2002.

On December 23, 2002, the hearing officer rendered a written decision, finding the IEP lacked a transition plan from the nonpublic school to the public school. The hearing officer ordered the school district to convene an IEP meeting to develop an ap-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C
Page 1 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

propriate transition plan. The hearing officer also found the student entitled to reimbursement of fifty percent of the cost of attendance at the nonpublic school from October 1, 2002 until the date of the ordered IEP meeting.

**2. Procedural History**

Plaintiffs filed the instant complaint, seeking an award of attorneys' fees and costs, on February 20, 2003. Defendant filed an answer to the complaint on April 22, 2003. This case was transferred to this Court on October 22, 2003. Pursuant to this Court's order, plaintiffs filed the instant motion on January 21, 2004. Defendant, on February 11, 2004, lodged the administrative record with this Court for its review. On February 17, 2004, defendant filed their opposition to the motion along with objections to evidence submitted by plaintiffs in support of the motion. Plaintiffs filed their reply brief on February 27, 2004. This Court subsequently vacated the hearing date of March 12, 2004 and took the matter under submission without oral argument on March 9, 2004. *See* CivLR 7.1(d.l).

## DISCUSSION

*2 Plaintiffs seek an award of attorneys' fees and costs as the prevailing party pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1400, *et seq.* Plaintiffs also claim that the fees and costs requested are reasonable. Defendant contends that plaintiffs did not prevail in this matter and, therefore, are not entitled to an award of fees and costs. In the event an award of fees and costs is deemed appropriate, defendant further contends that the fees sought by plaintiffs are unreasonable.

## I. Prevailing Party

### A. Legal Standard

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardians of a child or youth with a disability who is a prevailing party." 20 U.S.C. § 1415(e)(4)(B). A prevailing party is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit ." *Hensley v. Eckerhart.* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citations omitted). The success should result in a "material alteration of the legal relationship of the parties in

a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). However, fees cannot be claimed "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or *de minimus." Id.* at 792. In addition, "[t]here must be a causal link between the litigation brought and the outcome gained." *Parents of Student W. v. Puyallup School District. No. 3,* 31 F.3d 1489, 1498 (9th Cir.1994) (citations omitted).

### B. Analysis

Plaintiffs assert that they are prevailing parties in this action and, therefore, are entitled to reasonable attorneys' fees and costs. According to plaintiffs, because the hearing officer found the IEP offered by defendant lacked a transition plan, the plan was not appropriate. Therefore, plaintiffs contend they prevailed on a major issue presented at the hearing. Defendant contends that there were many issues presented, of which defendant prevailed on the majority and, thus, plaintiffs were not the prevailing party.

The hearing officer's decision stated the following issues were to be decided:

I. Has the District offered Michael a free, appropriate public education (FAPE) for the 2002–2003 school year?

II. If the District has not offered Michael a FAPE for the 2002–2003 school year, is he entitled to reimbursement for, and prospective placement at, Balboa Secondary School (Balboa), a certified nonpublic school?

AR. at 0957. The hearing officer presented extensive findings regarding the appropriateness of the IEP plan offered by the school district. In summary, the hearing officer found that:
the District's offer of placement made at the July 24, 2002 IEP was substantively and procedurally appropriate, with the exception that the District must create a transition plan for Michael. Because of a lack of transition plan, the IEP could not have been appropriately implemented at the start of the 2002–2003 school year ...

*3 *Id.* at 0969. In addition, the hearing officer found that, because of the school district's failure to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 2 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

provide a transition plan for the student in the IEP, reimbursement for the student's prior non-public school attendance was appropriate. *Id.* at 0972. The reimbursement award was reduced by fifty percent based on the fact that the parents delayed the process by failing to participate in the proceedings in good faith. *See id.* The hearing officer also found that, because the school district's failure to provide a written transition plan could be easily rectified, reimbursement for the 2002–2003 school year was not appropriate. *Id.*

The hearing officer then made findings as to the "extent to which each party prevailed on each issue heard and decided" pursuant to <u>California Education Code § 56507</u>(d). *Id.* at 973. The findings were as follows:

> I. Has the District offered Michael a free, appropriate public education (FAPE) for the 2002–2003 school year?

> A. Did the District commit a procedural violation by failing to have a teacher from Balboa present at the IEP meeting?

*The District prevailed.*
> B. Did the District misidentify Michael's unique needs, offer appropriate goals and objectives with baselines and measurable benchmarks?

*The District prevailed.*
> C. Is the District's offer of placement inappropriate because it is on a campus that is too large, does not provide for adequate counseling, and does not have appropriate accommodations?

*The District prevailed.*
> D. Does Michael require a transition plan?

*The Student prevailed.*
> II. If the District had not offered Michael a FAPE for the 2002–2003 school 17 year, is Balboa Secondary School, a certified non-public school, an appropriate placement?

> A. Is Michael entitled to reimbursement for the cost of his 19 placement at Balboa from the start of the 2002–2003 school year until the date of this Decision? 20

> *The Student prevailed to the extent that reimbursement was awarded fro fifty percent of the costs of tuition from October 2002 through the date of the IEP meeting held to develop a transition plan. The District prevailed to the extent that reimbursement for the nonrefundable deposit and the month of September 2002 were denied.*

> B. Should Michael be placed at Balboa for the remainder of the 2002–2003 school year? 25

*The District prevailed.*
AR at 0973. The hearing officer did not specifically identify the prevailing party on the core issues presented at the hearing.

The parties appear to agree that the primary issue resolved by the hearing officer was whether the IEP offered by the school district constituted a FAPE. *See* Pltffs' Memo. in Supp. at 6 (contending "the Hearing Officer found that the lack of transition plan constituted a denial of FAPE."); Opp. at 6 ("The primary issue was whether the District had provided Michael a FAPE."). Plaintiffs contend that they prevailed on the primary issue presented, as well as the issue of reimbursement and, therefore, are entitled to an award of attorneys' fees and costs.

**\*4** Defendant contends that an award of attorneys' fees is unwarranted because (1) the hearing officer found the totality of the school district's IEP was appropriate and, therefore, defendant, not plaintiffs, prevailed at the hearing; (2) the parents failed to act in good faith; and (3) the parents failed to comply with federal law.

**1. Appropriateness of the School District's IEP**
Defendant contends [FN4] that the hearing officer did not find the IEP inappropriate but, instead, found "the totality of the District's offer constituted a FAPE." Opp. at 9. Defendant points out that the student had sought, but did not receive, continued placement at the nonpublic school, a transition plan that allowed dual enrollment at the nonpublic school and the public high school, findings that the school district's goals and objectives were improper, and findings that the campus of the public high school was too large. *Id.* According to defendant, the relief actually received by the student "was trivial" or *de*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 3 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
(Cite as: 2004 WL 5562035 (S.D.Cal.))

*minimus* in comparison to the requested relief, thus precluding an award of fees. *Id.* at 12–13. Defendant contends that a hearing officer's order requiring a meeting to formulate a transition plan is "akin to receiving interim relief." *Id.* at 13. Defendant explains that the hearing officer's order "was an order of limited duration" issued to "arrange an immediate transition from private to public school" which "expired when the IEP meeting convened." Opp. at 15.

> FN4. Defendant also attempts to disparage plaintiffs by arguing that the instant motion is an improper attempt to have this Court overturn the hearing officer's decision, thus circumventing the appeals process. *See* Opp. at 16–18. Defendant argues a finding that plaintiffs prevailed would "necessitate overturning the Hearing Officer's decision." *Id.* at 18. Plaintiffs do not address the argument in reply. Nevertheless, this Court finds this argument clearly meritless. A court issuing a decision as to which party prevailed at a hearing could hardly be considered "overturning" the hearing officer's ultimate decision, especially where the hearing officer did not specifically find either party to be the prevailing party on any of the core issues in the case. *See* AR at 0957, 0973. Accordingly, this Court finds that defendant's argument fails.

Plaintiffs contend that the school district did not get judicial approval of the IEP, which the school district had sought. Reply at 2. According to plaintiffs, since the school district did not receive what it had sought, defendants did not prevail. *Id.* In addition, plaintiffs claim the relief they received, an IEP meeting to formulate a transition plan, was significant. *Id.* at 3.

This Court's review of the record in this case reveals that the adminstrative hearing was initiated by the school district's filing, seeking a determination that the IEP offered was a FAPE. Although the hearing officer did not specifically state that the IEP was not a FAPE, the decision did indicate the IEP was missing a transition plan. *See* AR at 0969. It is clear the school district did not receive what it had asked for at the hearing: a finding that the IEP, as offered, was a FAPE. The hearing officer found the IEP offered procedurally appropriate, in that it met the pro-

cedural requirements of the IEP, despite the parents' objections. *See id.* at 0960–0961. The hearing officer further found the IEP substantively appropriate, as it addressed the student's unique needs, providing appropriate goals and objectives to meet those needs, and provided placement at a proper sized campus with adequate counseling and accommodations. *See id.* at 0962–0967. However, the IEP was missing a transition plan; a key ingredient in the formula for an appropriate IEP. *See id.* at 0968–0969. Therefore, the IEP could not have been a FAPE as offered.

**\*5** This Court notes that, although the hearing officer found the lack of a transition plan "not a fatal error" in the IEP because an immediate meeting to create a plan would remedy the situation, the hearing officer also found that the plan offered by defendant "could not have been implemented at the start of the 2002–2003 school year" without a transition plan. AR at 0960. Based on the fact that the plan could not have been implemented without a transition plan, this Court disagrees with defendant's view that the transition plan here is "trivial," *"de minimus,"* or "interim relief," rendering the IEP fair and appropriate.[FN5] *See* Opp. at 12–13. Therefore, because the IEP offered by the school district was not found to be a FAPE as sought, this Court finds the school district did not totally prevail at the hearing. Accordingly, this Court finds plaintiffs prevailed, at least in substantial part, at the hearing.

> FN5. Plaintiffs, in their reply brief, point out that the cases cited by defendant are not analogous to the facts here. *See* Reply at 6–7. Specifically, plaintiffs note that, in *Student W.,* the parents did not receive any of the relief they had requested but, instead, were merely granted an earlier IEP meeting than was proposed. *Id.* at 7; *see Student W., 31 F.3d at 1498.* Plaintiffs claim that the student here received the relief they had requested: a gradual transition from nonpublic school to the public high school. Reply at 6. Plaintiffs distinguish the facts in the *Hung* er case cited by defendant based on the fact that the "transition services" found to be "interim relief" in that case were temporary pending the ultimate outcome of the case, unlike the instant case where the relief obtained "resulted in a new and different program for the student and a safe, gradual re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 4 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

turn to the campus as his parents had sought." Reply at 7; *see Hunger,* 15 F.3d at 670. Defendant further cites *J.O. v. Orange Township Board of Education,* 287 F.3d 267 (3rd Cir.2002), in which the court found temporary placement to be interim relief not sufficient to support an award of attorneys' fees. *See* Opp. at 13. Plaintiff distinguishes the *J.O.* case based on the non-temporary "change in placement and program obtained by this student." Reply at 7. Although defendant also cites as factually analogous the case of *Jodlowski v. Valley View Community Unified School District No. 365–U,* 109 F.3d 1250, 1252 (7th Cir.1997), plaintiffs do not attempt to distinguish that case in reply. *See* Opp. at 12. After a careful review of the cases cited by defendants, this Court agrees with plaintiffs that the cases are not sufficiently factually similar to the instant case to provide clear authority for the proposition that the transition plan here is to be considered *de minimus.*

## 2. Parents' Failure to Act in Good Faith

Defendants also contend that, because the hearing officer found the "parents had failed to participate in the IEP process in good faith by refusing to sign the IEP simply to show their attendance, by refusing to 'identify the area that they either agreed or disagreed with ...' and by their not informing the District of what their concerns were in any form of writing," the Court should exercise its discretion to deny an award of fees. Opp. at 20–21 (quoting AR at 0971–0972). Defendants argue that "there was a direct link between the parents' failure to act in good faith and the need for this litigation," pointing to the hearing officer's finding that " '[i]f Michael's parents had notified the District of their concerns at anytime prior to the start of the school year, then the District's failure to include a written transition plan may have been rectified and enrollment at Balboa would not have been necessary.' " *Id.* at 21 (quoting AR at 0972) (emphasis omitted). Defendants argue that an award of fees under these circumstances will encourage parents and their counsel to "refuse to cooperate and to use no-holds barred litigation tactics" which is contrary to the intent of Congress or the California State Legislature in enacting the IDEA. *Id.*

Plaintiffs, in reply, disagree that the parents' ac-

tions were in bad faith, explaining that the parents "did not choose to keep their son at Balboa" but were "forced to [do so] when the district insisted [the student] immediately begin a full-time program at the high school." Reply at 9. Plaintiffs claim that the parents had sought the creation of a transition plan both before the administrative hearing and "in the interim between the first day of hearing and the resumption of the hearing after mediation." *Id.* at 10. According to plaintiffs, the school district refused to "even discuss a compromise [or] a transition plan ...," but, instead, "tried to strong arm [the] student" by developing an inappropriate IEP and refusing to go to mediation, forcing the parents to "hire an attorney and experts to defend [themselves] and to protect their son." *Id.*

*\*6* In this Court's view, the parents' actions here do not amount to bad faith. Although the parents may have acted inappropriately, the hearing officer still awarded the parents reimbursement, reducing the award by fifty percent. Thus, the hearing officer did not find the parents' actions so egregious as to disallow reimbursement *in toto.* Therefore, this Court finds defendant's suggestion to use the Court's discretion and deny fees based on bad faith unconvincing.

## 3. Compliance with Federal Law

Lastly, defendant contends that the parents failed to comply with federal law and, therefore, the Court should deny plaintiffs' request for fees. Defendant points to various portions of the record that indicate noncompliance with the rules. *See* Opp. at 22–23. Specifically, defendants claim that the parents failed to comply with 20 U.S.C. § 1415(b)(7), which requires "notice to the school district of 'a description of the nature of the problem of the child relating to [the child's educational placement] and a proposed resolution of the problem ...' " *Id.* at 22 (quoting 20 U.S .C. § 1415(b)(7)). Defendants explain that the "[f]ailure to provide that information is a basis for reduction of a request for fees." *Id.* (citing 34 C.F.R. § 300.513(c)(4)(iv)).

Plaintiffs, in reply, point out that Section 1415(b) only requires such notice when the parents file for an administrative hearing. Reply at 14. Accordingly, plaintiffs contend that the rules do not require the parents to give notice, or file any response at all, when the complaint is filed by the school district, as

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 5 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

here. *Id.*

Section 1415(b) provides notice by the parents "in the complaint filed under paragraph (6)" of the rules. 20 U.S.C. § 1415(b)(7) (A). In this case, the parents did not file the complaint pursuant to paragraph six and as such no notice from the parents was required. Therefore, defendant's final argument fails.

This Court is mindful that plaintiffs did not prevail at the hearing on all substantive issues presented. In fact, the hearing officer clearly indicated that plaintiffs did not prevail on a substantial number of issues. *See* AR at 0973. Even though the Court has found that plaintiffs prevailed, the reasonableness of the fee award must also be measured by plaintiffs' degree of success. As defendant points out, the Supreme Court has found that "the precise amount of fees to which [plaintiffs] may be entitled depends upon the degree of success at the hearing." Opp. at 23 (citing *Farrar v. Hobby,* 506 U.S. 103, 114–15, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). In addition, the Supreme Court has found that an attorneys' fee "calculation may be adjusted up or down to reflect [p]lantiff[s'] degree of success in the litigation." *Hensley,* 461 U.S. at 434.

This Court notes that the hearing officer did not find the IEP plan presented by the school district was totally fair and appropriate. *See* AR at 0960–61, 0973. However, the hearing officer did find the plan appropriate in some ways and, thus, did not find in favor of plaintiffs on all issues presented at the hearing. *Id.* at 0973. Therefore, even though plaintiffs received a significant benefit from the hearing officer's decision, this Court finds that a reduction in the total fee award is warranted.

**4. Conclusion**
*7 Based on the foregoing, this Court finds that plaintiffs were the prevailing party on a significant issue at the administrative hearing, which entitles them to an award of reasonable attorneys fees and costs. *See* 20 U.S.C. § 1415(e)(4)(B). Having so found, the Court turns to the parties' arguments regarding the reasonableness of the fees and costs requested.

**II. Reasonableness**

**A. The Prevailing Market Rate**

The reasonableness of attorneys fees request are calculated according to the prevailing. market rate in the relevant legal community. *See Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir.1992). Plaintiffs have the burden of producing evidence " 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Sorenson v. Mink,* 239 F.3d 1140, 1145 (9th Cir.2001) (quoting *Blum v. Stenson,* 465 U.S. 889, 895 (1984)).

Plaintiffs submit declarations from plaintiffs' counsel, and various attorneys practicing in San Diego, Orange and Los Angeles Counties, attesting to the prevailing rate charged by attorneys engaged in special education litigation or related fields. *See* Freedus Decl.; Mot., Exhs. A. Defendant objects to each of the declarations submitted by plaintiffs on various grounds, including relevance, hearsay, lack of foundation, violation of the best evidence rule, and failure to support plaintiffs' entitlement to the hourly rate sought. *See* Def't Am. Obj. After a thorough review of the declarations submitted by plaintiffs and defendant's objections thereto, this Court finds the declarations contain sufficient indicia of reliability upon which this Court may rely. Therefore, defendant's objections are OVERRULED.

Plaintiffs seek attorneys fees at the hourly rate of $350, which defendant contends is inappropriately high. Plaintiffs' counsel, Eric Freedus, states in his declaration that he has "handled matters under the [IDEA] and corresponding state law since 1997" and currently limits his practice to special education matters. Freedus Decl. ¶ 4. Counsel states that he has billed an hourly rate of $300 per hour and recently raised his rate to $350 per hour sometime in early 2003. *Id.* ¶ 5. Counsel also claims that various school districts have paid the $300 rate "prior to 2003" and some have paid the $350 rate. *Id.* ¶ 8, 9.

Plaintiffs further submit declarations from two attorneys practicing in this District, Michael S. Cochrane and Patricia E. Cromer, as well as declarations from four attorneys practicing outside this District. *See* Mot., Exh. A. Cochrane and Cromer each attest that they charge an hourly rate of $300. *See id.* at 3, 4. The remaining four attorneys, not practicing in this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 6 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

District, attest to an hourly rate ranging from $300 to $350.

Defendant argues that the declarations submitted by plaintiffs are insufficient because the declared rates are "established by the declaring attorneys themselves" thus the rates declared are not "hourly rate[s] determined by market influences, paid by the general public for the services of these attorneys, nor an amount billed and collected from their clients." Opp. at 24, Defendant claims the rates declared are "arbitrary" rates set by mutual agreement between special education attorneys. *Id.* Therefore, defendant contends the rates declared by these attorneys cannot establish the prevailing rate in the community. *Id.* Plaintiffs do not clearly address this contention in reply.

*\*8* Defendant also takes issue with plaintiffs' use of declarations from attorneys outside the forum district. *See* Opp. at 24–25. Plaintiffs point out that "[t]here are a very limited number of attorney's practicing in special education in San Diego County" and those that practice in this District, for the most pan, are less experienced than plaintiffs' counsel. Reply at 12, Therefore, plaintiffs claim that "[t]he declarations [of out-of-district] attorneys show that the rates charged by the other attorneys in San Diego with less experience than [plaintiffs' counsel] are reasonable and that the experience of [plaintiffs' counsel] justifies a higher rate than those less experienced 'local' attorneys." *Id.* Defendant suggests that the fees for attorneys practicing in the special education arena should be capped at $125 per hour as are the fees for attorneys practicing in the area of federal civil rights. Opp. at 25. Failing application of the $125 per hour cap, defendant claims that the $200 per hour rate found reasonable for attorneys representing claimants in Social Security administrative hearings would suffice. In reply, plaintiffs urge the Court to look to the rates of those attorneys represented plaintiffs in Americans with Disability Act ("ADA") cases, where a $300 per hour rate has been found appropriate. Reply at 13.

This Court finds it inappropriate to look to the fees charged by attorneys outside the forum district as plaintiffs' counsel initially suggests. This Court is also not persuaded with plaintiffs' counsel's argument that the $350 rate currently being billed is appropriate because of counsel's experience. Counsel's declara-

tion indicates that, although he has practiced law since 1974 and handled ADA cases since 1992, he has only been handling IDEA matters since 1997. Freedus Decl. ¶¶ 1, 2, 4. The Court also notes the absence of evidence of a judicially approved attorneys' fee rate in this District for special education attorneys at either $300 or $350 per hour.

Based on the declarations submitted by the two San Diego attorneys along with plaintiffs' counsel's own declaration, this Court finds that $300 per hour is a reasonable hourly rate to apply in this case.

**B. Paralegal Fees, Costs and Expert Witness Fees**
Although defendant does not dispute the amount sought for costs and expert witness fees, defendant contends that the paralegal fees sought should not be allowed because "they violate IDEA'S prohibition on awarding fees to non-licensed attorneys." Opp. at 26. However, this Court deems plaintiffs' request for reimbursement of paralegal fees not sought as additional attorneys' fees as defendant apparently suggests. In support of the requested reimbursement, plaintiffs present a declaration stating that paralegal fees in San Diego at a rate of $115 was found reasonable by the Ninth Circuit in an IDEA case. *See* Mot., Exh. A at 1 (citing *Everett v. Santa Barbara High School District.* Nos. 00–55647, 00–56338 (Nov. 26, 2002)). This Court finds the reimbursement for 1.95 hours of paralegal services at $115 per hour proper. Therefore, in addition to the requested and undisputed amount of $452.34 in photocopy services, transcription services and postage costs, this Court finds the $224,25 for paralegal services reasonable. Lastly, plaintiffs' unopposed request for $5,087.50 in expert witness fees is also reasonable.

**C. Conclusion**
*\*9* Plaintiffs' counsel claims a total of 120.8 hours for the entire case, which defendant does not dispute. 120.8 hours multiplied by $300 per hour brings the total for attorneys' fees to $36,240.00. However, based on this Court's thorough review of the record, and considering plaintiffs' degree of success in this matter, this Court finds that the fee award should be reduced by forty (40) percent.[FN6] Thus, the attorneys' fees award of $36,240,000, is therefore reduced to $21,744.00. That figure added to the $452.34 in costs and expenses, the $224.25 in paralegal services and the $5,087.50 for expert witness fees equals a total award of $27,508.09.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 7 of 8**

Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)
**(Cite as: 2004 WL 5562035 (S.D.Cal.))**

> FN6. This Court is aware that the hearing officer reduced plaintiffs' reimbursement request based on the hearing officer's perception that plaintiffs had participated in the process in bad faith. However, this Court's reduction in award is not based on plaintiffs' failure to participate but on the Court's review of the hearing officer's decision as to the issues presented at the hearing.

### CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for attorneys' fees and costs [doc. # 15] is **GRANTED.**

2. Plaintiffs are awarded a total of $27,508.09 in attorneys' fees and costs pursuant to 20 U.S.C. § 1415(e)(4).

3. Plaintiffs having obtained the relief sought in the instant complaint, judgment shall be entered in favor of plaintiffs.

S.D.Cal.,2004.
Crawford v. San Dieguito Union High School Dist.
Not Reported in F.Supp.2d, 2004 WL 5562035 (S.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**
**Page 8 of 8**

# EXHIBIT "D"

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Tennessee.
Maureen DEAL and Phillip Deal, on behalf of Zachary
DEAL, an infant child with a disability, Plaintiffs,
v.
HAMILTON COUNTY DEPARTMENT OF
EDUCATION, Defendant.

No. 1:01-cv-295.
Aug. 1, 2006.

Gary Mayerson, Mayerson & Associates, James E. D'Au-
guste, Michael D. Lockard, Steven M. Pesner, Akin,
Gump, Strauss, Hauer & Feld, LLP, New York, NY,
Theodore R. Kern, Law Office of Theodore R. Kern,
Knoxville, TN, for Plaintiffs.

Charles L. Weatherly, Kathleen A. Sullivan, Thomas W.
Dickson, Weatherly Law Firm, Atlanta, GA, for Defen-
dant.

**MEMORANDUM**
R. ALLAN EDGAR, District Judge.
   *1 The United States Court of Appeals for the Sixth
Circuit remanded this action to this Court to determine
whether defendant Hamilton County Department of Edu-
cation ("HCDE") committed a substantive violation of the
Individuals with Disabilities Education Act, 20 U.S .C. §
1401 et seq. ("IDEA"), by its proposed educational pro-
grams developed for Zachary Deal.[FN1] The Sixth Circuit
has also ordered this Court to determine an appropriate
reimbursement award for the plaintiffs, Maureen Deal and
Phillip Deal on behalf of their autistic son Zachary. *See
Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 866
(6th Cir.2005).

   FN1. Congress revised the IDEA effective July
   1, 2005. *See* Pub.L. No. 108-446, Tit. I, § 101,
   Tit. III, § 302(a), 118 Stat. 2647, 2803 (2004).
   However, this Court will apply the law as it ex-
   isted prior to 2005 because all of the relevant
   facts in this case occurred before that time. *See
   Kenton County Sch. Dist. v. Hunt*, 384 F.3d 269,
   283 (6th Cir.2004); *Tucker v. Calloway County
   Bd. of Educ.*, 136 F.3d 495, 500-01 (6th

Cir.1998).

   This Court has previously issued a memorandum
opinion regarding whether HCDE violated the substantive
provisions of the IDEA. [Court Doc. No. 89]. In that opin-
ion the Court found no substantive violation of the IDEA.
However, the Sixth Circuit has informed this Court that
"the Deals are entitled to reimbursement" and that this
Court must "determine the level of reimbursement that is
'appropriate' in light of IDEA's purposes." *Deal*, 392 F.3d
at 866. Thus, this Court must determine an appropriate
amount of reimbursement and attorneys' fees to be
awarded to the Deals.

   The Deals seek $54,610.12 as reimbursement for
what they allege are the reasonable expenses of Applied
Behavior Analysis ("ABA") services and related services
for Zachary. The Deals also seek $1,034,985 for "legal
services" and "other litigation expenses," the entire
amount of attorneys' fees and costs expended, that the
Deals' numerous attorneys have provided throughout the
many phases of this legal action. In contrast, HCDE ar-
gues that the Deals are entitled to only a nominal or
minimal award of reimbursement and that due to their
nominal success in this litigation, they should be entitled
to no attorneys' fees at all.

   The extreme positions of the parties exemplifies the
reason why this case, after more than six years, is still
being contentiously litigated. In this Court's view, there
appears to be no room for the parties to compromise on
any level in this action. The Deals refuse to admit that
they may have been even the tiniest bit unsuccessful on
their multitude of claims, and HCDE refuses to concede
that the Sixth Circuit's decision in this action may have
rendered the Deals successful in any other than the most
nominal of ways. Thus, this Court is left with the unpalat-
able task of reaching a result that will doubtless leave
both parties dissatisfied. *See e.g., Johnson v. Georgia
Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir.1974),
*abrogated on other grounds by Blanchard v. Bergeron*,
489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

**I. Analysis**

**A. Appropriate Reimbursement**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
(Cite as: 2006 WL 2854463 (E.D.Tenn.))

The IDEA provides that a district court "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). The United States Supreme Court has determined that with respect to reimbursement,

*2 [t]he ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be 'appropriate.' Absent other reference, the only possible interpretation is that the relief is to be 'appropriate' in light of the purpose of the Act. As already noted, this is principally to provide handicapped children with 'a free appropriate public education' which emphasizes special education and related services designed to meet their unique needs.

Sch. Comm. of the Town of Burlington v. Dep't of Educ., 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). In Town of Burlington the Supreme Court also concluded that "equitable considerations are relevant in fashioning relief." Id . at 374, 105 S.Ct. at 2005. The Supreme Court has further held that "[c]ourts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required. Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 16, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993).

Under IDEA a free appropriate public education ("FAPE") consists of "special education and related services." See 20 U.S.C. § 1401(8). Special education is defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including-(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(25). The statute defines "related services" as:

transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to as-

sist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(22). Thus, to the extent the Deals are entitled to reimbursement, they are entitled to reimbursement for the costs of Zachary's special education and related services relating to his ABA therapy.

The Court recognizes that the Sixth Circuit held that HCDE committed procedural violations of the IDEA by predetermining Zachary's placement and failing to include a regular education teacher at certain Individualized Education Plan ("IEP") meetings. The Court also recognizes that not every procedural violation constitutes a denial of a FAPE under the IDEA. See Kings Local Sch. Dist., Bd. of Educ. v. Zelazny, 325 F.3d 724, 732 (6th Cir.2003); DiBuo v. Bd. of Educ. of Worcester County, 309 F.3d 184, 190 (4th Cir.2002). However, it is also clear that procedural violations alone may constitute a denial of FAPE. See Hall v. Vance County Bd. of Educ., 774 F.2d 629, 635 (4th Cir.1985); W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, 960 F .2d 1479, 1484 (9th Cir.1992).

*3 In Zelazny the Sixth Circuit said that:

"[o]nly if we find that a procedural violation has resulted in such substantive harm and thus constituted a denial of [the child's] right to a FAPE ..., may we 'grant such relief as the court determines is appropriate.' " ... 'substantive harm occurs when the procedural violations in question seriously infringe upon the parents' opportunity to participate in the IEP process.'

325 F.3d at 732 (quoting Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764-65 (6th Cir.2001)); see also Target Range Sch. Dist., 960 F.2d at 1484.

Further, it is clear that federal courts have ordered reimbursement to parents of disabled children on the basis of procedural violations alone, without discussing whether substantive violations occurred. See Target Range Sch. Dist., 960 F.2d at 1485-87; Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 895 (9th Cir.2001); Bd. of Educ. of Cabell County v. Dienelt, 843 F .2d 813, 814-15 (4th Cir.1988). In Target Range the Ninth Circuit held that the parents of a disabled child were entitled to a reimbursement for a private special education placement due to the school district's procedural errors that denied FAPE. 960 F.2d at 1487. The Sixth Circuit

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

has also held that a "procedural violation causing harm warrants equitable relief." *Tennessee Dep't of Mental Health and Mental Retardation v. Paul B.,* 88 F.3d 1466, 1478 (6th Cir.1996).

When determining an appropriate amount of reimbursement, federal courts have concluded that the "conduct of both parties must be reviewed to determine whether relief is appropriate." *Target Range Sch. Dist.,* 960 F.2d at 1486. In addition, equitable factors may serve to reduce an award of reimbursement. *See L.B. v. Nebo Sch. Dist.,* 379 F.3d 966, 979 n. 18 (10th Cir.2004). In some IDEA cases federal courts have upheld an award of nominal damages to plaintiffs based on procedural violations that did not harm the student. *See Salley v. St. Tammany Parish Sch. Bd.,* 57 F.3d 458, 463, 466 (5th Cir.1995).

The Sixth Circuit has given this Court some guidance regarding an appropriate award of reimbursement in this action.

Here, the Deals are entitled to reimbursement. The School System deprived Zachary of a FAPE by predetermining his placement and by failing to ensure the attendance of regular education teachers at certain IEP meetings. Furthermore, the district court has the opportunity on remand, to find an additional, substantive, IDEA violation by the School System. The private educational services provided by the Deals clearly were proper under the IDEA. The district court's task on remand thus is to determine the level of reimbursement that is 'appropriate' in light of the IDEA's purpose.

*Deal,* 392 F.3d at 866 (citations omitted). Further, the Sixth Circuit ordered this Court to "weigh the equities" to determine an "appropriate level of reimbursement." *Id.* Although HCDE argues that the Deals should only receive a nominal amount of reimbursement, this Court concludes that it is bound by the Sixth Circuit's holding that HCDE's procedural violations denied Zachary a FAPE. HCDE relies on *Salley* for support of its contention that the Deals should receive a nominal reimbursement award only. 57 F.3d 458. In *Salley* the Fifth Circuit concluded that the school district's procedural violations did not harm the student. 57 F.3d at 466. In this action, the Sixth Circuit has specifically concluded the opposite; it has determined that HCDE's procedural violations denied Zachary a FAPE. Many federal courts have awarded reimbursement based on procedural violations alone without feeling the need to resolve whether substan-

tive violations occurred. *See Target Range Sch. Dist.,* 960 F.2d at 1485.

**\*4** The Sixth Circuit, however, has placed this Court in a somewhat unusual position in this case. It has specifically ordered this Court to award the Deals reimbursement for HCDE's procedural violations, but it also ordered this Court to review the substantive appropriateness of HCDE's programs offered to Zachary. This Court has determined that HCDE's proposed programs for Zachary did not violate the substantive provisions of the IDEA. As HCDE points out, it makes little sense for the Sixth Circuit to have remanded this case regarding the substantive appropriateness of HCDE's decision if this Court's decision does not affect the outcome on reimbursement. Therefore, this Court will analyze the Deals' request and attempt to "weigh the equities" to determine an appropriate amount of reimbursement in light of the Sixth Circuit decision and this Court's decision on remand.

The Deals request a total of $54,610.12 for both ABA therapy for Zachary and for related services. The Deals have provided evidence regarding a total of $43,808.48 for their expenses for ABA therapy for Zachary. [Court Doc. No. 104, Ex. 1]. This total includes payments for therapy, IEP meetings, unidentified meetings, workshops, training, mysterious charges for events labeled "Team", "Administrative" and "Aide", and miscellaneous expenses like laminating and copying. This leaves $10,801.64 in other expenses related to Zachary's ABA therapy for which the Deals are requesting reimbursement.

The Court finds that reimbursement is appropriate as special education and related services for such things as ABA therapy, workshops, training, and miscellaneous inexpensive supplies. However, an ABA therapist's attendance at an IEP meeting does not fit within the scope of special education provided to Zachary, and this Court uses its discretion to deny reimbursement for paying therapists to attend Zachary's IEP meetings. Further, the entries labeled "meeting," "team," "administrative," "preparation," and "observation" are too vague for this Court to determine whether they constitute reimbursable expenses for special education and related services. Finally, the payments for "Aide" are also too vague for this Court to make a determination of whether they are reimbursable expenses. The Court suspects that these entries relate to time spent by one therapist, April Brewer, to accompany Zachary to his private preschool classes. The administrative law judge ("ALJ") ruled that the Deals were not entitled to reimbursement for Zachary's private

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

school tuition at Primrose. This Court concludes that time spent in an aide capacity for Zachary at Primrose is related to his Primrose tuition. As such, these expenses are not reimbursable as ABA therapy. When the Court subtracts these expenses from the Deals' requested reimbursement for ABA therapy, the Court arrives at $40,688.47 in appropriately documented ABA services.

In addition to their request for reimbursement for Zachary's ABA therapy, the Deals are requesting $10,801.64 in related expenses. The question for this Court is whether the Deals have adequately documented these expenses so that the Court can determine that the expenses were for "related services" for Zachary. The Deals have submitted a list of their total ABA expenses, including expenses for ABA therapy. [Court Doc. No. 104]. This listing includes many expenses relating to the travel, lodging, consultations, and workshops for individuals with the Center for Autism Related Disorders ("CARD"). Many of these expenses are properly reimbursable because they constitute the supportive services that have allowed Zachary to benefit from the special education his parents designed for him. *See* 20 U.S.C. § 1401(22). However, many of the entries are unclear, and do not permit a determination as to whether they properly constitute reimbursable related services for Zachary. The Deals have presented meticulous evidence of expenses they incurred, including many copies of checks, receipts, invoices, etc. The Court does not doubt that the Deals spent the amount they claim in expenses relating to Zachary's CARD program. However, the Deals have offered this Court very little guidance, either within their evidence on expenses or within their legal briefing, for how all of these expenses properly constitute "related services" that are reimbursable under IDEA. The Sixth Circuit has held that unreasonable costs are not appropriate for reimbursement. *Knable ex rel. Knable,* 238 F.3d at 771 (citing *Florence County,* 510 U.S. at 16, 114 S.Ct. 361; *Gadsby v. Grasmick,* 109 F.3d 940, 955 (4th Cir.1997)). The Deals present many receipts allegedly relating to their ABA expenses. These receipts include charges for such items as games, books, puzzles, toys (presumably used as reinforcers), and supplies. Because this Court cannot determine with any certainty whether all of these expenses are properly reimbursable as "related services" under IDEA, the Court will reduce these requested reimbursements by a total of 10%, leaving the appropriate amount subject to reimbursement at $9,721.48. Thus, the total amount of expenses appropriate for potential reimbursement is $50,409.95.

**\*5** This exercise does not end the inquiry, however. This Court must weigh the equities and determine an appropriate level of reimbursement. The relief must "be 'appropriate' in light of the purpose of the Act." *Sch. Comm. of the Town of Burlington,* 471 U.S. at 369, 105 S.Ct. 1996. The Supreme Court has determined that the purpose of the IDEA "is principally to provide handicapped children with 'a free appropriate public education' which emphasizes special education and related services designed to meet their unique needs." *Id.* In addition, the behavior of both parties may be considered in awarding reimbursement. *See Target Range Sch. Dist.,* 960 F.2d at 1486; *L.B. v. Nebo Sch. Dist.,* 379 F.3d at 979 n. 18. The Ninth Circuit has indicated that whether full or partial reimbursement is appropriate may depend on a number of factors, including "the existence of other, perhaps more appropriate, substitute placements, the effort expended by [the student's] parents in securing alternative placements and the general cooperative or uncooperative position of Appellees." *Adams v. State of Oregon,* 195 F.3d 1141, 1151 (9th Cir.1999).

In this action the Sixth Circuit specifically found two procedural violations that denied Zachary a FAPE: HCDE's predetermination of a placement for Zachary and the absence of a regular education teacher at all of his IEP meetings. *Deal,* 392 F.3d at 866. The Sixth Circuit remanded to this Court for a determination of whether HCDE committed a substantive violation that denied Zachary a FAPE. *Id.* This Court determined that HCDE did not commit a substantive violation that denied Zachary a FAPE. [Court Doc. No. 89].

The Sixth Circuit has held that a denial of FAPE due to procedural violations occurs when such violations " 'seriously infringe upon the parents' opportunity to participate in the IEP process.' " *Zelazny,* 325 F.3d at 732. (quoting *Knable ex rel. Knable,* 238 F.3d at 764-65). Thus, HCDE's procedural violations did not infringe upon the overall purpose of the IDEA, but rather they affected the parents' opportunity to participate in the IEP process. Further, the Court finds that although the Sixth Circuit has determined that "the private educational services provided by the Deals clearly were proper under the IDEA," this Court has determined that HCDE's program was also appropriate. *Deal,* 392 F .3d at 866; [Court Doc. No. 89]. The Deals refused to take advantage of HCDE's program, instead choosing to rely on their preferred education for Zachary at their own expense. *See Adams,* 195 F.3d at 1151 (one factor to consider in weighing equities is the parents' failure to consider substitute placements). The

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
(Cite as: 2006 WL 2854463 (E.D.Tenn.))

Deals were also generally uncooperative with HCDE in considering programs other than ABA therapy on their terms. *Id.* However, the Court of Appeals has concluded that HCDE was also uncooperative in predetermining a program for Zachary and refusing to compromise with the Deals in any way in their request for ABA therapy. Thus, this Court concludes that the reimbursement award should not be reduced because of the Deals' uncooperative stance. Nevertheless, because this Court has determined that HCDE offered an alternative, appropriate program for Zachary, it seems reasonable to conclude that the Deals are not entitled to full reimbursement for providing ABA therapy to Zachary. Because HCDE denied Zachary a FAPE based on its procedural violations, this Court will award the Deals partial reimbursement for their expenses incurred in providing Zachary with ABA therapy. This Court thus holds that the Deals are entitled to an award of 50% of their supported expenses for Zachary's ABA therapy, or $25,204.98.

**B. Attorneys' Fees**
*\*6* The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). The IDEA also provides that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C). Further, a court has the discretion to reduce the amount of attorneys' fees if it determines that:

(i) the parent, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceedings; or

(iv) the attorney representing the parent did not provide to the school district the appropriate information in the

due process complaint in accordance with subsection (b)(7) of this section;

20 U.S.C. § 1415(i)(3)(F). These exceptions do not apply in situations in which the court finds that the school district "unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G).

In analogous civil rights actions pursuant to 42 U.S.C. § 1988, the U.S. Supreme Court has determined that a party is a "prevailing party" for purposes of obtaining attorneys' fees if it " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart,* 461 U.S. 424, 432, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir.1978)). Described another way, a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

The Sixth Circuit has applied the rule in *Hensley* to IDEA cases and determined that a "prevailing party" for IDEA purposes is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Berger v. Medina City Sch. Dist.,* 348 F.3d 513, 526 (6th Cir.2003) (quoting *Hensley,* 461 U.S. at 433). Further, the Sixth Circuit has held that "attorney-fees awards should be analyzed on a case-by-case basis, without attempting to apply any predetermined formula." *Wikol ex rel. Wikol v. Birmingham Public Schs. Bd. of Educ.,* 360 F.3d 604, 611 (6th Cir.2004).

*\*7* In *Hensley* the Supreme Court provided guidance for determining the appropriate amount of attorneys' fees:

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' ... Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission....

The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

_Hensley,_ 461 U.S. at 434, 103 S.Ct. at 1940. No attorneys' fee should be awarded for work on an unsuccessful claim. _Id._ at 435, 103 S.Ct. at 1940. Where the successful issues in a lawsuit are not easily segregated from the unsuccessful issues, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." _Id._ The "most critical factor is the degree of success obtained." _Id._ at 436, 103 S.Ct. at 1941.

A record filed in support of an attorneys' fee award is "sufficient where it is contemporaneously compiled and sufficiently detailed to allow the Court to determine with certainty the number of hours reasonably expended on the litigation." _Knop v. Johnson,_ 712 F.Supp. 571, 576 (W.D.Mich.1989). Further, the court in _Knop_ noted that:

Plaintiffs' counsel are entitled to compensation for all hours reasonably expended on their successful claims, but they are not entitled to compensation for hours attributable to 'overkill' or to the assumption that 'the standard of service to be rendered and compensated is one of perfection, the best that illimitable expenditures of time can achieve.' Similarly, because more experienced attorneys charge higher rates for their services, they are expected to perform legal work in an expedited manner.

*8 712 F.Supp. at 578. (internal quotations and citations omitted). At least one district court has noted that a midstream change in counsel can create duplicative work and that "plaintiffs are not entitled to a fee award for the duplicative work occasioned by their midstream change of counsel." _Sun Pub. Co., Inc. v. Mecklenburg News, Inc.,_ 594 F.Supp. 1512, 1517-18 (D.C.Va.1984), _abrogated on other grounds by_ LaVay Corp. v. Dominion Fed. Sav. & Loan Assoc., 830 F.2d 522, 528 (4th Cir.1987).

Moreover, the Supreme Court has admonished courts that:

[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

_Hensley,_ 461 U.S. at 436-37, 103 S.Ct. at 1941.

Courts in this Circuit have determined that, with respect to the IDEA,:

'the plaintiff's success should not be measured solely in terms of what she requested in the complaint. The plaintiff succeeds to the extent that the school's proposed IEP is shown to be inappropriate, even if the ALJ and the courts are not convinced to order the plaintiff's own preferred alternative.'

_Gross ex rel. Gross v. Perrysburg Exempted Village Sch. Dist.,_ 306 F.Supp.2d 726, 732 (N.D.Ohio 2004) (quoting _Kari H. v. Franklin Special Sch. Dist.,_ 1999 WL 486400, *2 (6th Cir.1999)).

In addition, a request for reasonable paralegal fees may also be compensable. _Gross ex rel. Gross,_ 306 F.Supp.2d at 737, 739; _Knop,_ 712 F.Supp. at 580, 589-90. At least one district court in this Circuit has also determined that "[i]t is within the Court's discretion to grant attorneys fees for time spent conferring with co-counsel and with subordinates." _Knop,_ 712 F.Supp. at 578. Attorneys may also receive compensation for the time spent preparing and litigating motions for attorneys' fees. _Id._ at 742. As the court in _Gross ex rel. Gross_ noted,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

[t]he ability to recover not only the fee award for a qualified special education attorney's work on the substantive case, but also for the federal claim a parent must file to recover fees from an unwilling defendant, is crucial to ensuring that parents and children have access to adequate representation when they seek to enforce the provisions of IDEA.

    306 F.Supp.2d at 743.

In deciding a reasonable market rate for attorneys' fees, the U.S. Supreme Court has determined that "the burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." _Blum v. Stenson,_ 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); _see also Sun Pub. Co., Inc.,_ 594 F.Supp. at 1519-20. The Sixth Circuit has concluded that "[w]hen fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation.... A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." _Hadix v. Johnson,_ 65 F.3d 532, 535 (6th Cir.1995) (citing _Chrapliwy v. Uniroyal, Inc.,_ 670 F.2d 760, 768-69 (7th Cir.1982)). However, some federal courts have determined that a defendant's use of expensive, experienced, non-local attorneys may justify the plaintiffs in hiring comparably experienced, non-local counsel. _See Chrapliwy,_ 670 F.2d at 768 n. 18. Where local counsel with requisite skills are not available, then fee awards may be awarded based on the fees for the location where suitable counsel may be found. _Sun Pub. Co., Inc.,_ 594 F.Supp. at 1518 (citing _Chrapliwy,_ 670 F.2d at 768-769). Current rates for attorneys' fees may be charged to compensate for any delay in obtaining fees. _See Knop,_ 712 F.Supp. at 583; _Barnes v. City of Cincinnati,_ 401 F.3d 729, 745 (6th Cir.2005). Further, a district court "should assess whether the hours of service were deemed necessary at the time they were performed." _Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.,_ 262 F.Supp.2d 804, 816 (W.D.Mich.2003). The Sixth Circuit has cautioned district courts that "they do not have a mandate ... to make the

prevailing counsel rich." _Reed v. Rhodes,_ 179 F.3d 453, 472 (6th Cir.1999) (quoting _Johnson,_ 488 F.2d at 719). Further, "hourly rates should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." _Reed,_ 179 F.3d at 472 (quoting _Coulter v. State of Tennessee,_ 805 F.2d 146, 149 (6th Cir.1986)).

**\*9** Both the U.S. Supreme Court and the Sixth Circuit have approved of the twelve factors listed in _Johnson v. Georgia Highway Express, Inc.,_ 488 F.2d 714, 717-19 (5th Cir.1974) as appropriate factors for district courts to consider when determining attorneys' fee awards. _See Hensley,_ 461 U.S. at 434 n. 9, 103 S.Ct. 1933; _Adcock-Ladd v. Secretary of Treasury,_ 227 F.3d 343, 349 (6th Cir.2000). The twelve factors that district courts may consider are:

    (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

    _Adcock-Ladd,_ 227 F.3d at 349 n. 8 (citing _Reed v. Rhodes,_ 179 F.3d 453, 471-72 n. 3 (6th Cir.1999)).

In this action the Deals are requesting a total of $962,880.10 for their attorneys' fees to pursue this litigation and to file their motion for attorneys' fees. This includes the total expenses of three different law firms, the Law Office of Theodore Kern, Mayerson & Associates, and Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"). The Deals request a total of: $91,320.00 for Theodore Kern's services; $556,594.35 for Mayerson & Associates; and $314,965.75 for Akin Gump. [Court Doc. No. 106]. This Court will start by determining the number of hours "reasonably expended on the litigation multiplied by a reasonable hourly rate." _Hensley,_ 461 U.S. at 434, 103 S.Ct. at 1940.

**1. Reasonable Number of Hours Multiplied by Reasonable Rates**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
(Cite as: 2006 WL 2854463 (E.D.Tenn.))

**a. Law Office of Theodore Kern**

The Deals seek $91,320.00 to compensate Theodore Kern for his attorneys' fees. [Court Doc. Nos. 106, 98]. Mr. Kern avers that he spent 456.60 hours working on this litigation and requests that this Court order an award based on his current hourly rate of $200.00 per hour. Mr. Kern's role in this litigation was to be local counsel working in an "assistive capacity." [Court Doc. No. 105-1, Declaration of Gary S. Mayerson ("Mayerson Decl."), ¶ 18]. The Court finds that Mr. Kern's hourly rate of $200.00 per hour is reasonable and consistent with the current hourly rates of attorneys practicing school law in this region. In addition, Mr. Kern is entitled to be compensated at his current hourly rate to compensate him for the delay in payment for his fees. See Knopp, 712 F.Supp. at 583; Barnes, 401 F.3d at 745.

The Court now turns to the number of hours reasonably expended. Mr. Kern's billing records are difficult to decipher. It is impossible for this Court to determine on what issue Mr. Kern was working for any given time entry. Further, it appears that Mr. Kern was charging his full hourly rate for travel time. Courts have reduced an attorney's hourly rate for travel time. See e.g. Mr. X v. New York State Educ. Dep't, 20 F.Supp.2d 561, 564 (S.D.N.Y.1998). In addition, if an attorney documents his hours inadequately, a court may reduce an attorneys' fee award accordingly. See Hensley, 461 U.S. at 434, 103 S.Ct. at 1940; Mr. X, 20 F.Supp.2d at 564. Even though Mr. Kern was acting in an "assistive capacity" he billed 456.6 hours in this action. Mr. Mayerson, the lead counsel throughout most of the case, billed only a little more than twice that amount, 1004.1 hours, in this action, including time for the majority of the work at the administrative hearing, work on discovery, an evidentiary hearing and appellate briefing in this Court, and further appeal at the Sixth Circuit. See [Court Doc. No. 104]. Due to Mr. Kern's vague time entries and this Court's determination that Mr. Kern spent more time than necessary in his assistive capacity, this Court will reduce his overall fee request by 20%. Thus, the number of hours Mr. Kern reasonably expended, 365.28, multiplied by a reasonable rate of $200 per hour is $73,056.

**b. Mayerson & Associates**

*10 The Deals seek a total of $556,594.35 in attorneys' fees for the work performed by Mayerson & Associates, a New York law firm specializing in IDEA cases, particularly those dealing with children with autism. Mr. Mayerson, his associates, and his paralegals spent a total of 1421.48 hours representing the Deals during the administrative due process hearing, the initial appeal before this Court, the Deals' appeal to the Sixth Circuit, and defense of HCDE's request for en banc review by the Sixth Circuit. The administrative hearing lasted for a jaw dropping twenty-seven days, even though it pertained only to a few years of one young child's educational life. Mr. Mayerson's rates from 2000 to 2006 ranged from $350 per hour to $450 per hour. Mr. Mayerson's associate billed from between $150 per hour to $225 per hour and seeks all of her fees in 2006 rates, or $295 per hour. The Deals seek fees ranging from $295 to $90 per hour for other associate and/or paralegal assistance.

This Court's first task is to determine the number of hours reasonably expended on the litigation. The Deals' initial due process request was seventeen pages in length and identified twenty alleged IDEA violations with eight suggested remedies. See [Court Doc. No. 110-1, Declaration Testimony of Gary D. Lander ("Lander Decl."), ¶ 9]. During the course of the administrative hearing, the Deals eliminated many of their counts of IDEA violations. Lander Decl., ¶ 15. It is unclear to this Court why the parties needed a full twenty-seven days of hearing testimony adequately to present evidence in this case. From this Court's review of the record in this case, it appears that twenty-seven days of testimony is unduly lengthy for a hearing pertaining to one young child with autism and dyspraxia and questions regarding a relatively small number of his educational years. See [Court Doc. No. 113-1, Affidavit of Charles W. Cagle ("Cagle Aff."), ¶ 16].

The IDEA authorizes reductions in attorneys' fees in cases in which parents unduly protract the litigation or where the time spent on legal services was excessive. See 20 U.S.C. § 1415(i)(3)(F). These exceptions do not apply where the school district "unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G). However, in the instant action this Court does not find that HCDE unreasonably protracted the administrative hearing. HCDE's attorney has testified in his declaration that the Deals spent seventeen days of the twenty-seven day administrative hearing on their case in chief. Lander Decl., ¶ 16. Further, Mr. Lander asserts that he handled the entire administrative hearing on his own with secretarial assistance and limited paralegal assistance. Id. at ¶ 6. Mr. Mayerson and his associates billed 589.55 hours to the administrative hearing and post-hearing briefing with Mr. Mayerson billing 526.3 of those hours and his associate billing 58 of the hours. [Court Doc. No. 105]. A para-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

legal billed the additional 5.25 hours. *Id.* Mr. Mayerson and his associate billed 183.3 hours alone to drafting the Deals' post-hearing briefing. *See id.* Further, the Mayerson & Associates billing records are extremely sparse, and this Court is unable to determine whether any charges were duplicative, excessive or unnecessary. This Court concludes that a twenty-seven day hearing was excessively long in this case and that HCDE did not unreasonably protract the administrative proceedings. However, both Mr. Mayerson and Mr. Kern disagree with HCDE's assertion that the Deals were the only party unnecessarily prolonging the hearing. They have also spread the blame to both HCDE and to the ALJ. Because there were some other factors, besides the plaintiffs and their counsel, which lengthened the hearing, this Court will only reduce the numbers expended on the administrative hearing by 15%. *See* 20 U.S.C. § 1415(i)(3)(F); *see Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. A twenty-two and a half day administrative hearing, and probably even a much shorter hearing, should have been sufficient to address the actual substantive and procedural issues present in this case. Further, it appears that billing a good month of one attorney's time on post-hearing briefing was excessive. Thus, this Court concludes that 501.12 hours should have been sufficient to handle an administrative hearing of reasonable length with efficient use of attorney time on post-hearing briefing.

**\*11** The remaining 831.93 hours billed by Mayerson & Associates include work done on the initial appeal to this Court from the administrative decision, including the additional discovery and additional evidence hearing and briefing to this Court, the maintenance of the appeal to the Sixth Circuit, the defense of HCDE's request for en banc review by the Sixth Circuit, as well as a nominal amount of hours for this "fees on fees" motion. This Court does not find that this number of hours itself is unduly excessive given the fact that HCDE requested additional discovery, the additional evidence hearing, and en banc review in the Sixth Circuit. However, this Court finds that the time entries relating to these hours, as were the time entries relating to the administrative hearing, are unduly vague. It is impossible for this Court to discern precisely how Mr. Mayerson and his staff billed their time and on what discrete issue relating to this litigation. [Court Doc. No. 105]. Some entries are as vague as "General administration," "legal research," or "Federal Appeal." This information is not sufficient to inform this Court why these entries are properly compensable. Due to the lack of clarity of the Mayerson & Associates' time entries, this Court concludes that the hours spent relating to the district court and Sixth Circuit appeals should be reduced by 10%.

Thus, the Court concludes that 748.74 hours is an appropriate number of hours for the Mayerson & Associates' appellate work in this case, creating a total of 1,249.86 hours of time reasonably expended by them in this action.

Next, this Court must determine a reasonable hourly rate for the expenditures by Mayerson & Associates. The IDEA specifically states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Evidence in this action, both from the Deals and from HCDE, indicates that Mr. Mayerson's rates of $350 to $450 per hour do not conform to the prevailing rates in this community. The Deals' own expert on prevailing rates in the community asserts that $250-300 per hour is the current prevailing rate for experienced senior litigators in federal court. [Court Doc. No. 95, Affidavit of Harry P. Ogden ("Ogden Aff."), ¶ 5]. Mr. Ogden also asserts that associate attorneys currently receive $190-225 per hour and that paralegals receive $125-150 per hour. *Id.* However, Mr. Ogden does not state whether attorneys working in the field of school law charge these same rates. HCDE also presents evidence on prevailing community rates. Mr. Lander, HCDE's attorney, indicates that "experienced senior attorneys practicing in the field of special education law" receive a current market rate of $200 per hour and that paralegals receive $60 to $75 per hour. Lander Decl., ¶ 22. Mr. Cagle, another attorney in Tennessee practicing in the area of special education law, asserts that senior attorneys representing school districts currently charge between $200 to $275 per hour, with associates charging above $175 to $225 per hour. Cagle Aff., ¶ 11. Mr. Cagle asserts that Tennessee lawyers representing parents and disabled students currently charge between $175 and $250 per hour for senior attorneys and $100 to $150 per hour for associates. *Id.* at ¶ 12.

**\*12** The Sixth Circuit has determined that "judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix,* 65 F.3d at 535. The Deals argue that prevailing rates in the community should not apply because they could not locate attorneys in the surrounding community with sufficient expertise who were available and willing to take their case. Mrs. Deal asserts that she and her husband searched for a local attorney and approached three attorneys in the Chattanooga area who had "special needs children." [Court Doc. No. 104, Declara-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

tion of Maureen Deal ("Deal Decl."), ¶ 11]. These attorneys declined to represent the Deals. *Id.* Mrs. Deal sought an attorney with "experience in litigating IDEA cases dealing with autism." *Id.* After ending a "futile" search for a suitable attorney in Chattanooga, they expanded their search to two attorneys in Knoxville, Mr. Mayerson, an attorney in West Virginia, and one in Virginia. *Id.* at ¶ 12.

In response, HCDE presents the affidavit of Mr. Cagle who lists eleven attorneys who represent parents in special education actions in middle and east Tennessee. Cagle Aff., ¶ 17. Mrs. Deal's declaration indicates her predisposition towards finding an attorney with his or her own "special needs child" possessing an expertise, not only in IDEA litigation, but in the needs of autistic children. *See* Deal Decl., ¶¶ 11-12. The Court finds this highly narrow subgroup of attorneys too limited. The Court cannot conclude that no suitable attorneys representing children in IDEA cases can be found in the Chattanooga area or surrounding region, including such cities as Knoxville, Nashville, Birmingham, or Atlanta, who would have adequately represented the Deals in this litigation for an hourly fee less than what Mr. Mayerson charged. In addition, this Court does not agree with the Deals that only attorneys having their own "special needs children" or with sufficient "expertise" in autism are competent to handle issues such as procedural and substantive compliance with the IDEA presented in this case. There are dozens upon dozens of federal IDEA cases, including many cases available specifically on Lovaas and ABA therapy. The Court concludes that any competent attorney practicing in the field of IDEA litigation is capable of gaining the requisite knowledge necessary to litigate an IDEA case involving an autistic child.

The Deals further argue that because the HCDE hired expensive, out-of-town counsel to defend it, they were entitled to pursue equally high-powered attorneys to represent them. However, the Deals retained Mr. Mayerson to file their request for due process hearing before they could have known whom HCDE would choose to represent it. Further, HCDE initially elected to retain Mr. Lander, a local Chattanooga attorney to handle the administrative due process hearing. The Deals had settled on their expensive, non-local attorneys, not as a response to HCDE's choice of attorney but because the Deals had found an available attorney who suited their narrow needs-i.e., one who practiced special education law with an emphasis on children with autism and who believed in ABA therapy. Therefore, the Court declines to award

Mayerson & Associates their fees at their current New York City rates.

**\*13** Several cases in the New York area and the Second Circuit approve of rates comparable to Mr. Mayerson's in IDEA cases. *See e.g.,* *A.R. ex rel. R.V. v. New York City Dep't of Educ.,* 407 F.3d 65, 82-83 (2d Cir.2005) (affirming award of $350 per hour for attorneys in Manhattan area); *S.W. ex rel. N.W. v. Bd. of Educ. of City of New York,* 257 F.Supp.2d 600, 604 (S.D.N.Y.2003) (approving rate of $350 per hour for Mr. Mayerson). Other district courts have noted how prevailing attorneys' fee rates in the Southern District of New York are not helpful in determining appropriate rates in other parts of the country. *See* *Troy Sch. Dist. v. Boutsikaris,* 317 F.Supp.2d 788, 794 (E.D.Mich.2004) (approving rate of $150 per hour based on prevailing community rates). Courts in other jurisdictions throughout the country have recently awarded markedly lower hourly attorney fee rates in IDEA cases than those sought by Mr. Mayerson. *See e.g.* *District of Columbia v. R.R.,* 390 F.Supp.2d 38, 41 (D.D.C.2005) (awarding attorneys' fees at rate of $225 per hour); *S.A. v. Riverside Delanco Sch. Dist. Bd. of Educ.,* 2006 WL 827798 \*5 (D.N.J.2006) (awarding attorneys' fees of $250 and $225 per hour); *Bryan M. v. Litchfield Sch. Dist.,* 2005 WL 3287478 \*5-6 (D.N.H.2005) (awarding attorneys between $135 and $225 per hour based on experience); *Mike B. ex rel. A.B. v. El Paso Indep. Sch. Dist.,* 2005 WL 2089173 \*5 (W.D.Tex.2005) (approving award of $220 per hour); *Ms. C. v. Plainfield Bd. of Educ.,* 382 F.Supp.2d 347, 348-50 (D.Conn.2005) (approving award of attorneys' fees of $250 and $180 per hour); *Mercer Island Sch. Dist. v. D.M.,* 2005 WL 1126921 \*1 (W.D.Wash.2005) (approving attorney hourly rate of $200 per hour).

This Court concludes that the Deals have not sustained their burden of demonstrating that the hourly rates requested by Mayerson & Associates are reasonable and that no other attorneys in the surrounding region could have competently represented them at a lower rate. The Court finds that the Deals have not adequately explained their need to pursue an attorney in one of the most expensive legal markets in the country.

Therefore, the Court will reduce the hourly rates of the timekeepers from Mayerson & Associates. Mr. Mayerson requests his hours be reimbursed at $450 per hour. Based on the evidence before the Court of the prevailing rate for attorneys practicing school law in the surrounding region, the Court finds that $275 per hour is an adequate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

hourly rate for an experienced senior attorney like Mr. Mayerson.

The Court recognizes that this rate is higher than the hourly rate allowed for Mr. Kern. The Court finds that while Mr. Kern is a highly qualified attorney, Mr. Mayerson's higher rate is justified by the extra expertise that he provided to the Deals. In Mr. Kern's reply declaration he admits that he "would not have considered [himself] qualified to act as sole, or even lead, counsel in the administrative proceeding." [Court Doc. No. 119, Ex.1, Reply Declaration of Theodore Kern, ¶ 10]. When the Deals approached him to be their co-counsel he

**\*14** had been practicing law for sixteen years, almost exclusively as an employee of non-profit, public interest organizations. [He] had previously engaged in representation of parents in special education proceedings, but [he] had almost no knowledge whatever of autism or of the types of services needed by, or available for, autistic children.

*Id.* Mr. Kern also admits that at the commencement of the administrative hearing he "had been engaged in private practice of law for less than one year." *Id.* He also had very limited support staff and stated that he "did not have the resources or the specific subject matter back-

ground to adequately represent the Deals as lead counsel...." *Id.* Due to Mr. Mayerson's advanced experience in private practice and with IDEA and autism specifically, as well as his additional support available and significant additional overhead expenses as compared to Mr. Kern, the Court concludes that Mr. Mayerson's representation of the Deals warrants a higher rate than Mr. Kern.

Mr. Mayerson's associates seek reimbursement of $295 per hour. This Court concludes that $175 is an appropriate billing rate for associate attorneys practicing special education law in this region. The Mayerson & Associates paralegals seek $90 per hour for their work. This Court concludes that these rates should be reduced to $75 per hour. Thus, a reasonable number of hours multiplied by a reasonable hourly rate for the administrative hearing is $131,986.00. A reasonable number of hours multiplied by reasonable rates for the appellate work by Mayerson & Associates in this case is $166,241 .50. In conclusion, a reasonable number of hours multiplied by a reasonable hourly rate for Mayerson & Associates is $298,227.50.

The charts below describe how the Court arrived at these calculations:

**Administrative Hearing**

| Timekeeper | Requested Hours | 85% of Hours | Requested Hourly Billing Rate | Adjusted Billing Rate | Reduced Hours X Adjusted Rate |
|---|---|---|---|---|---|
| Mayerson | 526.3 | 447.36 | $ 450 | $ 275 | $123,024.00 |
| Thivierge | 58.0 | 49.3 | $ 295 | $ 175 | $ 8,627.50 |
| Oren | 5.25 | 4.46 | $ 90 | $ 75 | $ 334.50 |
| Total | 589.55 | 501.12 | | | $131,986.00 |

**Appellate Work-District Court and Sixth Circuit**

| Timekeeper | Requested Hours | 90% of Hours | Requested Hourly Billing Rate | Adjusted Billing Rate | Reduced Hours X Adjusted Rate |
|---|---|---|---|---|---|
| Mayerson | 477.8 | 430.02 | $ 450 | $ 275 | $118,255.50 |
| Thivierge | 260.28 | 234.25 | $ 295 | $ 175 | $ 40,993.75 |
| Brock | 7.3 | 6.57 | $ 295 | $ 175 | $ 1,149.75 |
| Oren | 4.25 | 3.83 | $ 90 | $ 75 | $ 287.25 |
| Mahoney | 13.2 | 11.88 | $ 90 | $ 75 | $ 891.00 |
| Crane | 37.6 | 33.84 | $ 90 | $ 75 | $ 2,538.00 |
| Howell | 5.0 | 4.5 | $ 90 | $ 75 | $ 337.50 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

| | | | | | |
|---|---|---|---|---|---|
| Bertone | 2.5 | 2.25 | $ 90 | $ 75 | $ 168.75 |
| Boksenbaum | 17.5 | 15.75 | $ 90 | $ 75 | $ 1,181.25 |
| Lgl. Asst. | 6.5 | 5.85 | $ 90 | $ 75 | $ 438.75 |
| Total | 831.93 | 748.74 | | | $166,241.50 |

**c. Akin Gump**

*15 The Deals retained Akin Gump to oppose HCDE's petition for certiorari to the U.S. Supreme Court in response to HCDE hiring a well-renowned Supreme Court practitioner in Washington, D.C. Mayerson Decl., ¶ 23. Following the denial of HCDE's petition for certiorari, the Deals continued to have Akin Gump represent them in this Court on remand, despite the fact that HCDE returned to using its prior counsel, Mr. Weatherly, to represent it in this Court. Mr. Mayerson asserts that Akin Gump continued to represent the Deals on remand in this Court because it "was better able to dedicate the significant resources necessary to continue litigating" the dispute. *Id.* at ¶ 24. Akin Gump also prepared the majority of the briefing on reimbursement and attorneys' fees currently before this Court. Thus, Akin Gump represented the Deals in three separate phases of this litigation: the opposition to the petition for certiorari in the U.S. Supreme Court; the remand briefing on the substantive violations of the IDEA; and the briefing on reimbursement and attorneys' fees.

This Court will now engage in determining a reasonable number of hours multiplied by a reasonable hourly rate for Akin Gump's work on three separate phases of this litigation. This Court has separated the three phases using billing records provided by Akin Gump.

**i. Legal Work for Opposition to Petition for Certiorari**

Akin Gump performed the bulk of this legal work from between July 8, 2005 to October 11, 2005. The firm billed a total of $153,551.50 in attorneys' fees for this work, spread between ten different timekeepers. Akin Gump spent a total of 394.45 hours working on the Deals' brief opposing HCDE's petition for certiorari. Both Mr. Mayerson and Akin Gump attorney, James d'Auguste, have lauded the skills of HCDE's chosen Supreme Court advocate. Mayerson Decl., ¶ 23; [Court Doc. No. 106, Declaration of James E. d'Auguste ("d'Auguste Decl."), ¶ 10]. However, Mr. Carter Phillips, HCDE's counsel for its petition for certiorari, has submitted an affidavit to this Court opining that Akin Gump's fee of over $150,000 for its opposition brief is "grossly excessive." [Court Doc. No. 112-1, Declaration Testimony of Carter G. Phillips ("Phillips Decl."), ¶ 4]. Mr. Phillips testified that he

would never charge a client more than $50,000 for such an opposition and that he almost "invariably" agrees to his firm's cap of $25,000 for such briefing. *Id.* at ¶ 5.

Filing a petition for certiorari is a very different task from opposing a petition for certiorari. As Mr. Phillips notes, the U.S. Supreme Court accepts only between one and three percent of petitions for certiorari. *Id.* at ¶ 11. Akin Gump's own attorneys wrote an article dated August 2005 about the "slim" chances of obtaining review in the Supreme Court. *See* http:// www.akingump.com/docs/publication/790.pdf.; Rex S. Heinke, Tracy Casadio, *Obtaining Certiorari in the United States Supreme Court*, 13 THE METROPOLITAN CORPORATE COUNSEL NO. 8 (August 2005). Thus, while it may behoove a party to hire extremely experienced Supreme Court practitioners to craft a petition for certiorari, the need for experienced practitioners is not as great when drafting an opposition to a petition for certiorari. Moreover, although Mr. Lazarus of Akin Gump, an experienced and well-respected Supreme Court practitioner, spent a few hours advising on the opposition briefing, the attorneys who billed the bulk of the time drafting the opposition briefing express neither Supreme Court practice experience nor experience with the IDEA. *See* d'Auguste Decl.; [Court Doc. No. 96, Declaration of Christina DeVries]; [Court Doc. No. 99, Declaration of Amy Gray Piper]. Although Mr. Lockard testifies regarding his Supreme Court appellate experience, he does not represent that he has significant IDEA experience. [Court Doc. No. 102, Declaration of Michael D. Lockard]. Mr. d'Auguste asserts in his reply declaration that he has experience "advocating for disabled children in New York City," but he does not assert that he has experience litigating IDEA matters in federal court. [Court Doc. No. 118-1, Reply Declaration of James E. d'Auguste].

*16 Further, a party facing a petition for certiorari from an opposing party may choose to waive the right to file an opposition. *See* SUP.CT. R. 15.1. In addition, the opposition to a petition for certiorari is not a lengthy brief. Supreme Court rules dictate that an opposition brief be no more than 30 pages in length, on 6 1/8 by 9 1/4 inch paper with 3/4 inch margins. *See* SUP.CT. R. 33.1(a)-(g).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

This Court concludes that 394.45 hours spread over ten timekeepers is excessive and represents an inefficient number of hours for drafting a voluntary opposition to petition for certiorari. Mr. d'Auguste asserts that some additional time was required to address the "enormous" record. d'Auguste Decl., ¶ 10. However, as Mr. Phillips points out, on a petition for certiorari, the only record to review is the opinion of the district court and the appellate court. Phillips Decl., ¶ 7. Further, if the Deals had retained Mr. Mayerson, a very capable and experienced litigator, for this phase of the litigation, his experience with the record and with IDEA cases would have saved enormous amounts of time in crafting an opposition to HCDE's petition for certiorari.

The Deals also argue that because of Mr. Phillips' involvement and an amicus brief filed, HCDE's chances of obtaining certiorari improved dramatically. However, the fact remains that obtaining certiorari is a much more difficult task than defeating a petition for certiorari based on the minuscule percentage of petitions granted by the Supreme Court. Thus, this Court will reduce the number of hours of each timekeeper by 75%, other than the hours billed by Mr. Lazarus, leaving 106.95 hours as reasonably spent drafting the opposition to petition for certiorari.

This Court's next task is to determine reasonable hourly rates for the ten timekeepers who performed work on the opposition briefing. Mr. d'Auguste and Mr. Chou are both senior Akin Gump associates who performed substantial work on the opposition briefing. They are requesting $455 per hour for their work for this phase. This Court recognizes the Deals' perceived need to hire a law firm with an experienced appellate practice for its opposi-

tion briefing; however, Mr. Carter has testified that his firm's senior associates charge no more than $410 per hour for such briefing, and they are experienced in Supreme Court practice. Phillips Decl., ¶ 8. It is unclear to this Court how much experience Mr. d'Auguste and Mr. Chou have with Supreme Court practice. Mr. Phillips' firm's rate of $410 is approximately 90% of what Mr. d'Auguste and Mr. Chou charged, and this Court finds that a 10% reduction in their fees is appropriate. It is also appropriate because the billing records demonstrate that Mr. d'Auguste, an experienced ninth-year associate, billed at his high rate for such tasks as performing legal research. *See* d'Auguste Decl., ¶ 9, Exhibit 1. Legal research may be performed by much lower level associates at much lower hourly rates. Because this Court concludes that a 10% reduction in hourly rates is appropriate for Mr. d'Auguste and Mr. Chou, this Court will also reduce the hourly rate for associates Michael Lockard and Christina Devries by 10%. Attorney Michael Small's hourly rate will also be reduced by 10%. Because Mr. Lazarus has demonstrated his experience in Supreme Court practice and because his requested billing rate is below Mr. Phillips' hourly rate as an experienced Supreme Court practitioner, this Court will award Mr. Lazarus his actual number of hours at his requested hourly rate of $590 per hour. [Court Doc. No. 100, Declaration of Edward P. Lazarus]; Phillips Decl., ¶ 12. The remaining timekeepers, Michael Robson, Jenny Rajkowski, Laura Robinson, and Manny Nikoloudakis, appear to be either paralegals or other support staff. Because this Court has determined that the prevailing community rate for services by paralegals is $75 per hour, this Court will award these timekeepers this hourly rate. The break-down for this phase of the litigation appears as follows:

| Timekeeper | Requested Hours | 25% of hours | Requested Hourly Billing Rate | Adjusted Billing Rate | Reduced Hours X Adjusted Rate |
|---|---|---|---|---|---|
| d'Auguste | 207.8 | 51.95 | $455 | $410 | $21,299.50 |
| Chou | 26.4 | 6.6 | $455 | $410 | $ 2,706.00 |
| Lockard | 61.6 | 15.4 | $335 | $300 | $ 4,620.00 |
| Devries | 52.3 | 13.08 | $300 | $270 | $ 3,531.60 |
| Small | 1.2 | .3 | $525 | $472.50 | $ 141.75 |
| Lazarus | 11.1 | 11.1 | $590 | $590 | $ 6,549.00 |
| Nikolaudakis | 1.25 | .31 | $180 | $75 | $ 23.25 |
| Robinson | 1.9 | .48 | $95 | $75 | $ 36.00 |
| Robson | 7.5 | 1.88 | $155 | $75 | $ 141.00 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
(Cite as: 2006 WL 2854463 (E.D.Tenn.))

| Rajkowski | 23.4 | 5.85 | $150 | $75 | $ 438.75 |
|---|---|---|---|---|---|
| Total | 394.45 | 106.95 | | | $39,486.85 |

**\*17** In conclusion, this Court concludes that $39,486.85 is a reasonable number of hours multiplied by reasonable hourly rates for Akin Gump's opposition to HCDE's petition for certiorari to the U.S. Supreme Court.

**ii. Briefing on Remand**

Work performed by Akin Gump between October 18, 2005 to February 3, 2006 pertains to the substantive briefing in this Court on remand. Akin Gump seeks $107,666.25 for this work divided between nine time-keepers billing a total of 260.40 hours. This Court finds that retaining Akin Gump to continue briefing on remand was a highly inefficient use of attorney time. Mr. Mayerson represented the Deals capably throughout the administrative hearing and initial appellate phases, and he was intimately familiar with the record. Further, Mr. Mayerson is an experienced special education practitioner. Having new non-local, highly expensive, non-special education federal court practitioners research highly specific IDEA issues, as well as absorb a twenty-seven day hearing transcript with numerous exhibits constitutes an enormous waste of resources. HCDE returned to Mr. Weatherly's services on remand. The Court understands that Mr. Mayerson's resources to continue this litigation out of his own pocket were being stretched; however, this fact does not give the Deals carte blanche to retain some of the most expensive lawyers in the country to represent them with the hope that HCDE would foot the entire bill. Because the Deals did not prevail on the issues presented on the substantive remand, *see Hensley,* 461 U.S. at 435-436, 103 S.Ct. 1933, the Court declines to award any of the $107,666.25 in attorneys' fees for the briefing on remand due to the Deals' lack of success in this phase of the litigation.

**iii. Motion for Reimbursement and Attorneys' Fees Briefing**

The Deals seek $53,748 for Akin Gump's work in drafting briefing regarding the appropriate amount of reimbursement and attorneys' fees. Such legal work is appropriate for reimbursement. *See AD ex rel. SD v. Bd. of Public Educ. of City of Asheville,* 99 F.Supp.2d 683, 691 (W.D.N.C.1999). Akin Gump's attorneys and staff billed a total of 144.15 hours on the briefing currently before the Court, excluding its attempts to reply to its initial memorandum on fees, file a motion to file a reply, and reply to HCDE's response in opposition to its motion to file a re-

ply.

This Court's first task is to determine a reasonable number of hours for attorneys to dedicate to motions for attorneys' fees. Akin Gump's request for fees on the reimbursement and attorneys' fee briefing constitutes about 17% of their total request for fees and almost the entire amount that the Deals seek as reimbursement. Other district courts have found 41.1 attorney hours spent on a motion for attorneys' fees and a request for $9,139.00 for a motion for attorneys' fees to be excessive and have reduced the number of hours sought to be reimbursed accordingly. *See M.L. v. Federal Way Sch. Dist.,* 401 F.Supp.2d 1158, 1171 (W.D.Wash.2005).

**\*18** 144.15 hours billed on a motion for attorneys' fees is excessive. Other district courts have found that requests of fees for 150 hours spent on a motion for attorneys' fees to be "grossly amplified." *Murray ex rel. Murray v. Mills,* 354 F.Supp.2d 231, 241 (E.D.N.Y.2005); *see also Pretlow v. Cumberland County Bd. of Social Services,* 2005 WL 3500028 \*6 (D.N.J.2005) (finding request for reimbursement for 37.8 hours on motion for attorneys' fees to be "unreasonable and excessive"). In *Murray,* the district court noted that "[o]ther cases in this district have found that a reasonable amount of hours to award for compiling a motion for attorneys fees in a routine case to be 5 to 15 hours." *354 F.Supp.2d at 241* (citing *White v. White Rose Food,* 86 F.Supp.2d 77 (E.D.N.Y.2000); *Savino v. Computer Credit, Inc.,* 71 F.Supp.2d 173 (E.D.N.Y.1999)). The court in *Murray* opined that an award of 30 hours for a fee motion was "generous" for a more complex case with a six-day jury trial with numerous depositions and documents. This Court understands that this case involved an unduly lengthy administrative hearing, with district court review and remand, Sixth Circuit review, and even a petition for certiorari before the Supreme Court. However, 144.15 hours for preparing an application for attorneys' fees is unduly high. This Court will therefore reduce the hours requested by one-third. This makes a reasonable number of 96.11 hours.

Next, this Court must determine a reasonable hourly rate. As discussed above, the IDEA requires courts to consider rates for legal services prevailing in the local community. *See 20 U.S.C. § 1415(i)(3)(C).* The Court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

finds that a motion for attorneys' fees is not a specialized motion requiring highly paid legal experts. Further, reviewing billing records and preparing declarations in support of a fee award are not considered "core" attorney skills. *See e.g., Mr. and Mrs. S v. Timberlane Regional Sch. Dist.,* 2004 WL 502614 *7 (D.N.H.2004). Therefore, the Court will award attorneys' fees for time spent on the motion for attorneys' fees at prevailing community rates for senior and junior associates and for paralegal assistance. Mr. d'Auguste, as a ninth-year associate, will be awarded an appropriate number of hours at $200 per hour, instead of his requested rate of $480 per hour. Mr. Lockard, as a mid-level associate, is entitled to an hourly fee of $175, instead of his requested rate of $385 per hour. Ms. Piper, as a junior associate, is entitled to an hourly rate of $150 instead of her requested $275 per hour. Mr. Sheldon is entitled to a current prevailing paralegal rate of $75 per hour instead of his requested $160 per hour. The following table demonstrates a total amount of reasonable hours multiplied by reasonable hourly rates:

| Timekeeper | Requested Hours | Hours Reduced by 1/3 | Requested Hourly Billing Rate | Adjusted Hourly Rate | Adjusted Hours X Adjusted Hourly Rate |
|---|---|---|---|---|---|
| d'Auguste | 31.0 | 20.67 | $480 | $200 | $ 4,134.00 |
| Lockard | 83.8 | 55.87 | $385 | $175 | $ 9,777.25 |
| Piper | 16.6 | 11.07 | $275 | $150 | $ 1,660.50 |
| Sheldon | 12.75 | 8.5 | $160 | $ 75 | $ 637.50 |
| Total | 144.15 | 96.11 | | | $16,209.25 |

**\*19** Based on these calculations, the Court concludes that $16,209.25 is a reasonable number of hours multiplied by reasonable hourly rates.

The Court further concludes that its decisions regarding attorneys' fees comport with the relevant *Johnson* factors and that many of the *Johnson* factors have been subsumed in this analysis. *See Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. 1933. For example, aside from the opposition to HCDE's petition for certiorari, the issues presented were issues that any competent lawyer practicing special education law would be able to handle. The amount sought by the Deals for attorneys' fees and costs (over $1 million) completely dwarfs the approximately $50,000 they request for reimbursement. The Deals' attorneys were highly skilled and highly competent attorneys; however, as discussed *supra* it is not clear that this case warranted such a high degree of expertise at all phases. An analysis of the relevant *Johnson* factors supports the reduction of the attorneys' fee award in this case. *See Adcock-Ladd,* 227 F.3d at 349 n. 8

**2. Degree of Success Obtained**
Determining a reasonable number of hours multiplied by a reasonable hourly rate is only the first phase of the *Hensley* analysis. *See* 461 U.S. at 434, 103 S.Ct. at 1940. As noted *supra,* no attorneys' fee should be awarded for work on an unsuccessful claim. *Id.* at 435, 103 S.Ct. at 1940. Where the successful issues in a lawsuit are not easily segregated from the unsuccessful issues, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id .* The "most critical factor is the degree of success obtained." *Id.* at 436, 103 S.Ct. at 1941.

Although the Deals argue that they are entitled to full reimbursement for attorneys' fees because they believe they substantially prevailed, HCDE argues that the Deals are entitled to no attorneys' fees because they prevailed in only a nominal way. This Court finds that the degree of success lies in the middle of these two extremes. The Sixth Circuit held that two specific procedural errors: (1) HCDE's predetermination of a placement for Zachary; and (2) HCDE's failure to provide a regular education teacher at all relevant IEP meetings, denied Zachary a FAPE. *See Deal,* 392 F.3d at 866. The Sixth Circuit's determination of a denial of FAPE due to HCDE's procedural errors constitutes a significant success for the Deals.

However, the Deals did not win everything they sought. The Sixth Circuit did not reach the issue of this Court's denial of related services of speech therapy and occupational therapy. *Deal,* 392 F .3d at 865 n. 18. Nor did the Deals prevail on the issue relating to reimbursement for their private preschool and HCDE's failure to provide education in the least restrictive environment. *Id.* Even at the administrative level the Deals did not prevail

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
(Cite as: 2006 WL 2854463 (E.D.Tenn.))

on a few of their requests. For example, the ALJ denied the Deals' request for reimbursement for evaluations and found that they were not entitled to veto HCDE's competent service providers. [Court Doc. No. 83-4, p. 20, 23]. In this Court, the Deals did not prevail on their claim that HCDE's substantive programs for Zachary violated the IDEA. Thus, the Deals did not prevail on all of their major claims.

*20 This Court must determine how to allocate attorneys' fees according to the degree of success obtained by the Deals. The Court finds that while Akin Gump's time entries are specific enough for this Court to determine how attorneys and staff spent their time, it is virtually impossible to determine on what issues Mr. Kern and Mr. Mayerson and his staff spent their time. The fee applicant maintains the burden of demonstrating entitlement to a fee award, documenting hours spent, and providing billing records that allow a reviewing court to identify issues on which attorneys worked. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

In addition, the Deals argue that the issues at the administrative hearing and on appeal to this Court and the Sixth Circuit were so inter-related that they may not be separated. HCDE has provided this Court with a detailed chart describing the amount of testimony dedicated to each of the substantive and procedural issues raised by the Deals. HCDE suggests allocating attorneys' fees based on a ratio of time spent on topics on which the Deals prevailed compared to the amount of time devoted to issues on which they did not prevail. However, in *Hensley* the Supreme Court rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435, n. 11, 103 S.Ct. 1933. Rather, where the issues are inextricably intertwined, a district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. Further, a "reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 439.

In this action the Sixth Circuit's ruling constitutes a significant victory for the Deals. However, it is clear from this Court's review of the administrative record that both the parties and the ALJ believed the majority of the hearing was about whether HCDE should be required to provide Zachary with the Deals' requested ABA program as his substantive program under the IDEA. Thus, this Court's ruling on remand, despite the Sixth Circuit's rul-

ing, still constitutes a significant blow to the Deals' cause. The teaching methods used by HCDE for autistic children have not been determined to be a denial of Zachary Deal's right to FAPE. This Court will therefore award Mr. Kern and Mayerson & Associates 50% of the reasonable attorneys' fees outlined *supra* to compensate them for the significant procedural issues on which they prevailed. This Court finds that Akin Gump is entitled to its entire reasonable attorneys' fees for its opposition to the petition for certiorari due to its success on that opposition. Akin Gump is further entitled to all of its reasonable attorneys' fees in preparing its fee application. As stated *supra,* Akin Gump is not entitled to any attorneys' fees for its briefing on remand to this Court because it did not prevail on the issue presented on remand. This Court concludes that Mr. Kern is entitled to $36,528 in attorneys' fees; Mayerson & Associates is entitled to $149,113.75 in attorneys' fees; and Akin Gump is entitled to $55,696.10 in attorneys' fees. Thus, HCDE is responsible for paying a total of $241,337.85 for the Deals' attorneys' fees.

C. Costs
*21 Although this Court did not request that the parties brief an award of costs at this stage of the litigation, it is clear that the Deals have submitted a request for a large number of costs relating to this litigation. The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is a prevailing party." 20 U.S.C. § 1415(i)(3)(B).

Parents have asked for reimbursement for their "litigation costs," including expert witness testimony fees, flights, faxes, Federal Express packages, lodging, long distance telephone calls, and photocopies. The Deals have personally requested $20,568.25 in litigation expenses, which includes a request of more than $5,312.50 for expert witness testimony. [Court Doc. No. 104]. Further, the Deals' attorneys have submitted exhibits detailing their use of electronic legal research services, copy services, taxi cabs for travel in New York City, as well as their bills for meals eaten presumably while working on this action through evening hours. These expenses constitute a total of $51,536.66. [Court Doc. No. 106].

Both the Deals and their attorneys appear to be asking this Court to compensate them for all such costs without reasonably segregating them in any way according to the success of this lawsuit and without providing this Court with any legal analysis regarding the appropriate-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

ness of reimbursement for all such requested "costs."

This Court's local rules provides guidance on the appropriate method for filing a request for costs. *See* Local Rule 54.1. That rule states:

> If counsel for the litigants in a civil case are able to agree on costs, they need not file a bill of costs with the clerk. If counsel cannot agree, a bill of costs shall be filed by the prevailing party with the clerk within thirty (30) days from the entry of judgment. A copy of the bill of costs shall be served upon opposing counsel. The opposing party shall file written objections within thirty (30) days from the date of service. The clerk shall then assess the costs.

Local Rule 54.1. This Court's Local Rules also provide guidance on what items are properly taxable as costs. The *Guidelines on Preparing Bills of Costs* paragraph (e) provides that

> [i]t shall be the policy of the court to allow certain items of costs and disallow other items as specified in any special order of the court. It is the general policy of this Court that only those items set forth in 28 U.S.C. §§ 1821 and 1920 may be taxable as costs under Fed.R.Civ.P. 54(d)(1). Items not set forth in 28 U.S.C. §§ 1821 and 1920 will not be taxed absent specific authorization set forth in another statutory provision or a contract between the parties. When costs are sought for items not listed in 28 U.S.C. §§ 1821 and 1920, the procedure best followed is an application to the court for an approving order made before the costs are incurred.

**\*22** Local Rules, *Guidelines on Preparing Bills of Costs,* (e) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Sales v. Marshall,* 873 F.2d 115, 119 (6th Cir.1989)). The guidelines further indicate that 28 U.S.C. § 1920 does not provide "for the recovery of Computer Assisted Legal Research." *Id.* at (f).

28 U.S.C. § 1920 governs the taxation of costs in federal courts. The statute states:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

The U.S. Supreme Court recently concluded that "[t]he reasoning of *Crawford Fitting* strongly supports the conclusion that the term 'costs' in 20 U.S.C. § 1415(i)(3)(B), like the same term in Rule 54(d), is defined by the categories of expenses enumerated in 28 U.S.C. § 1920." *Arlington Central Sch. Dist. Bd. of Educ.,* 126 S.Ct. 2455, 2462, 2006 WL 1725053 \*7 (2006) (citing *Crawford Fitting Co.,* 482 U.S. at 445, 107 S.Ct. 2494)).

As part of their costs, the Deals have requested fees for their expert witnesses. However, in their proposed reply briefing, the Deals acknowledge that they are no longer entitled to expert witness fees. The U.S. Supreme Court has just provided timely guidance on whether fees for expert witnesses retained by parents who are prevailing parties in IDEA actions may be reimbursed as part of parents' costs. *Arlington Cent. Sch. Dist. Bd. of Educ.,* 126 S.Ct. 2455, 2006 WL 1725053 (2006). Justice Alito, writing for a majority of the Court, noted that:

> ... [Section] 1415(i)(3)(B) was not meant to be an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case-for example, travel and lodging expenses or lost wages due to time taken off from work. Moreover, contrary to respondents' suggestion, § 1415(i)(3)(B) does not say that a court may award 'costs' to prevailing parents; rather, it says that a court may award reasonable attorney's fees 'as part of

Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)
**(Cite as: 2006 WL 2854463 (E.D.Tenn.))**

the costs' to prevailing parents. This language simply adds reasonable attorney's fees incurred by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover. This list of otherwise re-coverable costs is obviously the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court, and the recovery of witness fees under § 1920 is strictly limited by § 1821, which authorizes travel reimbursement and a $40 per diem. Thus, the text of 20 U.S.C. § 1415(i)(3)(B) does not authorize an award of any additional expert fees, and it certainly fails to provide the clear notice that is required under the Spending Clause.

**\*23** *Arlington Cent. Sch. Dist. Bd. of Educ.,* 126 S.Ct. 2455, 2006 WL 1725053 at \*5.

This Court notes that the Deals have not submitted a bill of costs in accordance with Local Rule 54.1. Nor has HCDE had a reasonable time to object to such a bill of costs. Further, reimbursement for certain expenditures, such as electronic legal research and reimbursement be-yond 28 U.S.C. §§ 1920 and 1821 for expert witnesses are improper pursuant to Local Rule 54.1 and *Arlington Cent. Sch. Dist.,* 126 S.Ct. 2455, 2459-60, 2006 WL 1725053 at \*5. This Court's direction to the Deals to file an appropri-ate bill of costs following the judgment in this case should not be viewed as an invitation to accumulate more attor-neys' fees by eight different highly-paid timekeepers. A bill of costs should be filed efficiently and with minimal time and effort expended by the Deals' attorneys.

**D. Motion to File a Reply**
The Deals have filed a motion to file a reply in sup-port of their briefing on reimbursement and attorneys' fees with an accompanying proposed reply, two supporting affidavits and numerous additional exhibits. *See* [Court Doc. Nos. 116, 117, 118]. The Deals subsequently filed an amended motion to file a reply with an additional dec-laration. [Court Doc. Nos. 119-1, 119-2, 119-3]. These motions do not contain legal argument regarding why the Deals should be entitled to file a reply memorandum. *See* [Court Doc. Nos. 116-1, 119-1]. HCDE filed an opposi-tion to the motion to reply and a proposed response to the proposed amended reply brief filed by the Deals. *See* [Court Doc. Nos. 122, 123]. The Deals have subsequently filed a reply to HCDE's response to the Deals' initial mo-tion to file a reply brief. [Court Doc. No. 124].

It appears to this Court that the parties have chosen to ignore the admonition by the Supreme Court in *Hensley*

that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437. At this point, the litigation between these parties must end. However, in the interest of obtaining a full and complete record for any court reviewing this matter on appeal, the Court will grant the Deals' motion to file a reply brief and will allow HCDE's proposed response to remain a part of the record in this case. The Court has reviewed all of the additional proposed replies, responses, and supporting documents provided by the parties. After review of these proposed additional briefs, the Court concludes that the parties' ini-tial briefing and this Court's review of supporting affida-vits, exhibits, and caselaw adequately provided this Court with arguments and evidence relevant to its decision. The additional briefing is somewhat superfluous and only marginally helpful.

**II. Conclusion**
This Court will award the Deals reimbursement in the amount of $25,204.98. The Court will award the Law Offices of Thomas Kern attorneys' fees in the amount of $36,528. The Court will award Mayerson & Associates $149,113.75 in attorneys' fees. The Court will award Akin Gump $55,696.10 in attorneys' fees. The Court will **GRANT** the Deals' motion to file a reply to the briefing on attorneys' fees and will accept HCDE's proposed re-sponse into the record.

**\*24** A separate judgment will enter.

E.D.Tenn.,2006.
Deal ex rel Deal v. Hamilton County Dept. of Educ.
Not Reported in F.Supp.2d, 2006 WL 2854463 (E.D.Tenn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT "E"**

Westlaw.

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Erick GALLO; Armando Gutierrez; Angel Miramontes;
Antonio Miramontes; LUis Miramontes; Manuel Montes;
and Samuel Alvarez Haro, individually, on behalf of all
others similarly situated, and on behalf of the general pub-
lic, Plaintiffs,
v.
MASCO CORPORATION, a corporation, Masco Ser-
vices Group Corporation, a corporation, Guy Evans, Inc.,
a corporation; Builder Services Group, Inc., a corporation;
and Does 1 through 20, inclusive, Defendants.

Civil No. 08cv0604–CAB.
April 28, 2011.

John F. Hyland, Carole Vigne, Kate Frances Hege, Rukin
Hyland Doria & Tindall LLP, San Francisco, CA, Kelly
Woody Gulledge, Linda J. Gulledge, Gulledge Law
Group, Ventura, CA, for Plaintiffs.

Arthur F. Silbergeld, Jennifer A. Awrey, Stacy W. Harri-
son, Bingham McCutchen LLP, Santa Monica, CA,
George Samuel Cleaver, Proskauer Rose LLP, Los Ange-
les, CA, for Defendants.

**ORDER REGARDING MOTION FOR
ATTORNEYS' FEES**
CATHY ANN BENCIVENGO, United States Magistrate
Judge.
*1 Before the Court is plaintiffs' motion for attorneys'
fees and costs in the above-captioned case and related
case, *Ibarra, et al v. Builder Services Group, et al,* Case
No. 10cv199. The parties reached a settlement in these
cases in June of 2010. As part of the negotiated agree-
ment, the parties agreed that plaintiffs' counsel could
submit an application for fees and costs in these cases for
a final determination by the undersigned.[FN1] Defendants
could object in whole or part. The total of any award by
the Court cannot exceed an agreed ceiling of $400,000.
The parties finalized and executed the settlement during
the months that followed and the cases were dismissed
with prejudice on December 16, 2010. [Doc. No. 98.]

FN1. The parties consented to the Magistrate

Judge and both cases were referred to the under-
signed for all purposes on September 22, 2010.
[Doc. No. 85.]

Plaintiffs filed their application for fees and costs on
December 15, 2010. [Doc. No. 95.] Defendants filed their
opposition on January 18, 2011. [Doc. No. 100.] Plaintiffs
filed a reply on January 25, 2011. [Doc. No. 103.] Defen-
dants were given leave to file a surreply which was sub-
mitted on February 4, 2011. [Doc. No. 106.] The Court
found the motion suitable for determination on the papers
and it was submitted without oral argument pursuant to
Civil Local Rule 7.1(d)(1).

**I. BACKGROUND**
*Gallo et al v. Masco Corporation, et al,* 08cv604
("Gallo Case") was filed on April 2, 2008 as a class action
with six named plaintiffs alleging 10 separate causes of
action for violations of federal and state wage and hour
laws. [FN2] The complaint was amended on May 22, 2008,
adding a seventh named plaintiff, but no new causes of
action.

FN2. There are three additional causes of action
for employment related violations specific to in-
dividual plaintiffs and not asserted on behalf of
the class.

For the next year discovery proceeded and settlement
discussions were held with the expectation that plaintiffs
would seek certification of a class of defendants' employ-
ees numbering approximately 100 individuals. Plaintiffs
last day to file their motion for class certification was
June 12, 2009 [Doc. No. 27], however by May 2009,
plaintiffs' counsel had decided not to proceed with the
class allegations. After meeting with over 50 of the puta-
tive class members, plaintiffs' counsel concluded it would
be best to proceed as a multi-plaintiff case instead of
seeking class certification.[FN3] [Doc. No. 95–1, at 4–5.]

FN3. Counsel were unsuccessful in their efforts
to contact the remaining putative class members.
[Doc. No. 95–1, at 5 n. 5.]

On June 29, 2009, plaintiffs filed a motion for leave
to file a second amended complaint adding 52 plaintiffs to
the Gallo Case, withdrawing the class and collective ac-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

tion allegations, adding a defendant and proceeding as a multi-plaintiff case. [Doc No. 29]. The motion was opposed by defendants. [Doc. No. 30.] Plaintiffs' motion was denied by District Judge John Houston on December 7, 2009. [Doc. No. 46.]

Thereafter, the seven plaintiffs in the Gallo Case prepared to proceed to trial on their claims. Pretrial disclosures were exchanged and a Pretrial Order was submitted to the Court. The Pretrial Conference was held before District Judge Houston on April 5, 2010. The Court directed the parties to file an amended Pretrial Order and the Pretrial Conference was continued to June 21, 2010. The parties reached a settlement and the Pretrial Conference was vacated. As set forth above, the settlement was eventually finalized and the case dismissed.

**\*2** Also following the Court's order denying the motion to amend, plaintiffs' counsel prepared and filed a complaint in the Superior Court of California, County of Imperial, case no. ECU05330, on behalf of those plaintiffs who were not added by amendment to the Gallo Case. Defendant removed that state court case on January 26, 2010 to this District Court, *Ibarra et al v. Builder Services Group, Inc.,* 10cv199 ("Ibarra Case"). There were 53 named plaintiffs alleging similar wage and hour violations as those asserted in the Gallo Case. On February 22, 2010, plaintiffs filed a motion to remand the case back to state court. [Doc. No. 9.] Opposition and reply briefs were submitted and the motion was taken under submission by District Judge Houston on April 14, 2010. [Doc. No. 15.] While the motion was pending, the case was settled in conjunction with the Gallo Case.

## II. RECOVERY TO THE PREVAILING PARTY

In both the Gallo and Ibarra Cases, plaintiffs claimed violations of California Labor Code provisions including but not limited to the non-payment of overtime and prevailing wage, failure to provide meal periods and accurate itemized wage statements and for reimbursement of travel costs and other business expenses. The California Labor Code provides the statutory basis for the recovery of reasonable fees and costs to a prevailing party for such violations. *See* Cal. Labor Code §§ 218.5; 226; 1194.

To qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of his claim, by judgment, consent decree or settlement. *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (plaintiff must secure relief that directly benefits him at the time of settlement). Although the court in

*Farrar* addressed recovery of fees for a civil rights violation, this Court applies the articulated principle to the settlement of a wage case that provides for the statutory recovery of fees. The plaintiffs argue that they prevailed in these cases in that the settlement provided for payment to all 60 plaintiffs for dismissal of their wage claims. The defendants do not directly challenge that the plaintiffs qualify as a prevailing party in this case, although they do argue that plaintiffs would not have ultimately prevailed on their claims at trial. Given that these disputed claims settled and plaintiffs received a direct benefit in the settlement, the Court finds the plaintiffs the prevailing party and entitled to the recovery of reasonable fees and costs.

## III. REASONABLE FEES AND COSTS

The calculation of a reasonable fee award involves a two-step process. First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael,* 96 F.3d 359, 364 (9th Cir.1996). The second step involves the district court, in its equitable discretion, adjusting this amount "on the basis of other considerations." *Lytle v. Carl,* 382 F.3d 978, 988 (9th Cir.2004).

**\*3** The prevailing attorneys bear the burden of establishing entitlement to an award and must document the appropriate hours expended and hourly rates. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Once the applicants submit evidence of the appropriate hours spent on litigation, "the party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged." *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992). Applicants should make a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours from a fee request. *Hensley,* 461 U.S. at 434. "The district court has a great deal of discretion in determining the reasonableness of the fee." *Gates,* 987 F.2d at 1398.

## IV. REASONABLE HOURLY RATES

A reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *Sorenson v. Mink,* 239 F.3d 1140, 1145 (9th Cir.2001).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

The community where the court sits is the relevant market for determining reasonable fees. *Deukmejian,* 987 F.2d at 1405. Two law firms represented the plaintiffs, Rukin Hyland Doria & Tindall, LLP, located in San Francisco, California, and Gulledge Law Group, located in Ventura, California. Neither firm is located in this District Court's community.

John Hyland provided a declaration on behalf of the Rukin firm. He stated he has practiced for 15 years, exclusively in the area of employment law with extensive experience in wage and hour law. [Doc. No. 95–3 at ¶ 4.] He states his hourly rate in this case was $475. He was assisted by two Spanish-speaking associates Kate Hege and Carole Vigne,[FN4] who were billed at $300 an hour and two paralegals, Mark Gains and Maia Siu, who were billed at $175 an hour. [*Id.* at ¶ 8.]

> FN4. Mr. Hyland does not speak Spanish and "all but one or two of the plaintiffs spoke only Spanish." [Doc. No. 95–3 at ¶ 4.] Consequently Mr. Hyland relied upon his associates and his co-counsel Linda Gulledge and her paralegal to communicate with the plaintiffs.

Linda Gulledge provided a declaration on behalf of the Gulledge firm. She stated that she has practiced law for 12 years, exclusively in the area of employment law with extensive experience in wage and hour law. [Doc. No. 95–4 at ¶ 4.] She is fluent and literate in Spanish and states her hourly rate in this case was $400. Gulledge stated that her partner Woody Gulledge also practices in employment law, advising companies on wage and hour practices, and his hourly rate in this case was $400. The Gulledges were assisted by a Spanish-speaking paralegal, Maria Azuncea Garcia, who was billed at $150 an hour. [*Id.* at ¶¶ 4, 8.]

Plaintiffs cite the Court to three cases from the Southern District as evidence that the rates claimed by their counsel are in line with those prevailing in the community, for similar services and comparable skill. Those cases found lead counsel rates in the range of $400 to $425 an hour, $220 to $250 for an associate and $125 for a paralegal to be reasonable hourly rates in this community. *See Kochenderfer v. Reliance Standard Life Ins. Co.,* 2010 WL 1912867, *4 (S.D.Cal. Apr.21, 2010); *Fleming v. Coverstone,* 2009 WL 764940, *7 (S.D.Cal. Mar.18, 2009); *Cornwell v. Belton,* 2008 WL 80724,*1 (S.D.Cal. Jan.7, 2008). [Doc. No. 95–1, at 14.]

*4 Defendants correctly point out that "the fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill." *Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987). [Doc. No. 101, at 7.] Each of the cases relied upon by plaintiffs reflects an hourly rate generally less than the amount requested by the plaintiffs' counsel [FN5] and none of the cases are wage and hour cases. Plaintiffs offer no analysis of the subject matter, services and skills of the lawyers in the cited cases to demonstrate how those rates support the generally higher rates they request. Defendants offer no evidence that the rates approved in this District Court and offered by plaintiffs as evidence of reasonable rates in this community, are not appropriate in this case.

> FN5. Only the rates claimed by Linda and Woody Gulledge are within the ranges discussed in the cited cases. Accepting Ms. Gulledge's rate as reasonable, the Court finds no basis for awarding Mr. Hyland almost 20% more per hour, for comparable work and comparable experience.

Based on the Court's knowledge of prevailing standards in the community, and without further evidence from the parties beyond the cases cited by plaintiffs in support of their application, the Court applies the following rates as reasonable in this case:

$400 an hour for partners John Hyland, Linda Gulledge and Woody Gulledge;

$220 an hour for associates Kate Hege and Carole Vigne; and,

$125 an hour for paralegals Mark Gaines, Maia Siu and Maria Azucena Garcia.

## V. REASONABLE HOURS EXPENDED

The fee applicant bears the burden of documenting the appropriate hours expended. *Hensley,* 461 U.S. at 437. The plaintiffs have not provided the Court with much assistance to assess the reasonableness of the hours claimed in their application. While counsel need not document how each minute was expended, *id.* at 437 n. 12, in this case plaintiffs' application is comprised of nine broad categories of work, each containing multiple discrete tasks with no information as to who worked on what task and the hours involved. Plaintiffs' fee claim is more

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

than double the maximum amount this Court could award under the terms of the settlement, so plaintiffs undoubtedly concluded that providing more detailed documentation was not necessary. [Doc. No. 95–1, at 17 (counsels' lodestar alone substantially exceeds the $400,000 cap, counsel should not have to take any further discount).] The Court, however, cannot simply accept at face value the unsubstantiated hours claimed by plaintiffs, and default to the $400,000 ceiling without examination. The plaintiffs needed to demonstrate the reasonableness of the hours claimed in each of these categories, and they have generally not met that burden.

The application is not rejected outright due to the plaintiffs inadequate documentation, as defendants advocate. The plaintiffs, however, are subject to the quality of their filing. To the extent the documentation is inadequate to support the claim or objective information is contrary to the claim, claims have been rejected. For certain of the plaintiffs' block categories, the work claimed within the category is supported by some objective details provided in plaintiffs' application or evident from the dockets, so the Court made an analysis of the reasonableness of the claim. Given the limitations presented by the plaintiffs' application, the Court exercises its discretion in determining the reasonableness of the plaintiffs' claimed fees, and makes the following findings.

**A. Investigations/Complaint**
*5 Numerous discrete tasks are claimed under this category without any specific information. The Rukin Firm claims to have investigated the claims prior to filing the complaint in the Gallo Case; drafted and filed an administrative charge with the Department of Fair Employment and Housing on behalf of plaintiff Erick Gallo; drafted and filed the Gallo complaint and first amended complaint, met with and interviewed the Gallo putative class members; drafted and filed the Ibarra complaint. For this work the Rukin firm claims 33.9 hours of paralegal time; 13.2 hours of associate time; and 30 hours of partner time. There is no explanation as to who did what on what task.

Similarly, the Gulledge Firm claims to have investigated the claims before filing the Gallo complaint; drafted the Gallo complaint and first amended complaint; met with and interviewed the Gallo putative class members; and edited the Ibarra complaint. For this work, the Gulledge firm claims 42.5 hours of paralegal time and 57.4 hours of partner time. There is no explanation as to who did what on what task. In total, plaintiffs claim 177 hours for the investigation of the claims and preparation of the complaints.

First, the Court notes that the Gallo Complaint and the first amended complaint are essentially the same document. The only addition was the inclusion of a seventh named plaintiff. So the fact that two separate firms are billing for the drafting of the first amended complaint is unacceptable. Next, the Court notes that the Ibarra Complaint largely mirrors the Gallo Complaint and does not introduce significant new information or claims. Again, that two firms are billing for work on that complaint is also unacceptable. Finally, the Court has no information regarding the time and effort expended on the administrative charge filed on behalf of plaintiff Gallo.

Despite the representation of plaintiffs' counsel that the firms divided responsibilities, it was neither reasonable or necessary for two firms to have billed time to the preparation and filing of the amended complaint or the Ibarra complaint. There is no way to discern how many hours were spent on these tasks and by whom. Further, given Mr. Hyland's representation that he does not speak Spanish, it would be unlikely he personally interviewed putative class members, but there is no way to discern what if any time is credited to him for this task.

The Court cannot accept the 177 hours at face value given the work claimed in this category. The Court credits 40 hours total to the investigation and preparation of the complaints and administrative charge, allowing the 13.2 hours of associate time and 26.8 as partner time. The Court also credits 52 hours total for interviewing of the putative class members (an hour per person), allowing 26 hours of paralegal time and 26 hours of partner time. Applying the adjusted rates, a total of $27,274 is recoverable for investigation and preparation of the complaints.

**B. Client Communications**
*6 There is little explanation as to what constituted client communications, that was separate from the hours claimed as investigation, discovery, deposition preparation and settlement. It apparently included deposition scheduling by the Gulledge firm (presumably Ms. Garcia's claimed time). [Doc. No. 95–4 at ¶ 5.] There were 60 plaintiffs in these combined cases. According to Ms. Gulledge's declaration, she and Ms. Garcia "served as the primary contact for Plaintiffs and conducted all communications with them." [Doc. No. 95–4 at ¶ 4 (*emphasis added* ).] Based on that representation, the Court concludes that hours identified as client communications by

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT E
PAGE 4 of 8

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

other attorneys are at best duplicative, and are excluded. Ms. Gulledge claims she spent 17.7 hours in client communications and Ms. Garcia spent 264.4 hours. The Court finds the time claimed for Ms. Garcia excessive, given the complete lack of supporting information. The Court credits one hour per plaintiff for deposition scheduling for a total of 60 hours and Ms. Gulledge's claimed time. Applying the adjusted rates, a total of $14,580 is recoverable for client communications.

**C. Written Discovery**

The work performed in this category is generally described as the propounding of and responding to written discovery and the review of documents produced by defendants. [Doc. No. 95–3 at ¶ 5; Doc. No.95–4 at ¶ 5.] The plaintiffs in the Gallo Case each were served with 34 or more interrogatories; 26 requests for admission and 97 or more document requests. The plaintiffs served document requests on defendants for production of their employment records that resulted in a "substantial volume documents" to be reviewed and analyzed. [Doc No. 95–1, at 3.] Defendants do not contest these representations.

The materials submitted by counsel provide hours expended by partners, associates and paralegals with regard to written discovery, but no information whatsoever as to who did what with regard to these tasks. There is 136.15 hours of paralegal time; 64.7 hours of associate time; and 120.9 hours of partner time. The average is about 46 hours per named plaintiff in the Gallo Case to review and prepare discovery responses and analyze each plaintiff's employment records, including translation services, not an unreasonable amount of time. Applying the adjusted rates, a total of $79,612.75 is recoverable for written discovery.

**D. Depositions**

Five of the seven plaintiffs in the Gallo Case were deposed over a ten day period. Additionally defendants noticed the depositions of 52 of the individuals who eventually became the plaintiffs in the Ibarra Case, and actually deposed 21 of them over a two week period with four to five depositions each day.[FN6] [Doc. Nos. 95–1, at 6.] Plaintiffs deposed four of defendants' witnesses. Ms. Gulledge states her firm handled the witness preparation and defense for four of the plaintiffs in the Gallo Case, and prepared the 21 witnesses who became the Ibarra Case plaintiffs, as well as taking the depositions of the defendants' witnesses. [Doc. No. 95–4 at ¶ 5.] She claims 97 hours of paralegal time and 179.1 hours of partner time for those eight depositions and the additional 21 witness

depositions. Mr. Hyland states his firm handled the witness preparation and defense for four of the plaintiffs in the Gallo Case, and prepared the 21 witnesses who became the Ibarra Case plaintiffs, as well. He claims 227.3 hours of associate time and 29.70 hours of partner time for four depositions and the same 21 witness depositions. According to the submissions by the parties, only five of the seven plaintiffs in the Gallo case were deposed and only one firm will be credited for the preparation of the 21 witnesses. The information provided by counsel is overlapping, contradictory and insufficient to make an informed analysis. There is no way of determining from the information provided what contribution the Rukin firm made in the deposition process, so their time is excluded as duplicative.

> FN6. Defendants deposed these individuals when they were anticipated to be added as plaintiffs to the Gallo Case. That motion was denied, but that did not render the depositions irrelevant. [Doc. No. 101, at 4.] These individuals became the plaintiffs in the Ibarra Case, and at the very least were percipient witnesses in the Gallo Case.

*7 The Court accepts Ms. Gulledge's declaration regarding time spent for the depositions. Applying the adjusted rates, a total of $83,765 is recoverable for deposition time.

**E. Motions**

The docket reflects that there were two joint motions filed in the Gallo Case to continue dates; a joint motion to dismiss a defendant; a discovery motion filed by defendants for which the court requested no briefing from plaintiffs; and the motion for leave to file the second amended complaint which was denied. The only motion filed in the Ibarra Case was plaintiffs' motion to remand which was pending when the case settled. The Court finds that the hours expended on the denied motion and the pending motion are not recoverable. Plaintiffs are allowed two hours of associate time for their participation in the preparation and filing of the joint motions. Applying the adjusted rates, a total of $440 is recoverable for motion practice.

**F. Court Conferences/Hearings**

There were three court conferences covered in this category. The Early Neutral Evaluation ("ENE") Conference, the Case Management Conference ("CMC") and the Pretrial Conference. No detailed description of the work performed related to these hearings is provided. The

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT E
PAGE 5 of 8

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

docket and the Court's records, however, provide assistance in analyzing this claim.

The ENE in the Gallo Case was held on August 6, 2008. It lasted approximately two hours and plaintiffs submitted a perfunctory three-page statement in advance of the hearing. The CMC was held on September 23, 2008 by telephone and it lasted no longer than 30 minutes. The parties submitted a four-page joint discovery plan for the hearing. The Pretrial Conference was held before District Judge Houston on April 5, 2010. It lasted less than 15 minutes. The preparation for this conference is covered in the category Pretrial Preparations (*infra*).

The two law firms have claimed a total of 109.8 hours for preparation and attendance at these three conferences. The Court finds this unacceptable. Actual attendance at these conferences totaled approximately 2.75 hours—plaintiffs have specifically stated they did not include travel time for any of their court appearances. It is unreasonable for these firms to have invested in excess of 100 hours preparing for these conferences. Allowing for participation by lead counsel from each firm at each conference, that is a total of 5.5 hours of partner time. The Court will allow an additional 14.5 hours for preparation specific to these conferences, for a total of 20 hours of recoverable partner time. Applying the adjusted rates, a total of $8,000 recoverable for participation in court conferences.

### G. Pretrial Preparations

The plaintiffs' application includes a number distinct tasks under this category without any specifics as to the actual time spent on each task. Further both the Rukin and Gulledge firm claim time for performing the same tasks, again without explanation as to who did what. As a result the Court is left with little guidance as to the reasonableness of the hours claimed.

**\*8** The Rukin firm claims time in this general category for preparing the pretrial disclosures, amended pretrial disclosures, objections to defendants' pretrial disclosures, meeting and conferring with defendants' counsel about the pretrial order, preparing and submitting the pretrial order and amended pretrial order. For these tasks the Rukin firm claims 10.3 hours of paralegal time; 149.9 hours of associate time and 68 hours of partner time. Based on the pretrial documents submitted by plaintiff in the docket, the Court finds this a reasonable amount of time for pretrial preparations.

The Gulledge firm claims time for the preparation of the same documents the Rukin firm claims to have prepared. Further the Gulledge firm claims time for the following "pretrial" preparations: conducting several witness interviews and preparing declarations; preparing damages calculations; and meeting with and preparing the Gallo Plaintiffs for trial. The Court finds none of these tasks recoverable. Declarations are not admissible at trial, so time spent on this is not reasonable as a pretrial preparation. Damages calculations were prepared as discovery responses and certainly in detail for settlement conferences. No new damage calculations should have been occurring at this final stage of the proceedings. Preparing the plaintiffs for trial was at best premature, as the parties had not even completed a pretrial conference with the Court and no trial date had been set. Any preparation would have had to have been repeated, so this was an unnecessary expense at this time.

Plaintiffs have provided no information to assist the Court in assessing how much time the Gulledge firm spent on these unrecoverable tasks, or on the same work claimed by the Rukin firm. As a consequence, the Court rejects the hours claimed by the Gulledge firm for pretrial preparations in their entirety as duplicative or unnecessary. Applying the adjusted rates, a total of $61,465.50 is recoverable for pretrial preparations.

### H. Settlement

Under the category of "Settlement," plaintiffs include the research and drafting of settlement conference statements, preparation and attendance at three court ordered settlement conferences, negotiations with defendants' counsel throughout the case and finalization of the settlement agreement. A total of 178.7 hours of paralegal time, 31.1 hours of associate time, and 225.4 hours of partner time is claimed. At the adjusted rates this would total $119,339.50.

Plaintiffs provided no information as to how much time was spent by whom doing which specific task. As with the court ordered conferences discussed above, the Court looks to its records and the docket to test the plaintiffs' claim. There were three Mandatory Settlement Conferences ("MSC") held in this case. The first was on March 23, 2009. The second was on January 13, 2010. The last was on June 21, 2010, which resulted in the key term agreement between the parties and ultimately resolution of the two matters. The time in court for each conference was approximately two hours.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

**\*9** The first MSC was held when the Gallo Case was a putative class action. The other two MSCs, although held in the Gallo Case, after the class action allegations were dropped, involved the joint resolution of the claims in the Ibarra Case. As a consequence each conference considered the settlement of all claims of the 60 plaintiffs. The confidential submissions by plaintiffs' counsel for the first MSC and the second MSC demonstrate significant time spent presenting the evidence collected, and applying the legal issues. The Court credits six hours of partner time, per firm, for attendance at these conferences, a total of 12 hours. For each hour spent in conference, the Court credits an additional seven hours, a day of preparation, for a total of 84 hours of partner time. Applying the adjusted rates, this totals $38,400.

With regard to time spent in negotiations with the defendants' counsel throughout the case, with no information provided by plaintiffs as this task, an allowance for this would be speculation.

With regard to the finalization of the settlement agreement, the Court credits two hours of paralegal time and one hour of partner time per plaintiff to document the settlement, for 120 hours of paralegal time, and 60 hours of partner time. Applying the adjusted rates, this totals $39,000. A total of $77,400 is recoverable for settlement.

*I. Travel*

Plaintiffs' application includes an entry for counsels' travel time to court conferences and hearings, client meetings and for depositions. Plaintiffs, however, voluntarily excluded this claim from their application. The exclusion of time and expenses for travel is appropriate.

Given the subject matter of this case and the fact that all plaintiffs are located in the Southern District of California, a claim for recovery of travel time and expenses incurred by out-ofdistrict counsel is not justified. There has been no showing that competent counsel could not have been retained locally and that the selection of out-of-district counsel was necessary. Moreover, in the current business climate, it has become far less common for counsel to be reimbursed by clients for travel, particularly travel to meet with the client itself. Attorneys are expected to travel on their own time, at their own expense. The Court finds it unreasonable to shift the time and expense of travel by out-of district counsel to the defendants in this case, when it reasonably would not have been reimbursed by the plaintiffs and the case is not so novel that plaintiffs were compelled to go out of the Southern District of California to find competent counsel.

*J. Fee Recovery Summary*

In summary the Court finds that Plaintiffs' recovery of fees for a reasonable number of hours at a reasonable rate in each category of work identified by Plaintiffs is as follow:

| Plaintiffs' Time Categories | Amount |
| --- | --- |
| Investigations/Complaint | $ 27,274.00 |
| Client Communications | $ 14,580.00 |
| Written Discovery | $ 79,612.75 |
| Depositions | $ 83,765.00 |
| Motions | $ 440.00 |
| Court Conferences/Hearings | $ 8,000.00 |
| Trial Preparation | $ 61,465.50 |
| Settlement | $ 77,400.00 |
| Travel Time | $ 0 |
| **Total Fee Recovery** | **$351,937.25** |

**VI. COSTS**

**\*10** Plaintiffs also seek recovery of costs. As the prevailing party, the recovery of costs is also appropriate. Included in the plaintiffs' summary of costs are charges for copies; deposition transcripts; filing and legal service; mail/fax/phone charges; research; translation service fees;

witness fees; and travel for a total of $52,256.26. No documentation was provided in support of Plaintiffs' cost claim. Certain claimed fees the Court finds non-recoverable, others are accepted and some are partially rejected due to lack of supporting documentation.

The following amounts are approved: $764.55 for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1627942 (S.D.Cal.)
**(Cite as: 2011 WL 1627942 (S.D.Cal.))**

copies; $9,746.71 for deposition transcripts; $940.92 for mail/fax/phone charges; $409.23 for legal research; $1,670.56 for translation services; and $143.55 for witness fees.

The plaintiffs claim $3,449.06 for the "filing and service of pleadings." [Doc Nos. 95–3 at ¶ 9 and 95–4 at ¶ 9.] The filing fee in federal court is $350. There are no other filing fees in this Court. The filing fee in state court is $320. Other than the complaint in the Ibarra Case, there is no evidence that any other filing fees were incurred in state court. Plaintiffs provided no information to explain the remaining $2,779.06 claimed in this category. The

filing and service in this district of pleadings and motions is electronic and incurs no service expenses on the parties. The application makes no reference to any subpoenas being served on third parties. The Court allows $670.00 for filing fees.

Plaintiffs' claim for $35,131.68 in travel expenses is disallowed in its entirety, as discussed above.

In summary, the Court finds the following costs recoverable.

| Plaintiffs' Cost Categories | Amount |
|---|---|
| Copies | $ 764.55 |
| Deposition Transcripts | $ 9,746.71 |
| Filing & Legal Service | $ 670.00 |
| Mail/Fax/Phone | $ 940.92 |
| Research & | $ 409.23 |
| Translation service fees | $ 1,670.56 |
| Witness Fees | $ 143.55 |
| Travel Expenses | $ 0 |
| **Total Cost Recovery** | **$ 14,344.60** |

### VII. CONCLUSION

For the reasons set forth above, the Court awards Plaintiffs a **total of $366,281.85 in fees and costs** as the prevailing party in this litigation. Defendants are hereby ordered to make payment of that amount to plaintiffs, in accordance with their instructions, no later than *May 27, 2011.*

**IT IS SO ORDERED.**

S.D.Cal.,2011.
Gallo v. Masco Corp.
Slip Copy, 2011 WL 1627942 (S.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT "F"**

Westlaw.

Slip Copy, 2010 WL 3339498 (S.D.Cal.)
**(Cite as: 2010 WL 3339498 (S.D.Cal.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. California.
Jaqui B. GOLD, Robiemin A. Gold, Plaintiffs,
v.
NCO FINANCIAL SYSTEMS, INC.; et al., Defendants.

No. 09cv1646-LAB (CAB).
Aug. 23, 2010.

Christina E. Wickman, Wickman and Wickman, San Diego, CA, Thomas John Lyons, Sr., Lyons Law Firm, PA, Vadnais Heights, MN, for Plaintiffs.

Sondra R. Levine, Sessions, Fishman, Nathan & Israel, LLP, San Diego, CA, David Israel, Sessions, Fishman, Nathan & Israel, L.L.P., Metairie, LA, for Defendant.

### ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

LARRY ALAN BURNS, District Judge.

**\*1** In the early stages of litigation of this case, Defendant NCO Financial Systems ("NCO" or "Defendant") made an offer of judgment pursuant to Fed.R.Civ.P. 68, which Plaintiffs accepted. The offer was for a sum of money, plus "reasonable attorney's fees and costs, to be mutually agreed upon by the parties, or if no agreement can be reached, to be determined by the Court in accordance with 15 U.S.C. § 1692k." Defendant OSI Collection Services, Inc. had been dismissed earlier, leaving NCO as the sole Defendant.

The parties do not dispute that the Court can and should award costs and attorney's fees; their only disagreement concerns the amount Plaintiffs have requested. Defendant argues the costs and fees are unreasonable and excessive, and asks the Court to reduce them. Specifically, Defendant argues the claimed hourly rate is too high; fees should not be awarded for unproductive or unnecessary work; the

case was overstaffed in that work was needlessly assigned to multiple attorneys instead of one attorney, or to attorneys instead of staff; and not all the costs being claimed are the "costs of the action" as defined by 28 U.S.C. § 1920. Defendant raised an additional objection-that Plaintiff sought fees incurred after the offer of judgment had been accepted-but Plaintiff conceded this point and agreed the award should be reduced to reflect this. Defendant also points out the amount recovered was only $3,000, and the amount sought in fees and costs is nine times that.

The Court held a hearing on this issue and gave its preliminary decision, which it now confirms in this written decision.

**I. Legal Standards**

The parties agree the Court should use the lodestar method. Using this method, the Court begins by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate, and then makes any necessary adjustments to account for factors not already subsumed within the initial calculation. Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir.2008).

In determining a reasonable hourly rate, the Court considers the prevailing market rate in the community. Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir.1997). Plaintiffs' principal counsel, Thomas Lyons, Esq., is based in Minnesota. Plaintiffs' decision to hire him was one of preference, not necessity. Therefore, the relevant community is this district. Id. (explaining that the relevant community is generally the forum in which the district court sits, though rates outside the forum may be used if local counsel was unavailable).

The Court must exclude hours that were not reasonably expended-for example, hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Fees are properly reduced when the task is overstaffed, id., when hours are submitted in block format, Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948-49 (9th Cir.2007), or when the work performed is inadequately identified. Fischer v. SJB-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3339498 (S.D.Cal.)
**(Cite as: 2010 WL 3339498 (S.D.Cal.))**

*P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir.2000). Overstaffing can include duplicative billing for unnecessary conferences between colleagues, *Welch,* 480 F.3d at 948-49, or failure to appropriately delegate tasks to staff or colleagues with lower billing rates. *Northon v. Rule,* 494 F.Supp.2d 1183, 1187 (D.Or.2007) (reducing fee award where, among other things, senior attorney failed to delegate relatively simple tasks to junior associates). The party seeking fees bears the burden of adequately documenting the hours claimed. *Gates v. Deukmejian,* 987 F.2d 1392, 1397-98 (9th Cir.1992).

**II. Discussion**

**A. Rates**

   **\*2** Plaintiffs represent Thomas Lyons' reasonable hourly rate as $400, but provide little support for this other than citing cases where other courts approved his rates at $325 to $400 per hour. Local counsel Christina Wickman represents her customary rate for cases of this type is $250 per hour. Local counsel Robert Stempler, who performed a small amount of work early in the case, represents his customary rate for this type of case is $350 per hour. Mr. Lyons represents that the customary rate for Sharon McMahon, a paralegal he employs, is $90 per hour.

   Defendants challenge all three attorneys' hourly rates, arguing $295 is a reasonable rate for Mr. Lyons and Mr. Stempler, and $125 is reasonable for Ms. Wickman. In reply, Plaintiffs argue the Court should look to the prevailing rate in Minnesota. Plaintiffs argue that, while local counsel may have been available, it was necessary to hire Mr. Lyons because of his expertise in military matters. Plaintiffs also cite evidence that another attorney's hourly rate of $355 was recently found reasonable in this district.

   With regard to the military issues, there is no showing Mr. Lyons' expertise in this area was ever required. The case settled relatively early and, as the Court noted at the hearing, the issues were not particularly novel or complex. Even in the pleadings, the military issues were incidental.[FN1] There was nothing wrong with Plaintiffs' hiring Mr. Lyons, but to pay a premium for his expertise when it was not called on is unreasonable.

   FN1. The amended complaint alleges NCO

called Mrs. Gold, demanding payment. When Mrs. Gold said she could not pay and that her husband was deployed with the Navy, NCO allegedly threatened to call his commanding officer to discuss the failure to pay. At the time, Corpsman Jacqui Gold was on a ship in the Indian Ocean. Corpsman Gold learned about the call later. The remaining allegations concern the frequency and time of calls, the caller's tone of voice and other remarks, and Plaintiffs' emotional reactions to the call. The fact that Corpsman Gold was at sea does not, as Plaintiffs have argued, render the case unusually complex.

   The Court also finds the evidence of rates charged by a local colleague, Joshua Swigart, Esq., unconvincing. First, Mr. Swigart's declaration never comments on the requested $400 rate; rather, he merely attested to the reasonableness of Ms. Wickman's fee, noting she is a partner in her own consumer rights firm. Second, Plaintiffs cite only one case where $355 was found to be a reasonable hourly rate, *Shaw v. Credit Collection Servs.,* 09cv883-LAB. In that case, however, the $355 hourly rate applied to 0.3 hours of work performed by a senior partner,[FN2] while 6.5 hours performed by an associate were billed at $225 per hour. Mr. Swigart's own declaration identifies a different case, *Bellows v. NCO Financial Systems,* 07cv1413-W, in which his own hourly rate of $355 was found reasonable. *Bellows* was a much more complex case, however; among other things, it was a putative class action.

> FN2. Plaintiff believed the partner who billed at this rate was Mr. Swigart; however, it was actually another partner, Robert Hyde, Esq.

   Review of the other cases mentioned in Mr. Swigart's declaration shows that in other cases, lower rates were approved. In *McDonald v. Bonded Collectors, LLC,* 233 F.R.D. 576 (S.D.Cal.2005), Mr. Swigart's $315 hourly rate was found reasonable, though he only billed 0.7 hours. Among the other cases, Defendants point to *Myers v. LHR, Inc.,* 543 F.Supp.2d 1215 (S.D.Cal., 2008), where Mr. Swigart's hourly rate of $295 was found reasonable.

   The Court agrees Ms. Wickman's requested hourly rate is very close to a reasonable rate for this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3339498 (S.D.Cal.)
**(Cite as: 2010 WL 3339498 (S.D.Cal.))**

case. She was filling a supporting role, though in fact she appears to have contributed significantly to the litigation beyond merely serving as local counsel.

**\*3** Having considered the evidence and the parties' arguments, the Court determines Mr. Lyons' reasonable hourly rate for this case is $295, as is Mr. Stempler's. The Court also concludes $225 per hour, the rate recently awarded in *Shaw,* is reasonable for Ms. Wickman's work.

**B. Hours Reasonably Expended**
    Mr. Lyons billed 45.98 hours; Mr. Stempler, 2 hours; Ms. Wickman, 23.9 hours; and Ms. McMahon, 1.28 hours. Defendants ask the Court to reduce Plaintiffs' requested hours to account for block billing, duplicative work, communications that could not be billed to the client, unproductive work, and administrative work billed by attorneys. Defendants seek a reduction by 43.37 hours, broken down as follows: 6.97 hours for work performed after the offer of judgment; [FN3] 7.76 hours for excessive fees, 7.01 hours for block billing or overbilling; 13.32 hours for inter-office communications and duplicate entries; 2.09 hours for work that did not advance the litigation; 2.66 hours for unnecessary work; 3.06 hours for work that should have been performed by administrators; and 0.5 hours for non-billable instructions to staff. The Court has reviewed these and agrees Plaintiffs' hours must be significantly reduced. Plaintiffs do not attempt to rebut these objections in any detail, but broadly discuss the complexity of the case and argue the hours are reasonable.

----

FN3. As noted, Plaintiffs do not contest this reduction.

----

The Court agrees many of Plaintiffs' billings were inappropriately block-billed. For example, the first item in Mr. Lyons' billing is for 4.03 hours for an intake conference, some of which is billable and some of which was not. Some portion of this conference, for example, involved discussing Mr. Lyons' firm's website and his qualifications, and answering questions about the retainer agreement. As part of this conference, Mr. Lyons also billed for looking up Defendant on the internet, a simple task that could and should have been delegated. Looking at entries such as this, it is impossible to say with any certainty what portion of the 4.03 hours Defendants should pay for. The Court therefore agrees a reduction for block

billing is appropriate.

    Defendants also argue Plaintiffs inappropriately billed for inter-office communications. In part they object that many of the entries are so vague it is impossible to know whether the attorneys were doing work that advanced the litigation. And in part they object that many of the entries describe work that would not ordinarily be billed to clients. In many cases, only one attorney billed for the call, suggesting that the other didn't consider it billable. But in some cases both billed, and Defendants point out that the effect is a duplicative billing. Where the relationship of the task to the litigation is marginal to begin with, doubling the hours through duplicative billings is unreasonable.

    While billing for conferences between counsel can be appropriate-for example, where attorneys are collaborating on work or engaging in collective problem solving-the Court agrees the entries identified here do not identify such work. Instead, the tasks are either unidentified or pertain to business or administrative matters. As an example, on March 13, 2009, Mr. Lyons billed 0.3 hours for a "long discussion" with Mr. Stempler, while Mr. Stempler billed 0.2 hours for the same conference; neither explained the subject matter or task at hand. As a second example, on September 14 and 15, 2009, Mr. Lyons and Ms. Wickman together billed over an hour [FN4] for emails about signatures on a substitution of counsel motion.

----

FN4. Unraveling the exact time spent on these emails is impossible because Mr. Lyons' entry is block-billed. His two entries on September 14 include 0.23 hours for a call and follow-up email to Ms. Wickman, and 0.28 hours for "continuation on substitution of attorneys for San Diego District." Ms. Wickman on September 15 billed 0.6 hours for reading the emails and doing something unidentified about a power of attorney. Ms. Wickman's billing entry also shows the communication concerned the "contract with Golds," which may refer to the retainer agreement.

----

**\*4** Defendants also argue that such 2.09 hours spent on such tasks as file review, checking voicemails, working on business matters, and the like did not advance the litigation and are therefore not prop-

----

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3339498 (S.D.Cal.)
**(Cite as: 2010 WL 3339498 (S.D.Cal.))**

erly billed. Defendants also point out Mr. Lyons be-gan working on discovery matters even before the early neutral evaluation conference had been held, and they argue the hours spent on discovery were needless at this early stage. The Court agrees that much of Plaintiff's counsel's work was unnecessary, and the requested reduction of 2.09 hours is very reasonable.

As Defendants also point out, much of the work Plaintiffs' counsel did could and should have been delegated to staff and was either billable only at the rate for a paralegal, or else not billable at all. This includes matters such as arranging for meetings and travel, sending or obtaining documents, and the like. The top-heavy billings (nearly 46 hours for Mr. Lyons, 26 hours for the two local counsel, and 1.28 hours for the paralegal), which resemble an inverted pyramid, illustrate this point.[FN5]

> FN5. In other cases, courts have applied this factor after calculation of the lodestar amount, to reduce the total amount. *See, e.g., Bridgeport Music, Inc. v. WB Music Corp.,* 520 F.2d 588, 596 (6th Cir.2008) (affirming district court's fee award, where district court reduced lodestar amount by 25% "to account for top-heavy billing by partners for work that could have been performed by associates). But here, Defendants have identified particular entries they think should be discounted. The end result is the same, except that, as long as it is feasible, discounting based on particular identified entries is likely more accurate.

This raises an additional issue, however, regarding billing for intra-office communication. While Mr. Lyons delegated some work to Ms. Wickman and Ms. McMahon, he should have delegated more. But the delegation, such as it was, was appropriate and necessary. Ms. Wickman's own review of the materials and some of her communications with Mr. Lyons and other involvement in the case are a necessary part of the delegation process. The Court therefore finds it inappropriate to discount Ms. Wickman's hours for the second September 2, 2009 entry, the entries for December 3 through 7, the second December 9 entry, the second December 21 entry, the first entry for January 6, 2010 (except for the block billing deduction), the January 10 entry, the February 3 entry, and

the first February 12 entry. These amount to 5.7 hours the Court will not deduct from Ms. Wickman's billings. The delegation was not so extensive or efficient as to merit including both attorneys' hours, however, so Mr. Lyons' hours will still be deducted.

Defendants' opposition to the motion for attorneys' fees gives only illustrative examples, but the Court has independently reviewed the billings and agrees the hours claimed are excessive. Defendants' requested reductions are well within reason and are approved.

**C. Lodestar Calculation**

After applying the reductions in hours claimed, the Court concludes the hours to be used in the lodestar calculation are 19.71 hours for Mr. Lyons, 1.7 hours for Mr. Stempler, and 12.8 hours for Ms. Wickman. Multiplied by the reasonable rates the Court has found, the totals are $5814.45 for Mr. Lyons' work, $501.50 for Mr. Stempler's work, and $2880 for Ms. Wickman's work. Defendants have not disputed that Ms. McMahon properly billed $115.20 so the Court adds this to the other fees. The lodestar amount is therefore $9311 .15.

**D. Reduction for Limited Success**

As *Hensley* points out, the lodestar calculation is not necessarily reasonable, and may need to be reduced to account for a plaintiff's limited success. 461 U.S. at 436. The Court's review of the billings and Plaintiffs' pleadings suggests Mr. Lyons initially expected a large award based on emotional harm. His work on retaining a forensic psychologist and his trip to San Diego to meet Plaintiffs in person support this conclusion.

**\*5** Instead of the large recovery Mr. Lyons may have expected, however, Plaintiffs settled for $2000 in statutory damages plus $1000 in actual damages. Defendants also argue this demonstrates Plaintiffs prevailed on only two of their causes of action. Thus, if the Court awards the lodestar amount, Plaintiffs will have spent three times their damages.

Plaintiffs point out that for a variety of reasons, fee awards need not be proportionate to the recovery, and the Court agrees. *See Owens v. Howe,* 365 F.Supp.2d 942, 947 (N.D.Ind., 2005) (in Fair Debt Collection Practices Act case, holding that the fee award "need not be proportionate to the settlement or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3339498 (S.D.Cal.)
**(Cite as: 2010 WL 3339498 (S.D.Cal.))**

judgment amount ... as that would defeat the public benefit advanced by the litigation") (citing *Morales v. City of San Rafael,* 96 F.3d 359, 365, *as am on den. of reh'g and reh'g en banc,* 108 F.3d 981 (9th Cir.1997)). The relatively low settlement amount, however, makes clear Plaintiffs did not succeed on most of their claims, and their settlement for statutory damages plus $1000 is analogous to an abandonment of the remaining claims.

While Plaintiffs argue this was a complex case, in fact it appears to have been fairly ordinary. Even if Plaintiffs' initial impression was reasonable, it eventually became clear the case was rather straightforward and the claims would not likely bring a large recovery; and the settlement reflects this. Bearing in mind the relatively low value of the claims, fees should have been kept lower. Plaintiffs' counsel's error in over-valuing and over-preparing the case should not be visited on Defendants. The Court is required to consider the relationship between the fee award and the degree of success, *McGinnis v. Kentucky Fried Chicken of California,* 51 F.3d 805, 809-10 (9th Cir.1994), and has discretion to reduce the fee award to account for the limited success. *Robins v. Matson Terminals, Inc.,* 283 Fed. Appx. 535, 535 (9th Cir.2008).

While Plaintiffs obtained only $3000, they have also effectively deterred NCO from engaging in offensive and objectionable collection tactics, and that deterrence is worth something. *See City of Riverside v. Rivera,* 477 U.S. 561, 575, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (discussing the potential value a plaintiff's recovery of damages in civil rights actions may have in light of its deterrence effect). *See also Van Skike v. Director,* 557 F.3d 1041, 1047 (9th Cir.2009) (discussing the importance of encouraging attorneys to undertake Fair Debt Collection Practices Act cases by making adequate fee awards).

Having weighed these factors, the Court concludes a 1/3 reduction is appropriate here. The Court therefore awards $6207.43 in attorney's fees.

**E. Costs**
Plaintiffs have sought $2,406.51 for Mr. Lyons' costs, $58 for Ms. Wickman's costs, and $13 for Mr. Stempler's costs. Ms. Wickman's costs are unremarkable and Defendants do not object to them. Defendants object to all charges for experts, mailing,

lunches, and travel expenses, citing 28 U.S.C. § 1920 and arguing the costs were inadequately documented.

*6 Mr. Lyons' expenses include $1,756.51 for a trip to San Diego to meet Plaintiffs personally in Ms. Wickman's office, for lunch on the way to that meeting, and for consultation with a forensic psychologist who Mr. Lyons considered using as an expert witness. The Court finds these charges unreasonable and will not award them. Mr. Lyons' mailing charges are simply designated "Postage" with no further explanation. The Court finds these inadequately documented and will therefore not award them. The Court finds Mr. Stempler's costs for filing the complaint by mail to be a reasonable out-of-pocket litigation expense that would ordinarily be paid by clients, and will therefore award them. *See Molina v. Creditors Specialty Serv., Inc.,* 2010 WL 235042, slip op. at *4 (awarding non-taxable costs of filing the complaint).

Plaintiffs have also argued several other types of costs are awardable, including the cost of electronic research and long-distance phone calls. They have not, however, documented any such costs.

**III. Conclusion and Order**
For these reasons, the Court **AWARDS** Plaintiffs $6207.43 in attorney's fees plus $71 in costs.

**IT IS SO ORDERED.**

S.D.Cal.,2010.
Gold v. NCO Financial Systems, Inc.
Slip Copy, 2010 WL 3339498 (S.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.