AMY R. LEVINE, State Bar No. 160743
alevine@dwkesq.com
SARAH L. W. SUTHERLAND, State Bar No. 239889
ssutherland@dwkesq.com
MATTHEW J. TAMEL, State Bar No. 229378
mtamel@dwkesq.com
DANNIS WOLIVER KELLEY
275 Battery Street, Suite 1150
San Francisco, CA  94111
Telephone: 415.543.4111
Facsimile: 415.543.4384

Attorneys for Defendant
SAN DIEGO UNIFIED SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.B., Allison Brenneise and Robert Brenneise,<br><br>Plaintiffs,<br><br>v.<br><br>San Diego Unified School District,<br><br>Defendant. | Case No.  08-CV-0028 MMA (WMc)<br><br>**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**<br><br>Date  :  October 24, 2016<br>Time  :  2:30 p.m.<br>Dept  :  Courtroom 5<br>Judge :  Honorable Michael M. Anello<br><br>Complaint Filed:  January 4, 2008<br>Trial:  February 14, 2017 |

*Dannis Woliver Kelley*
*275 Battery Street, Suite 1150*
*San Francisco, CA  94111*

DWK LB
607313v1

---

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

## UNDISPUTED FACTS REGARDING PLAINTIFFS' FIFTH CLAIM FOR RELIEF

### ALLISON & ROBERT BRIENNEISE'S STANDING/FAILURE TO STATE A CLAIM

| | |
|---|---|
| 1. T.B. is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. | Second Amended Complaint ("SAC"), ¶¶ 6; 8. |
| 2. Plaintiffs Allison Brenneise and Robert Brenneise do not allege that they are individuals with disabilities. | Second Amended Complaint ("SAC"), ¶ 7. |
| 3. Plaintiffs Allison Brenneise and Robert Brenneise do not allege that they are otherwise qualified for the programs and services of the San Diego Unified School District ("District"). | Second Amended Complaint ("SAC"), ¶ 7.___ |
| 4. Plaintiffs Allison Brenneise and Robert Brenneise do not allege that they have been directly discriminated against or deprived of the programs, activities and services of the District. | Second Amended Complaint ("SAC"), ¶¶ 7; 50.___ |

### ALL PLAINTIFFS' FAILURE TO STATE A CLAIM/FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

#### T.B. Educated At Home Pursuant To Stav Put IEP

| | |
|---|---|
| 5.   T.B. had been educated in his home since his mother, Allison Brenneise, unilaterally removed him from a school placement at the Del Sol Academy within the San Diego Unified School District in October 2003, except for a brief time when he attended Coronado Academy.  T.B. received related services (sometimes called Designated Instruction and Services ("DIS")) through various nonpublic agency ("NPA") providers selected by his parents | Office of Administrative Hearings ("OAH") Administrative Record ("AR") 2239-2346, AR 3034-78.  OAH Transcript ("TR") 43:1-11, TR 44:1-15, TR 46:5-13, TR 70:20-TR71:17, TR 159:12-25, TR 160:3-25, TR 166:15-25, TR 431:7-432:25, TR 804:22-805:8. |

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

1

DWK LB
607313v1

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| since his removal to the home. | |
| 6.      The July 17, 2006 Individual Education Program ("IEP") outlines the stay put agreement between the parties designed by Mrs. Brenneise.  It provides that if there was no agreement as to T.B.'s 2006-2007 IEP, that T.B.'s home program would continue until the parent consented to implementation of an IEP and that, should there be no agreement, the District would provide all the services set forth in the stay put provisions of that IEP (the "Stay Put IEP").  After the Coronado placement ended in late July 2006 AND UNTIL THE October 2007 Office of Administrative Hearings Decision, the "Stay Put IEP" governed T.B.'s program. | AR 1966 (FF ¶ 242), AR 1967 (FF ¶ 245), AR 3351-92 (IEP).<br><br>TR 176:5-25, TR 454:16-455:12, TR 2261:4-16. |
| 7.      The "Stay Put IEP" called for the following services: Applied Behavior Analysis ("ABA") one-to-one aides to be provided by ACES for 41.5 hours per week; behavioral training by ACES; ABA supervision by ACES; an ABA clinic attended by the behavior aides; occupational therapy ("OT") provided by School Options (through Chris Vinceneaux) for 4 hours per week; speech and language therapy provided by Laurie Silverman & Associates for 4 hours per week; and assistive technology ("AT") for 1 hour per month. | AR 3351, 3387-92.<br><br>TR 645:19-646:11. |
| **August 30, 2006 IEP** | |
| 8.      Recognizing that health was an area of need for T.B., the August 30, 2006 IEP offered a transition plan which required all school staff be trained in T.B.'s health needs by a District nurse prior to his starting school, including on his medical | AR 3914-17, AR 3927-4025, AR 4068-69.<br><br>TR 626:10-628:4, TR 758:13-759:10, TR 1130:3-1135:5. |

2

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DWK LB
607313v1

Dannis Woliver Kelley
275 Battery Street, Suite 1150
San Francisco, CA 94111

| | |
|---|---|
| condition (PKU), his dietary needs (e.g., how much PHE he could ingest per day and tracking thereof), his seizures and osteoporosis, and his g-tube feedings. | |
| 9.     The August 30 IEP also offered an additional eight hours of health nursing services, a full-time one-to-one aide from Resources for Students with Autism, a school health management plan once T.B. started school, and a panoply of other services and supports for T.B. and school personnel. | AR 2327, AR 3927-29, AR 3970, AR 3972, AR 4020. |
| 10.     The Service Delivery Details page of the August 30 IEP clarified that the eight hours of health nursing services included three hours of consultation and training provided by a school nurse between August 30 and September 30, and five hours of nursing consultation per year thereafter as needed (about half an hour per month). | AR 3929. |
| 11.     District witnesses testified that the nurse would designate, train, and supervise an employee to assist T.B. with g-tube feeding and that the eight hours of nursing services was for that purpose. | TR 3317:21-3319:25, TR 3408:15-3410:24. |
| **December 4, 2006 IEP** | |
| 12.     The December 4, 2006 IEP was over 100 pages long and offered placement at Wangenheim Middle School in a special day class for 3 periods per day and in collaborative or co-taught general education classes for 2 periods a day.  T.B. would attend school for a full day after a transition period specified in the transition plan.  The offer also included, inter alia, nursing services, occupational therapy | AR 5202-314. |

3

DWK LB
607313v1

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| services, speech/language services, assistive technology, adapted physical education, vision therapy and physical therapy. A full-time one-to-one aide was also offered. The aide would be with T.B. all day, including during lunch and while g-tube feeding. | |
| 13. The IEP was an annual IEP designed for one year, which expired on December 3, 2007. | AR 5202-314. |
| 14. Wangenheim had a health office and a full time school nurse on site. | AR 4178-98, AR 5201-314. TR 758:8-24, TR 1466:10-1468:1, TR 1789:13-1791:18. |
| 15. The December 4 IEP offered a goal to assist T.B. in learning to independently ingest his formula through his g-tube more quickly, which listed the nurse as one of the people responsible, and goals to assist him in calculating his PHE intake and making appropriate food choices. | AR 5232, AR 5244, AR 5245. |
| 16. The December 4 IEP also included a transition plan that provided additional staff training and detailed how the specifics of T.B.'s g-tube feedings at school would be finalized by the nurse in consultation with his parent. | AR 5308-15. |
| 17. The transition plan attached to the December 4 IEP specified on the first page in the second bullet that prior to starting school: "G-tube feeding will be scheduled to occur daily in the Nurse's room. Timing will be determined in collaboration with the school nurse and parent, in order to fit g-tube feeding into [T.B.]'s schedule at an appropriate time, and to clarify which staff | AR 5308. |

4

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| member will assist until [T.B.] becomes independent." | |
| 18.    The first bullet in the transition plan regarding what would occur before T.B. started school provided for "health/safety" training for staff expected to work directly with T.B. before he started school regarding PKU and its effects on the school-aged child, g-tube feeding, nutrition and low protein foods, PKU curriculum materials, osteoporosis and proper body mechanics. | AR 5308. |
| 19.    The December 4 IEP continued the District's offer of 8 hours of nursing service for the year. | AR 5201-5314.<br><br>TR 3313:4-21. |
| 20.    The eight hours of offered nursing time was to be used to provide any necessary further training and supervision to the aide who would be assisting T.B. with taking his prescription formula through his g-tube at school after the training in the transition plan was complete. | AR 3927-4025, AR 5202-314.<br><br>TR 3312:15-3314:17, TR 3408:13-3410:24, TR 5266:16-5268:11. |
| 21.    Sara Bonnet was the school nurse assigned to Wangenheim.  As a school nurse, she was assigned to Wangenheim on a full time basis.  There was no limit on the amount of time she could spend assisting any Wangenheim student, including T.B. | Declaration of Amy R. Levine in Support of Motion for Summary Judgment ("Levine Decl."), ¶ 17, Ex. Z (Jennifer Gorman Declaration in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Gorman Decl."), ¶ 7.<br><br>Levine Decl., ¶ 17, Ex. W (Declaration of Sara Bonnet in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Bonnet Decl."), ¶ 2. |
| **OAH Decision** | |
| 22.    The District filed for due process on November 29, 2006 to establish that its assessment was appropriate.  On December 15, 2006, the District amended its due | AR 5-10 (November 29, 2006 Due Process Complaint), AR 15-19 (Amended Complaint), AR 116-36 (January 29, 2007 Due Process Complaint), AR 1913-89 (Decision). |

5

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| process request to defend both its assessment and the IEP offered on December 4, 2006.  The Plaintiffs filed for due process on January 29, 2007, challenging the assessments, the December 2006 IEP, and the August 2006 IEP.  The cases were consolidated for hearing.  The District prevailed on 15 of the 18 issues identified by the ALJ. | |
| 23.     The 75-page OAH Decision was served on the parties by mail on October 5, 2007.  The District received the Decision on Monday, October 8, 2007. | AR 1913-89. Levine Decl., ¶ 17, Ex. DD (Declaration of MarySue Glynn in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Glynn Decl."), ¶ 12.) |
| 24.     The Administrative Law Judge ("ALJ") found that the December 4, 2006 IEP provided T.B. with a free appropriate public education ("FAPE") in most respects, and her order allowed the District to implement it as modified by her order. | AR 1986-87 (Order ¶¶ 1-6). |
| 25.     At the time the District offered the August 30 and December 4 IEPs, all of the information it had available to it established that T.B. could g-tube feed independently with adult prompting to stay on task, and that he did not need a nurse present to personally assist him with his g-tube feedings on a daily basis. | AR 2525, AR2529, AR 2894, AR 3034-78, AR 3269-70, AR 3791-888 AR 3897-901, AR 4031-34, AR 4178-98, AR 4303-402, AR 4404-503, AR 4677-782, AR 4859-906, AR4907-10, AR4912-13, AR5055-92. TR 4526:7-22. See also, Plaintiffs' Response to SDUSD's Separate Statement of Material Facts, Doc. 98-1, 25:14 (indicating that this fact was "uncontested"). |
| 26.     The ALJ found "[a]lthough the evidence was undisputed that Student needs adult supervision for his G-Tube feedings, there was no evidence that the supervision must be provided by a registered nurse" and that T.B. was "capable of mixing his own | AR 1943-44 (Factual Findings ("FF") ¶ 138), AR 1960-61 (FF ¶ 216). |

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DWK LB
607313v1

| | |
|---|---|
| formula if he has adult supervision and prompting." | |
| 27.     While the ALJ did not determine that having a nurse directly supervise g-tube feedings for T.B. was required for FAPE, she did order that a nurse directly supervise g-tube feedings as a remedy after she found that the December 4, 2006 IEP was unclear as to who was going to supervise the feedings and whether that person would be qualified to do so. | AR 1985 (Legal Conclusions ("LC") ¶ 62), AR 1986 (Order, ¶ 1).<br><br>AR 1963 (FF ¶ 230), AR 1981 (LC ¶ 48) |
| 28.     As a remedy for the denial of FAPE, the ALJ ordered that the December 4, 2006 IEP be modified to provide that g-tube feedings be scheduled to occur daily in the nurse's office, and that a school nurse be present and personally assist the student with the g-tube feedings. | AR 1986 (Order ¶ 1). |
| 29.     The ALJ specifically left it up to the District in future IEPs to designate and train a Behavior Support Assistant ("BSA") or other type of non-nursing staff to provide g-tube services. | AR 1985 (LC ¶¶61-62) ("nothing in this Decision is intended to prevent District from proposing, in a future IEP, that another classification of employee assist with Student with the feedings, provided that the assistant meets the requirements of Education Code section 49423.5"), AR 1981 (LC ¶¶ 46-47). |
| **Implementation of OAH Decision** | |
| 30.     After receiving the OAH Decision, Ms. Glynn modified the IEP so that it read: "G-tube feeding will be scheduled to occur daily in the nurse's office.  A school nurse will be present and will personally assist the student with the student's G-tube feeding.  The G-Tube feeding will occur at the time(s) and in the manner designated in a doctor's order from Student's current | Levine Decl., ¶ 17, Ex. DD (Glynn Decl., ¶ 15, Exs. D-G (October 17, 2007 email from M. Glynn to A. Brenneise attaching modified transition plan [SDUSD 1084-93]). |

Dannis Woliver Kelley
275 Battery Street, Suite 1150
San Francisco, CA 94111

7

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| physician.  Student's mother will be responsible for providing the school nurse with a current doctor's order specifying the time(s) of the G-Tube feeding and the amount of formula to be used in the feeding(s), and for providing updated doctor's orders whenever there is any change in the G-Tube feedings." On October 17, 2007, Ms. Glynn sent this IEP addendum with a cover letter to Mrs. Brenneise. | |
| 31.     The transition plan included as part of the December 4, 2006 IEP was designed to effectuate a smooth transition from T.B.'s home-based program to a school-based program. | AR 5308-13. TR 618:15-612:9, TR 1506:14-1512:6, TR 1727:24-1733:21, TR 1787:3-1788:25, TR 2152:6-2154:16, TR 2165:22-2166:15. |
| 32.     The transition plan included four phases.  During Phase I, T.B. would attend school for only two hours per day and his home-based DIS program would be reduced commensurately.  T.B.'s time in school would increase during each phase, until Phase IV, when he would attend school for the full day. | AR 5308-13. TR 1507:23-1512:12. |
| 33.     The ALJ modified the IEP to clarify that until T.B. entered Phase IV of the transition plan where he would attend a full day of school, he would continue with his then-current DIS providers.  Once he entered Phase IV, his DIS services would be provided by District staff. | AR 1986 (Order ¶ 3). |
| 34.     As modified by the ALJ, the transition plan provided for parent approval before T.B. moved between any of the four phases of the transition. | AR01986 (Order ¶ 2). |
| 35.     Under the modified transition plan, before Phase I even began, a number of | AR 1986 (Order ¶ 1), AR 5308-13. |

8

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| preparatory activities needed to take place. The District needed to obtain a request from T.B.'s parent to administer medication at school and current doctor's orders from the parents in order to ascertain the current prescription for T.B.'s g-tube feedings and work those feedings into his schedule.   All staff who would be working with T.B. at Wangenheim would need to be trained in T.B.'s health needs.  In addition, other District staff were to receive additional training on T.B.'s health and behavioral needs.  His two one-to-one behavioral aides were to observe his home program for 20 hours, and key members of the IEP team (including at least the District psychologist, occupational therapist, and autism specialist) were also to observe the home program for a minimum of 2 hours each. The District occupational therapist was to observe a minimum of two of T.B.'s OT sessions with School Options, and School Options and the District occupational therapist were to jointly visit the school and make recommendations regarding OT equipment.  This equipment, along with T.B.'s assistive technology and FM equipment, was to be set up before the first day of school.  T.B. and his parents and his ACES aide were to visit the school at least once prior to his starting, and an additional visit would be scheduled at parent or staff request.  His case manager was also to visit the school, contact the parents to gain parent insights, answer questions and provide a class schedule to assist the parents in preparing T.B. for the transition. ACES was also to review the schedule and expectations with T.B. to reduce his anxiety.  Finally, the District was to | TR 3564:4-12. |

9

DWK LB
607313v1

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| "collaborate with ACES, Chris Vinceneux and Laurie Silverman and Associates for up to 2 hours each per week prior to T.B.'s starting school, to ensure smooth transition of therapy and instruction …." A collaboration meeting was also to take place prior to [T.B.]'s starting school "to discuss readiness to move to the next phase, implementation." This meeting was to include a number of District staff members and T.B.'s stay put DIS providers. | |
| 36.    In anticipation of a favorable decision and T.B.'s return to school, prior to October 8, 2007, the District began some of the staff training called for in the transition plan and also put a number of other pieces in place to make the team ready for T.B. to enroll in school. | TR 1793:4-19.<br><br>Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71].). |
| 37.    On October 2, 2007, the psychologist and autism specialist completed behavioral training for school staff regarding T.B.'s behavior support plan and specific staff interaction strategies. | Levine Decl., ¶ 17, Ex. FF (Declaration of Sheila Doctors in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Doctors Decl.") ¶ 10, Ex. G (October 2, 2007 training attendance sheet [SDUSD 701]).<br><br>Levine Decl., ¶ 17, Ex. AA (Declaration of Matthew Howarth in Support of in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Howarth Decl."), ¶ 9). |
| 38.    On October 2 and October 31, 2007, Ms. Doctors completed two two-hour school visits and observed the school environment including the classroom, the cafeteria, the restrooms, and the health room. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71])). |
| 39.    On October 10, 2007, the District's occupational therapist met for two hours with the Wangenheim School-based | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71])). |

10

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| occupational therapist to discuss T.B.'s assessment and IEP goals. The District's occupational therapist visited the school site, conferred with the OT assistant, SBDRT, Learning Center staff, vice principal, and speech therapist. She observed the therapy space and delivered OT equipment to the school. | Levine Decl., ¶ 17, Ex. X (Declaration of Phyllis Gahan in Support of in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Gahan Decl."), ¶ 5). |
| 40.    On October 17, 2007, the District's Special Education Support Instruction Director MarySue Glynn notified Mrs. Brenneise that the District wanted to start the observations required by the modified IEP no later than October 22, 2007, and that Applied Interventions & Methodologies, Inc. ("AIM"), the new behavioral services provider, was awaiting a schedule from Mrs. Brenneise, but expected to provide services that week. Ms. Glynn also notified Mrs. Brenneise that the District was collaborating with T.B.'s current DIS providers and had undertaken to complete the health and safety trainings called for in the transition plan. Ms. Glynn asked Mrs. Brenneise to provide dates when she or her husband could visit Wangenheim with T.B. and the AIM aide. Ms. Glynn also explained that the District was working with T.B.'s current providers to ensure he received DIS services while transitioning into a school program and asked Mrs. Brenneise to contact her regarding appointment times for these providers. Finally, Ms. Glynn indicated that the District planned to provide OT services to T.B. through a District occupational therapist at Wangenheim beginning October 22, 2007. | Levine Decl., ¶ 17, Ex. DD (Glynn Decl., ¶ 15, Ex. E (October 17, 2007 letter from M. Glynn to A. Brenneise [SDUSD 1091-92]). |
| 41.    On October 29, 2007, Ms. Glynn | Levine Decl., ¶ 17, Ex. DD (Glynn |

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| wrote to Ms. Brenneise to "detail[] the plans to initiate the implementation of [T.B.]'s IEP." First, Ms. Glynn stated that the District's observations were scheduled to begin on October 31, 2007. Also the District had arranged for the OT to start on the same day. Second, Ms. Glynn suggested that Mrs. Brenneise, T.B. and the AIM tutor visit Wangenheim on November 7. Third, Ms. Glynn explained that the first collaborative meeting was scheduled for November 6, at Wangenheim. Ms. Glynn stated that since the District "anticipates that trainings, observations, and collaborative meetings, as well as all necessary visits to Wangenheim, will be completed by November 9th … transportation is scheduled to begin on Nov. 13 to take [T.B.] to school …." Finally, Ms. Glynn indicated that Mrs. Brenneise needed to complete the following tasks before T.B.'s first day of school: (1) complete the school registration packet, (2) meet with the nurse regarding the Individual Health Services Plan, (3) meet with the nurse to demonstrate the g-tube feedings and bring all the necessary equipment and supplies to school, (4) sign a "Parents SPHCS Form," and (5) discuss the timing for the g-tube feeding. | Decl., ¶ 16, Ex. H (October 29, 2007 letter from M. Glynn to A. Brenneise [SDUSD 1100-01]). |
| 42.   On November 5, 2007, T.B., his mother, his NPA tutor and supervisor, and his case manager visited Wangenheim. They were shown the classroom, nurse room, occupational therapy area, restroom, cafeteria, and office. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71])). |
| 43.   On or around November 5, 2007, T.B.'s case manager Sheila Doctors provided the parents with materials | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 20, Ex. R (collaboration meeting minutes [SDUSD 1128-29]); ¶ 55, Ex. KK (transition activities |

12

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| including enrollment forms, a map of the school, a schedule of class topics currently studied in the SDC, and the PKU and Behavioral Support Plan ("BSP") training sign in sheets.  Mrs. Brenneise was also provided the 8th grade textbooks. | chart [SDUSD 2169-71]). |
| 44.      Ms. Doctors maintained ongoing email contact with the parent and provided additional information regarding transition activities, and transportation information. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71]). |
| 45.      The District did other things to help T.B. transition, including, for instance, giving his ABA aides work that his future classmates at Wangenheim were working on, so that he could participate in those activities and be used to the work before he started school.<br><br>It also provided additional health and behavioral training to Mrs. Brenneise, at her request. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 53).<br><br>Levine Decl., ¶ 17, Ex. AA (Howarth Decl., ¶ 12). |
| 46.      On November 6, 2007, a collaboration meeting was convened involving the case manager, psychologist, autism specialist, District occupational therapist, the NPA DIS providers, and Mrs. Brenneise.  T.B.'s NPA speech and language provider, Robin Lipton, was invited to the meeting, but did not attend. | AR 4790-92.<br><br>TR 1755:19-1756:5.<br><br>Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶¶ 20-21, Exs. R and S (collaboration meeting agenda and minutes [SDUSD 1128-30, 1133-34]).<br><br>Levine Decl., ¶ 17, Ex. X (Gahan Decl., ¶ 13).<br><br>Levine Decl., ¶ 17, Ex. AA (Howarth Decl., ¶ 15). |
| 47.      On November 15, 2007, the District's occupational therapist had a second meeting at Wangenheim.  She met with the autism specialist and the SDC teacher to set up the room, review the list of correct OT practices, and provide | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71]).<br><br>Levine Decl., ¶ 17, Ex. X (Gahan Decl., ¶ 7, Ex. B (November 14, 2007 |

13

DWK LB
607313v1

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| equipment/material for T.B. | email from P. Gahan to A. Callies, M. Howarth and J. Oskam [SDUSD 1170]). |
| 48.    On November 2, 2007, the AT specialist met with the SDC staff and provided training on AT programs.  On or around November 6, 2007, a scanner was delivered to the school.  By November 15, 2007 a new laptop with all the AT software was set up at school, and a District provided laptop was also made available to T.B. at home. | TR 3918:14-3919:8. Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71]). |
| 49.    On November 8, 2007, the parent returned T.B.'s FM device to the District. The device was checked and cleaned and the batteries replaced by the District's audiologist. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 23, Ex. V (November 13, 2007 email from S. Doctors to A. Brenneise [SDUSD 1159]), Ex. W (November 15, 2007 email from S. Doctors to A. Brenneise [SDUSD 1183]). |
| 50.    The District psychologist, occupational therapist and autism specialist completed at least two hours of observation of the home program on November 8 and November 16, 2007. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 25, Ex. Y (November 9, 2007 email from S. Doctors to A. Brenneise [PC&D 1185]). Levine Decl., ¶ 17, Ex. AA (Howarth Decl., ¶¶ 6, 18). |
| 51.    On November 15, 2007, the new behavioral provider, AIM, implemented social stories curriculum from the classroom in the home in order to prepare T.B. for moving to his new program. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71]). Levine Decl., ¶ 17, Ex. AA (Howarth Decl., ¶ 12). |
| 52.    The December 4, 2006 IEP provided for three hours of "health/safety" training for staff before T.B. started school regarding PKU and its effects on the school-aged child, g-tube feeding, nutrition and low protein foods, PKU curriculum materials, osteoporosis and proper body mechanics. | AR 5308-13. TR 3918:1-8. |
| 53.    During the 2006 ESY and the 2006- | TR 4129:13-4130:9, TR 4151:17-22, |

14

DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)

DWK LB
607313v1

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| 2007 school year, in anticipation of T.B.'s possible return to school, Nurse Tania Ware had also completed three trainings for staff on T.B.'s health and safety needs – at Coronado, Wangenheim, and Wiggen Schools. | TR 4183:22-4184:3. |
| 54.    A District nurse completed four staff trainings on T.B.'s health and safety needs on September 27, 2007, November 1, 2007, November 27, 2007, and December 3, 2007.  A November 13, 2007 training for an additional tutor and the BSA was scheduled but then cancelled for medical reasons.  The initial two trainings included 24 participants.  The second two trainings were for all remaining school staff, including food services employees.  Other members of the IEP team, e.g. Matthew Howarth and Sheila Doctors, had been trained earlier. | AR 5308-13. <br><br> TR 3613:8-12. <br><br> Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 9, Ex. C (September 27, 2007 training attendance sheet [SDUSD 693]), Ex. D (November 1, 2007 email from D. Connors to S. Doctors [SDUSD 1106]). <br><br> Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 26, Ex. Z (November 12, 2007 email from S. Doctors to A. Brenneise [SDUSD 1151]); ¶ 9, Ex. E (November 27, 2007 training attendance sheet [SDUSD 718-19]), and Ex. F (December 3, 2007 training attendance sheet [SDUSD720-22]). |
| 55.    After the due process hearing, Mrs. Brenneise's attorney gave the District limited access to T.B.'s physicians. Nurse Linda Vergara worked with Dr. Taras and T.B.'s physician to gather the information needed for T.B. to start school, and to draft the Individual Health Support Plan ("ISHP"). Dr. Cederbaum, T.B.'s physician, provided the District with the information it needed on September 24, 2007, but Mrs. Brenneise never submitted the request to have specialized physical health care services provided, the physician's recommendation for medication, or the parent waiver/school responsibility form. Nurse Vergara gave these forms to Mrs. Brenneise several times between October 2006 and February 2008 | Levine Decl., ¶ 17, Ex. BB (Declaration of Vergara in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Vergara Decl.") ¶¶ 12-13). <br><br> Levine Decl., ¶ 17, Ex. Y (Gorman Decl., ¶ 4, Ex. A (Nurse Vergara's forms checklist) [SDUSD 923-924]). |

15

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| and requested that she fill them out and return them, but she never did. | |
| 56.    Nonetheless, Nurse Vergara reviewed the g-tube feeding procedures notebook, which contained generic District procedures, consents and treatment logs, with Mrs. Brenneise. | Levine Decl., ¶ 17, Ex. BB (Vergara Decl., ¶ 15, Ex. A (g-tube feeding procedures notebook)). |
| 57.    In anticipation of T.B.'s enrollment at Wangenheim, Nurse Linda Vergara attempted to meet with his parents to plan and finalize Individualized School Healthcare Plans for T.B. On October 31, 2007, she sent an email to Mrs. Brenneise, requesting to meet with her at Wangenheim to pick up enrollment papers, review the health plan, and go over g-tube equipment and feeding procedures. Mrs. Brenneise indicated she was unavailable to come to school that day. Later that day, she spoke with Mrs. Brenneise by telephone. | Levine Decl., ¶ 17, Ex. BB (Vergara Decl., ¶¶ 6, 7).<br><br>Levine Decl, ¶ 11, Ex. L (October 31, 2007 email from Nurse Vergara to Mrs. Brenneise [PC&D001228-1229]). |
| 58.    During Nurse Vergara and Mrs. Brenneise's telephone conversation on October 31, 2007, Nurse Vergara confirmed that a nurse would be available for T.B. when he started school.  Mrs. Brenneise's notes from the conversation and her email to Nurse Vergara state this. Ms. Doctors and the District's counsel also later confirmed this point in writing. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 27, Ex. BB (November 13, 2007 email from S. Doctors to A. Brenneise [SDUSD 1154]).<br><br>Levine Decl., ¶ 17, Ex. DD (Glynn Decl. ¶ 44, Ex. DD [November 1, 2007 letter from S. Sutherland to S. Wyner [SDUSD 371-74]).<br><br>Levine Decl., ¶ 17, Ex. Y (Gorman Decl. ¶ 7).<br><br>Levine Decl., ¶ 10, Ex. K (A. Brenneise's notes [PC&D 785] [A. Brenneise Deposition, Vol. I, Ex. 20]); ¶ 11, Ex. L (emails between A. Brenneise and L. Vergara [PC&D 1228-29]); ¶ 13, Ex. N (A. Brenneise Deposition, Vol. II, 323:11-324:10.). |
| 59.    On November 5, 2007, T.B. and Mrs. | Levine Decl., ¶ 17, Ex. W (Bonnet Decl., ¶ 5). |

16

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| Brenneise demonstrated the g-tube feeding, the feeding equipment, and the supplies to Wangenheim nurse, Sara Bonnet, T.B.'s case manager Sheila Doctors, Jennie Wallace, the NPA behavioral supervisor, and T.B.'s behavioral aide.  A g-tube feeding daily schedule at Wangenheim was created. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 55, Ex. KK (transition activities chart [SDUSD 2169-71]). |
| 60.     On November 9, 2007, the nurses had a meeting in the parents' home regarding T.B.'s school health needs and the IHSP. | Levine Decl., ¶ 17, Ex. W (Bonnet Decl., ¶ 6). |
| **District Indicates Its Readiness to Have T.B. Begin School.** | |
| 61.     At the November 29, 2007 IEP meeting, Ms. Doctors indicated that the District believed it was ready to have T.B. begin school.   It offered to cease the in-home observations and move directly to Phase I of the transition plan.  However, Mrs. Brenneise stated at the meeting that "until the piece where Chris Vinceneux's involved occurs, I don't know that he starts school." | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 42, Ex. II (December 12, 2007 letter from S. Doctors to A. Brenneise [SDUSD 1236-38]).<br><br>Levine Decl., ¶ 17, Ex. AA (Howarth Decl., ¶ 7).<br><br>Levine Decl., ¶ 4, Ex. A (November 29, 2007 IEP meeting transcript [SDUSD 7033]),<br><br>Levine Decl., ¶ 17, Ex. EE (MarySue Glynn Suppl. Declaration in Support of District's Nov. 28, 2011 Motion for Summary Judgment ("Glynn Suppl. Decl." Ex. NN [SDUSD 8701]). |
| 62.     On December 12, 2007, Ms. Doctors notified Mrs. Brenneise that the District had completed all the activities required prior to T.B.'s starting school with the exception of those involving Mr. Vinceneux and again asked Mrs. Brenneise to start T.B. in school. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 42, Ex. II (December 12, 2007 letter from S. Doctors to A. Brenneise [SDUSD 1236-38]). |
| 63.     Plaintiffs claim the District failed to implement the Decision by failing to provide a nurse to assist T.B. with g-tube feedings at school because the nursing services offered by the District at the | SAC ¶ 48.<br><br>Levine Decl., ¶ 10, Ex. J (A. Brenneise Deposition, Vol. I, 184:5-185:4, 258:20-259:25). |

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DWK LB
607313v1

| | |
|---|---|
| November 2007 IEP meeting were not consistent with the ALJ's order. | |
| 64.    However, the District did implement the ALJ's Order, which modified the December 4, 2006 IEP, and was ready, willing and able to provide the nursing services called for in the Order, as set forth above. | AR 1986-87 (Order ¶¶ 1-6). Facts 66-74 incorporated by reference. |
| **The 2007-2008 IEP Offers** | |
| 65.    A November 29, 2007 IEP meeting was held to draft an IEP for the 2007-2008 school year.  That IEP included the same amount of nursing services as offered in the December 4, 2006 IEP, but provided that the nurse would personally supervise g-tube feeding the first week of school, also stating:. "Following training by the school nurse, BSA staff will replace the school nurse as staff designated to be present and personally assist [T.B.] with G-tube feeding. School nurses will supervise BSAs, as well as train and supervise SEHT and SET to be designated back-up staff in case of BSA absence or emergency." The school nurse would also, of course, be involved in attending T.B.'s IEP meetings, monitoring his medical supplies, monitoring his progress on his goals, and communicating with his doctors, his mother, and the IEP team. | AR 5139. Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 36). Levine Decl., ¶ 17, Ex. EE (Glynn Suppl. Decl., Ex. NN (November 29, 2007 IEP [SDUSD 877, 803-870, 873]). Levine Decl., ¶ 17, Ex. BB (Vergara Decl., ¶ 9). Levine Decl., ¶ 17, Ex. CC (Linda Vergara's Supplemental Declaration in Support of District's Nov. 28, 2011 Motion for Summary Judgment, ¶¶3-6. Levine Decl., ¶ 17, Ex. Y (Jennifer Gorman's Supplemental Declaration in Support of District's Nov. 28, 2011 Motion for Summary Judgment, ¶¶ 3-6. |
| 66.    Phase I Daily Schedule of the new drafted transition plan stated "G-Tube feeding in Nurse's office with Nurse assisting and BSA present at all times he is in school."  This document was provided to Mrs. Brenneise by Ms. Doctors prior to the November 29, 2007 meeting. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 16, Ex. K (Phase I Daily Schedule [SDUSD 1144]). |

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

18

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| 67. At the November 29, 2007 IEP meeting there was some discussion about whether Mrs. Brenneise would provide T.B.'s morning feeding and about the timing of his transportation to school. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 45). <br><br> Levine Decl., ¶ 4, Ex. A (November 29, 2007 IEP meeting transcript [SDUSD 6977-79]). |
| 68. During the meeting, the District also discussed designating a special education health technician or special education technician to assist T.B. with his g-tube feedings at school. | Levine Decl. ¶ 4, Ex. A (November 29, 2007 meeting transcript [SDUSD 6982, 7001-7004]). |
| 69. Mrs. Brenneise did not raise any concerns at the November 29, 2007 IEP meeting about the nursing services offered or as to the identity of the person assisting T.B. with g-tube feeding. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 44). <br><br> Levine Decl., ¶ 17, Ex. BB (Vergara Decl., ¶ 9). <br><br> Levine Decl., ¶ 4, Ex. A (November 29, 2007 IEP meeting transcript [SDUSD 6885-7036]) |
| 70. On December 14, 2007, Mrs. Brenneise sent the District a letter stating that the November 29 IEP offer failed to provide a nurse to personally assist T.B. with his g-tube feedings. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 48). <br><br> Levine Decl., ¶ 17, Ex. DD (Glynn Decl., ¶ 57, Ex. JJ (December 14, 2007 letter from A. Brenneise to M. Glynn [SDUSD 1239]). |
| 71. The District convened a second IEP meeting on December 21, 2007 at which it increased the number of nursing hours offered to 12 per year in response to Mrs. Brenneise's concerns. The additional hours were to be used for ongoing training over the school year, where the nurse would "supervise designated personnel (BSA), monitor competencies, and provide consultation to designated personnel as needed." | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 46, 48, Ex. JJ (emails between S. Doctors and A. Brenneise indicating a nurse will be present at the December 21, 2007 IEP meeting [SDUSD 1241-43]). <br><br> Levine Decl., ¶ 17, Ex. EE (Glynn Suppl. Decl., ¶ 11, Ex OO (December 21, 2007 IEP [SDUSD 807, 809-11, 805, 871]. |
| 72. Nurse Linda Vergara attended the December 21, 2007 IEP meeting to answer any questions Mrs. Brenneise might have about the nursing services offered. Mrs. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 48). <br><br> Levine Decl., ¶ 5, Ex. B (December 21, 2007 IEP meeting transcript [SDUSD 7038-40]) |

19

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| Brenneise did not ask the nurse any questions about the offer. | Levine Decl., ¶ 17, Ex. BB (Vergara Decl., ¶ 10). |
| 73.     At the December 21, 2007 IEP meeting, Mrs. Brenneise refused to sign the IEP, and stated, "If you want to know my position on nursing, you can go back to our closing argument, and if you have questions about what's in there – in the closing briefs – you can put your questions in writing to my attorney." | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 49). Levine Decl., ¶ 5, Ex. B (December 21, 2007 IEP meeting transcript [SDUSD 7040]). |
| **The Parents Refused to Send T.B. to School** | |
| 74.     Throughout the IEP and collaboration meetings in late 2007 and early 2008, Mrs. Brenneise continued to express concerns about T.B. starting school. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 57). |
| 75.     At the November 29, 2007 IEP meeting, Mrs. Brenneise spoke at length regarding her concerns about Wangenheim being in Program Improvement status based on its test scores, and expressed her feelings that T.B. should not attend Wangenheim. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 39). Levine Decl., ¶ 10, Ex. J (A. Brenneise Deposition, Vol. I, 261:16-262:6, 263:15-20); ¶ 4, Ex. A (November 29, 2007 IEP meeting transcript, [SDUSD 7013-15, SDUSD 7024-29]. See also, Levine Decl., ¶ 9, Ex. I (C. Vincenuex Deposition, 115:5-12, 173:16-174:1) (Mr. Vincenuex testified that Mrs. Brenneise expressed "ambivalence" about T.B. returning to a District school). |
| 76.     On February 22, 2008, Ms. Glynn reiterated to Mrs. Brenneise that T.B. could start school immediately if she wanted to send him. | Levine Decl., ¶ 17, Ex. DD (Glynn Decl., ¶ 59, Ex. KK (February 22, 2008 letter from M. Glynn to A. Brenneise [PC&D 739]). |
| 77.     On Friday, February 29, 2008, the District convened one last collaboration meeting to see if it could talk Mrs. Brenneise into having T.B. start school. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶¶ 56-57, Ex. LL (agenda and transition plan activities chart [SDUSD 1355-58]). |

20

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| This meeting lasted three hours.  As of that date, transportation was set to begin on March 3, 2008. | |
| 78.     However, Mrs. Brenneise continued to express concerns about T.B. starting school and said that she would not send T.B. to school. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 57).<br><br>Levine Decl., ¶ 17, Ex. AA (Howarth Decl., ¶ 19). |
| 79.     In a letter dated February 29, 2008 Mrs. Brenneise notified the District that she was withdrawing T.B. from the District because the family was moving to Minnetonka, Minnesota. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶ 58, Ex. MM (February 29, 2008 Letter from AB to S. Doctors [SDUSD 2166]).<br><br>Levine Decl., ¶ 17, Ex. DD (Glynn Decl., ¶ 60, Ex. LL (February 29, 2008 letter from A. Brenneise to M. Glynn [SDUSD 2165]). |
| 80.     On March 7, 2008, T.B. disenrolled from the District. | Levine Decl., ¶ 6, Ex. D (Response of A. Brenneise to District's Request for Admissions – Set One, No. 70; ¶ 7, Ex. F (Response of R. Brenneise to District's Request for Admissions – Set One, No. 69); ¶ 8, Ex. H (Response of T.B. to District's Request for Admissions – Set One, No. 54). |
| 81.     Following the OAH Decision, the Brenneises never consented to or otherwise allowed T.B. to attend a District school. | Levine Decl., ¶ 17, Ex. FF (Doctors Decl., ¶¶ 57, 61).<br><br>Levine Decl., ¶ 6, Ex. D (Response of A. Brenneise to District's Request for Admissions – Set One, No. 56); ¶ 8, Ex. H (Response of T.B. to District's Request for Admissions – Set One, No. 46). |
| **Filings After OAH Decision** | |
| 82.     The Brenneises filed another due process complaint with OAH on November 6, 2007 regarding the 2007 ESY offer, and filed a California Department of Education compliance complaint on November 21, 2007 regarding the alleged failure to provide a credentialed teacher in the home. They asked OAH to review the ALJ's Decision and make "an identical finding of | Levine Decl., ¶ 14, Ex. O (Nov. 6, 2007 Request for Due Process [P&CD003533-44]; and Ex. P (Nov. 21, 2007 CDE compliance complaint [SDUSD 10165-10173]). |

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| a denial of FAPE" and award them compensatory education. | |
| 83.     Plaintiffs never filed on the 2007-08 offers. The District did file for due process on January 31, 2008 for a determination that its December 21, 2007 IEP offer was appropriate, but the Parents filed a motion to dismiss that complaint after T.B. moved out of state in March 2008. | Levine Decl., ¶ 15, Ex. Q (January 31, 2008 Request for Due Process [SDUSD 2137-40]; Ex. R (March 12, 2008 Motion to Dismiss [SDUSD 2060-72; Ex. S (March 18, 2008 OAH Order of Dismissal [SDUSD 2058-59].) <br><br> Levine Decl., ¶ 17, Ex. DD (Glynn Decl., ¶ 62, Ex. MM (March 11, 2008 letter from S. Wyner to S. Sutherland regarding dismissal of 2007-2008 school year due process cases [SDUSD 321-23]). <br><br> Levine Decl., ¶ 6, Ex. D (Response of A. Brenneise to District's Request for Admissions – Set One, Nos. 52-55); ¶ 7, Ex. F (Response of R. Brenneise to District's Request for Admissions – Set One, Nos. 51-54); ¶ 8, Ex. H (Response of T.B. to District's Request for Admissions – Set One, Nos. 42-45). |
| **Plaintiffs' Allegations** | |
| 84.       Plaintiffs allege in their Second Amended Complaint that "… the District failed and refused to comply with the OAH Decision, by, inter alia, … (2) with respect to Student's G-Tube feedings, failing and refusing to ensure the presence of a school nurse to personally assist with Student's G-Tube feeding.  As a result, Student was unable to obtain the same educational benefit as nonhandicapped students, was unable to attend public school without placing his health and safety as [sic] serious risk, unlike nonhandicapped persons who are able to attend public school without putting their health and safety at similar risk, and was unable to attend public school safely and be educated in the least | SAC, ¶48. |

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| restrictive environment (i.e. a general education classroom in a public school) in the same manner as nonhandicapped children.  The District thus failed to provide Student with a free appropriate public education that was designed to meet his individual needs as adequately as the needs of nonhandicapped persons are met, in violation of Section 504, 34 C.F.R. § 104.4, § 104.33(b)(1), and § 104.34(a); and, the ADA." | |
| 85.    They allege that "[a]s a result of the District's failure and refusal to comply with the OAH Decision, Student was … excluded from attending public school due to the District's failure to ensure that Student's physical healthcare needs were met, causing Student to suffer injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age, and emotional distress." | SAC, ¶50. |
| 86.    Further, they allege that "[a]s a result of the District's violation of Student's rights under Section 504 and the ADA, Parents suffered financial and other damages, including, but not limited to costs that Parents were forced to incur to educate Student in his home, lost wages for the time spent educating Student in his home rather than pursuing gainful employment, lost educational opportunities for Student's mother and consequent diminution in her earning capacity, lost wages and costs incurred in connection with relocating | SAC, ¶51. |

23

DWK LB
607313v1

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

| | |
|---|---|
| Student and his family to Minnetonka, Minnesota, and emotional distress. | |
| 87.     Plaintiffs allege in their Second Amended Complaint that they seek damages for, inter alia, lost wages for time spent educating T.B. in the home rather than pursuing gainful employment, and lost educational opportunities for Allison Brenneise and consequent diminution in her earning capacity.   This allegation pertains to Plaintiffs' claim that Allison Brenneise was damaged because she had to educate T.B. in the home. | SAC, ¶ 51.<br><br>Levine Decl., ¶ 17, Ex. T (Mrs. Brenneise's Response to District's First Set of Interrogatories, Nos. 9-10; Exs. U and V, (Mrs. Brenneise's Amended and Second Amended Responses to District's First Set of Interrogatories, No. 9). |
| 88.    In their request for due process regarding the 2006-2007 IEP offers, Plaintiffs claimed the District denied T.B. a FAPE because it failed to provide him with a credentialed teacher, thereby forcing his mother to act as his teacher and case manager. They therefore sought a salary to compensate her for her services. | AR 132-34, 136. |
| 89.    In their prehearing conference statement, Plaintiffs requested that Mrs. Brenneise be compensated for the teaching services she provided to T.B. pursuant to the "Stay Put IEP", from August 2006 to the issuance of OAH's decision. In her decision following the hearing, the ALJ considered and denied the request, concluding that it was supported by neither the law nor the facts of the case. | AR 6246 (Prehearing Conference Statement).<br><br>TR 147:5-17, 157:15-162:3.<br><br>AR 1985-1986 (LC ¶¶ 64, 65). |
| 90.    In their Second Amended Complaint, Plaintiffs also allege that the parents suffered lost wages and costs incurred in connection with relocating to Minnetonka, Minnesota.   This allegation pertains to Plaintiffs' claim that they were forced to | SAC, ¶ 51.<br><br>Levine Decl., ¶ 17, Ex. T (Mrs. Brenneise's Response to District's First Set of Interrogatories, Nos. 9-10; Exs. U and V, (Mrs. Brenneise's Amended and Second Responses to District's First Set of Interrogatories, |

24

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**

| | |
|---|---|
| relocate to obtain an appropriate education for T.B.. | No. 9). |
| 91.     Plaintiff Allison Brenneise claims to have suffered emotional distress arising from the denial of an appropriate education to T.B.  She claims that she: "has suffered tension and stress as a result of having to witness T.B. being excluded from school by the District and thus being unable to obtain the various benefits school provides such as: social interactions and the opportunity to develop friendships with other children; educational benefit from receiving instruction from credentialed teachers; extra-curricular activities and opportunities to develop and explore potential interests, etc. … She has suffered tension and stress as a result of the strain on her relationship with her husband, her family and her friends that having to spend so much time dealing with T.B.'s issues as a result of the District's failure and refusal to provide him with a FAPE has caused …." | Levine Decl., ¶ 17, Ex. V (Mrs. Brenneise's Second Amended Response to District's First Set of Interrogatories, Set One, No. 3). |

DATED: September 26, 2016          DANNIS WOLIVER KELLEY


By:   /s/ Amy R. Levine
AMY R. LEVINE
Attorneys for Defendant
SAN DIEGO UNIFIED SCHOOL
DISTRICT

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

25

**DISTRICT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**