AMY R. LEVINE, State Bar No. 160743
alevine@dwkesq.com
SARAH L. W. SUTHERLAND, State Bar No. 239889
ssutherland@dwkesq.com
MATTHEW J. TAMEL, State Bar No. 229378
mtamel@dwkesq.com
Dannis Woliver Kelley
275 Battery Street, Suite 1150
San Francisco, CA 94111
Telephone: (415) 543-4111
Facsimile: (415) 543-4384

Attorneys for Defendant
SAN DIEGO UNIFIED SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.B., ALLISON BRENNEISE, ROBERT BRENNEISE,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Cases No. 08-cv-0028 MMA (WMc)<br><br>**DISTRICT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (FIFTH CLAIM FOR RELIEF)**<br><br>Date:     November 7, 2016<br>Time:    2:30 p.m.<br>Dept:     Courtroom 3A<br>Judge:   Honorable Michael M. Anello<br><br>Trial:     February 14, 2017<br><br>Complaint Filed:  January 4, 2008 |

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFFS ARE DISINGENUOUS IN CLAIMING THIS CASE IS NOT ABOUT FAPE | 2 |
| III. | THE RELIEF PLAINTIFFS SEEK IS (OR WAS) OTHERWISE AVAILABLE UNDER THE IDEA | 3 |
| IV. | EXHAUSTION WAS NOT FUTILE FOR LACK OF JURISDICTION | 5 |
|   | A. The Ninth Circuit Directed Consideration of Exhaustion Under *Payne* | 5 |
|   | B. *Wyner* and *Porter* Are Inapplicable | 6 |
|   | C. OAH Has Jurisdiction to Hear Disputes Regarding Compliance With Previous Orders Involving a Denial of FAPE | 7 |
| V. | EXHAUSTION IS REQUIRED FOR THE SUBSEQUENT IEPS | 8 |
|   | A. The IDEA Contemplates New Filings for New Years | 9 |
|   | B. Plaintiffs' "Disputed" Facts Highlight the Need for Exhaustion | 11 |
| VI. | THERE ARE NO GENUINE ISSUES OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT | 12 |
| VII. | ALLISON AND ROBERT BRENNEISE FAIL TO STATE A CLAIM FOR DISABILITY DISCRIMINATION | 14 |
| VIII. | CONCLUSION | 16 |

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albino v. Baca*,
    747 F.3d 1162 (9th Cir. 2014) .................................................................... 4, 12

*Antioch Unif. Sch. Dist.*,
    OAH Case No. 201606398 (2016) .................................................................. 7

*Barker v. Riverside County Office of Education*,
    584 F.3d 821 (9th Cir. 2009) ......................................................................... 15

*Beaver v. Tarsadia Hotels*,
    315 F.R.D. 346 (S.D.Cal. 2016) .................................................................... 13

*Blanchard v. Morton Sch. Dist.*,
    509 F.3d 934 (9th Cir.2007) .......................................................................... 14

*Blanchard v. Morton School District*,
    509 F.3d 934 (9th Cir. 2007) ......................................................................... 13

*Chadam v. Palo Alto Unif. Sch. Dist.*,
    2014 WL 325323 (N.D.Cal. 2014) ................................................................ 14

*D.K. ex rel. G.M. v. Solano Cnty. Office of Educ.*,
    667 F.Supp.2d 1184 (E.D.Cal.2009) ............................................................. 14

*D.M. v. Seattle Sch. Dist.*,
    170 F.Supp.3d 1328 (W.D. Wash., 2016) ....................................................... 9

*Doe v. Arizona*,
    111 F.3d 678 (9th Cir.1997) .......................................................................... 13

*Dreher v. Amphitheater Unif. Sch. Dist.*,
    22 F.3d 228 (9th Cir. 1994) ............................................................................. 9

*Duvall v. Co. of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001) ....................................................................... 12

*Hayden C. v. W. Placer Unif. Sch. Dist.*,
    2009 WL 1325945 (E.D.Cal. 2009) ................................................................ 7

*Kennedy v. Allied Mut. Ins. Co.*,
    952 F. 2d 262 (9th Cir. 1991) .......................................................................... 3

*Payne v. Peninsula School District*,
    653 F.3d 863 (9th Cir. 2011) ........................................................................... 3

*Pedraza v. Alameda Unif. Sch. Dist.*,
    2007 WL 949603 (N.D.Cal. 2007) .................................................................. 6

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

*Porter v. Bd. of Trustees of Manhattan Beach Unif. Sch. Dist.*,
   307 F.3d 1064 (9th Cir. 2002) .................................................................. 5

*R.K. v. Hayward Unif. Sch. Dist.*,
   2007 U.S. Dist. LEXIS 72950 (N.D.Cal.2007) ........................................ 7

*S.L. v. Upland Unif. Sch. Dist.*,
   747 F.3d 1155 (9th Cir. 2014) .................................................................. 7

*T.B. v. San Diego Unified School Dist.*,
   806 F.3d 451 (9th Cir. 2015) .............................................. 1, 2, 5, 6, 10, 11, 12, 15

*T.G. v. Baldwin Park Unif. Sch. Dist.*,
   443 Fed.Appx. 273 (9th Cir. 2011) .......................................................... 8

*Winkelman v. Parma City Sch. Dist.*,
   50 U.S. 516 (2007) ................................................................................. 14

*Wyner v. Manhattan Beach Unif. Sch. Dist.*,
   223 F.3d 1026 (9th Cir. 2000) ................................................................. 5

**Statutes**

20 U.S.C. § 1400(c)(1) ................................................................................. 14

20 U.S.C. § 1415(l) ....................................................................................... 3

20 U.S.C. §1415(o) ................................................................................. 8, 10

Educ. Code §56501(a) ............................................................................ 6, 10

**Rules**

Fed. Rules Civ. Pro. 56(a) ........................................................................... 13

## I. INTRODUCTION

Plaintiffs admit that the adequacy of the IEP offers for the 2007-08 school year on which they base their Fifth Claim were never exhausted, but claim that exhaustion wasn't required or was excused. Plaintiffs are wrong. Plaintiffs cannot through "artful pleading" and reconstructionist history avoid that they seek relief for educational injuries based on their disagreement about whether the new IEPs were appropriately designed to afford T.B. an educational benefit – topics that are most definitely subject to the IDEA's administrative hearing process. Accordingly, for this and the other reasons set forth in the District's moving papers, summary judgment should be granted.

## II. PLAINTIFFS ARE DISINGENUOUS IN CLAIMING THIS CASE IS NOT ABOUT FAPE

Plaintiffs claim first that exhaustion was not required because they are "not seeking 'to enforce rights that arise as [a] result of a denial' of FAPE." (Opp., at 12). This is a remarkable assertion, given that their SAC explicitly pleads that T.B. was denied a FAPE in the least restrictive environment, and cites to the Section 504 regulation requiring the provision of a FAPE in school. In addition, their discovery responses confirm that this claim is about a denial of FAPE, and Plaintiffs have repeatedly acknowledged that fact, including before the Ninth Circuit. Doc. 298-3, Ex. D, Request for Admission No. 24; Ex. F, Request for Admission No. 23; Ex. H, Request for Admission No. 23; and Ex. U, Interrogatory No. 9 (Exhibits Filed Under Seal).

Furthermore, the Ninth Circuit reversed the previous grant of summary judgment on the Fifth Claim and remanded on the assumption that Plaintiffs were alleging a denial of FAPE. *T.B. v. San Diego Unified School Dist.*, 806 F.3d 451 (9th Cir. 2015), at 468 "[t]he Brenneises allege that the school district denied T.B. a *free appropriate public education in the 'least restrictive environment'"*, *Id*. ("The service or program that T.B. claims he was prevented from receiving is *a safe public education*, not simply g-tube feedings from a nurse, SEHT, or SET"), *Id*. ("state *standards for* a *free appropriate public education* 'not inconsistent with federal standards *are ... enforceable in federal court*'"), at 471 ("the Brenneises alleged that the school district failed to comply with the

ALJ's decision and 'knew that it was substantially likely that [T.B.] would not [be] able to safely attend public school or *be able to obtain educational benefit* from his educational program'") (emphasis added).  Indeed, Plaintiffs' entire claim revolves around the appropriateness of the 2007-08 IEP offers, and whether they comply with a regulation governing the pro-vision of specialized physical health care services to students eligible under the IDEA.

Plaintiffs' assertion that they are "seeking to enforce the District's obligation to comply with the OAH Decision, irrespective of whether the 2007 IEPs offered T.B. a FAPE," is not only disingenuous, it makes no sense.  They do not genuinely dispute that the ALJ's orders were complied with.  The order required the modification of the December 4, 2006 IEP to provide that "G-Tube feeding will be scheduled to occur daily in the nurse's office.  A school nurse will be present and will personally assist the student with the student's G-Tube feeding." SSF, ¶28.  This modification was made, and the District was ready, willing and able to have T.B. attend school under this modified IEP, which would have continued to govern his program as stay put unless and until the parties agreed to a different IEP.  SSF, ¶30.  There can be no doubt that this accommodation afforded him the opportunity to safely attend public school, regardless of what the subsequent IEP offered.

Thus, the only way to understand Plaintiffs' fixation on the 2007 offers is as a challenge to their *appropriateness* under the IDEA (and Section 504).  Indeed, Plaintiffs make clear that their claim rests on whether the new IEPs offered an appropriate person, with appropriate training, to provide T.B.'s g-tube feeding needs.  This challenge falls soundly within the IDEA and needed to be exhausted.

### III. THE RELIEF PLAINTIFFS SEEK IS (OR WAS) OTHERWISE AVAILABLE UNDER THE IDEA

Plaintiffs also claim that exhaustion was not required because the relief they seek is not relief otherwise available under the IDEA.  Plaintiffs argue that because this litigation has gone on for so long, they no longer seek remedies available under the IDEA, and so this case should not be dismissed for failure to exhaust administrative

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

DWK LB 607822v1

2

DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
(FIFTH CLAIM FOR RELIEF)                    Case No. 08-cv-0028 MMA

remedies.  However, the question is not whether Plaintiffs can currently file a viable administrative complaint with OAH, but whether they could and should have done so before filing suit in January 2008.  There is no case law that says that Plaintiffs were not required to exhaust because years later, after the statute of limitations has run, they would be unable to get any appropriate relief.

Clearly, at various points along the way, Plaintiffs have sought relief that they concede was available under the IDEA, including reimbursement for educational expenses and compensatory education.   Since they now propose to amend their complaint to drop these requests, they argue they do not fall within the exhaustion requirement.  But Plaintiffs should not be rewarded for their delay.  It would be inequitable for the Court to allow Plaintiffs to use their belated attempts to change legal theories or damages claims to avoid dismissal when the District has been forced to defend this non-exhausted claim for eight years.

Moreover, Plaintiffs are locked into the discovery responses provided years ago as to the basis for the damages they seek. *Kennedy v. Allied Mut. Ins. Co.*, 952 F. 2d 262, 266 (9th Cir. 1991) (party cannot create a genuine issue of material fact by contradicting previous testimony). *Payne v. Peninsula School District*, 653 F.3d 863 (9th Cir. 2011) recognized that while the pleadings are important in determining what relief is being sought and under what theory, the actual facts in the case may show otherwise.  See *Payne*, at 870, 882 ("Because § 1415(l) focuses on the "relief" sought in an action, it is conceivable that a district court, in entertaining a motion to dismiss, might not *initially* conclude that exhaustion is required for certain claims, but might recognize subsequently that, in fact, the remedies being sought by a plaintiff could have been provided by the IDEA.  In such a case, we think the defendants should be permitted to provide evidence showing that the relief being sought by that plaintiff was, in fact, available under the IDEA").[1]

---

[1] The Ninth Circuit noted that it will be rare when the facts to support an exhaustion defense are evident on the face of the complaint.  It discussed the process for resolving an exhaustion defense, including under the IDEA: "Exhaustion should be decided, if

Even if the Court focuses on the relief Plaintiffs now claim to seek, exhaustion is still required. *Payne* held that a damages claim that either derives from the denial of FAPE, or seeks money damages in lieu of relief available under the IDEA, must be exhausted. *Payne*, at 875, 877. Plaintiffs do not dispute that they allege damages for T.B.'s "educational injury," "hedonic injury," and other emotional distress for being excluded from school and deprived the opportunity to participate in school activities and be around peers. SSF, ¶85. All these damages are the functional equivalent of relief available under the IDEA, and stem directly from the "educational injury" to T.B.

The same is true for the Parents' damages, all of which derive from the alleged educational injury to T.B. Plaintiffs do not argue otherwise. See, SSF ¶¶86, 91. For example, Plaintiffs do not dispute that their request for lost wages and relocation costs was because they moved to Minnesota to obtain an appropriate education for T.B., and that Allison Brenneise's emotional distress damages arise from "having to witness T.B. being excluded from school … and thus being unable to obtain the various benefits school provides" and because of "having to spend so much time dealing with T.B.'s issues as a result of the District's failure and refusal to be provide him with a FAPE …." SSF, ¶¶89-90. *Payne* made clear that if a plaintiff's emotional distress "stems from [his] concern that [the student] was not receiving an adequate education, then exhaustion is required." *Payne*, at 883. This is exactly what Plaintiffs are claiming here, and they have yet to "[lay] out a plausible claim for damages unrelated to the deprivation of a FAPE" as necessary to avoid exhaustion. *Id.*, at 877.

---

feasible, before reaching the merits of a [plaintiff's] claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the merits of the suit. … A summary judgment motion made by either party may be, but need not be, directed solely to the issue of exhaustion. If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. … We reiterate that, if feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1169, 1170–71 (9th Cir. 2014).

4

DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
(FIFTH CLAIM FOR RELIEF)                        Case No. 08-cv-0028 MMA

## IV. EXHAUSTION WAS NOT FUTILE FOR LACK OF JURISDICTION

### A. The Ninth Circuit Directed Consideration of Exhaustion Under *Payne*

Plaintiffs contend that *Payne* does not apply because this case is instead governed by *Wyner v. Manhattan Beach Unif. Sch. Dist.*, 223 F.3d 1026 (9th Cir. 2000) and *Porter v. Bd. of Trustees of Manhattan Beach Unif. Sch. Dist.*, 307 F.3d 1064 (9th Cir. 2002). However, while *Payne* may not have explicitly overruled *Wyner* and *Porter*, it is significant that the Ninth Circuit explicitly instructed this Court to determine whether exhaustion was required under *Payne,* and failed to mention either *Wyner* or *Porter*. *T.B.*, 486, fn. 8. Thus, there is no merit to Plaintiffs' argument that *Payne* does not control here.

### B. *Wyner* and *Porter* Are Inapplicable

Plaintiffs argue that exhaustion was futile because OAH lacked jurisdiction to enforce its own orders, citing *Wyner* and *Porter*. However, even if those cases are still good authority, they do not excuse Plaintiffs' failure to exhaust.

In *Wyner,* the Ninth Circuit held that the plaintiffs in that case, Steven Wyner and his family, were not entitled to a due process hearing on whether the district had violated an ALJ's order to comply with a settlement agreement that required the district to provide "five hours per week of ADD/VV". Plaintiffs claimed this order was breached because the district only provided "ADD/VV tutoring services for forty-four minutes per day, five days a week." *Wyner*, at 1027-28. The Ninth Circuit found no error in the ALJ's conclusion that it lacked jurisdiction over such a claim.

In *Porter,* the Ninth Circuit held that a parent who sought to enforce a due process order was not required to further exhaust her administrative remedies by filing a compliance complaint with CDE. What the plaintiffs sought to enforce was a remedial order "to provide [the student] with compensatory education during the 1999-2000 school year". *Porter*, at 1065-66. Plaintiffs contended that "During the course of the 1999-2000 school year, MBUSD officials held a series of meetings with the Porters, but MBUSD never implemented a full compensatory education program.

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

Instead, the Porters hired a private tutor . . . at their own expense." *Porter*, at 1068.

Here, while Plaintiffs' Fifth Claim is styled as a failure to implement the OAH Decision, unlike in *Wyner* and *Porter* there is no dispute that the District complied with the terms of the remedial order. Instead, what is at issue is whether the District properly took into account the logic of the OAH Decision in crafting a new IEP offer, or whether other factors explain the District's conduct. *T.B.*, at 471. Thus, as stated in the SAC, the issue is whether the 2007-08 IEPs were reasonably calculated to provide T.B. with a FAPE, an issue squarely within OAH's jurisdiction. Educ. Code §56501(a).

### C. OAH Has Jurisdiction to Hear Disputes Regarding Compliance With Previous Orders Involving a Denial of FAPE

Stated differently, Plaintiff cannot enforce the OAH Decision (as opposed to the remedial orders) because there is no cause of action to enforce OAH's statement that "nothing in this Decision is intended to prevent the District from proposing, in a future IEP, that another classification of employee assist Student with the feedings, provided that the assistant meets the requirements of Education Code section 49423.5," or that "nothing in this Decision is intended to limit the classification of employee that may be designated…." SSF ¶29, citing OAH, LC ¶62. This language was intended to broaden the District's discretion in future IEPs, not limit it, and it would be absurd to find the District could be liable for non-compliance with this language in a future IEP, regardless of circumstances, without the need for due process regarding why a particular classification was chosen and whether the employee would be qualified.

The distinction between a plaintiff simply seeking to enforce an order and one seeking to adjudicate the meaning and significance of an order or decision was made in *Pedraza v. Alameda Unif. Sch. Dist.,* 2007 WL 949603 (N.D.Cal. 2007). In *Pedraza*, the parties reached a settlement which the parents claimed was breached and which they attempted to litigate through due process, alleging the breach was a denial of FAPE. OAH refused to hear the case for lack of jurisdiction, but the court found that since the parents alleged a denial of FAPE, predicated on breach of the settlement,

the claim arose under the IDEA (and should have been heard by OAH). *Pedraza*, at *4-7.

OAH has since followed *Pedraza* on numerous occasions to find jurisdiction over claims that a district either failed to comply with a settlement agreement, or with a previous OAH order, when those claims require an adjudication of FAPE. *See, e.g.*, *Oakland Unif. Sch. Dist.*, 112 LRP 57713 (Cal. SEA 2012), at p. 46 ("OAH has jurisdiction to adjudicate a claim alleging a denial of FAPE as a result of violation of a settlement agreement, and by analogy, of an order for stay put"), Levine Decl., Ex. D; *Los Angeles Unif. Sch. Dist.*, 115 LRP 39059 (Cal. SEA 2015), at p. 23 (student could litigate whether district wrongfully changed compensatory services ordered in a previous hearing decision from individual to group without parental consent; "Student has not brought an enforcement case but rather raises the issue of whether the District's failure to comply with the order in the September 2013 Decision resulted in a denial of a FAPE. Accordingly, OAH has jurisdiction to adjudicate Student's claim regarding the compensatory speech and language services"), Levine Decl., Ex. E; see also, *Antioch Unif. Sch. Dist.* (2016) OAH Case No. 201606398 , Levine Decl., Exs. A- C.

A number of district courts have also concluded that OAH has jurisdiction over such claims. *See*, *e.g., Hayden C. v. W. Placer Unif. Sch. Dist.*, 2009 WL 1325945, at *4 (E.D.Cal. 2009) ("if enforcement of a settlement agreement requires a determination of whether the alleged breach relates to a student's receipt of a FAPE, administrative exhaustion is still required"), citing *R.K. v. Hayward Unif. Sch. Dist.*, 2007 U.S. Dist. LEXIS 72950 (N.D.Cal.2007) at * 7; *see also*, *S.L. v. Upland Unif. Sch. Dist.,* 747 F.3d 1155, 1158-59 and, fn. 2 (9th Cir. 2014) (noting that OAH found the "district denied S.L. a FAPE for the 2007/2008 school year when it failed to comply with a previous settlement agreement's assessment requirements").

Thus, there is no proof that OAH would not have entertained Plaintiffs' case. Indeed, Plaintiffs themselves invoked OAH's jurisdiction to adjudicate whether an IEP proposed for the 2007 ESY appropriately implemented the OAH Decision. In that

November 6, 2007 filing, Plaintiffs alleged that the May 2, 2007 IEP was "substantially similar" to the 2006-07 IEPs that were the subject of the Decision, and deficient for the same reasons OAH had found the earlier IEPs lacking. They asked OAH to review the ALJ's Decision and make "an identical finding of a denial of FAPE" and award them compensatory education. SSF, ¶82. Thus, Plaintiffs clearly could have filed for due process on the 2007-08 IEPs, but chose not to. Accordingly, their case should now be dismissed for failure to exhaust.

## V. EXHAUSTION IS REQUIRED FOR THE SUBSEQUENT IEPS

Plaintiffs also contend that exhaustion would be futile because they already participated in an OAH hearing on a similar issue. But, as the District explained in its moving papers, the appropriateness of a different IEP, for a different school year, is not the same issue, and thus this does not excuse their failure to exhaust.

### A. The IDEA Contemplates New Filings for New Years

The IDEA allows parents to file serial due process complaints on separate issues. 20 U.S.C. §1415(o) ("Nothing in this section shall be construed to preclude a parent from filing a separate due process complaint on an issue separate from a due process complaint already filed"). Thus, it is common for special education practitioners to plead each IEP or each IEP year separately, and for OAH to resolve those issues separately. Levine Decl., ¶ 4. In fact, OAH refuses to apply res judicata or collateral estoppel to preclude relitigation of the same issue in subsequent years. Id., ¶ 8, Ex. F. This also appears to be the rule of the Ninth Circuit. *T.G. v. Baldwin Park Unif. Sch. Dist.*, 443 Fed.Appx. 273, 276 (9th Cir. 2011) (refusing to apply res judicata or collateral estoppel to litigation of appropriate placement for 2009-10 school year when only the district's offer for the 2008–2009 school year was before the first ALJ. "That the ALJ's remedy touched on the 2009–2010 school year does not change the fact that the issue of T.G.'s placement for the 2009–2010 school year was never "actually litigated." Each school year is a separate issue under the IDEA; whatever is deemed appropriate for one year cannot preclude dispute about the next"). This is true

regardless of how similar the claims may be.

Plaintiffs disregard the multiple Circuit Court opinions the District cites holding that exhaustion is required for each school year, including *Dreher v. Amphitheater Unif. Sch. Dist.*, 22 F.3d 228 (9th Cir. 1994), Ninth Circuit authority.  Instead, they rely on *D.M. v. Seattle Sch. Dist.*, 170 F.Supp.3d 1328 (W.D. Wash., 2016), a district court decision that does not demonstrate that exhaustion would have been futile in this case. In *D.M.*, the parents partially prevailed in an administrative hearing regarding a 2014-15 IEP offer where they sought *prospective* relief in the form of placement and services at a preferred private school. *D.M.*, at 1331.  In their appeal, they also sought determination of the appropriateness of the 2015-16 IEP offer.  The court noted the parents in the underlying matter "did … raise issues and seek prospective relief clearly related to … future events." *D.M.*, at 1336.  In denying the district's request for dismissal based on the failure to exhaust, it held that to do so "would not be consistent with the general purpose of exhaustion".  Specifically:

> "The administrative hearing conducted already provided for the exercise of discretion and expertise at the state and local level, the full exploration of technical education issues, the development of a record, and the promotion of judicial efficiency by providing the state and local agencies the first opportunity to correct deficiencies in [student's] educational program."

*D.M.*, at 1339.

Here, the District did not similarly have an opportunity at the administrative hearing level to avail itself of local discretion and expertise on the question of FAPE related to the 2007-08 IEPs.  *D.M.* is distinguishable because the District never had the opportunity to litigate the appropriateness of the 2007-08 IEP offers, or to address Plaintiffs' contention that those offers were defective *because of* the prior OAH ruling.

Here in particular there is little reason to excuse exhaustion because the OAH Decision itself rebuts the notion that litigation of a future IEP would be foreclosed. That Decision, on its face, was limited to the particular facts presented at that hearing, at that particular time, and specifically permitted the District to change the IEP staffing

in subsequent IEPs and make a new showing of appropriateness. SSF, ¶29.

Moreover, the IEPs for 2007-08 were not in fact identical to the ones previously litigated. For instance, there was explicit discussion at the November/December 2007 IEP meetings about T.B.'s g-tube feeding schedule, and whether his needs should be provided by a SEHT, SET, or BSA. SSF, ¶¶65-69, 71-72. In addition, unlike the prior year's IEPs, the new IEPs provided for the nurse to personally administer g-tube feedings during the first week of school, which was part of the BSA's training, and the December 2007 IEP provided additional nursing hours. SSF, ¶¶65, 71. Moreover, by the time these IEPs were drafted, an enormous amount of effort had already gone into training all staff, including the nurses and the BSAs, regarding T.B.'s particular needs in preparation for his anticipated return to school. SSF, ¶¶36-37, 39-41, 46-54, 59-60. A new hearing would have involved testimony regarding how these IEPs were reasonably calculated to provide T.B. with a FAPE, why the offers contained the information they did, and why Parents rejected them. The ALJ's findings in such a proceeding, and the record that would have been created, would have undoubtedly made this Court's task easier. The results for 2007-08 were not guaranteed and requiring Plaintiffs to exhaust their administrative remedies would not "add an additional step of administrative exhaustion not contemplated by the IDEA" (*Porter*, at 1071); instead, it would be entirely consistent with the IDEA, including § 1415(o).

Indeed, in remanding the case, the Ninth Circuit apparently presumed that the situations were not identical. It noted that "[t]he g-tube issue was pursued through a due process hearing for the 2006-07 school year …, but there was no due process hearing for the 2007-08 school year, as the family moved to Minnesota. Claim V presents a claim for the 2007-08 school year." *T.B.*, 486, fn 8. In considering whether there was a triable issue of fact on the question of deliberate indifference, the Court found that "[a]fter the ALJ handed down her decision, the district knew how a judge *might* interpret California's rules on g-tube feeding and what the district *would likely have to do* to comply with the rules. *T.B.*, at 471 (emphasis added). It listed several

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

possibilities about how a trier of fact might see the case, including that the District "*could have provided* sufficient evidence under its 2007-08 school year IEP showing that its proposed supervision and training of a BSA would meet the requirements for providing g-tube feedings." *Id.*, at 472 (emphasis added).  Nothing in the Ninth Circuit's comments suggest that the outcome of a future hearing regarding the 2007-08 IEPs was a foregone conclusion.

### B.    Plaintiffs' "Disputed" Facts Highlight the Need for Exhaustion

Plaintiffs do not raise any material factual disputes regarding exhaustion, but do include a "Statement of Genuine Issues of Material Facts" (Doc. 312) in which they list three "facts" regarding the District's failure to designate and train staff to provide for T.B.'s g-tube feedings for the 2007-08 school year.  Such purported factual disputes cry out for administrative exhaustion, as they demonstrate that the facts underpinning the 2007-08 IEPs are not identical to those litigated for 2006-07, nor would the factual showing for the different IEPs be the same.  Plaintiffs' disputes regarding what happened in those IEP meetings, what the District should have done, and how it impacted the family, all militate in favor of requiring exhaustion here.  Response to SSF, ¶ 54, 59, 60, 62, 64-67, 70-72, 75-78, 80.[2]  Further, what happened in those meetings is not "just evidence" of how the District failed to implement the previous year's OAH Decision, as Plaintiffs claim. (Opp., at 9-10).  Instead, the IEP documents and statements made at the meetings are the District's offer, and their purpose and meaning is the very reason for due process proceedings.

## VI.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT

Plaintiffs do not submit any actual facts in dispute, but argue that the District's

---

[2] Plaintiffs' response to the District's Separate Statement of Undisputed facts is confusing and cumbersome.  The response incorporates by reference responses to the Separate Statement of Undisputed Facts the District filed in 2011 with its original motion for summary judgment.  As a result, it incorporates previous objections, references to causes of action or issues that have since been dismissed or abandoned, and previous "facts" Plaintiffs proffered which they are not relying on here.

11

motion is precluded by the "law of the case" because the Ninth Circuit found triable issues of fact on the Fifth Claim. This argument reflects a fundamental misunderstanding of the scope of the remand and of the summary judgment process.

First, it is clear that nothing in the Ninth Circuit's decision precludes this motion. To the contrary, the Ninth Circuit remanded the Fifth Claim for "further proceedings" and explicitly "[left] the exhaustion issue open on remand for the district court to consider in the first instance." *T.B.*, at 472, and 486, fn. 8. Further, the District Court's July 28, 2016 Scheduling Order "permits the parties to re-brief the issues that were raised in [Defendant's original motion for summary judgment] as they relate to Count V." (Doc. 290). And, as Plaintiffs note, under *Payne* as modified by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the exhaustion defense which was left open by the Court is to be raised by summary judgment. Thus, it was clearly contemplated within the Ninth Circuit's remand that the District would bring a further motion for summary judgment, as it has done.

That the Ninth Circuit found disputed issues of fact on the Fifth Claim is also no barrier. The Ninth Circuit only addressed whether the District Court properly granted summary judgment based on the lack of disputed facts regarding intent to discriminate, and reversed, holding that there were disputed facts regarding deliberate indifference. *T.B.*, at 466, 472. Whether deliberate indifference existed was an element of Plaintiffs' discrimination claim. *T.B.*, at 466, citing *Duvall v. Co. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

The District here does not relitigate whether it acted with deliberate indifference. Instead, it seeks a ruling on its affirmative defense that Plaintiffs were required but failed to exhaust their administrative remedies, as well as on Plaintiffs' contentions that exhaustion was excused.[3] This issue was raised in the District's prior motion for

---

[3] Plaintiffs bear the burden of proving that exhaustion was futile or inadequate. *Doe v. Arizona,* 111 F.3d 678, 681 (9th Cir.1997). Contrary to Plaintiffs' contention, the District does not "bear the burden of producing undisputed facts, which show that its BSAs were qualified to prove g-tub feedings in accordance with California law." (Opp., at 18). Even if these facts were relevant here, Plaintiffs would bear the burden

1  summary judgment, but was never ruled on because the Court disposed of the case on
2  other grounds.  (Doc. 209, Doc. 242).

3       A defendant may move for summary judgment on a claim *or* a defense.  Fed.
4  Rules Civ. Pro. 56(a).  Thus, it now moves for summary judgment on the grounds that
5  even if Plaintiffs could prove all the elements of their case, judgment must nonetheless
6  be granted in the District's favor because of its affirmative defense.  *Beaver v.*
7  *Tarsadia Hotels*, 315 F.R.D. 346, 349  (S.D.Cal 2016)  ("An affirmative defense … is
8  a defense that does not negate the elements of the plaintiff's claim, but instead
9  precludes liability even if all of the elements of the plaintiff's claim are proven").
10 Thus, the fact that there is an issue of fact regarding deliberate indifference in no way
11 hinders the District's ability to show the absence of a disputed fact regarding Plaintiffs'
12 failure to exhaust their administrative remedies.  Accordingly, this motion was
13 properly brought.

## VII.  ALLISON AND ROBERT BRENNEISE FAIL TO STATE A CLAIM FOR DISABILITY DISCRIMINATION

     Plaintiffs Allison and Robert Brenneise fail to make any showing they were specifically, separately and directly denied a benefit of a District program by reason of their own disability, and therefore their claims should be dismissed.

     Plaintiffs misquote and misrepresent the holding of *Blanchard v. Morton School District*, 509 F.3d 934, 937 (9th Cir. 2007).  *Blanchard* only acknowledged a parent's standing in a Section 504 or ADA claim "insofar as she is asserting and enforcing the rights of her son and incurring expenses for his benefit." *Blanchard*, at 938.  But, contrary to Plaintiffs' statement, *Blanchard* did "not decide whether damages are available for a parent's own emotional distress resulting from the enforcement of a child's educational rights …." *Id*.

     Subsequent courts have recognized the limitations *Blanchard* imposed.  In *Chadam v. Palo Alto Unif. Sch. Dist.*, 2014 WL 325323 (N.D.Cal. 2014), the suit was of proving discrimination and deliberate indifference.

13

DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111

over the district's disclosure of confidential information regarding the student's medical condition and the district's attempt to transfer the student. In considering the parents' standing, the court explained:

> PAUSD argues that only C.C. was allegedly denied benefits due to disability, and so the other Plaintiffs may not recover because they personally were not subject to a violation of any of the rights at issue. While parents may assert ADA and § 504 claims on behalf of their child, they may not assert claims based on their own injury arising from violations of their child's rights under those laws. See *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir.2007). C.C.'s parents are only proper plaintiffs "insofar as [they are] asserting and enforcing the rights of [their] son and incurring expenses for his benefit." Id. This does not include their own "severe past, present and future emotional distress," "humiliation," "embarrassment," disruption in family life," or other damages if they themselves were not denied benefits due to disability. See *D.K. ex rel. G.M. v. Solano Cnty. Office of Educ.*, 667 F.Supp.2d 1184, 1193–94 (E.D.Cal.2009). Plaintiffs James Chadam, Jennifer Chadam, and A.C. plead no additional facts or legal authority that would enable them to recover. Accordingly, their individual claims for relief must fail.

*Chadam*, at *7. The District cited several other cases in the education context, including cases decided after *Blanchard*, which similarly dismissed claims by parents to pursue their own damages which Plaintiffs failed to address in their opposition.

*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) is also of no help to Plaintiffs. Plaintiffs misquote *Winkelman* as addressing the parent's right to prevent discrimination against their child. (Opp. at 20). This language is nowhere in the decision. Instead, *Winkelman* was decided strictly under the statutory language of the IDEA.[4] *Winkelman* considered whether parents could proceed in pro per, on their own

---

[4] Plaintiffs' misquote *Winkelman* as holding that "a parent of a child with a disability has a particular and personal interest in preventing discrimination against the child." Instead, *Winkelman* stated: "It is not a novel proposition to say that parents have a recognized legal interest in the education and upbringing of their child. … There is no necessary bar or obstacle in the law, then, to finding an intention by Congress to grant parents a stake in the entitlements created by IDEA. Without question a parent of a child with a disability has a particular and personal interest in fulfilling "our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." [20 U.S.C.] § 1400(c)(1). We therefore find no reason to read into the plain language of the statute an implicit rejection of the notion that Congress would accord parents independent, enforceable rights concerning the education of their children. We instead interpret the statute's references to parents' rights to mean what they say: that IDEA includes provisions conveying rights to parents as well as to children." *Winkelman*, at 529.

14
DANNIS WOLIVER KELLEY
275 BATTERY STREET, SUITE 1150
SAN FRANCISCO, CA 94111
DWK LB 607822v1
DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
(FIFTH CLAIM FOR RELIEF)   Case No. 08-cv-0028 MMA

behalf, under the IDEA. The Court concluded that given the unique role parents play in the IDEA statutory scheme, parents could bring IDEA claims because of the independent enforce-able rights specifically afforded them under that law. It made no findings regarding parents' rights to independently assert claims for damages under any other law, including Section 504 or the ADA.

Plaintiffs also cite to *Barker v. Riverside County Office of Education*, 584 F.3d 821 (9th Cir. 2009), a retaliation case brought under Section 504 and the ADA. The District concedes that standing to bring a retaliation claim under Section 504 or the ADA may be broader than a discrimination claim, because a parent or other individual might advocate on behalf of a disabled individual and then be personally made to suffer some adverse action as a result. Plaintiff Allison Brenneise presented such a retaliation theory in her Seventh Claim for Relief, however, that claim was dismissed on summary judgment, and summary judgment was affirmed on appeal.

Plaintiffs Allison and Robert Brenneise still fail to meet the threshold showing that the District committed any adverse action as to them (a matter which has already been adjudicated in the Seventh Claim for Relief) or that they are entitled to anything more than recovery of expenses they incurred for T.B.'s benefit (*Blanchard*, at 938), relief they now claim not to want. Accordingly, they cannot state a claim under either Section 504 or the ADA, and their claims should be dismissed.

## VIII. CONCLUSION

For the foregoing reasons, summary judgment should be granted.

DATED: October 31, 2016         DANNIS WOLIVER KELLEY

By:  /s/*Amy R. Levine*
AMY R. LEVINE
SARAH L. W. SUTHERLAND
MATTHEW J. TAMEL
Attorneys for Defendant
SAN DIEGO UNIFIED SCHOOL DISTRICT