# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.B., et al.,<br><br>                         Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>                       Defendant. | Case No.: 08cv28-MMA (JMA)<br><br>**ORDER AFFIRMING IN PART TENTATIVE RULINGS;**<br><br>[Doc. No. 382]<br><br>**ADOPTING REPORT AND RECOMMENDATION OF SPECIAL MASTER;**<br><br>[Doc. No. 366]<br><br>**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND COSTS;**<br><br>[Doc. No. 340]<br><br>**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES (1/19/2017 – 12/29/2017)**<br><br>[Doc. No. 376] |

On February 9, 2018, the parties in this action appeared before the Court for a final hearing regarding the award of attorneys' fees and costs to Plaintiffs ("the Brenneises") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3). After considering the oral arguments of counsel, upon review of the entirety of the record and for the reasons set forth below, the Court **AFFIRMS IN PART** its previously issued tentative rulings, **ADOPTS** Special Master John H. L'Estrange, Jr.'s Report and Recommendation, and **GRANTS IN PART** and **DENIES IN PART** the Brenneises' supplemental motion for attorneys' fees and costs. In addition, the Court **GRANTS IN PART** and **DENIES IN PART** the Brenneises' motion for attorneys' fees incurred between January 19, 2017 and December 29, 2017. The Court **AWARDS** the Brenneises **$934,364.10** in attorneys' fees and costs.

## BACKGROUND[1]

The original focus of this lengthy litigation was whether Defendant San Diego Unified School District ("the District") complied with the IDEA by providing Plaintiff T.B. a free appropriate public education ("FAPE") for the 2006-2007 school year. The parties first litigated the dispute over the course of 27 days during the summer of 2007 in a due process hearing before the State of California's Office of Administrative Hearings ("OAH"), Special Education Division. On October 3, 2007, Administrative Law Judge ("ALJ) Susan Ruff issued a 75-page written decision ("OAH Decision"), concluding that the District had failed to provide T.B. with a FAPE for the 2006-2007 school year.

By the time the ALJ issued her decision, a new school year (2007-2008) had begun. The parties continued to discuss modifications to an Individualized Education Program ("IEP") that would comply with the OAH Decision, govern the new school year, and permit T.B. to attend school. Ultimately, they failed to reach mutually agreeable

---

[1] The Court sets forth an abridged background of this litigation. The parties are well-versed in both the underlying facts and procedural history, as is the reviewing court in the event of an appeal. *See* Doc. No. 291 ("This [Ninth Circuit] panel retains responsibility for further appeals that may arise in this matter.").

terms.[2]

In January 2008, both parties appealed the OAH Decision to this Court. *See* 20 U.S.C. § 1415(i)(2)(A) ("any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action . . . in a district court of the United States, without regard to the amount in controversy."). The Brenneises sought judicial review of those aspects of the OAH Decision upon which the District prevailed, as well as statutory attorneys' fees. *See* Doc. No. 1. The District separately sought review of the aspects of the OAH Decision that went in the Brenneises' favor. *See* Doc. No. 1, Case No. 08cv39. The Court consolidated the two appeals. *See* Doc. No. 22.

In June 2010, the Court issued an order finding that the ALJ correctly determined that the District denied T.B. a FAPE for the 2006-2007 school year. *See* Doc. No. 118. Thereafter, the Brenneises moved for an award of approximately $1.4 million in attorneys' fees and costs. *See* Doc. No. 159. In March 2012, the Court issued a ruling granting in part, and denying in substantial part, the request for fees. *See* Doc. Nos. 237, 238. The Court determined that the Brenneises are a prevailing party under the IDEA, and entitled to an award of attorneys' fees and costs. *See* Doc. No. 238 at 13. However, the Court applied a statutory bar on fees pursuant to 20 U.S.C. § 1415(i)(3)(D), and awarded the Brenneises a total of only $55,433.91 in attorneys' fees and costs. *See id.* at 33. In sum, the Court found that the Brenneises were not entitled to any fees or costs incurred after May 4, 2007, when they rejected a final pre-hearing settlement offer from the District. *See id.* at 24. The Brenneises appealed the Court's limited award of attorneys' fees, as well as other adverse rulings of the Court. *See* Doc. No. 252.

On July 31, 2015, the United States Court of Appeals for the Ninth Circuit vacated the Court's award of attorneys' fees and costs, and remanded the matter for further consideration. *See T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451 (9th Cir. 2015).

---

[2] Thereafter, the Brenneise family moved to Minnesota. *See* Doc. No. 159-3 ¶¶ 15-16. T.B. never attended school in San Diego again.

The Ninth Circuit concluded, *inter alia*, that the District's settlement offer was not more favorable from the perspective of the Brenneises, such that this Court should not have enforced the statutory bar on post-settlement offer fees and costs. *Id.* at 477. The circuit court also determined that the Court did not sufficiently explain its calculation of fees and costs. *Id.* at 485.

In December 2015, the Brenneises filed a motion in the Ninth Circuit seeking attorneys' fees related to their prosecution of the appeal. *See* Doc. No. 86, App. Case No. 12-56060. Thereafter, the parties filed a joint motion requesting that the Ninth Circuit refer the case to mediation. *See* App. Doc. No. 90. The circuit court granted the motion, and the parties participated in an unsuccessful mediation. *See* Doc. No. 276. The Ninth Circuit subsequently issued an order granting the Brenneises' motion for attorneys' fees, in part, concluding that the Brenneises are entitled to a fee award, but directing this Court to calculate the amount of the award. *See* Doc. No. 291.

On February 17, 2016, the District filed a petition for writ of certiorari with the Supreme Court. *See* App. Doc. No. 99. On April 18, 2016, the Supreme Court denied the petition for writ of certiorari. *See* App. Doc. No. 106. On May 16, 2016, the Court spread the Ninth Circuit's mandate and resumed jurisdiction over the action. *See* Doc. Nos. 285, 286.

In November 2016, the assigned magistrate judge held a mandatory settlement conference on the issue of attorneys' fees and costs, but the parties did not reach a settlement. *See* Doc. No. 330. On January 18, 2017, the Brenneises filed a supplemental motion for attorneys' fees and costs, which the District opposed. *See* Doc. Nos. 340, 344.

On March 17, 2017, the Court provided notice to the parties pursuant to Federal Rule of Civil Procedure 53(b)(1) of the forthcoming appointment of a Special Master in this case. *See* Doc. No. 353. The Court's Order provided as follows:

> Pursuant to Rule 54(d)(2)(D), the Court may appoint a Special Master to assist the Court in determining an award of attorneys' fees. Upon due consideration, the Court finds that the determination of reasonable hourly rates for the Brenneises' counsel and their staff, the reasonable hours expended at each

4

stage of this litigation, the lodestar calculation, and the resulting fee award, will be unusually complex and place an exceptional burden on the Court. Accordingly, appointment of a Special Master to accomplish these tasks in an effective and timely manner is appropriate.

*Id*. at 1-2.[3] On April 14, 2017, the Court appointed John H. L'Estrange, Jr. as a Special Master "to assist the Court in determining an award of attorneys' fees and non-taxable costs to the plaintiffs in this action under the IDEA." Doc. No. 360 at 1. The Court instructed the Special Master to make the following determinations:

a. A reasonable hourly rate for the following individuals for work performed on this case on behalf of the plaintiffs at each stage of this litigation: Steven Wyner, Marcy Tiffany, Dana Wilkins, Dona Wright, and D. Shawn Nicholson. In doing so, the Special Master must keep the following in mind:

i. The Court previously determined that San Diego is the relevant legal community. This ruling may not be revisited.

ii. The Court previously determined that the above-named individuals would be compensated at the following rates for any work performed before May 4, 2007, during the administrative phase of this litigation: Steven Wyner and Marcy Tiffany at $425 per hour; Dana Wilkins at $125 per hour; and Dona Wright at $95 per hour. The Special Master is authorized to revisit this ruling in light of the Ninth Circuit's conclusion that this Court should not have applied the statutory bar on post-settlement offer fees, and the resulting vacatur of the fee award.

iii. The Court previously declined to use current billing rates for past work performed. The Special Master is authorized to revisit this ruling, keeping in mind that no "bonus or multiplier" may be used to calculate the plaintiffs' fee award. 20 U.S.C. § 1415(i)(3)(C).

b. The number of compensable hours reasonably expended by the above-named individuals for work performed on this case on behalf of the plaintiffs at each stage of this litigation. In order to do so, the Special Master must make

---

[3] Citations to documents filed in the CM/ECF system refer to the pagination assigned by the system, unless otherwise noted.

the following determinations, and is authorized to revisit the Court's previous rulings as to any or all of these issues:

i. Whether any particular billing entries should be reduced or denied based on specific objections to those entries, including: sufficiency of the billing records, firm overhead, overstaffing and duplication, and travel.

ii. Whether any particular billing entries should be reduced or denied pursuant to 20 U.S.C. § 1415(i)(3)(D)(ii).

iii. Whether any particular billing entries should be reduced or denied based on the apportionment of time between successful and unsuccessful claims.

iv. Whether any particular billing entries should be reduced or denied for time spent on common aspects of the litigation, including tasks related to settlement, case management, client communications, and preparation of the administrative record.

c. Based on the reasonable hourly rates and the reasonable amount of hours expended during the course of this litigation, the lodestar for each of the above-named individuals, and then the sum of the individual lodestar amounts to determine the total fee award.

d. The amount of non-taxable costs properly awarded to the plaintiffs, keeping in mind the Ninth Circuit's previous admonition that "[o]n remand, the court should strive to explain" any "reductions more precisely." *T.B.*, 806 F.3d at 486. In doing so, the Special Master is authorized to revisit the Court's previous ruling on non-taxable costs in all respects.

Doc. No. 360 at 3-4. The Court reserved for its own determination the following issues:

a. Whether 20 U.S.C. § 1415(i)(3)(G) precludes the Court from reducing the total fee award pursuant to 20 U.S.C. § 1415(i)(3)(F), and if not, whether the total fee award should be reduced based on any of the relevant factors set forth in Section 1415(i)(3)(F).

b. Whether the total award of attorneys' fees and costs should be reduced based on the plaintiffs' degree of success at each stage of this litigation.

c. Whether the plaintiffs may recover fees and costs incurred pursuing

6

"fees-on-fees-on-fees," and if not, the extent to which the total award must be reduced.

d. Whether the plaintiffs are entitled to interest on any fees or costs, and if so, the applicable interest rate.

*Id*. at 5.

On October 2, 2017, the Special Master filed his Report and Recommendation. *See* Doc. No. 366. Both parties have filed objections, as well as responses to each other's objections. *See* Doc. Nos. 369, 370, 372, 373. On December 29, 2017, the Brenneises filed a motion seeking attorneys' fees incurred between January 16, 2017 and December 29, 2017. *See* Doc. No. 376. The District opposes the motion. *See* Doc. No. 378.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 53(f) sets forth the applicable standard of review by the Court of a Special Master's Report and Recommendation. "The court must decide *de novo* all objections to findings of fact made or recommended" by the Special Master, unless the parties stipulate otherwise. Fed. R. Civ. P. 53(f)(3). The parties have not stipulated to a lesser standard of review in this case. Accordingly, the Court has conducted the required *de novo* review. Likewise, "the court must decide *de novo* all objections to conclusions of law made or recommended" by the Special master. Fed. R. Civ. P. 53(f)(4). In taking action on the Special Master's "report, or recommendations, the court . . . may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

## DISCUSSION

The Brenneises now seek an award of over two million dollars in attorneys' fees and costs arising out of this litigation. *See* Doc. Nos. 340-13, 376-1. The requested fees and costs are summarized in the table below:

7

| Proceeding | Fees & Costs Requested |
|---|---|
| Due Process Hearing (2006-2007) | $911,582.17[4] |
| District Court Proceedings (Including "Fees on Fees") (2008-2012) | $586,230.92 |
| Ninth Circuit Appeal (Including "Fees on Fees") (2012-2015) | $426,735.00 |
| Ninth Circuit Mediation (2016) | $100,953.25 |
| Post-Remand Proceedings (Including "Fees on Fees") (2016-2017) | $84,242.92 |
| **SUBTOTAL:** | **$2,109,744.26** |
| Supplemental Motion for Attorneys' Fees Incurred Between January 19, 2017 and December 29, 2017 | $99,900.00[5] |
| **TOTAL:** | **$2,209,644.26** |

## 1. Relevant Law

The parents of a child with a disability are entitled to an award of attorneys' fees under Section 1415(i)(3) of the IDEA as a prevailing party "when actual relief on the merits of [the child's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The relevant portions of the statute provide:

---

[4] This total reflects the amount of fees requested at counsel's 2011 billing rate for federal court litigation of $560 per hour. *See* Doc. No. 160-4. Counsel originally billed their time for work performed on the due process proceedings at a rate of $440 per hour, which resulted in a total bill for fees and costs in the amount of $795,603.17. *See* Doc. No. 160-1.

[5] This total reflects the amount of fees requested at counsel's current billing rate of $675 per hour. *See* Doc. No. 376-1 at 21.

(i) In general. In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs-

   (I) to a prevailing party who is the parent of a child with a disability

( . . . )

   (C) Determination of amount of attorneys' fees. Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

20 U.S.C. § 1415(i)(3).

   This Court previously found, and the Ninth Circuit affirmed, that the Brenneises are a "prevailing party" under the IDEA, because "the relief obtained in the administrative proceeding and affirmed by this Court was not *de minimis*, but was substantive." Doc. No. 238 at 14; *see also, T.B.*, 806 F.3d at 482.

   In order to calculate the fee award, the Court begins by calculating the number of hours reasonably expended on the litigation, and then multiplying that number by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also, Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1115 (9th Cir. 2006). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433.

   Importantly, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Id.* at 434. After calculating the lodestar, the Court must determine whether to reduce the fee award based on the prevailing party's degree of success. Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. If so, courts have equitable discretion to reduce the amount of attorneys' fees awarded. *Id.* at 436-37. The "most critical" factor is the "degree of success obtained." *Id.* at 436. "There is no precise rule or formula for making

9

these determinations." *Id*. at 436. The Ninth Circuit has held that this "degree of success" standard applies to attorneys' fee awarded under the IDEA. *See Aguirre*, 461 F.3d at 1115 (recognizing that *Hensley* applies to the IDEA attorneys' fees statute).

Additionally, the Ninth Circuit "requires that courts reach attorney's fee decisions by considering some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67 (9th Cir. 1975)." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). The *Kerr* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Kerr*, 526 F.2d at 70.

The Court also must determine whether the fee award should be reduced based on statutory factors, as set forth in Section 1415(i)(3)(F), which provides in pertinent part:

[W]henever the court finds that—

(i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A),

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

20 U.S.C. § 1415(i)(3)(F).

### 2. Calculation of the Lodestar

#### A. Reasonable Hourly Rates

At the first step in its lodestar calculation, the Court must determine a reasonable hourly rate for each attorney and staff member that worked on this case for the Brenneises. This includes three attorneys – Steven Wyner, Marcy Tiffany, and Dana Wilkins – as well as paralegals Dona Wright, David Tiffany, Jennifer Ralph, and Shawn Nicholson. The Brenneises request that the Court find the following rates reasonable:

| Time Keeper | OAH Hearing | District Court | Ninth Circuit |
|---|---|---|---|
| Steven Wyner | $400-$475 | $560 | $675 |
| Marcy Tiffany | $400-$475 | $560 | $675 |
| Dana Wilkins | $195-$225 | $225 | N/A |
| Dona Wright | $125-$175 | $175 | N/A |
| David Tiffany | $115-$125 | $125 | N/A |
| Jennifer Ralph | N/A | $165 | N/A |
| Shawn Nicholson | N/A | $225 | N/A |

Doc. No. 366 at 22 (citing Doc. Nos. 160-3, 160-4, 160-11, 340-16).

The Court appointed the Special Master to make findings and recommendations regarding reasonable hourly rates for the Brenneises' counsel and their staff. After summarizing each individual's skills and experience, as well as the evidence submitted by the parties regarding hourly rates, the Special Master recommends the following reasonable hourly rates for the Brenneises' counsel and their staff throughout the course of the proceedings:

11

| **Time Keeper** | **Reasonable Hourly Rate** |
|---|---|
| Steven Wyner | $450 |
| Marcy Tiffany | $450 |
| Dana Wilkins | $145 |
| Dona Wright | $115 |
| David Tiffany | $115 |
| Jennifer Ralph | $115 |
| Shawn Nicholson | N/A[6] |

Doc. No. 366 at 40.

    *i.    Legal Standard*

    Attorneys' fees awarded under the IDEA must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); *see also Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) ("Reasonable attorney's fees are to be calculated according to 'the prevailing market rates in the relevant community.'") (quoting *Van Skike v. Dir., Office of Workers Compensation Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009)). "The burden is on the fee applicant 'to produce satisfactory evidence' of the prevailing market rates." *Id.* "District courts may consider the fees awarded by others in the same locality for similar cases." *Id.* (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008)). "District courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

---

[6] Citing an absence of proof to support Ms. Nicholson's requested rate, the Special Master recommends that all the charges for Ms. Nicholson be disallowed. *See* Doc. No. 366 at 39. The Brenneises do not object to this particular recommendation. Nor do they seek an award of fees for any work performed by Ms. Nicholson on this action during the 2017 calendar year. Accordingly, the Court adopts the Special Master's recommendation, and it is not necessary to determine a reasonable hourly rate for work performed by Ms. Nicholson.

## ii.   *Objections to the Report and Recommendation*[7]

### a)   The Brenneises' Objections

The Brenneises object on various grounds to the Special Master's recommendation of a reasonable hourly rate of $450 per hour for their counsel.  As an initial matter, the Brenneises argue that the Central District of California, where counsel maintain their offices, is the appropriate relevant community when determining the reasonable billing rate for all phases of this case.  The Court previously determined that "San Diego is the relevant legal community," and noted that "[t]his community charges rates lower than attorneys who practice in our neighbor to the North."  Doc. No. 238 at 24.  The Court instructed the Special Master not to revisit this aspect of its 2012 ruling.  *See* Doc. No. 360 at 3.  Accordingly, he did not.  As such, this is technically not an objection to the Report, as the Special Master was prohibited by the Court from considering the issue.  In any event, after taking into consideration the oral arguments of counsel, the Court declines to reconsider its previous determination.  San Diego is the relevant community.

Furthermore, the Court notes that a review of recent case law regarding the award of attorneys' fees in IDEA actions in the Central District demonstrates that counsel's requested rates are much higher than the rates found to be reasonable by courts in that jurisdiction.  Rather, the rates are not dissimilar from those charged in this District, and are comparable with the Special Master's recommended rate of $450 per hour.  *See Wright v. Tehachapi Unified Sch. Dist.*, No. 1:16-cv-01214 - JLT, 2017 U.S. Dist. LEXIS 123671, at *14-15 (E.D. Cal. Aug. 4, 2017) (finding a rate of $425 reasonable for an attorney with 19 years of experience practicing law) (citing *Beauchamp v. Anaheim Union High School Dist.*, 816 F.3d 1216, 1224-25 (9th Cir. 2016) (affirming $400 per hour for an attorney from the Central District who had "been representing students in

---

[7] As indicated in its February 8, 2018 Notice and Order providing the parties' with its tentative rulings, *see* Doc. No. 382, the Court has conducted an exhaustive *de novo* review of each and every aspect of the Special Master's Report and Recommendation to which objections were made.  The Court's omission from the discussion herein of a specific objection should not be construed as a failure to consider the objection in the first instance.

special education matters since 1996"); *C.B. ex. rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 2012 U.S. Dist. LEXIS 5946, 2012 WL 161806 at *3 (C.D. Cal. Jan. 18, 2012) (awarding $400 per hour for work done at the administrative level and before the District Court); *Adams v. Compton Unified Sch. Dist.*, 2015 U.S. Dist. LEXIS 175811, 2015 WL 12748005 at *10-11 (C.D. Cal. July 16, 2015) (awarding $390 per hour and $410 per hour); *K.M. ex rel. Bright v. Tustin Unified School District*, 78 F.Supp.3d. 1289, 1304 (C.D. Cal. 2015) ($475 per hour reasonable)).

The Brenneises also object to the Special Master's use of a single hourly rate for all stages of these proceedings. Essentially, the Brenneises argue that as this case moved from the administrative level, to district court, and on to the Ninth Circuit, that the proceedings became more complex. The Court disagrees. The Special Master correctly notes in his Report that the facts and general landscape of the case once it moved to this Court remained the same, and the issues on appeal narrowed considerably. *See* Doc. No. 366 at 36.

The Brenneises further object to the Special Master's recommendation that the Court not use current billing rates to compensate for the delay in payment of the fee award. Counsel for the Brenneises argued during the February 9 hearing that the District used a "scorched earth" tactic in this case, contributing substantially to the protraction of the litigation, resulting in the delay in payment, and justifying the use of current billing rates in calculating the lodestar. Citing the Ninth Circuit's holding in *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291 (9th Circ. 1994), the Brenneises argue that the Court should employ one of two methods to account for this delay: "use either current rates for attorneys of comparable ability or experience or historical rates coupled with a prime rate enhancement." *Id.* at 1305 (emphasis omitted). However, as the circuit court notes in its opinion, the "district court has *discretion* to compensate delay in payment." *Id.* (emphasis added).

In determining whether to exercise this discretion, the Court agrees with the Special Master that the use of current billing rates is not appropriate. The Brenneises'

complaint regarding the litigation tactics of the District does not ring hollow, but the Court stands by its observation, originally made in 2012, that "*[b]oth* sides are responsible for creating and fostering the animosity that impaired an efficient resolution to the case." Doc. No. 238 at 23, n.7 (emphasis added). While the failure to efficiently resolve this action does not rise to the level of unreasonable protraction under 20 U.S.C. § 1415(i)(3)(F)(i),(G), as discussed further *infra*, neither side may fairly disclaim responsibility for its perpetuation.

More to the point, as the District notes, the 2011 and 2016 declarations of Patrick Frost, Assistant General Counsel for the District, show that experienced attorneys in San Diego generally have charged no more than $450 per hour over the course of this litigation. *See* Doc. No. 372 at 13 (citing Doc. No. 180-4 ¶ 7; JA-50 ¶ 8; JA-53 ¶¶18-20; Doc. No. 344-10 ¶¶18-20). The Court finds this evidence compelling. Furthermore, as noted above, recent case law on attorneys' fee awards in IDEA cases in the Southern California region generally demonstrate that the Special Master's recommended hourly rate of $450 is consistent with rates found reasonable by other courts. *See, e.g., Wright*, 2017 U.S. Dist. LEXIS 123671, at *14-15.

Finally, given the Court's own familiarity with the local legal market, the Court is persuaded that the hourly rate recommended by the Special Master is reasonable, and compensates counsel fairly based on their years of experience and expertise practicing special education law. *See Ingram*, *supra*, 647 F.3d at 928 (agreeing with other circuit courts that "it is proper for a district court to rely on its own familiarity with the legal market" in determining a reasonable rate).

### b) The District's Objections

The District objects to the Special Master's adjustment of the hourly billing rate for work performed by the Brenneises' counsel and their staff during the administrative stage of the proceedings. The District contends that the Court should continue to use the previously determined rate of $425 per hour for that phase of the proceedings. However, the District does not object to the reasonableness of the $450 per hour rate for the

remainder of the litigation.

The District's argument that the Court should not deviate from the $425 per hour rate it found reasonable in its 2012 Order is unavailing. "Lower courts are free to decide issues on remand so long as they were not . . . decided explicitly or by necessary implication in [the] previous disposition." *Liberty Mut. Ins. Co. v. Equal Emp't Opportunity Comm'n*, 691 F.2d 438, 441 (9th Cir. 1982) (internal citations omitted). Here, the Ninth Circuit was silent as to the reasonableness of the hourly rates as determined by the Court in its 2012 Order. Upon due consideration, the Court explicitly gave the Special Master authority to revisit the rates when calculating the lodestar. *See* Doc. No. 360 at 3. In doing so, the Special Master has recommended a reasonable rate based in large part on the District's own evidence.

### iii. Conclusion

The Court **OVERRULES** both parties' objections, **ADOPTS** the Special Master's recommendation, and **FINDS** that the following constitute reasonable hourly rates for the Brenneises' counsel and staff for their work throughout the course of these proceedings:

| **Time Keeper** | **Reasonable Hourly Rate** |
| --- | --- |
| Steven Wyner | $450 |
| Marcy Tiffany | $450 |
| Dana Wilkins | $145 |
| Dona Wright | $115 |
| David Tiffany | $115 |
| Jennifer Ralph | $115 |

### B. Reasonable Hours Expended

At the second step in its lodestar calculation, the Court must determine the number of compensable hours the Brenneises' counsel and their staff reasonably expended on this litigation. The Court appointed the Special Master to make findings and recommendations as to this exceedingly difficult task. *See* Doc. No. 360 at 3. The

Special Master has undertaken a meticulous review of the Brenneises' counsel's billing records, as well as the District's general objections and individual objections to specific billing entries,[8] in order to formulate his recommendations concerning the compensable time expended by the Brenneises' counsel and their staff at each stage of this litigation.

With respect to the Special Master's recommendations, the Brenneises primarily object to the disallowance of counsel's time spent traveling between Torrance, California, the location of their offices, and San Diego. The District's objections are far more comprehensive. The District raises multiple objections to the Special Master's calculations, including the Special Master's recommended rulings on objections to individual billing entries, and requests that the Court make additional deductions to the compensable time calculation for the following reasons: duplicative work, overstaffing, and lack of contemporaneous billing records for time keeping during the due process hearing and at the district court level; additional billing issues at the district court level; non-recoverable time, before, during, and after the due process hearing; time spent in this Court on the merits of the Brenneises' claims after November 18, 2009, the date the Brenneises filed their response in opposition to the District's motion for partial summary judgment as to its IDEA claim; and excessive time spent on the Ninth Circuit appeal. *See* Doc. No. 369 at 16-19.

The Court briefly summarizes the Special Master's findings and recommendations below, and addresses particular objections in certain instances.

    i.    *Relevant law*

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at

---

[8] The District raised objections to counsel's billing records on multiple grounds, organized into seven general categories: non-recoverable, protraction, clerical, duplicative, internal conference, lacks specificity, unnecessary, and travel. *See* Doc. No. 180-3 at 10. The Special Master considered each category of objections to counsel's billing records at each stage of the litigation, as to each objectionable billing entry. *See* Doc. No. 366 at 40-130.

433, 437). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id*. at 1397-98 (citing *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) and *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987)).

ii.     *Compensable Hours: OAH Due Process Hearing (2006-2007)*

The Special Master recommends the Court find that the Brenneises' counsel and their staff reasonably expended 2533.3 hours of compensable time for their work during the administrative stage of these proceedings. *See* Doc. No. 366 at 57. This includes compensation for the majority of the time requested. A significant portion of the Special Master's deductions are attributable to his recommendation that the Brenneises' counsel and their staff not be compensated for time spent traveling between Torrance and San Diego. *See id.* at 52-53. The Special Master notes that the Brenneises failed to provide any evidence that it is customary in the San Diego legal community to charge for travel time. He also points out that billing for travel time is generally allowed in cases where the prevailing party shows that it would not have been able to hire competent local counsel to handle the work, an argument which he recommends the Court reject in this case. *Id*. at 52.

With respect to the administrative proceedings, the Court specifically instructed the Special Master to consider whether any particular billing entries should be reduced or deducted pursuant to Section 1415(i)(3)(D)(ii) of the IDEA. *See* Doc. No. 360 at 4. Pursuant to this section of the IDEA, "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)." 20 U.S.C. § 1415(i)(3)(D)(ii). The Special Master reviewed counsel's billing records, as well as the objections raised by the District, and determined whether time should be deducted on this basis. *See* Doc. No. 366 at 43. The District objects to the Special Master's recommended deductions, arguing that many

more time entries involved work done in relation to IEP implementation, particularly after the due process hearing had concluded. However, as he explains in his Report, the Special Master deducted time in accordance with the accuracy of the information available. *See id*.

### iii. *Compensable Hours: District Court Litigation (2008-2012)*

The Special Master has subdivided the Brenneises' fee request for work in this Court performed through 2012 into several parts including: (a) fees incurred in defense of the IDEA claim in the District's complaint (upon which the Brenneises prevailed, rendering them entitled to a fee award in this action); (b) fees incurred in the prosecution of the claims in the Brenneises' complaint for work that was common to the work done on defense of the District's IDEA claim; (c) fees incurred in the prosecution of the third cause of action in Plaintiffs' second amended complaint relating to the CDE compliance complaint (including the unsuccessful 2008 interlocutory appeal by the District); and (d) fees incurred filing a motion for reconsideration of the Court's 2012 award of attorneys' fees and costs. As noted above, in calculating the reasonable hours expended by the Brenneises' counsel and their staff during this stage of the proceedings, the Special Master considered the District's myriad objections to counsel's billing records. The most substantial objections are discussed below.

### a) Apportionment

The Brenneises seek fees for time expended successfully defending against the District's IDEA claim and succeeding on their fees-on-fees claim regarding the CDE compliance complaint. The Brenneises acknowledge that fees should not be awarded for all aspects of the pre-appeal litigation in this Court. To this end, the Brenneises segregate out the time expended on their unsuccessful IDEA claim, and their civil rights claims. However, the District objects to the Brenneises' apportionment of time between successful and unsuccessful claims. The District contends that these time entries should be reduced across the board by fifty percent to account for the fact that only some of the time could be attributed to the defense against the District's first cause of action.

Likewise, the District objects to individual billing entries for work performed in relation to all claims, i.e., attendance at the Early Neutral Evaluation conference, settlement activities, and communications with the client. *See* Doc. No. 180-1 at 12.

The Special Master concludes that the fifty percent reduction proposed by the District does not have a reasoned basis, and citing *Hensley*, *supra*, recommends that the District's "apportionment" objection be overruled:

> The issue is whether the first claim in the District's complaint is "related" to the other claims in the District's complaint and the claims in Plaintiffs' second amended complaint as that term is used in *Hensley*. All the claims in the District's complaint and Plaintiffs' second amended complaint relate to the same basic set of facts: the assessments and IEP meetings relating to T.B.'s 2006-2007 school year and the conduct of and results from the related OAH hearing. Activities such as the ENE and other similar events are common to the case as a whole and Plaintiffs are entitled to fees spent on these activities without a deduction of 50% or any other percentage.
>
> I reviewed all the time entries on the District's Exhibit A, and find that they all apply equally to Plaintiffs defense of the IDEA claim in the District's first cause of action and to other related claims in the case. Accordingly, I recommend that the District's "Apportionment" objection be overruled in its entirety.

Doc. No. 366 at 56.

### b) Non-Recoverable

The District also objects to various billing entries on the grounds of "Non-Recoverable", which generally involved objecting to any time entry in counsel's billing records for (i) work related solely to the Brenneises' unsuccessful appeal in the District Court of the parts of the OAH decision they lost, including their attempt to have the compensatory education they sought go into effect immediately; (ii) all work on the Brenneises' second amended complaint, because the only changes from the first amended complaint were to add ultimately unsuccessful claims under Section 504 and the ADA; (iii) overhead items such as attorney conflicts checks and fee agreements; (iv) all time on discovery since the only discovery initiated by the Brenneises' was on the Section 504

and ADA claims; (v) time spent on researching the credibility of witness Dr. Howard Taras after completion of the OAH hearing; and (vi) time spent in discussing a Nursing/Emergency Care Plan with the Brenneises since no such plan was ever drafted by the District and therefore it is irrelevant. *See* Doc. No. 180-1 at 11-12. The Special Master considered each of these grounds for the District's objections, and recommends that the Court sustain the objections. *See* Doc. No. 366 at 61-62.

### c) Protraction

The District objects to a number of billing entries on the ground the work performed led to the unreasonable protraction of the litigation. *See* Doc. No. 180-1 at 46-57. The District contends that the Brenneises engaged in a number of unnecessary delaying tactics to prevent the District from filing a motion for summary judgment on its appeal of the OAH decision. The Brenneises respond that the District bears the responsibility for unreasonably protracting this litigation. The Special Master considered both parties' arguments regarding the issue of protraction, and recommends that all the objections on the ground of "protraction" be overruled. *See* Doc. No. 366 at 73-74.

### d) CDE Compliance Complaint

The third cause of action in the Brenneises' second amended complaint alleged a claim for recovery of attorneys' fees for a successful CDE compliance complaint against the District. *See* Doc. No. 65 at 6. On May 20, 2011, the District served a Rule 68 offer of judgment limited to the third cause of action in the second amended complaint. *See* Doc. No. 151-1. The terms of that offer provided for a judgment in the amount of $7,113.50 for fees incurred in connection with a CDE compliance complaint, "plus reasonable attorney's fees and costs incurred by plaintiffs on the Third Claim for Relief (and prior versions thereof in earlier pleadings in this case) prior to the date of this offer in an amount to be set by the Court." Doc. No. 366 at 86 (citing Doc. No. 151-1 at 2:4-6). Plaintiffs accepted that offer. *See* Doc. No. 151. As part of their 2011 fee application, Plaintiffs sought $48,173.00 on the accepted Rule 68 offer of judgment related to the CDE compliance complaint. *See* Doc. No. 160-18.

In its 2012 Order, this Court denied a request for further fees beyond the $7,113.50 principal amount of the judgment on the ground the parties previously settled that dispute. *See* Doc. No. 238 at 31. However, the Ninth Circuit ordered that on remand the Court determine what additional fees are owed to the Brenneises for recovering the $7,113.50 for the CDE compliance complaint. *See T.B.*, 806 F.3d at 485. The Special Master has completed this task, and recommends the Court find that the Brenneises' counsel and their staff expended 82 hours in compensable time performing work related to the CDE compliance complaint prior to the date of the Rule 68 offer of judgment on that claim. *See* Doc. No. 366 at 94.

### e) Motion for Reconsideration

The Brenneises also seek fees for work performed by counsel associated with the motion they brought in 2012 requesting this Court to reconsider its award of attorneys' fees and costs. *See* Doc. No. 340-13. After considering the District's objections and disallowing certain time entries, the Special Master recommends the Court find the Brenneises' counsel reasonably expended 77.3 hours working on the motion for reconsideration. *See* Doc. No. 366 at 116.

### iv. *Compensable Hours: Ninth Circuit Litigation (2012-2015)*

In an August 10, 2016 memorandum order, the Ninth Circuit granted the Brenneises' motion for an award of attorneys' fees incurred on appeal. *See* Doc. No. 291. The circuit court held that the Brenneises "are entitled to some amount of attorneys' fees for their successful appeal of the district court's [attorneys' fees] award." *Id.* at 2. The Ninth Circuit then transferred the matter to this Court "for the sole purpose of determining the amount to be awarded as fees on appeal, taking into account the fees to be awarded for work in the district court and before the ALJ." *Id.* The Court assigned this task to the Special Master, who considered the District's objections to counsel's billing records, and recommends that the Court find the Brenneises' counsel reasonably expended 452.6 hours on the Ninth Circuit appeal. *See* Doc. No. 366 at 104.

08cv28-MMA (JMA)

*v.     Compensable Hours: Ninth Circuit Mediation (2016)*

On February 5, 2016, the parties participated in a mediation conducted by the Ninth Circuit mediator that lasted less than a day. *See* App. Doc. No. 93. After considering the District's objections to certain billing entries, the Special Master concludes that the Brenneises' counsel performed 130.6 hours of work on the Ninth Circuit mediation. *See* Doc. No. 366 at 119. However, he also recommends reducing this amount by fifty percent based on the *Kerr* factors, and that portion of the IDEA statute which permits reduction of any fee award for "services furnished that were excessive considering the nature of the action or proceeding," 20 U.S.C. § 1415 (i)(3)(F)(iii). *See id.* at 120.

*vi.     Compensable Hours: Post-Remand Activities and "Fees on Fees"*

The Special Master recommends that the Court find the Brenneises' counsel and their staff reasonably expended 46.6 hours on post-remand activities in this Court, unrelated to the work done in relation to "fees on fees." *See id.* at 113. The Special Master further recommends that the Court find the Brenneises' entitled to "fees on fees" for the work spent on the various attorneys' fees applications at issue in this litigation. The Special Master correctly observes that other courts in this Circuit award "fees on fees" in IDEA cases, and recommends that the Court find the Brenneises' counsel and their staff reasonably expended 318.9 hours working on the 2011 fee application in this Court; 21.1 hours working on the Ninth Circuit fee application; and 30 hours on the supplemental briefing submitted in this Court post-remand (referred to by the Special Master as the "2017 fee application"). *See id.* at 127-30.

*vii.     Conclusion*

The Court has decided *de novo* all objections to the Special Master's findings and conclusions. Upon due consideration, the Court **OVERRULES** the parties' objections to the Special Master's calculation of the reasonable hours expended by the Brenneises' counsel and their staff at each stage of this litigation, and **ADOPTS** his recommended calculations.

### 3. Costs

#### A. Taxable Costs

Taxable costs are limited to those listed in the general cost statute, 28 U.S.C. § 1920, including expenses for court reporters, witnesses, copies of papers, and other items. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987); *Maxwell v. Hapag-Lloyd Aktiengesellschaft*, 862 F.2d 767, 770 (9th Cir. 1988). Items that are customarily taxed in this District are set forth in Civil Local Rule 54.1, and include such items as fees for service of process, fees incident to transcripts, deposition costs, and witness fees. *See* S.D. CAL. LR 54.1.b. In its 2012 Order, the Court indicated that it "prefers that the Clerk of the Court have the first opportunity to review the cost bill, as the initial review will narrow any disputes on taxable costs." Doc. No. 238 at 32. Likewise, in paragraph 7 of its Order appointing a Special Master in this action, the Court confirmed its intent to refer the calculation of taxable costs to the Clerk of Court, consistent with Civil Local Rule 54.1. *See* Doc. No. 360 at 5. Accordingly, it will be the Brenneises' responsibility to submit their application for taxable costs directly to the Clerk of Court for consideration within fourteen (14) days from the date this Order is filed.

#### B. Non-Taxable Costs

The Brenneises seek an award of non-taxable costs, which they have properly requested in their fee applications. *See* Fed. R. Civ. P. 54(d)(2) (describing motion for "attorney's fees and related nontaxable expenses"). The Court appointed the Special Master to make findings and recommendations regarding the Brenneises' requested non-taxable costs. *See* Doc. No. 360 at 4.

The Ninth Circuit noted in its opinion that "the court's ruling on nontaxable costs suffered from the same lack of clarity, although the absolute effect is much smaller." *T.B.*, 806 F.3d at 486. The circuit court instructed the Court on remand to "strive to explain its reductions more precisely." *Id.* The Special Master heeded the Ninth Circuit's instructions, and has undertaken a thorough review of the Brenneises' requests for reimbursement of non-taxable costs at various stages of the litigation. The Special

Master recommends that the Brenneises receive a limited award for those non-taxable costs which are allowable and sufficiently documented. The Court briefly summarizes his recommendations below.

The Special Master recommends that the following charges incurred during the due process hearing be reimbursed to the Brenneises: 1) the use of an attorney service in the amount of $150.00 for delivering or serving a legal document relating to the OAH hearing; and 2) Lexis-Nexis costs in the amount of $288.29 for research. *See* Doc. No. 366 at 56. The Special Master recommends all other non-taxable costs for which the Brenneises request reimbursement be excluded, in large part due to insufficient documentation. This results in an award of $438.29 for non-taxable costs incurred during the administrative stage of these proceedings.

The Special Master also recommends that nearly all of the non-taxable costs incurred by the Brenneises in defense of the District's IDEA claim be denied, largely due to the failure to properly document the expenses. *See* Doc. No. 366 at 75. He recommends permitting reimbursement in the amount of $87.25 for non-taxable costs related to properly documented copying expenses. *See id.* at 81. In addition, the Special Master recommends that the Court decline to award the Brenneises any non-taxable costs incurred litigating in this Court post-remand, noting that the descriptions of the non-taxable costs are vague, and the Brenneises provided no receipts. *See id.* at 114.

Finally, the Special Master recommends the Court allow the Brenneises' request for non-taxable costs for the use of the PACER filing system in relation to the Ninth Circuit mediation, totaling $59.80. However, like the attorneys' fees award for that stage of the litigation, the Special Master recommends that this amount be reduced by fifty percent, resulting in a total of $29.90. *See id.* at 121.

The Brenneises object to the Special Master's recommended reduction of their requested award of non-taxable costs. The Brenneises acknowledge that "an issue has been raised regarding the adequacy of Plaintiffs' description of costs," but do not address

the primary problem with their request identified by the Special Master – the lack of sufficient documentation.  Doc. No. 370 at 13.

The District objects to the Special Master's recommendation that non-taxable costs be awarded in any amount to the Brenneises.  The District cites to the Supreme Court's holding in *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006), as support for the proposition that prevailing parties may not recover non-taxable costs under the IDEA.  *See* Doc. No. 369 at 19.  The Special Master relied upon persuasive authority to conclude that the District's objection should be overruled.  *See* Doc. No. 366 at 114.  *Arlington* dealt specifically with the recovery under the IDEA of expert fees. *Arlington*, 548 U.S. at 304.  Accordingly, the Court finds *Arlington* distinguishable, agrees with the Special Master, and further notes that the Ninth Circuit had an opportunity in this case to determine that non-taxable costs are not recoverable under the IDEA.  The circuit court did not so determine, and instead remanded the case with instructions to "strive to explain" any reductions to the award of non-taxable costs "more precisely."  *T.B.*, 806 F.3d at 486.

## C. Conclusion

The Court **OVERRULES** both parties' objections and **ADOPTS** the Special Master's recommended award of non-taxable costs in the total amount of $555.44.

### 4. *Supplemental Motion for Attorneys' Fees Incurred Between January 19, 2017 and December 29, 2017*

On December 29, 2017, the Brenneises filed a motion seeking attorneys' fees for counsel's work performed between January 19, 2017 and December 29, 2017.  *See* Doc. No. 376.  This includes time spent on the following three tasks: 1) preparing and filing supplemental briefing in support of the 2011 and Ninth Circuit fee applications; 2) participating in failed settlement efforts before the assigned magistrate judge; and 3) responding to issues related to the appointment of the Special Master and objecting to the Report and Recommendation.  *See id.* at 3.  According to the Brenneises, their counsel expended a total of 242.6 hours performing work related to this action during this time

period. *See id.* at 4. The Brenneises propose a deduction of 94.6 of those hours, and request reimbursement for 148 hours. *See id.* The District opposes the fee request in its entirety. *See* Doc. No. 378.

Prior to the February 9 hearing, the Court tentatively concluded that compensation for the requested hours would not be reasonable, primarily on the ground that the Brenneises' motion requests "fees on fees on fees." *See* Doc. No. 382 at 2. In the Court's view, while the Brenneises "are entitled to fees incurred during the adjudication of the due process complaint and for fees incurred in obtaining the reimbursement of those fees . . ., receiving 'fees on fees on fees' is too attenuated from the adjudication of the due process complaint to be reimbursable." *Wright v. District of Columbia*, 883 F. Supp. 2d 132, 134 (D.D.C. 2012). However, the Court has re-examined counsel's billing records, and finds that consistent with the Special Master's recommendation that an award of "fees on fees" be allowed in this action, the Brenneises' are entitled to a limited award of "fees on fees" for work performed between January 19, 2017 and March 19, 2017.

The Brenneises' counsel billed 83.9 hours for work performed in relation to the supplemental briefing on their motion for an award of attorneys' fees under the IDEA. *See* Doc. No. 376-1 at 6-12. The District objects to the majority of billing entries during this three-month time period as "excessive, unnecessary, unreasonable protraction of the litigation." Doc. No. 378-1 at 9-16. The Court has reviewed each of the billing entries to which the District objects, and agrees that a reduction is appropriate based on the excessive amount of time preparing a reply brief in support of the Brenneises' supplemental motion for attorneys' fees. *See* 20 U.S.C. § 1415(i)(3)(F)(iii). The Brenneises have proposed to deduct 22.5 hours from the total amount of time spent by counsel working on the briefing for the supplemental fee motion. *See* Doc. No. 376 at 4. The Court finds that this proposed deduction is sufficient to address the excessive amount of time spent by counsel on the preparation of the reply brief.

Accordingly, the Brenneises request reimbursement for 61.4 hours expended by

counsel between January 19, 2017 and March 19, 2017. The Court finds this amount of hours reasonable. At the rate of $450 per hour, which the Court finds reasonable for the reasons set forth in the Special Master's Report, the calculation of the lodestar results in a total award of fees incurred between January 19, 2017 and March 19, 2017 in the amount of $27,630.00.

### 5. Total Award

Based on the reasonable hourly rates recommended by the Special Master, the reasonable amount of hours expended during the course of this litigation as calculated by the Special Master and this Court, and the non-taxable costs found by the Special Master, the Court awards the Brenneises attorneys' fees and costs as follows:

| Proceeding | Fees & Costs Awarded |
|---|---|
| Due Process Hearing (2006-2007) | $563,049.79 |
| District Court Proceedings (Including "Fees on Fees") (2008-2012) | $399,839.75 |
| Ninth Circuit Appeal (Including "Fees on Fees") (2012-2015) | $203,670.00 |
| Ninth Circuit Mediation (2016) | $29,414.45 |
| Post-Remand Proceedings (Including "Fees on Fees") (2016-2017) | $20,970.00 |
| **SUBTOTAL:** | **$1,216,943.99** |
| Supplemental Motion for Attorneys' Fees Incurred Between January 19, 2017 and December 29, 2017 | $27,630.00 |
| **TOTAL:** | **$1,244,573.99** |

### 6. Reduction of Fee Award

After calculating the total fee award, as set forth above, the Court must consider whether to reduce the award on one or more grounds. First, the Court must consider the

08cv28-MMA (JMA)

fee award in light of "some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*" *Quesada*, *supra*, 850 F.2d at 539. In this case, the *Kerr* factors are almost completely subsumed in the lodestar calculation. The Special Master considered the *Kerr* factors when calculating the lodestar, and the Court adopts his findings in full.

Second, the Court must determine whether to reduce the Brenneises' fee award based on any of the relevant factors set forth under the IDEA. As noted in its appointment order, the Court reserved for its own determination whether 20 U.S.C. § 1415(i)(3)(G) precludes the Court from reducing the Brenneises' total fee award pursuant to 20 U.S.C. § 1415(i)(3)(F), and if not, whether the total fee award should be reduced based on any of the relevant factors set forth in Section 1415(i)(3)(F). *See* Doc. No. 360 at 5. Finally, the Court must determine whether the total award of attorneys' fees and costs should be reduced based on the Brenneises' limited or partial degree of success at each stage of this litigation.

A. <u>Statutory Reduction: IDEA Factors</u>

The IDEA provides several grounds for reducing a plaintiff's fee award:

(F) Reduction in amount of attorneys' fees. Except as provided in [the following] subparagraph [(G)], whenever the court finds that—

(i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A),

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

(G) Exception to reduction in amount of attorneys' fees. The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds

29

that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

20. U.S.C. § 1415(i)(3)(F).

        i.      *Section 1415(i)(3)(F)(i),(G)*

Before the Court can determine whether any reductions to the Brenneises' fee award are appropriate based on the factors set forth in the IDEA, it must address the Brenneises' argument that the District unreasonably protracted this litigation.  If the Court so finds, Section 1415(i)(3)(G) will prohibit a reduction of the Brenneises' fee award based on any of the factors set forth in Section 1415(i)(3)(F).

The Brenneises contend that the District unreasonably protracted the final resolution of this litigation by, *inter alia*, refusing to comply with the terms of the OAH Decision favorable to the Brenneises; appealing the OAH Decision to this Court; bringing claims against the Brenneises and their attorneys; and filing a frivolous interlocutory appeal with the Ninth Circuit at the outset of this action.  *See* Doc. No. 190 at 6.  In addition, post-remand, the Brenneises have raised a new argument.  According to the Brenneises, the District unreasonably protracted this litigation by knowingly misrepresenting to this Court and the Ninth Circuit that its May 3, 2007 settlement offer was timely and qualified as a statutory offer.  *See* Doc. No. 340 at 9.

Under the IDEA, "[a]ttorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if the offer is made . . . in the case of an administrative proceeding, *at any time more than 10 days before the proceeding begins*."  20 U.S.C. § 1415(D)(i)(I) (emphasis added).  The Brenneises assert that the District purposefully misrepresented throughout this litigation that the District's last settlement offer was made more than ten days before the OAH due process hearing began on May 14, 2007.  Instead, the Brenneises argue that although the offer letter is dated May 3, 2007, the fax cover sheet indicates that the offer was not "made," i.e. sent via facsimile to the Brenneises' counsel, until May 4, 2007, one day late.  This one-day

discrepancy is essential, the Brenneises assert, because "the District's misrepresentation of the timeliness of the May offer resulted in this Court reaching a conclusion that it would not have otherwise reached." Doc. No. 340 at 15.

The Brenneises' argument is without merit. There is no indication in the record that the District purposefully concealed the timing of their final settlement offer at any stage in this litigation. In May 2007, the District could not have hidden the fact that it faxed the settlement offer to counsel on May 4, 2007 – the fax cover letter is dated as such. *See* Doc. No. 340-7. The declaration of Elizabeth Estes, cited by the District in support of this version of events, omits this information, instead referring to the date on the letter itself, May 3, 2007. *See* Doc. No. 180-3 at 7. However, the copy of the letter attached as an exhibit to Estes' declaration clearly shows the fax header dated May 4, 2007. *See* Doc. No. 193-3 at 85. And in its response in opposition to the Brenneises' 2011 fee application, the District expressly acknowledged that it made the settlement offer on May 4, 2007:

> *On the morning of May 4, 2007*, the District sent Plaintiffs a cover letter with a revised settlement agreement, which was the same as the March 13, 2007 settlement agreement except that it offered $150,000 per year to privately educate T.B., and a clause that would allow T.B. to reenroll in the District during any year except 2007-2008 as Plaintiffs were clear that they wanted to continue T.B.'s home program for at least that period of time.

Doc. No. 180 at 20 (emphasis added).

Furthermore, counsel for the Brenneises acknowledged receipt of the offer on May 4, 2007. *See* Doc. No. 340 at 4. However, the Brenneises did not reject the offer as untimely under the IDEA. Instead, counsel countered the offer later that day, which the District ultimately rejected. *See* Doc. No. 180-3 at 8. As for the current litigation, the cover letter with the May 4, 2007 fax header has been a part of the record in this case since September 2011. Yet, when the information would have been potentially relevant to the issues before the Court, *neither* party asserted that the settlement offer violated the deadline set forth in Section 1415(i)(3)(D)(i)(I).

The Court finds that the District did not unreasonably protract this litigation. As such, it may reduce the Brenneises' award of attorneys' fees and costs if it finds that the Brenneises unreasonably protracted the final resolution of the controversy. *See* 20 U.S.C. § 1415(i)(3)(F)(i). The District urges the Court to make this finding. *See* Doc. No. 180 at 17. In a nutshell, the District argues that the Brenneises have unreasonably protracted this litigation at every stage, beginning with their refusal to attend the August 30, 2006 IEP team meeting, and as such, the Court should drastically reduce the fee award. *Id*. at 18.

The Special Master considered the issue of unreasonable protraction of the litigation as a whole, and recommends that the Court decline to find that either party unreasonably protracted the litigation:

> I considered the evidence offered by both sides on the issue of prolonging the proceedings and recommend that the Court find that both sides litigated this case very aggressively, but not to the point where they unnecessarily prolonged the proceedings. There was nothing in the decision from the OAH hearing indicating that the ALJ felt that either side was obstructionist or wasted time. In fact, in paragraph 18 of her decision (on page 7) the ALJ commented as to Mr. Wyner, "[Student's mother] … was represented during the 2006-2007 school year by one of the most respected special education attorneys in the field."
>
> There were no awards of sanctions at any level of this proceeding.
>
> The lawyers may not have always gotten along with each other, but based on the evidence presented, I recommend the Court find that neither side engaged in improper conduct that prolonged the proceedings.

Doc. No. 366 at 134.

The Court finds the Special Master's analysis on this issue to be right on point. Briefly stated, these proceedings are the result of parents, unwilling to compromise the needs of their child and represented by zealous advocates, at loggerheads with a school district of limited means and flexibility. Accordingly, the Court **ADOPTS** the Special Master's recommendation and declines to find that either the Brenneises or the District

unreasonably protracted this litigation.

### ii.    Section 1415(i)(3)(F)(ii)

The Court may also reduce the Brenneises' fee award if it "finds that . . . the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience." 20 U.S.C. § 1415(i)(3)(F)(ii). The District urges the Court to reduce the Brenneises' fee award on this basis; however, the Special Master has recommended a reasonable hourly rate in line with other attorneys in San Diego of comparable skill. The Court adopts the recommended rate of $450 per hour. Therefore, a reduction of the fee award under this section of the statute is inappropriate.

### iii.    Section 1415(i)(3)(F)(iii)

The IDEA also authorizes the Court to reduce the Brenneises' fee award if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii). As noted above, the Special Master has recommended that the Court reduce the Brenneises' fee award for work performed by their counsel in relation to the single-day, failed Ninth Circuit mediation, by fifty percent under this provision of the IDEA. The Special Master also recommended a reduction for excessive time spent working on the 2017 fee application. In addition, the Court relied on this factor as a justification for reducing the compensable hours spent by the Brenneises' counsel on certain work done between January 19, 2017 and March 19, 2017. The Court declines to make any further reductions under this provision of the IDEA.

### B. Equitable Reduction: Degree of Success

The Court must also determine whether to reduce the Brenneises' award of attorneys' fees and costs based on the Brenneises' relative degree of success.

### i.    Relevant Law

Where only "partial or limited success" is obtained by a party, a full fee award may

33

be excessive. *Hensley*, *supra*, at 436. When determining whether to reduce the attorneys' fees sought by a prevailing party who achieved only partial success, the Ninth Circuit, following *Hensley*, instructs district courts to apply the following two-step analysis:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (internal citations omitted).

In reducing the lodestar to account for a party's limited success, the Court is not guided by a precise formula. *See Hensley*, 461 U.S. at 436-37; *Aguirre*, *supra*, 461 F.3d at 1122. The Court may identify particular hours that should be eliminated, or it may simply reduce the award to account for the limited success. *Aguirre*, 461 F.3d at 1122.

### ii. Analysis

To determine whether and how much to reduce the Brenneises' award of attorneys' fees and costs, the Court must engage in the two-step inquiry described above.[9] First, the Court assesses which claims asserted by the Brenneises were successful, and which were unsuccessful. *Hensley*, 461 U.S. at 434. The focus of this analysis is whether any unsuccessful claims are related to the successful ones. *See id*. In order to be compensated for a claim on which they were not successful, the Brenneises must show

---

[9] The Ninth Circuit was clear in its opinion reversing this Court's 2012 fee award that "[o]ur decision does not preclude consideration on remand of the degree of success as a relevant factor in determining the amount to be awarded." *T.B.*, 806 F.3d at 477 n.12.

that "work on the unsuccessful claim [is] relate[d] to the work on [a] successful claim." *Medina v. Dist. of Columbia*, 864 F. Supp. 2d 13, 16 (D.D.C. 2012) (citing *Hensley*). "The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief. Such work 'cannot be deemed to have been expended in pursuit of the result achieved.'" *Fox v. Vice*, 563 U.S. 826, 834 (2011) (quoting *Hensley*, 461 U.S. at 435).

In order to determine the lodestar, the Special Master performed the requisite analysis at the first step of the inquiry and recommended specific time deductions:

> In this case, as a result of editing the bills by Plaintiffs' lawyers and sustaining some of the District's objections, time spent exclusively on unrelated and unsuccessful claims has already been deducted from the lodestar calculation. The time entries that remain are either specific to the issues on which Plaintiffs were successful . . . or relate to matters common to all related claims.

Doc. No. 366 at 132-33. For example, the Special Master reviewed counsel's billing records to ensure that the Brenneises' did not receive an award for work performed at any stage of the litigation related solely to their unrelated, unsuccessful civil rights claims. Because the Court adopts the Special Master's calculation of the lodestar, it is prohibited from making any further reductions based on work performed by the Brenneises' counsel on these claims.

In contrast, the Special Master found all eighteen issues raised during the due process hearing related, and as such, did not "deduct from the lodestar calculation time spent on common matters nor . . . make any downward adjustment in the recommended portion of the lodestar dealing with the OAH hearing." Doc. No. 366 at 133. Likewise, the Special Master found all the claims in the District's complaint and Plaintiffs' second amended complaint related, and did not deduct time spent on related but unsuccessful claims. *Id.* at 64. The Court agrees. However, the analysis does not end here.

The Court must go to step two and "complete the *Hensley* analysis by discussing whether [the Brenneises'] significant accomplishments in this case justify the fee amount requested." *Thorne*, 802 F.2d at 1142 (citing *Hensley*, 461 U.S. at 434-37; *Rivera*, 106 S.

Ct. at 2691-92). In other words, the Court must analyze whether the success obtained by the Brenneises is proportional to the efforts expended by counsel.[10] *Hensley*, 461 U.S. at 434. This reflects the idea that when a prevailing party obtains "excellent results, his attorney should recover a fully compensatory fee." *Id*. at 435. When a party achieves "only partial or limited success," however, then compensation for all of the "hours reasonably expended on the litigation as a whole . . . may be an excessive amount." *Id*. at 436.

As the Ninth Circuit recently reminded district courts tasked with determining an award of attorneys' fees in an IDEA case, "[e]ven when a party is entitled to some fees, the amount awarded must be 'reasonable.'" *Irvine Unified Sch. Dist. v. K. G.*, 853 F.3d 1087, 1094 (9th Cir. 2017) (citing 20 U.S.C. § 1415(i)(3)(B)(i)). This statutory standard intersects with the Court's inquiry under *Hensley*. *See Urban ex rel. Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996) ("Whether an award of attorney's fees is reasonable depends, in part, upon the degree of success obtained by the plaintiff."). At the heart of the Court's determination is whether the Brenneises' "accomplishments in this case justify the fee amount requested," *Thorne*, 802 F.2d at 1142 (citation omitted), while remaining mindful that "[t]here is no precise rule or formula for making these determinations," *Hensley*, 461 F.3d at 436. The Court considers the Brenneises' success at each stage of this litigation.

### a) OAH Due Process Hearing

The District argues that the Brenneises' success on only three of the eighteen issues considered by the ALJ during the due process hearing justifies a drastic reduction

---

[10] The Special Master's lodestar calculation does not account for these factors, nor would it. He understood that the Court was reserving this final determination – the most important one, according to *Hensley* – for itself to make, as the Court clearly stated in the appointment order. *See* Doc. No. 360 at 5; *see also, Aguirre v. Los Angeles Unified School Dist*., 461 F.3d 1114, 1118 (9th Cir. 2006) (holding that the "degree of success obtained" is the most critical factor in determining whether fees are warranted in an IDEA case); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) ("The bulk of discretion retained by the district court lies in the second, significance of relief, inquiry.").

08cv28-MMA (JMA)

in the Brenneises' award of attorneys' fees and costs. The District asserts that counsel's billing records show that they spent hundreds, if not thousands, of hours litigating the additional fifteen issues upon which the Brenneises ultimately did not prevail. As such, the District contends that the Court should reduce the billable hours related to the due process hearing by 84%, which mathematically correlates to the Brenneises' proportionate success. *See* Doc. No. 180 at 14. The Brenneises assert that "[t]aking into consideration the relative importance of the issue on which Student prevailed, the limited scope of the assessment issue, and the relative significance of the remedy he did obtain, Student believes that the fees related to the administrative proceeding should be reduced by no more than 10% in consideration of the fact that he did not prevail on the assessment issue." Doc. No. 159-1 at 9.

The Brenneises lost on all issues related to the District's July 14, 2006 multidisciplinary assessment of T.B. *See* Doc. No. 1 at 72-74. Likewise, the Brenneises failed to demonstrate during the due process hearing that the District denied T.B. a FAPE for the 2006-2007 school year by failing to have an IEP in place at the beginning of the school year. *Id.* at 74-75. The Brenneises also lost their claims concerning substantive deficiencies and procedural violations by the District, in relation to the proposed August 30, 2006 IEP. *Id.* at 76-79. Even with respect to the proposed December 4, 2006 IEP, the Brenneises did not enjoy complete success at the due process hearing. As the ALJ noted in the OAH Decision:

> [T]he District failed to meet its burden of proving that the December 4 IEP provided Student a FAPE, because it failed to provide for specialized physical health care services Student would need to access his education and failed to provide an appropriate plan to transition Student from his home placement to a school placement. However, . . . *the December 4 IEP proposal did offer Student a FAPE in all other respects.*

*Id.* at 79 (emphasis added).

Although the Brenneises' success was limited to only a few issues, those issues were sufficient for the ALJ to determine that the District had not provided T.B. with a

FAPE for the 2006-2007 school year. *Id.* The Brenneises achieved significant success on the critical issue of T.B.'s g-tube feedings, without which he could not attend public school. However, taking into consideration the scope of the due process hearing and the terms of the amended IEP as ordered by the ALJ subsequent to the due process hearing, the Court finds that the Brenneises' success, although significant, does not "justify the fee amount requested." *Thorne*, 802 F.2d at 1142. Because of the extra work expended on the numerous related, but ultimately unsuccessful claims, the total fee award is excessive in relation to the degree of success obtained by the Brenneises, and as such, would not be reasonable. *See Hensley*, 461 U.S. at 440 ("A reduced award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."). A reduction to reflect the Brenneises' limited success is appropriate. *See Corder v. Gates*, 947 F.2d 374, 379-80 (9th Cir. 1991) (noting that a full-fee award to a plaintiff who achieves only limited success encourages litigation in a manner that Congress did not intend).

While the Brenneises' lack of success as to fifteen out of eighteen issues might recommend a great reduction in a purely mathematical sense, it is not so clear. Only nine of the issues involved matters upon which the Brenneises completely failed to succeed – assessment-related matters and issues surrounding the August 2006 IEP. The other nine issues related to the December 2006 IEP, and the transition plan for moving T.B. out of garage school and into public school. As noted above, the ALJ ultimately determined that the December 2006 IEP was adequate in most respects, but not all. Approximately 20% of the ALJ's factual findings and legal conclusions related specifically to the issues upon which the Brenneises prevailed; in the end, the Brenneises lost six out of the nine issues they raised related to the December 2006 IEP. Yet an 84%, 80%, or even 66% reduction in fees is too harsh in light of the results obtained – acknowledgment that T.B. could not attend school based on the District's proposed IEP without placing his health and safety at risk, and amendments to the IEP resolving the problem.

The District urges the Court to focus on the "big picture"– this litigation involved a

38

single school year and a one hundred-page IEP that the ALJ amended in only three respects. The Brenneises exhort the Court to consider the "bottom line" – the District denied T.B. a FAPE for the 2006-2007 school year by failing to provide the health services necessary for him to attend public school. At the time, T.B. was a 12 year-old boy who was "very unhappy about having to remain in the 'garage school,' particularly as he was entering adolescence. He longed to socialize with his peers and have a more normal life." Doc. No. 159-3 ¶ 11. He lost that opportunity.

With all these considerations in mind, the Court finds that a fifty percent reduction in the award of fees and costs[11] for work performed by the Brenneises' counsel and their staff during the due process proceedings strikes a more appropriate balance than "apportion[ing] the fee award mechanically on the basis of [the Brenneises'] success or failure on particular issues." *Hensley*, 461 U.S. at 438. The resulting award will sufficiently compensate counsel for the time and effort spent attempting to secure an IEP that would have allowed T.B. to attend school with his peers, while not rewarding the Brenneises for litigating numerous, unsuccessful claims at the due process hearing.

### b) District Court Litigation

As set forth above, the fee award for litigation in this Court prior to the Ninth Circuit appeal does not include time expended by the Brenneises' counsel and their staff solely on the Brenneises' unsuccessful IDEA claim and their civil rights claims. With respect to the remaining claims, the Special Master overruled the District's objection to fees for work that was common to all claims on the grounds that the successful and unsuccessful claims were related. *See* Doc. No. 366 at 64. After making appropriate deductions, the Special Master's recommended award of fees and costs represents a forty percent reduction to the amount of fees and costs requested by the Brenneises.

The Court adopts the Special Master's finding that the claims litigated in this Court

---

[11] The Court may reduce costs as well as fees to reflect the Brenneises' limited or partial success. *See Cummings v. Connell*, 316 F.3d 886, 899 (9th Cir. 2003); *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1296 (N.D. Cal. 2014) (reducing costs by 20% because attorneys' fees were also reduced 20%).

are related, and therefore must proceed to step two of the *Hensley* analysis and consider "whether [the Brenneises'] significant accomplishments in this case justify the fee amount requested." *Thorne*, 802 F.2d at 1142 (citing *Hensley*, 461 U.S. at 434-37; *Rivera*, 106 S. Ct. at 2691-92). The Brenneises ultimately prevailed defending against the District's IDEA claim, which confirmed the ALJ's finding after the due process hearing that the District had denied T.B. a FAPE for the 2006-2007 school year. As a prevailing party, the Brenneises succeeded on their claim for an award of attorneys' fees and costs under the IDEA. The Court finds that no further reduction of the fee award for work performed during this stage of the litigation is appropriate. The Special Master's recommended award fairly reflects the success achieved over the course of four years of contentious, hard-fought litigation in this Court, while not rewarding the Brenneises for time spent pursuing their unsuccessful claims.

### c) Ninth Circuit Litigation

Likewise, the Brenneises did not seek an award of fees for work performed by their counsel on appeal related to their unsuccessful civil rights claims. The Special Master found that no reduction in the lodestar was appropriate for work done common to successful and unsuccessful claims, explaining:

> [T]he parties asserted a variety of claims, but they all arose out of a common set of facts. Moreover, much of the work on the appeal, from preparing the notice of appeal, to participation in the mediation, preparation of the appeal briefs, and participating in a moot court to prepare for oral argument for the successful claim for fees under the IDEA, is intertwined with the same tasks performed for the claims for the civil rights claims for which no fees are sought.

Doc. No. 366 at 99. The Court agrees, and finds no further reduction is appropriate under the second step of the *Hensley* analysis. The Brenneises succeeded entirely on their appeal of this Court's award of attorneys' fees and costs, as well as their claim for "fees on fees" in relation to the CDE compliance complaint. Their attorneys achieved

"excellent results" on appeal, and should be compensated accordingly.[12]  *Hensley*, 461 U.S. at 435.

### C. Conclusion

In sum, the Court concludes that an equitable reduction of a portion of the Brenneises' total award of attorneys' fees and costs is appropriate under *Hensley* based on the Brenneises' limited success during the administrative stage of these proceedings. Applying the percentage reduction results in the following adjusted total fee award:

| Proceeding | Fees & Costs Awarded |
|---|---|
| Due Process Hearing (2006-2007) | ~~$563,049.79~~ $281,524.90 |
| District Court Proceedings (Including "Fees on Fees") (2008-2012) | $399,839.75 |
| Ninth Circuit Appeal (Including "Fees on Fees") (2012-2015) | $203,670.00 |
| Ninth Circuit Mediation (2016) | $29,414.45 |
| Post-Remand Proceedings (Including "Fees on Fees") (2016-2017) | $20,970.00 |
| **SUBTOTAL:** | **~~$1,216,943.99~~ $935,419.10** |
| Supplemental Motion for Attorneys' Fees Incurred Between January 19, 2017 and December 29, 2017 | $27,630.00 |
| **TOTAL:** | **~~$1,244,573.99~~ $963,049.10** |

---

[12] As set forth above, the Special Master has recommended a fifty percent reduction in the fees awarded for the work performed by the Brenneises' counsel in relation to the Ninth Circuit mediation.  *See* Doc. No. 366 at 121.  The Court has adopted this recommendation and will not further reduce the award.  The Brenneises should not be penalized for participating in unsuccessful mediation efforts.  In addition, the Special Master has recommended an award of $20,970.00 in fees for work performed by the Brenneises' counsel in this Court post-remand.  This represents a 75% reduction of the amount sought by the Brenneises for work during this final stage of the litigation.  No further reduction is appropriate.

### 7. Pre-Judgment Interest

The Brenneises request an award of pre-judgment interest if the Court declines to use current billable rates in its lodestar calculation. The District argues that pre-judgment interest is not appropriate in an IDEA case, and point out that the Brenneises have not provided any support for this request. The Special Master has recommended that the Court not employ current billable rates in its calculation of the lodestar. *See* Doc. No. 366 at 35. The Court adopts this recommendation, and therefore must separately consider the Brenneises' request for pre-judgment interest.

As one district court has recently noted, "it is an open question whether pre-judgment interest may be obtained in an IDEA case." *McAllister v. District of Columbia*, 160 F. Supp. 3d 273, 277 n.1 (D.D.C. 2016). Nevertheless, the IDEA does not mandate such an award, and therefore, an award of pre-judgment interest is "subject to the discretion of the court and equitable considerations." *Oldham v. Korean Air Lines Co.*, 326 U.S. App. D.C. 375, 127 F.3d 43, 54 (D. C. Cir. 1997) (quoting *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D. C. Cir. 1992)). Generally, the purpose of such awards is to compensate the plaintiff for any delay in payment resulting from the litigation. *See id.*

The Court declines to award pre-judgment interest in this case. The Court acknowledges that other courts have either expressly concluded or assumed that pre-judgment interest is appropriate in the context of IDEA attorneys' fees claims, subject to the court's discretion. *See, e.g., Termine v. William S. Hart Union High Sch. Dist.*, 288 Fed.Appx. 360, 363 (9th Cir. July 24, 2008) (unpublished); *Kaseman v. District of Columbia*, 329 F.Supp.2d 20, 28 (D.D.C. 2004). However, there is no controlling legal authority on this issue, and the Court finds the general justification for an award of pre-judgment interest at odds with the purpose such an award would serve in this case.

"The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995). In other words, pre-judgment interest is an

element of a successful *party*'s compensation. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). Here, it is intended to compensate *counsel* for the delay in the payment of their fees. This goes beyond the intended purpose of such an award when attorneys' fees are awarded "to a prevailing party who is the parent of a child with a disability," 20 U.S.C. § 1415(i)(3)(B)(i), and "[t]he Supreme Court has made it clear that, in general, statutes bestow fees on parties, not upon attorneys." Doc. No. 329 at 6 (quoting *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip.*, 89 F.3d 574, 577 (9th Cir. 1996)).[13]

### 8. *Special Master's Fees*

Finally, the Court must allocate payment of the Special Master's fees amongst the parties. As the Court previously advised the parties, compensation for the Special Master must be paid by the parties, as the Court has no fund available to cover the cost. *See* Doc. No. 353. The Court must allocate payment of the Special Master's fees in a fair and reasonable manner "after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(2).

The nature and length of this litigation surpasses that of any other action over which this Court has presided. The attendant accumulation of attorneys' fees resulted in an "exceptional condition" which necessitated the appointment of a Special Master to assist in calculating the final fee award. Fed. R. Civ. P. 53(a)(1)(B)(i). However, as discussed above, neither party bears more responsibility than the other for this circumstance. Accordingly, as indicated in its order directing payment of the Special Master's fees, the Court determines that payment should be allocated equally between the parties. *See* Doc. No. 384.

The Special Master's fees totaled $57,370.00 for the work performed pursuant to

---

[13] Moreover, the Brenneises did not request an award of pre-judgment interest in either their original complaint or their second amended complaint.

the Court's appointment order. After reviewing the supporting invoices, the Court has approved payment of the full amount of fees requested by the Special Master. *See id.* In order to expedite payment while easing any potential burden on the Brenneises, the Court ordered the District to remit payment in full directly to the Special Master. *See id.* The District has now done so. *See* Doc. No. 385. The Brenneises' share of the fees will be subtracted from their fee award. This results in a deduction of **$28,685.00** from the Brenneises' final award of attorneys' fees and costs:

| **Proceeding** | **Fees & Costs Awarded** |
|---|---|
| Due Process Hearing (2006-2007) | ~~$563,049.79~~ $281,524.90 |
| District Court Proceedings (Including "Fees on Fees") (2008-2012) | $399,839.75 |
| Ninth Circuit Appeal (Including "Fees on Fees") (2012-2015) | $203,670.00 |
| Ninth Circuit Mediation (2016) | $29,414.45 |
| Post-Remand Proceedings (Including "Fees on Fees") (2016-2017) | $20,970.00 |
| **SUBTOTAL:** | ~~$1,216,943.99~~ **$935,419.10** |
| Supplemental Motion for Attorneys' Fees Incurred Between January 19, 2017 and December 29, 2017 | $27,630.00 |
| **TOTAL:** | ~~$1,244,573.99~~ **$963,049.10** |
| Special Master's Fees | ($28,685.00) |
| **GRAND TOTAL:** | **$934,364.10** |

**CONCLUSION**

Based on the foregoing, the Court **AFFIRMS IN PART** its previously issued tentative rulings, **ADOPTS** the Special Master's Report and Recommendation in its entirety, and **GRANTS IN PART** and **DENIES IN PART** the Brenneises' supplemental motion for attorneys' fees and costs. The Court **GRANTS IN PART** and **DENIES IN PART** the Brenneises' motion for attorneys' fees incurred between January 19, 2017 and December 29, 2017. The Court apportions payment of the Special Master's fees equally between the parties. Accordingly, the Court **AWARDS** the Brenneises **$934,364.10** in attorneys' fees and costs.

**IT IS SO ORDERED**.

DATE: February 23, 2018

_____
HON. MICHAEL M. ANELLO
United States District Judge

45